**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Turquoise Hill Resources Ltd. Securities Litigation | CASE No.: 1:20-cv-08585-LJL<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ALTANNAVCH SUKHBAATAR TO: (1) APPOINT LEAD PLAINTIFF; AND (2) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL<br><br>**CLASS ACTION** |

Plaintiff Altannavch Sukhbaatar ("Movant") respectfully submits this memorandum of law in support of his motion for an Order, pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a) appointing Movant as Lead Plaintiff for the class of all purchasers or acquirers of the publicly traded securities of Turquoise Hill Resources Ltd. ("Turquoise Hill" or the "Company") between July 17, 2018 and July 31, 2019, both dates inclusive (the "Class Period"); and

1

(b)     approving Movant's selection of The Rosen Law Firm, P.A. ("Rosen") as Lead Counsel for the Class.

## INTRODUCTION AND BACKGROUND

On October 14, 2020, the first-filed case was filed against the Turquoise Hill Resources Ltd., Ulf Quellmann, Brendan Lane, Luke Colton, Rio Tinto PLC, Rio Tinto Limited, Rio Tinto International Holdings Limited, Jean-Sébastien Jacques, and Arnaud Soirat for violations under the Exchange Act, styled as *Franchi v. Turquoise Hill Resources Ltd., et al.*, Case No. 1:20-cv-08585-LJL. On October 15, 2020, an early notice pursuant to the PSLRA advising class members of, inter alia, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff was issued. *See* Ex. 1 hereto.

On December 3, 2020, the second-filed case was filed, styled as *Lion v. Turquoise Hill Resources Ltd., et al.*, Case No. 1:20-cv-10198-LJL. On December 10, 2020, the cases were consolidated.

Turquoise Hill is an international mining company focused on the operation and development of the Oyu Tolgoi copper-gold mine in Southern Mongolia ("Oyu Tolgoi"), which is the Company's principal resource property. Turquoise Hill's subsidiary, Oyu Tolgoi LLC, holds a 66% interest in Oyu Tolgoi, and the remainder is held by the Government of Mongolia. On October 23, 2020, Turquoise Hill completed a 10:1 share consolidation (also called a reverse stock-split).

Rio Tinto plc and Rio Tinto Limited are operated and managed together as single economic unit and engage in mining and metals operations in approximately 35 countries. Through their subsidiaries, Rio Tinto owns 50.8% of Turquoise Hill. A Rio Tinto subsidiary, Rio Tinto International Holdings, Inc. (collectively with Rio Tinto plc and Rio Tinto Limited, "Rio

Tinto"), is also the manager of the Oyu Tolgoi project, including having responsibility for its development and construction.

The complaints allege that during the Class Period Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) the progress of underground development of Oyu Tolgoi was not proceeding as planned; (2) there were significant undisclosed underground stability issues that called into question the design of the mine, the projected cost and timing of production; (3) the Company's publicly disclosed estimates of the cost, date of completion and dates for production from the underground mine were not achievable; (4) the development capital required for the underground development of Oyu Tolgoi would cost substantially more than a billion dollars over what the Company had represented; and (5) Turquoise Hill would require additional financing and/or equity to complete the project.

In May 2015, Turquoise Hill, the Government of Mongolia and Rio Tinto entered into the "Oyu Tolgoi Underground Mine Development Plan" (the "Underground Plan") to provide for a restart of underground development.

While development was underway, the Defendants repeatedly represented that the projected cost was unchanged and that the schedule was on track. For example, in a July 31, 2018 press release, Turquoise Hill stated that "The Company continues to expect the first draw bell in mid-2020 and sustainable first production in 2021[,]" and Defendant Lane stating during an August 1, 2018 conference call that "we will remain on target for the first drill point blast in mid- 2020 and sustainable production in early 2021."

Similarly, Rio Tinto represented during investor conferences on August 1, 2018 (given by Defendant Jacques) that the Oyu Tolgoi underground project remained "on track," with "first

drawbell production in 2020." An October 2, 2018, a slide presentation given at an investment conference by Defendant Soirat represented that the "underground project [was] on budget and schedule" with "first drawbell production expected mid-2020."

Then on February 26, 2019, after the close of trading, Turquoise Hill shocked the financial markets by disclosing in a press release that, although "the [Oyu Tolgoi] project cost was expected to remain within the $5.3 billion budget," a review had determined that "there was an increasingly likely risk of a further delay to sustainable first production beyond Q3'21." In the press release, the Company attributed the "likely risk" to productivity delays in completing the shaft and "challenging ground conditions that have had a direct impact on the project's critical path."

In response to the news, Turquoise Hill's common stock price closed at $1.83 per share on February 27, 2019, a 12.86% decline from the close at $2.10 per share on February 26, 2019.

Four and a half months later, on July 15, 2019, after the close of trading, Turquoise Hill issued a press release announcing a further delay and that the underground project would cost substantially more than the Company had repeatedly stated during the Class Period. Sustainable first production from the underground development of Oyu Tolgoi would now be delayed by a further nine to twenty-one months until May 2022 to June 2023, and "the development capital spend for the project may increase by $1.2 to $1.9 billion over the $5.3 billion previously disclosed." Turquoise Hill further disclosed that the issues with the mine design were so unsettled that it would take until the second half of 2020 to develop a revised design for the mine.

Following this news, Turquoise Hill's common stock price closed at $0.60 per share, down 43.9% from the prior day's closing price of $1.07 per share.

On July 31, 2019, after the market close, Turquoise Hill issued a press release and Management Discussion & Analysis making further disclosures about the status of the project, including that Turquoise Hill took a $600 million impairment charge and a substantial "deferred income tax recognition adjustment" tied to the Oyu Tolgoi project, and that it suffered a loss in the second quarter. The next day, before the market open, Rio Tinto issued a release concerning in part the project status, including that it had also taken an impairment charge related to the Oyu Tolgoi project, of $800 million. Following this news, on August 1, 2019, Turquoise Hill's common stock price closed at $0.53 per share, down 8.62% from the prior day's closing price of $0.58 per share.

## ARGUMENT

**I.    MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF**

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

    (aa) has either filed the complaint or made a motion in response to a notice…;

    (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

    (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movants satisfy all three of these criteria, and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

### A. Movant Is Willing to Serve as Class Representative

Movant has filed herewith a PSLRA certification attesting that she is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ex. 2 hereto. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B. Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax*/*Olsten*-styled[1] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness*, *Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Movant lost approximately $45,643 in connection with her purchases of Turquoise Hill securities. *See* Ex. 3 hereto. Movant is not aware of any other movant that has suffered greater losses in Turquoise Hill securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

---

[1] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

### C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

#### 1. Movant's Claims are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiffs' claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiffs' claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

7

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading and failing to disclose material statements about the Company's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2. Movant Is Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between his claims and those asserted on behalf of the Class. Movant also sustained substantial financial losses from investments in Turquoise Hill securities and is therefore, extremely motivated to pursue claims in this action.

### D. Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Accordingly, Movant has suffered financial losses and has the largest financial interest in this case of any timely lead plaintiff.

Movant graduated from Mongolia International University in Ulaanbaatar as a designer and currently is a fashion designer. She has a few years of investing experience.

The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against her that would render Movant inadequate to represent the Class.

## II. MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen Lead Counsel. The firm has been actively researching Movant's and the Class's claims, including reviewing publicly available financial and other documents while gathering information in support of the claims against Defendants. Furthermore, the firm has an extensive history bringing significant recoveries to investors and are experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in other courts throughout the country. *See* Ex. 4 hereto. The firm has prosecuted numerous securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel have the skill and knowledge to prosecute this action effectively

and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) appointing Movant as Lead Plaintiff of the Class; (2) approving Movant's selection of Rosen as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: December 14, 2020                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
/s/ Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2020, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim