## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

In re TURQUOISE HILL RESOURCES LTD.
SECURITIES LITIG.

)
)
)
)

Docket No.: 1:20-cv-08585-LJL

---

## MEMORANDUM OF LAW IN SUPPORT OF PAUL CIAGLO'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF HIS SELECTION OF <u>LEAD COUNSEL</u>

**HACH ROSE SCHIRRIPA & CHEVERIE LLP**
Frank R. Schirripa
Kurt Hunciker
Seth M. Pavsner

112 Madison Ave, 10th Floor
New York, NY 10016
Telephone: (212) 213-8311
Facsimile:  (212) 779-0028

*Counsel for Movant and Plaintiff Anthony Franchi, and Proposed Lead Counsel for the Putative Class*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

I.    INTRODUCTION ................................................................................................... 1

II.   STATEMENT OF FACTS ...................................................................................... 3

III.  PAUL CIAGLO SHOULD BE APPOINTED LEAD PLAINTIFF ........................... 6

      A.  The PSLRA Standard for Appointing Lead Plaintiff ................................... 6

      B.  Mr. Ciaglo Is The "Most Adequate Plaintiff" ............................................... 7

            1.  Mr. Ciaglo's Motion is Timely ............................................................ 7

            2.  Mr. Ciaglo Has the Largest Financial Interest in the Relief Sought by
                the Class ................................................................................................ 7

      C.  Mr. Ciaglo Satisfies Rule 23's Typicality and Adequacy Requirements ............... 8

            1.  Mr. Ciaglo's Claims Are Typical of Those of the Class........................... 8

            2.  Mr. Ciaglo Will Fairly and Adequately Protect the Interest of the Class ......... 9

V.    THE COURT SHOULD APPROVE MR. CIAGLO'S CHOICE OF COUNSEL
      AS LEAD COUNSEL ............................................................................................. 10

VI.   CONCLUSION ....................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000)..................................................................................... 9

*Canson v. WebMD Health Corp.*,
2011 WL 5331712 (S.D.N.Y. 2011) ...................................................................... 9

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992)............................................................................... 9, 10

*In re Indep. Energy Holdings PLC Sec. Litig.*,
210 F.R.D. 476 (S.D.N.Y. 2002) ........................................................................... 9

*Jolly Roger Offshore Fund LTD v. BKF Capital Grp., Inc.*,
2007 WL 2363610 (S.D.N.Y. 2007)....................................................................... 8

STATUTES

15 U.S.C. §78u-4 ...........................................................................................*passim*

OTHER AUTHORITIES

H.R. Rep. 104-369 (1995) (Conf. Rep.) ...................................................................... 7

141 Cong. Rec. S17993-97, at S17956 (daily ed. Dec., 1995) ................................... 7

FED. R. CIV. P. 23 ............................................................................................*passim*

Paul Ciaglo ("Ciaglo") respectfully submits this Memorandum of Law pursuant to Section 21D of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995, (the "PSLRA"), in support of his motion for the entry of an order: (i) appointing Mr. Ciaglo as Lead Plaintiff pursuant to the PSLRA, and (ii) approving Hach Rose Schirripa & Cheverie LLP ("HRS&C") as Lead Counsel for the Class (as defined below).

I.   **INTRODUCTION**

The Action is a federal securities class action brought on behalf of all persons or entities who purchased or otherwise acquired the publicly-traded securities of Turquoise Hill Resources, Ltd. ("Turquoise Hill" or the "Company") between July 17, 2018 and July 31, 2019, inclusive (the "Class Period") in connection with the Company's and certain of its senior officers' violations of the Exchange Act (the "Class"). This consolidated action is the only securities class action brought pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, against the defendants in the above-captioned action (the "Defendants")[1] presently pending in this District.

Pursuant to the PSLRA, the Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). To that end, the Court is required to determine which person moving for appointment as lead plaintiff has the "largest financial interest" in the relief sought by the class of purchasers and/or acquirers of Turquoise Hill securities in this litigation, and to ensure that such movants also make a prima facie showing that they are typical and adequate

---

[1] This Action is comprised of two consolidated actions: *Franchi v. Turquoise Hill Resources Ltd., et al.*, No. 1:20-cv-08585-LJL (S.D.N.Y., filed Oct. 15, 2020) (the "*Franchi* Action") and *Lion v. Turquoise Hill Resources Ltd., et al.*, No. 1:20-cv-10198-LJL (S.D.N.Y., filed Dec. 3, 2020) (the "*Lion* Action"). The two actions were consolidated into this Action on December 10, 2020. *See* Dkt. No. 45.

class representatives under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Mr. Ciaglo respectfully submits that he should be appointed Lead Plaintiff by virtue of the significant losses he suffered on his investments in Turquoise Hill shares. Ciaglo satisfies all of the prerequisites for appointment as lead plaintiff. As set forth below, Ciaglo incurred losses in excess of $11,034.12 on shares purchased during the putative Class Period.[2] Accordingly, Ciaglo has a powerful economic interest in recovering his losses – an interest believed to be greater than that of any competing movant.

Mr. Ciaglo also satisfies the typicality and adequacy requirements of Rule 23 because his claims are typical of those of absent Class members, and because he will fairly and adequately represent the interests of the Class. Ciaglo's adequacy and ability to efficiently oversee this litigation is further evidenced by his certification, which sets forth his transactions in Turquoise Hill common stock.

Further, Mr. Ciaglo fully understands the lead plaintiff's obligations under the PSLRA, and is willing and able to undertake the responsibilities of lead plaintiff to guarantee vigorous prosecution of the Action. *See* Schirripa Decl., Ex. B. Accordingly, Ciaglo is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

Mr. Ciaglo also respectfully requests that the Court approve his choice of Lead Counsel. Ciaglo's choice for Lead Counsel, Hach Rose Schirripa & Cheverie, is a nationally-recognized securities and consumer class action litigation firm that has recovered hundreds of millions of

---

[2] A copy of the Certification of Paul Ciaglo (the "Certification") is attached as Exhibit B to the Declaration of Frank R. Schirripa in Support of Motion of Paul Ciaglo for Consolidation, Appointment of Lead Plaintiff, and Approval of His Selection of Lead Counsel (the "Schirripa Decl."). The certification sets forth all of Ciaglo's transactions in Turquoise Hill securities during the Class Period. Further, Exhibit C to the Schirripa Decl. is a calculation of financial losses sustained by Ciaglo on his Class Period transactions in Turquoise Hill securities.

dollars in damages for injured investors. HRS&C has extensive experience in class actions and securities litigation and is qualified to prosecute this case.

Mr. Ciaglo should be appointed as Lead Plaintiff because: (1) he timely filed his Motion; (2) to his knowledge, he has the largest financial interest in the relief sought by the Class; and (3) he will fairly and adequately represent the interests of the Class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). In addition, Ciaglo's selection of Hach Rose Schirripa & Cheverie – which filed the first-filed case in this Action – as Lead Counsel for the Class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.   STATEMENT OF FACTS

Turquoise Hill is an international mining company focused on the operation and development of the Oyu Tolgoi copper-gold mine in Southern Mongolia ("Oyu Tolgoi"), which is the Company's principal and only material resource property. Turquoise Hill's subsidiary, Oyu Tolgoi LLC, holds a 66% interest in Oyu Tolgoi, and the remainder is held by the Government of Mongolia. Rio Tinto plc and Rio Tinto Limited are operated and managed together as a single economic unit, engage in mining and metals operations in approximately 35 countries, and through their subsidiaries own 50.8% of Turquoise Hill. A Rio Tinto subsidiary, Rio Tinto International Holdings, Inc. ("RTIH," and collectively with Rio Tinto plc and Rio Tinto Limited, "Rio Tinto"), is also the manager of the Oyu Tolgoi project, including having responsibility for its development and construction.

During the Class Period, the Defendants made materially false and misleading statements and omitted to disclose material facts regarding the Company's business and operations. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the progress of the underground development of Oyu Tolgoi was not proceeding as planned; (ii)

there were significant undisclosed underground stability issues that called into question the design of the mine, the projected cost and timing of production; (iii) the Company's publicly disclosed estimates of the cost, date of completion and dates for production from the underground mine were not achievable; (iv) the development capital required for the underground development of Oyu Tolgoi would cost substantially more than a billion dollars over and above what the Company had represented to the market; and (v) Turquoise Hill would require additional financing and/or equity to complete the underground development of Oyu Tolgoi.

On February 26, 2019, after the close of trading, Turquoise Hill shockingly disclosed in a press release that, although "the [Oyu Tolgoi] project cost was expected to remain within the $5.3 billion budget," a review had determined that "there was an increasingly likely risk of a further delay to sustainable first production beyond Q3'21." In the release, the Company attributed the "likely risk" to productivity delays in completing Shaft 2 and "challenging ground conditions that have had a direct impact on the project's critical path." In response to the news, Turquoise Hill's common stock price closed at $1.83 per share on February 27, 2019, a 12.86% decline from the close at $2.10 per share the day prior, on a trading volume of over 18 million shares – more than four times greater than the average daily trading volume over the prior year.

Just under five months later, on July 15, 2019, after the close of trading, Turquoise Hill again issued a press release announcing a further delay and that the underground project would cost substantially more than the Company had repeatedly stated during the Class Period. Sustainable first production from the underground development of Oyu Tolgoi would now be delayed by a further nine to twenty-one months until May 2022 to June 2023, and "the development capital spend for the project may increase by $1.2 to $1.9 billion over the $5.3 billion previously disclosed." Turquoise Hill attributed the change to "[i]mproved rock mass information

4

and geotechnical data modelling," which "confirmed that there are stability risks associated with the components of the existing mine design." In fact, Turquoise Hill disclosed that the issues with the mine design were so unsettled that it would take until the second half of 2020 to develop a revised design for the mine. Following this news, Turquoise Hill's common stock price closed at just $0.60 per share, down 43.9% from the prior day's closing price of $1.07 per share, with over 50.2 million shares traded.

On July 31, after the market close, Turquoise Hill issued a press release and Management Discussion & Analysis making further disclosures about the status of the underground development project at Oyu Tolgoi, including that the Company took a $600 million impairment charge and a substantial "deferred income tax adjustment" tied to the Oyu Tolgoi project, and that it suffered a loss in the second quarter. The next day, before the market open, Rio Tinto issues a release concerning in part the status of the project, including that it had also taken an impairment charge – of $800 million – related to the Oyu Tolgoi project. Following this news, on August 1, 2019, Turquoise Hill's common stock price closed at $0.53 per share, down 8.62% from the prior day's closing price of $0.58 per share, with over 16.6 million shares traded.

After the Class Period, on July 2, 2020, Turquoise Hill and Rio Tinto announced that the revised feasibility study for the Oyu Tolgoi project had been completed. The study recommended an entirely new design for the portion of the mine undergoing development, with the addition of structural pillars and other changes, resulting in a reduction to the estimated mineral reserves for the mine. Turquoise Hill's press release further warned that the Oyu Tolgoi team was engaged in "re-design studies" for other portions of the underground mine as well. Turquoise Hill estimated that there would be an increase in capital costs of $1.5 billion, "subject to further studies and any

additional scheduling delays or increases in capital costs arising from the impacts of the COVID-19 pandemic."

Further, on September 10, 2020, Turquoise Hill and Rio Tinto announced that they had entered into a non-binding Memorandum of Understanding under which they would seek to "reprofile Oyu Tolgoi's existing debt" and raise an additional $500 million through debt financing, plus up to $3.6 billion in equity – thereby diluting Turquoise Hill's public shareholders.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Mr. Ciaglo and the other members of the Class have suffered significant losses and damages.

## III.   PAUL CIAGLO SHOULD BE APPOINTED LEAD PLAINTIFF

### A.   The PSLRA Standard for Appointing Lead Plaintiff

The appointment of a lead plaintiff in securities class action suits is governed by the PSLRA. *See* 15 U.S.C. §78u-4. The PSLRA amended the Exchange Act to include Section 21D which, *inter alia*, sets forth a detailed procedure for selecting a lead plaintiff to oversee class actions brought under the federal securities laws.

Pursuant to the PSLRA, a court is to consider all motions made by class members within the sixty-day period prescribed by statute and appoint the movant that the court determines to be most capable of adequately representing the interests of the class as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Specifically, the PSLRA provides that a court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members ( ... the "most adequate plaintiff") ....

15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA provides a presumption that the "most adequate plaintiff" is the person who: (1) filed a complaint or made a motion to serve as lead plaintiff; (2) has the "largest

financial interest" in the relief sought by the class; and (3) who otherwise satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted only upon "***proof***" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).

### B.   Mr. Ciaglo Is The "Most Adequate Plaintiff"

Mr. Ciaglo respectfully submits that he is presumptively the "most adequate plaintiff" because he has complied with the PSLRA's procedural requirements, possesses the largest financial interest of any known movant, and satisfies Rule 23's typicality and adequacy requirements.

### 1.   Mr. Ciaglo's Motion is Timely

The notice, published on October 15, 2020 by HRS&C after filing the first-filed complaint against Defendants, advised class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the proposed Class Period; and (4) the right to move the Court to be appointed lead plaintiff sixty days later. *See* Schirripa Decl., Ex. A. Because Mr. Ciaglo's motion is timely filed, he is entitled to be considered for appointment as lead plaintiff.

### 2.   Mr. Ciaglo Has the Largest Financial Interest in the Relief Sought by the Class

Mr. Ciaglo has suffered substantial damages as a result of the Defendants' wrongful conduct. The goal of Congress in enacting this provision was to "empower investors" to "have the greater control over class action cases." *See* H.R. Rep. 104-369 (1995) (Conf. Rep.); 141 Cong. Rec. S17933-97, at S17956 (daily ed. Dec. 5, 1995).

Mr. Ciaglo has a large financial interest in this litigation. As set forth more fully in the

supporting Schirripa Decl., Ciaglo spent approximately $27,770.76 to purchase 26,000 shares of Turquoise Hill securities and suffered damages of approximately $11,034.12. *See* Schirripa Decl. Ex. C.  Ciaglo is unaware of any other movant with a larger financial interest in the outcome of the Action.

Moreover, the damages suffered by Mr. Ciaglo and the claims against the Defendants are identical to those of the proposed class members and support the fact that Ciaglo is the most adequate movant to protect the interests of the class. Accordingly, Ciaglo is entitled to the legal presumption that he is the most adequate plaintiff.

### C.    Mr. Ciaglo Satisfies Rule 23's Typicality and Adequacy Requirements

The PSLRA further provides that the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

For purposes of appointing a lead plaintiff, all that is required to satisfy Rule 23 is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See Jolly Roger Offshore Fund LTD v. BKF Capital Grp., Inc.*, No. 07-cv-3923, 2007 WL 2363610, at *4 (S.D.N.Y. Aug 16, 2007) ("[t]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met") (internal quotation and citation omitted). Mr. Ciaglo has demonstrated that he satisfies these requirements.

### 1.    Mr. Ciaglo's Claims Are Typical of Those of the Class

Pursuant to Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. As a general rule, a plaintiff's claim meets the typicality requirement if it is both legally and factually similar and arises out of the same events or course of conduct that gives rise to the claims of the other class members. *See Canson v. WebMD Health Corp.*, No. 11-cv-5382, 2011 WL 5331712, at \*4 (S.D.N.Y. Nov. 7, 2011) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). This does not require that the claims be identical, but there must be some common question of fact or law. *See In re Indep. Energy Holdings PLC Sec. Litig.,* 210 F.R.D. 476, 480 (S.D.N.Y. 2002) (citing *Drexel*, 960 F.2d at 291).

Here, Mr. Ciaglo's claims are typical, if not identical, to the claims of the members of the Class. As set forth above, like all members of the Class, the losses suffered by Ciaglo resulted from Defendants' unlawful conduct that resulted in subsequent declines in the share price of Turquoise Hill securities. Thus, Ciaglo satisfies the typicality requirement.

### 2.   Mr. Ciaglo Will Fairly and Adequately Protect the Interest of the Class

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Further, the PSLRA directs the Court, in evaluating the adequacy of a proposed lead plaintiff, to limit its inquiry to the existence of any conflicts between the interests of the proposed representative and members of the class, and allows the lead plaintiff to retain counsel of their choice to represent the Class "subject to the approval of the court." 15 U.S.C. §78u-4(a)(3)(B)(v).

The adequacy standard is met where (1) the named plaintiff (or movant) has interests common with the Class' interests; and (2) the representative will vigorously pursue the interests of the Class through qualified counsel. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222

9

F.3d 52, 60 (2d Cir. 2000) (citing *Drexel*, 960 F.2d at 291).

As set forth above, Mr. Ciaglo's interests are clearly aligned with the members of the Class, and there is no evidence of any antagonism between his interests and those of the Class. Ciaglo shares nearly identical, and certainly common, questions of law and fact with the members of the Class, and his claims are typical of the members of the Class. Ciaglo understands the fiduciary duties owed by the lead plaintiff to the Class, is willing to oversee the vigorous prosecution of the Action, and has pledged to "provid[e] testimony at deposition and trial, if necessary." Schirripa Decl., Ex. B. In addition, Ciaglo has retained competent counsel to represent him in this case. Thus, the alignment of interests between Ciaglo and the Class and the skill of Ciaglo's chosen counsel favor granting the instant motion.

## IV.   THE COURT SHOULD APPROVE MR. CIAGLO'S CHOICE OF COUNSEL AS LEAD COUNSEL

The PSLRA's amendments to the Exchange Act vest authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the court. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). A court should not disturb the lead plaintiff's choice of counsel unless necessary to protect the interests of the plaintiff class. 15 U.S.C. 78u-4(a)(B)(iii)(II)(aa). In the present case, Mr. Ciaglo has retained Hach Rose Schirripa & Cheverie LLP as lead counsel to pursue this litigation on his behalf. HRS&C is a nationally recognized class action law firm that has successfully litigated securities, antitrust and consumer class actions in federal and state courts throughout the nation. *See* Schirripa Decl., Ex. D. The *Franchi* Action was commenced approximately 15 months after the close of the proposed class period. HRS&C spent considerable time and resources investigating and filing the first-filed complaint against Defendants covering these allegations. Ciaglo's choice of lead counsel should not be disturbed, and this Court should approve their selection of Hach Rose Schirripa & Cheverie as Lead Counsel.

## VI.   <u>CONCLUSION</u>

For all the foregoing reasons, Paul Ciaglo respectfully requests that the Court grant the instant motion and:

i)     appoint Paul Ciaglo as Lead Plaintiff in the above-captioned action pursuant to Section 21D(a)(3)(B)(i-iii) of the Exchange Act, 15 U.S.C. §78u-4(a)(3)(B)(i-iii);

ii)    approve Mr. Ciaglo's choice of lead counsel and appoint Hach Rose Schirripa & Cheverie LLP as Lead Counsel pursuant to Section 21D(a)(3)(B)(v) of the Exchange Act, 15 U.S.C. §78u-4(a)(3)(B)(v); and

iii)   grant such other and further relief as the Court may deem just and proper.


Dated: December 14, 2020
       New York, New York

                                        Respectfully submitted,

                                        **HACH ROSE SCHIRRIPA & CHEVERIE LLP**


                                        By: */s/ Frank R. Schirripa*
                                             Frank R. Schirripa
                                             Kurt Hunciker
                                             Seth M. Pavsner
                                        112 Madison Ave, 10th Floor
                                        New York, NY 10016
                                        Telephone: (212) 213-8311
                                        Facsimile:  (212) 779-0028

                                        *Counsel for Movant and Plaintiff Anthony Franchi, and*
                                        *Proposed Lead Counsel for the Putative Class*

11

## CERTIFICATE OF SERVICE

I, Seth M. Pavsner, counsel for Movant, hereby certify that on December 14, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all attorneys of record.


By:  */s/ Seth M. Pavsner*
        Seth M. Pavsner