**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Turquoise Hill Resources Ltd. Securities Litigation | Case No.: 1:20-cv-08585-LJL<br><br>Hon. Lewis J. Liman |

**MEMORANDUM OF LAW IN SUPPORT OF CHANG PIN LIN'S MOTION FOR**
**APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF**
**SELECTION OF COUNSEL**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    FACTUAL BACKGROUND .................................................................................... 2

II.   PROCEDURAL HISTORY.................................................................................... 5

III.  ARGUMENT ......................................................................................................... 6

    A.    Appointing Movant As Lead Plaintiff Is Appropriate ................................... 6

        1.    Movant Filed a Timely Motion. ...................................................... 7

        2.    Movant Has the Largest Financial Interest..................................... 8

        3.    Movant Satisfies the Relevant Requirements of Rule 23................. 8

            a.    Movant's Claims Are Typical................................................... 9

            b.    Movant Is An Adequate Representative. ................................... 10

    B.    Approving Lead Plaintiff's Choice of Counsel Is Appropriate. ................... 11

IV.   CONCLUSION...................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Cendant Corp.*,
    264 F.3d 201 (3d Cir. 2001) ................................................................. 11

*City of Monroe Emples.' Ret. Sys. v. Hartford Fin. Servs. Group, Inc.*,
    269 F.R.D. 291 (S.D.N.Y. 2010) ......................................................... 9, 10

*In re eSpeed, Inc. Sec. Litig.*,
    232 F.R.D. 95 (S.D.N.Y. 2005) ............................................................ 9

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
    No. 1:08-cv-7281-JFK, 2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008) ................. 9

*Salinger v. Sarepta Therapeutics, Inc.*,
    No. 19-CV-8122 (VSB), 2019 U.S. Dist. LEXIS 218248 (S.D.N.Y. Dec. 17, 2019) ............. 7

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008) ................................................... 7, 8

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
    No. 10-cv-00864-SLT, 2011 U.S. Dist. LEXIS 88552 (E.D.N.Y. May 31, 2011) .................. 9

**Statutes**

15 U.S.C. § 78u-4 ............................................................................. passim

**Rules**

Fed. R. Civ. P. 23 ......................................................................... 1, 7, 8, 9

Chang Pin Lin, individually, and on behalf of: (1) Southlight International, Inc.; (2) LIN FAMILY REV LIVING TRUST- L LIN LEE & C LIN TTEE; (3) Yi Hsin Lin; and (4) Yu Ting Lin[1] ("Movant" or collectively, the "Lin Family"), respectfully submits this memorandum of law in support of his motion ("Motion") to appoint him as lead plaintiff in the above-captioned action (the "Action") and approve his selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), on behalf of a putative class of purchasers of Turquoise Hill Resources Ltd. ("Turquoise Hill" or the "Company") securities from July 17, 2018 to July 31, 2019, inclusive (the "Class" who purchased during the "Class Period"), against Defendants Turquoise Hill, Ulf Quellmann ("Quellmann"), Brendan Lane ("Lane"), Luke Colton ("Colton"), Rio Tinto PLC ("Rio PLC"), Rio Tinto Limited ("Rio Limited), Rio Tinto International Holdings Limited ("Rio International"), Jean-Sébastien Jacques ("Jacques"), and Arnaud Soirat ("Soirat") (collectively "Defendants").

Pursuant to the PSLRA, the person or group of persons with the largest financial interest in the relief sought by the Class who also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure are presumed to be the "most adequate" plaintiff—*i.e.*, the plaintiff most capable of adequately representing the interests of Class members. The PSLRA provides that the Court shall appoint the most adequate movant as lead plaintiff. Movant believes that he is the "most adequate" plaintiff, as defined by the PSLRA, and should be appointed lead plaintiff based on the financial losses he suffered as a result of defendants' wrongful conduct as alleged in this litigation. Moreover, Movant satisfies the relevant requirements of Rule 23 of the Federal Rules

---

[1] Yi Hsin Lin and Yu Ting Lin are Movant's children. Movant's children have each assigned to Movant their interest to prosecute this Action on their behalf.

of Civil Procedure, as his claims are typical of other Class members' claims and he will fairly and adequately represent the interests of the Class. In addition, Movant's selection of Levi & Korsinsky as Lead Counsel should be approved because the firm has substantial expertise in securities class action litigation and the experience and resources to efficiently prosecute this Action.

## I.  FACTUAL BACKGROUND[2]

Turquoise Hill is an international mining company focused on the operation and development of the Oyu Tolgoi copper-gold mine in Southern Mongolia ("Oyu Tolgoi"), which is the Company's principal and only material resource property. ¶ 2. Turquoise Hill's subsidiary, Oyu Tolgoi LLC, holds a 66% interest in Oyu Tolgoi, and the remainder is held by the Government of Mongolia. *Id.* The Company is headquartered in Quebec, Canada, and its stock currently trades on the New York Stock Exchange ("NYSE") under the ticker symbol "TRQ" . ¶ 18.

Rio Tinto plc and Rio Tinto Limited are operated and managed together as single economic unit and engage in mining and metals operations in approximately 35 countries. ¶ 3. Through their subsidiaries, Rio Tinto owns 50.8% of Turquoise Hill. A Rio Tinto subsidiary, Rio Tinto International Holdings, Inc. ("Rio Tinto International" or "RTIH"; and collectively with Rio Tinto plc and Rio Tinto Limited, "Rio Tinto"), is also the manager of the Oyu Tolgoi project, including having responsibility for its development and construction. *Id.*

During the Class Period, Defendants made materially false and misleading statements and omitted to disclose material facts regarding the Company's business and operations. ¶ 4. Specifically, Defendants made false and or misleading statements and/or failed to disclose that: (i)

---

[2] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "*Franchi* Complaint") filed in the *Franchi* Action. Unless otherwise defined, capitalized terms shall have the same meaning set forth in the *Franchi* Complaint. The facts set forth in the *Franchi* Complaint are incorporated herein by reference.

the progress of underground development of Oyu Tolgoi was not proceeding as planned; (ii) there were significant undisclosed underground stability issues that called into question the design of the mine, the projected cost and timing of production; (iii) the Company's publicly disclosed estimates of the cost, date of completion and dates for production from the underground mine were not achievable; (iv) the development capital required for the underground development of Oyu Tolgoi would cost substantially more than a billion dollars over what the Company had represented; and (v) Turquoise Hill would require additional financing and/or equity to complete the project. *Id.*

After the close of trading on February 26, 2019, Turquoise Hill shocked the financial markets by disclosing in a press release that, although "the [Oyu Tolgoi] project cost was expected to remain within the $5.3 billion budget," a review had determined that "there was an increasingly likely risk of a further delay to sustainable first production beyond Q3'21." ¶ 4. In the press release, the Company attributed the "likely risk" to productivity delays in completing Shaft 2 and "challenging ground conditions that have had a direct impact on the project's critical path." *Id.*

On this news, Turquoise Hill's common stock price closed on February 27, 2019 at $1.83 per share, a 12.86% decline from the close at $2.10 per share on February 26, 2019, on a trading volume of over 18 million shares – more than four times greater than the average daily trading volume over the prior year. ¶ 6.

Four and a half months later, after the close of trading on July 15, 2019, the Coompany issued a press release announcing a further delay and that the underground project would cost substantially more than the Company had repeatedly stated during the Class Period. ¶ 7. Sustainable first production from the underground development of Oyu Tolgoi would now be delayed by an additional nine to twenty-one months until May 2022 to June 2023, and "the

development capital spend for the project may increase by $1.2 to $1.9 billion over the $5.3 billion previously disclosed." *Id.* Turquoise Hill attributed the change to "[i]mproved rock mass information and geotechnical data modelling," which "confirmed that there are stability risks related with components of the existing mine design." *Id.* Turquoise Hill disclosed that the issues with the mine design were so unsettled that it would take until the second half of 2020 to develop a revised design for the mine. *Id.*

On this news, Turquoise Hill's common stock price dropped $0.47, or 43.9% per share, to close at $0.60 per share on July 16, 2019, with over 50.2 million shares traded. ¶ 8.

After the market close on July 31, 2019, the Company issued a press release and Management Discussion & Analysis ("MD&A") making further disclosures about the status of the project, including that Turquoise Hill took a $600 million impairment charge and a substantial "deferred income tax recognition adjustment" tied to the Oyu Tolgoi project, and that it suffered a loss in the second quarter. ¶ 9. Before the market open on the next day, Rio Tinto issued a release concerning in part the project status, including that it had also taken an impairment charge related to the Oyu Tolgoi project, of $800 million. *Id.* On this news, Turquoise Hill's common stock price took another drop closing at $0.53 per share on August 1, 2019, down 8.62% from the prior day's closing price of $0.58 per share, with over 16.6 million shares traded. *Id.*

After the end of the Class Period, more information regarding the Oyu Tolgoi project was announced. ¶ 10. On July 2, 2020, Turquoise Hill and Rio Tinto announced that the revised feasibility study for the Oyu Tolgoi project had been completed and that this study recommended a new design for the portion of the mine undergoing development, with the addition of structural pillars and other changes, resulting in a reduction to the estimated mineral reserves for the mine. *Id.* The press release also warned that the Oyu Tolgoi team was engaged in "re-design studies" for

other portions of the underground mine and that the Company estimated that there would be an increase in capital costs of $1.5 billion (with a range of $1.3 billion to $1.8 billion), "subject to further studies and any additional scheduling delays or increases in capital costs arising from the impacts of the COVID-19 pandemic." *Id.*

Then, on September 10, 2020, Turquoise Hill and Rio Tinto announced that they had entered into a non-binding Memorandum of Understanding under which they would seek to "reprofile Oyu Tolgoi's existing debt" and raise an additional $500 million through debt financing, plus up to $3.6 billion in equity – thereby diluting Turquoise Hill's public shareholders. ¶ 11.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages. ¶ 12.

## II.    PROCEDURAL HISTORY

Pending before this Court is the above-captioned Consolidated Action against Defendants. Plaintiff Anthony Franchi ("Franchi") commenced the first filed action against Turquoise Hill on October 15, 2020. On that same day, counsel acting on Franchi's behalf published a notice on *Globe Newswire* announcing that a securities class action had been initiated against the Defendants. *See* Press Release Ex. C to Hopkins Decl.

As more news surrounding Turquoise Hill began to emerge after the filing of the *Franchi* Action, the *Lion* Action was filed against Turquoise Hill in this Court. On December 10, 2020, this Court ordered that the *Franchi* and *Lion* Actions be consolidated. *See* ECF No. 45.

### III.     ARGUMENT

#### A.     Appointing Movant As Lead Plaintiff Is Appropriate

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" — *i.e.*, the plaintiffs most capable of adequately representing the interests of the Class — is the class member or group of class members that:

> (aa) has either filed the complaint or made a motion in response to a notice. . .
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

The presumption "may be rebutted only upon proof by a purported member of the plaintiff class that the presumptively most adequate plaintiff—

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies the forgoing criteria and has complied with all of the PSLRA's requirements to be appointed lead plaintiff. Movant has, to the best of his knowledge, the largest financial interest in this litigation—having lost $344,719.21 as a result of the Lin

Family's Class Period transactions in Turquoise Hill securities—and meets the relevant requirements of Federal Rule of Civil Procedure 23. *See* Loss Chart, Ex. B to Hopkins Decl. In addition, Movant is not aware of any unique defenses that Defendants could raise against him, nor the Lin Family members, that would render him inadequate to represent the Class. Accordingly, Movant respectfully submits that he should be appointed as lead plaintiff. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008).

         **1.**      **Movant Filed a Timely Motion.**

On October 15, 2020 pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), counsel for Franchi published the Press Release on *Globe Newswire* —a widely circulated national business-oriented wire service—announcing that a securities class action had been filed against defendants herein and advising purchasers of Turquoise Hill securities that they had 60 days from the publication of the October 15, 2020 notice to file a motion to be appointed as lead plaintiff. *See* Press Release, Ex. C to Hopkins Decl.; *Salinger v. Sarepta Therapeutics, Inc.,* No. 19-CV-8122 (VSB), 2019 U.S. Dist. LEXIS 218248, at *3 (S.D.N.Y. Dec. 17, 2019) (filing a notice on *Globe Newswire* satisfied the PSLRA's notice requirement).

Movant timely filed his motion within the 60-day period following publication of the October 15, 2020 Press Release and has submitted herewith a sworn certification attesting that he, on behalf of himself and the Lin Family, is willing to serve as representatives of the Class and attaching his and the Lin Family's transactions in Turquoise Hill securities. *See* PSLRA Cert, Ex. A to Hopkins Decl. By making a timely motion in response to a PSLRA notice, Movant satisfies the first PSLRA requirement to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa).

### 2.   Movant Has the Largest Financial Interest.

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). At the time of this filing, Movant believes that he has the largest financial interest among Class members who filed timely applications for appointment as lead plaintiff and, accordingly, are presumed to be the "most adequate plaintiffs."

Movant purchased Turquoise Hill securities at prices alleged to have been artificially inflated by way of the Defendants' scheme and/or in reliance upon the materially false and misleading statements issued by the Defendants and were injured thereby. As a result of the alleged fraud against Defendants, Movant suffered an approximate loss of $344,719.21. *See* Loss Chart, Ex. B to Hopkins Decl.

Movant is unaware of any other Class member claiming a larger financial interest in this matter that has filed a motion for appointment as lead plaintiff. Consequently, Movant believes that he has the "largest financial interest in the relief sought by the Class." Thus, Movant satisfies the second PSLRA requirement—the largest financial interest—to be appointed as lead plaintiff for the Class.  *See Varghese,* 589 F. Supp. 2d at 396.

### 3.   Movant Satisfies the Relevant Requirements of Rule 23.

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class,

and (4) the representative parties will fairly and adequately protect the interest of the class.

FED. R. CIV. P. 23(a).

In making its determination that a lead plaintiff candidate satisfies the requirements of Rule 23, "typicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination." *City of Monroe Emples.' Ret. Sys. v. Hartford Fin. Servs. Group, Inc.*, 269 F.R.D. 291, 296 (S.D.N.Y. 2010). At the lead plaintiff stage of the litigation, Movant needs only make a preliminary showing that he satisfies Rule 23's typicality and adequacy requirements. *Id.* at 296-97 (*citing In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005); *Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 1:08-cv-7281-JFK, 2008 U.S. Dist. LEXIS 95506, at *11-12 (S.D.N.Y. Nov. 24, 2008).

### a.    Movant's Claims Are Typical.

The Rule 23(a) typicality requirement is satisfied when a lead plaintiff's claims arise from the same event, practice, or course of conduct that gives rise to other class members' claims, and lead plaintiff's claims are based on the same legal theory. *See Kuriakose*, 2008 U.S. Dist. LEXIS 95506, at *12. Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id.*

Movant's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Movant alleges that Defendants' material misstatements and omissions, and fraudulent scheme, concerning Turquoise Hill's business, violated the federal securities laws. Movant, like all members of the Class, purchased Turquoise Hill securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby. *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-cv-00864-SLT, 2011 U.S. Dist. LEXIS 88552, at *12 (E.D.N.Y. May 31, 2011) (typicality satisfied

where movants purchased stock at artificially inflated prices "and suffered damages as a result"). Accordingly, Movant's interests and claims are "typical" of the interests and claims of the Class.

**b.      Movant Is An Adequate Representative.**

"The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *City of Monroe*, 269 F.R.D. at 297. Movant has demonstrated his adequacy by retaining competent and experienced counsel with the resources and expertise to efficiently prosecute this Action, and Movant's financial losses ensure that he has sufficient incentive to ensure vigorous advocacy. *See* Loss Chart, Ex. B to Hopkins Decl. Finally, Movant is not aware that any conflict exists between his claims and those asserted on behalf of the Class.

Moreover, Movant is a sophisticated investor who has been investing in securities for more than 20 years. Movant resides in Irvine, California, and is currently the owner and president of Southlight International, Inc., a commercial real estate investment business. Movant is also a retired surgeon with a medical degree from the Chun Shan Medical University of Taiwan. Movant is familiar with the Lead Plaintiff role and its requirements as well, as Movant has previously sought to serve as lead plaintiff in another class action entitled *Banes V. Modany, et al.,* C.A. No. 1:14-cv- 1599 (S.D. Ind., Dec. 1, 2014) but was ultimately not appointed[3].

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfy 15

---

[3] Movant was not appointed lead plaintiff in the *Modany* Action because he did not possess the largest financial interest out of all movants as required by the PSLRA.

U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, he is the presumptive lead plaintiff in accordance with § 78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead the Action.

**B.      Approving Lead Plaintiff's Choice of Counsel Is Appropriate.**

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp.*, 264 F.3d 201, 274 (3d Cir. 2001). Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Movant has selected Levi & Korsinsky to pursue this litigation on his behalf and retained the firm as the Class's Lead Counsel in the event he is appointed as lead plaintiff. The members of Levi & Korsinsky have extensive experience in successfully prosecuting complex securities class actions such as this one and are well-qualified to represent the Class. *See* Firm Resume, Ex. D of Hopkins Decl. Thus, the Court may rest assured that by granting Movant's motion, the Class will receive the highest caliber of legal representation possible.

**IV.      CONCLUSION**

For the foregoing reasons, Movant respectfully requests the Court grant his Motion and enter an Order: (1) appointing Movant as lead plaintiff, (2) approving his selection of Levi & Korsinsky as Lead Counsel for the Class, and (3) granting such other relief as the Court may deem just and proper.

*[Signature on Following Page]*

Dated: December 14, 2020                    Respectfully Submitted,

                                            **LEVI & KORSINSKY, LLP**

                                            By:  /s/ *Shannon L. Hopkins*
                                            Shannon L. Hopkins (SH-1887)
                                            1111 Summer Street, Suite 403
                                            Stamford, Connecticut 06905
                                            Tel. (203) 992-4523
                                            Fax: (212) 363-7500
                                            Email: shopkins@zlk.com