UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TURQUOISE HILL RESOURCES LTD. SECURITIES LITIGATION | Case No.  20-CV-08585-LJL<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF RAMAKRISHNAN NATESAN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ............................................................................................................................ 6

I.      NATESAN SHOULD BE APPOINTED LEAD PLAINTIFF ........................................ 6

    A.      Natesan Is Willing to Serve as a Class Representatives ......................................... 7

    B.      Natesan Has the "Largest Financial Interest" in the Consolidated Action ............ 7

    C.      Natesan Otherwise Satisfies the Requirements of Rule 23.................................... 8

II.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ........ 11

CONCLUSION ........................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Page(s)**

<u>Cases</u>

*Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB),
    2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) .............................................................9

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
    141 F.R.D. 229 (2d Cir. 1992) ...............................................................................9

*Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN),
    2018 WL 3093965 (S.D.N.Y. June 21, 2018) .........................................................8

*Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS),
    2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) .......................................................10

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) ..........................................................................10

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).....................................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
    2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ......................................................8, 11

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992)....................................................................................9

*In re Molson Coors Brewing Co. Sec. Litig.*,
    233 F.R.D. 147 (D. Del. 2005) .............................................................................11

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ........................................................................8

*In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS),
    2008 WL 2811358 (S.D.N.Y. July 7, 2008) ...........................................................9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ..............................................................................9

*Janbay v. Canadian Solar, Inc.*,
    272 F.R.D. 113 (S.D.N.Y. 2010) ............................................................................9

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) ..............................................................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  311 F.R.D. 373 (S.D.N.Y. 2015) .........................................................................11

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
  1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ........................................................7, 8

*Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN),
  2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ........................................................8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ...........................................................................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008).................................................................11

## Statutes

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .................................................................. *passim*

Private Securities Litigation Reform Act of 1995 ...........................................1, 2, 7, 11

## Rules

Fed. R. Civ. P. 23....................................................................................... *passim*

Ramakrishnan Natesan ("Natesan") respectfully submits this memorandum of law in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Natesan as Lead Plaintiff on behalf of a class consisting of all persons and entities other than the defendants in the above-captioned consolidated action[1] ("Defendants") that purchased or otherwise acquired Turquoise Hill securities between July 17, 2018 and July 31, 2019, both dates inclusive (the "Class Period") (the "Class"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The Complaints in the actions comprising the Consolidated Action allege that Defendants defrauded investors in violation of the Exchange Act. Turquoise Hill investors, including Natesan, incurred significant losses following the disclosure of the Company's alleged fraud,

---

[1] On October 14, 2020, the plaintiff in the first-filed of the actions comprising the above-captioned consolidated action, styled *Franchi v. Turquoise Hill Resources Limited et al.*, No. 1:20-cv-08585 (S.D.N.Y.) ("*Franchi* Action"), filed a class action complaint against defendants Turquoise Hill Resources Limited ("Turquoise Hill" or the "Company"), Ulf Quellmann, Brendan Lane, Luke Colton, Rio Tinto PLC, Rio Tinto Limited, Rio Tinto International Holdings Limited, Jean-Sebastien Jacques, and Arnaud Soirat, alleging that they violated Sections 10(b) and 20(a) of the Exchange Act. *See generally Franchi* Action, Dkt. No. 1 ("*Franchi* Complaint"). Then, on December 3, 2020, the plaintiff in the second-filed of the actions comprising the above-captioned consolidated action, styled *Lion v. Turquoise Hill Resources Limited et al.*, No. 1:20-cv-10198 (S.D.N.Y.) ("*Lion* Action"), filed a class action complaint alleging substantively the same claims against the same defendants named in the *Franchi* Complaint. *See generally Lion* Action, Dkt. No. 1 (alleging violations of Section 10(b) and 20(a) of the Exchange Act against Turquoise Hill, Ulf Quellmann, Brendan Lane, Luke Colton, Rio Tinto PLC, Rio Tinto Limited, Rio Tinto International Holdings Limited, Jean-Sebastien Jacques, and Arnaud Soirat). Thereafter, on December 10, 2020, the Court entered an Order, *inter alia*, consolidating the *Franchi* Action and *Lion* Action for all purposes under the master file number 20-CV-08585-LJL, and bearing the caption *In re Turquoise Hill Resources Ltd. Securities Litigation* ("Consolidated Action"). *See* Consolidated Action, Dkt. No. 45 ("Consolidation Order").

which caused Turquoise Hill's stock price to fall sharply, damaging Natesan and other Turquoise Hill investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possess the largest financial interest in the outcome of the action and that satisfy the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In connection with his purchases of Turquoise Hill securities during the Class Period, Natesan incurred losses of approximately $251. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Ex. A. Accordingly, Natesan believes that he has the largest financial interest in the relief sought in the Consolidated Action.

Beyond his considerable financial interest, Natesan also meets the applicable requirements of Rule 23 because his claims are typical of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Consolidated Action on behalf of the Class, Natesan has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Natesan respectfully requests that the Court enter an order appointing him as Lead Plaintiff for the Class and approving his selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

Turquoise Hill is an international mining company focused on the operation and development of the Oyu Tolgoi copper-gold mine in Southern Mongolia ("Oyu Tolgoi"), which

is the Company's principal and only material resource property. *Franchi* Complaint ¶ 2. Turquoise Hill's subsidiary, Oyu Tolgoi LLC, holds a 66% interest in Oyu Tolgoi, and the remainder is held by the Government of Mongolia. *Id.*

Rio Tinto plc and Rio Tinto Limited are operated and managed together as single economic unit and engage in mining and metals operations in approximately 35 countries. *Id.* ¶ 3. Through their subsidiaries, Rio Tinto owns 50.8% of Turquoise Hill. *Id.* A Rio Tinto subsidiary, Rio Tinto International Holdings, Inc. ("Rio Tinto International" or "RTIH"; and collectively with Rio Tinto plc and Rio Tinto Limited, "Rio Tinto"), is also the manager of the Oyu Tolgoi project, including having responsibility for its development and construction. *Id.*

During the Class Period, Defendants made materially false and misleading statements and omitted to disclose material facts regarding the Company's business and operations. *Id.* ¶ 4. Specifically, Defendants made false and or misleading statements and/or failed to disclose that: (i) the progress of underground development of Oyu Tolgoi was not proceeding as planned; (ii) there were significant undisclosed underground stability issues that called into question the design of the mine, the projected cost and timing of production; (iii) the Company's publicly disclosed estimates of the cost, date of completion and dates for production from the underground mine were not achievable; (iv) the development capital required for the underground development of Oyu Tolgoi would cost substantially more than a billion dollars over what the Company had represented; and (v) Turquoise Hill would require additional financing and/or equity to complete the project. *Id.*

On February 26, 2019 after the close of trading, Turquoise Hill shocked the financial markets by disclosing in a press release that, although "the [Oyu Tolgoi] project cost was expected to remain within the $5.3 billion budget," a review had determined that "***there was an***

***increasingly likely risk of a further delay to sustainable first production beyond Q3'21***." *Id.* ¶ 5. In the press release, the Company attributed the "likely risk" to productivity delays in completing Shaft 2 and "***challenging ground conditions that have had a direct impact on the project's critical path***." *Id.*

In response to the news, Turquoise Hill's common stock price closed at $1.83 per share on February 27, 2019, a 12.86% decline from the close at $2.10 per share on February 26, 2019, on a trading volume of over 18 million shares – more than four times greater than the average daily trading volume over the prior year. *Id.* ¶ 6.

Four and a half months later, on July 15, 2019, after the close of trading, Turquoise Hill issued a press release announcing a further delay and that the underground project would cost substantially more than the Company had repeatedly stated during the Class Period. *See id.* ¶ 7. Sustainable first production from the underground development of Oyu Tolgoi would now be delayed by a further nine to twenty-one months until May 2022 to June 2023, and "the development capital spend for the project may increase by $1.2 to $1.9 billion over the $5.3 billion previously disclosed." *Id.* Turquoise Hill attributed the change to "[i]mproved rock mass information and geotechnical data modelling," which "confirmed that there are stability risks associated with components of the existing mine design." *Id.* Turquoise Hill disclosed that the issues with the mine design were so unsettled that it would take until the second half of 2020 to develop a revised design for the mine. *Id.*

Following this news, Turquoise Hill's common stock price closed at $0.60 per share, down 43.9% from the prior day's closing price of $1.07 per share, with over 50.2 million shares traded. *Id.* ¶ 8.

On July 31, 2019, after the market close, Turquoise Hill issued a press release and Management Discussion & Analysis ("MD&A") making further disclosures about the status of the project, including that Turquoise Hill took a $600 million impairment charge and a substantial "deferred income tax recognition adjustment" tied to the Oyu Tolgoi project, and that it suffered a loss in the second quarter. *Id.* ¶ 9. The next day, before the market open, Rio Tinto issued a release concerning in part the project status, including that it had also taken an impairment charge related to the Oyu Tolgoi project, of $800 million. *Id.* Following this news, on August 1, 2019, Turquoise Hill's common stock price closed at $0.53 per share, down 8.62% from the prior day's closing price of $0.58 per share, with over 16.6 million shares traded. *Id.*

After the Class Period, on July 2, 2020, Turquoise Hill and Rio Tinto announced that the revised feasibility study for the Oyu Tolgoi project had been completed. *Id.* ¶ 10. The study recommended a new design for the portion of the mine undergoing development, with the addition of structural pillars and other changes, resulting in a reduction to the estimated mineral reserves for the mine. *Id.* Turquoise Hill's press release also warned that the Oyu Tolgoi team was engaged in "re-design studies" for other portions of the underground mine. *Id.* Turquoise Hill estimated that there would be an increase in capital costs of $1.5 billion (with a range of $1.3 billion to $1.8 billion), "subject to further studies and any additional scheduling delays or increases in capital costs arising from the impacts of the COVID-19 pandemic." *Id.*

Also, on September 10, 2020, Turquoise Hill and Rio Tinto announced that they had entered into a non-binding Memorandum of Understanding under which they would seek to "reprofile Oyu Tolgoi's existing debt" and raise an additional $500 million through debt financing, plus up to $3.6 billion in equity – thereby diluting Turquoise Hill's public shareholders. *Id.* ¶ 11.

5

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

ARGUMENT

I.     NATESAN SHOULD BE APPOINTED LEAD PLAINTIFF

Natesan should be appointed Lead Plaintiff because, to his knowledge, he has the largest financial interest in the Consolidated Action and otherwise satisfies the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Natesan satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### A.    Natesan Is Willing to Serve as a Class Representatives

On October 15, 2020, counsel for plaintiff in the *Franchi* Action caused a notice to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "PSLRA Notice"), which announced that a securities fraud class action had been filed against Defendants, and which advised investors in Turquoise Hill securities that they had until December 14, 2020—*i.e.*, 60 days from the date of the PSLRA Notice—to file a motion to be appointed as lead plaintiff.  *See* Lieberman Decl., Ex. B.

Natesan has filed the instant motion pursuant to the PSLRA Notice, and has attached a sworn Certification attesting that he is willing to serve as a representative for the Class, and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. C.  Accordingly, Natesan satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B.    Natesan Has the "Largest Financial Interest" in the Consolidated Action

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of his knowledge, Natesan has the largest financial interest of any Turquoise Hill investor or investor group seeking to serve as Lead Plaintiff.  For claims arising under federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D.

Ill. Aug. 6, 1997).   In accord with other courts nationwide,[2] these *Lax* factors have been adopted and routinely applied by courts in this judicial district.   *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

During the Class Period, Natesan: (1) purchased 2,000 shares of Turquoise Hill securities; (2) expended $1,183 on his purchases of Turquoise Hill securities; (3) retained all of his shares of Turquoise Hill securities; and (4) as a result of the disclosures of the fraud, incurred losses of approximately $251 in connection with his Class Period purchases of Turquoise Hill securities. *See* Lieberman Decl., Ex. A.  To the extent that Natesan possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### C.     Natesan Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

---

[2] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Converse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-*8 (E.D.N.Y. Mar. 2, 2007).

In making its determination that the lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification.  Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required.")  Moreover, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Aude*, 2018 WL 1634872, at *3 ("[C]ourts need only consider the typicality and adequacy requirements.").  Here, the complaints in the Consolidated Action sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Natesan.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  "[T]he claims of the class representative need not be identical those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

The claims of Natesan are typical of those of the Class.  Natesan alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or omitting to disclose material facts concerning Turquoise Hill.  Natesan, as did all Class members, purchased Turquoise Hill securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Turquoise Hill' share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, Natesan has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as the Consolidated Action, and submit his choice of Pomerantz to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  There is no evidence of antagonism or conflict between the interests of Natesan and the interests of the Class.  Moreover, Natesan has submitted a signed Certification declaring his commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. C), and the significant losses incurred by Natesan demonstrate that he has a sufficient interest in the outcome of this litigation to ensure vigorous adequacy.

Further demonstrating his adequacy, Natesan has submitted a Declaration attesting to, *inter alia*, his background, investing experience, understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See* Lieberman Decl., Ex. D.

## II.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in a lead plaintiff to select and retain lead counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *see also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Natesan has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. *See* Lieberman Decl., Ex. E. Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *See*

11

Lieberman Decl., Ex. E.  Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company.  *See* THE WALL STREET JOURNAL, *Fiat Chrysler to Settle Lawsuit for $110 Million*, April 8, 2019 (available at https://www.wsj.com/articles/fiat-chrysler-to-settle-lawsuit-for-110-million-11554746066).

As a result of Pomerantz's extensive experience in securities litigation and class actions involving issues similar to those raised in this Consolidated Action, Pomerantz has the skill and knowledge necessary to enable the effective and expeditious prosecution of the Consolidated Action.  Thus, the Court may be assured that by approving the selection of counsel by Natesan, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Natesan respectfully requests that the Court issue an Order: (1) appointing Natesan as Lead Plaintiff for the Class; and (2) approving proposed Lead Plaintiff's selection of Pomerantz as Lead Counsel for the Class.

Dated:  December 14, 2020                    Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181

Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Ramakrishnan Natesan and*
*Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Ramakrishnan Natesan*