**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| IN RE TURQUOISE HILL RESOURCES LTD. SECURITIES LITIGATION | Case No. 1:20-cv-08585-LJL |
| --- | --- |

# MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE PENTWATER FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

SUMMARY OF THE PENDING ACTION .......... 4

ARGUMENT .......... 6

A. The Pentwater Funds Should Be Appointed Lead Plaintiff .......... 6

1. The Pentwater Funds' Motion Is Timely .......... 6

2. The Pentwater Funds Have The Largest Financial Interest In The Relief Sought By The Class .......... 7

3. The Pentwater Funds Satisfy The Requirements Of Rule 23 .......... 7

B. The Court Should Approve The Pentwater Funds' Selection of Lead Counsel .......... 11

CONCLUSION .......... 12

## TABLE OF AUTHORITIES


**CASES** **PAGE(S)**

*City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*,
2019 WL 364570 (S.D.N.Y. Jan. 30, 2019) ....11

*Dookeran v. Xunlei Ltd.*,
2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018)....8

*Faig v. Bioscrip, Inc.*,
2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) ....7, 8

*Glauser v. EVCI Career Colls. Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) ....10

*In re Hebron Tech. Co. Sec. Litig.*,
2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020)....8

*In re Kit Digital, Inc. Sec. Litig.*,
293 F.R.D. 441 (S.D.N.Y. 2013) ....11

*Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*,
2016 WL 4098741 (D. Minn. July 28, 2016) ....11

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
2015 WL 1311073 (S.D.N.Y. Mar. 23, 2015) ....10

**STATUTES**

15 U.S.C. § 78u-4(a)(3) .... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(4)....8

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995)....10

The Pentwater Funds[1] respectfully submit this memorandum of law in support of their motion for: (1) appointment as Lead Plaintiff under Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) approval of their selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the Class; and (3) any further relief that the Court may deem just and proper.

**PRELIMINARY STATEMENT**

The above-captioned consolidated action (the "Action") alleges that from July 17, 2018 to July 31, 2019, inclusive (the "Class Period"), Turquoise Hill Resources Ltd. ("Turquoise Hill" or the "Company"), certain of its senior executives, and the Company's controlling shareholders Rio Tinto plc and Rio Tinto Limited ("Rio Tinto") and certain of their senior executives, along with their subsidiary, Rio Tinto International (collectively, "Defendants"), defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 (17 C.F.R. § 240.10b-5).[2] Turquoise Hill owns a single large copper mine that is being developed in Mongolia. Rio Tinto owns a bare majority of Turquoise Hill's common stock and manages and controls the development of the mine. Turquoise Hill investors, including the Pentwater Funds, incurred significant losses when the Company

---

[1] The "Pentwater Funds" consist of seven related private investment funds, including PWCM Master Fund Ltd. ("PWMF"), Pentwater Thanksgiving Fund LP ("PTHK"), Pentwater Merger Arbitrage Master Fund Ltd. ("PMAM"), Oceana Master Fund Ltd. ("OCMF"), LMA SPC for and on behalf of the MAP 98 Segregated Portfolio ("MAP"), Pentwater Equity Opportunities Master Fund Ltd. ("PEMF"), and Crown Managed Accounts SPC acting for and on behalf of Crown/PW Segregated Portfolio ("CROWN").

[2] On December 10, 2020, the Court consolidated two related securities class actions: *Franchi v. Turquoise Hill Res. Ltd.*, No. 1:20-cv-08585-LJL (S.D.N.Y. filed Oct. 14, 2020) ("*Franchi*"), and *Lion v. Turquoise Hill Res. Ltd.*, No. 1:20-cv-10198-LJL (S.D.N.Y. filed Dec. 3, 2020) ("*Lion*"). *See* ECF No. 45.

disclosed that its and Rio's previous statements concerning completion and production dates at the mine were untrue and that the cost to develop the mine would far exceed their prior stated costs and would require substantial additional financing.

Under the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and whether that movant has made a prima facie showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The Pentwater Funds are the "most adequate plaintiff" here and should be appointed Lead Plaintiff. The Pentwater Funds incurred a loss of approximately $299 million when calculated on a first-in, first-out ("FIFO") basis and approximately $220 million when calculated on a last-in, first-out ("LIFO") basis on their Class Period investments in Turquoise Hill securities—a substantial financial interest that will ensure their vigorous prosecution of the Class's claims against Defendants.[3]

Further, as discussed in greater detail in the Declaration of Matthew Halbower, the CEO of the Pentwater Funds' investment manager, submitted in support of this motion, the Pentwater Funds fully understand the Lead Plaintiff's obligations to the Class under the PSLRA and are willing and able to undertake the responsibilities entailed in serving as Lead Plaintiff to guarantee

[3] The Pentwater Funds' PSLRA-required Certification is provided as Exhibit A to the Declaration of Salvatore J. Graziano in Support of the Motion of the Pentwater Funds for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel (the "Graziano Decl."). In addition, charts presenting calculations of the Pentwater Funds' losses are provided as Exhibit B to the Graziano Decl.

vigorous prosecution of this action.[4] Indeed, the Pentwater Funds are paradigmatic Lead Plaintiffs under the PSLRA because they are sophisticated institutional investors with a large financial interest in the litigation and have experience supervising the work of outside counsel in securities litigation and other matters. In addition, the Pentwater Funds have already taken steps to protect Class members by launching a proxy contest to obtain minority representation on Turquoise Hill's board of directors (the "Board") in order to improve oversight. Accordingly, the Pentwater Funds have both the incentive and the ability to lead this important case and supervise counsel.

The Pentwater Funds' familiarity with the PSLRA is informed by five of the Pentwater Funds' prior experience successfully serving as lead plaintiff in a securities class action and overseeing the work of their proposed Lead Counsel here, Bernstein Litowitz, in that action. *See In re Salix Pharm. Ltd. Sec. Litig.*, No. 1:14-cv-08925-KMW (S.D.N.Y) ($210 million recovery for investors with PWMF, PMAM, OCMF, MAP, and PEMF serving as lead plaintiff, and Bernstein Litowitz serving as lead counsel).

The Pentwater Funds also believe that they can ensure the effective prosecution of this action through their selection of Bernstein Litowitz as proposed Lead Counsel for the Class. Based on the Pentwater Funds' financial interest in this action and their experience overseeing counsel, as well as their prior experience successfully serving as lead plaintiff in a securities class action, the Pentwater Funds respectfully request that the Court appoint them as Lead Plaintiff and otherwise grant their motion.

---

[4] *See* Declaration of Matthew Halbower in Support of the Motion of the Pentwater Funds for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel, Graziano Decl., Ex. C.

## SUMMARY OF THE PENDING ACTION

Turquoise Hill is an international mining company that operates and develops the Oyu Tolgoi copper mine in Mongolia ("Oyu Tolgoi"). Oyu Tolgoi LLC, a 66%-owned Turquoise Hill subsidiary, owns the mine. The remaining 34% interest in Oyu Tolgoi LLC is held by the Government of Mongolia. Rio Tinto, along with their subsidiaries, engage in mining and metals operations in approximately 35 countries. Through their subsidiaries, Rio Tinto owns 50.8% of Turquoise Hill. Rio Tinto is also the manager of the Oyu Tolgoi project and is responsible for the development and operation of the mine.

The Action alleges that during the Class Period, Defendants made false and misleading statements and failed to disclose that (1) the progress of the underground development of the Oyu Tolgoi mine was not proceeding as planned; (2) significant undisclosed underground stability issues called into question the design of the mine, the projected cost, and the timing of production; (3) the Company's publicly disclosed estimates of the cost, date of completion, and dates of production were not achievable; (4) the development capital required for the underground development would cost substantially more than a billion dollars over what the Company had represented; and (5) additional financing would be required to complete the project.

The truth began to emerge after the market closed on February 26, 2019, when Turquoise Hill disclosed in a press release that "there was an increasingly likely risk of a further delay to sustainable first production" as a result of challenging ground conditions. In response to this news, Turquoise Hill's common stock closed at $1.83 per share on February 27, 2019, a 12.86% decline from a close of $2.10 per share on February 26, 2019.

Later, after the close of trading on July 15, 2019, Turquoise Hill issued another press release disclosing a further delay of production by nine to twenty-one months, until May 2022 or June 2023. In addition, Turquoise Hill disclosed that "the development capital spend for the project

may increase by $1.2 to $1.9 billion over the $5.3 billion previously disclosed." Lastly, Turquoise Hill informed the public that there were additional issues with the mine design, including "stability risks associated with the components of the existing mine design" that were so unsettled that it would take over a year to develop a revised design for the mine. As a result of these disclosures, Turquoise Hill's common stock price closed at $0.60 per share, down 43.9% from the previous close of $1.07 per share.

Then, after the market closed on July 31, 2019, Turquoise Hill made further disclosures about the status of the project in a press release and Management Discussion & Analysis. Specifically, Turquoise Hill disclosed that it took a $600 million impairment charge and a substantial "deferred income tax recognition adjustment" tied to the Oyu Tolgoi project. The following day, Rio Tinto issued a press release before the market open, disclosing that it had also taken an impairment charge of $800 million related to the Oyu Tolgoi project. As a result of these disclosures, Turquoise Hill's common stock closed at $0.53 per share on August 1, 2019, down 8.62% from the prior day's closing price of $0.58 per share.

Following the Class Period, Turquoise Hill announced that a revised feasibility study for the Oyu Tolgoi project had been completed. On July 2, 2020, Turquoise Hill announced an estimated increase of capital costs of $1.5 billion (with a range of $1.3 billion to $1.8 billion), "subject to further studies and any additional scheduling delays or increases in capital costs arising from the impacts of the COVID-19 pandemic." Then, on September 10, 2020, Turquoise Hill announced that it and Rio Tinto had entered into a non-binding Memorandum of Understanding under which they sought to "reprofile Oyu Tolgoi's existing debt" and raise an additional $500 million through debt financing, plus up to $3.6 billion in equity—thereby diluting Turquoise Hill's public shareholders.

As a result of Defendants' wrongful acts and omissions, and the resulting decline in the market value of Turquoise Hill securities, the Pentwater Funds and other Class members have suffered significant losses and damages.

**ARGUMENT**

**A. <u>The Pentwater Funds Should Be Appointed Lead Plaintiff</u>**

The Pentwater Funds respectfully submit that they should be appointed Lead Plaintiff because they are the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA establishes the procedure for selecting the Lead Plaintiff in class actions under the federal securities laws and provides a presumption in favor of the "person or group of persons that" has the "largest financial interest" in the relief sought by the Class and satisfies the relevant requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As discussed below, the Pentwater Funds believe they are the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

**1. The Pentwater Funds' Motion Is Timely**

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). On October 14, 2020, the *Franchi* action was filed in this District asserting claims under the Exchange Act against Defendants. On October 15, 2020, a notice of the pendency of that action was published on *Globe Newswire*, alerting investors that the deadline to seek appointment as Lead Plaintiff is December 14, 2020. *See* ECF No. 31-1.[5] The

---

[5] On December 3, 2020, a nearly identical complaint was filed asserting nearly identical claims during an identical class period. *See Lion*, ECF No. 1. The filing of that action does not alter the deadline to seek appointment as Lead Plaintiff in this case. *See* ECF No. 45 at 5 ¶ 4.

Pentwater Funds' motion is properly filed within 60 days of the publication of the notice of pendency of the first-filed action.

**2. The Pentwater Funds Have The Largest Financial Interest In The Relief Sought By The Class**

The Pentwater Funds should be appointed Lead Plaintiff because they have the largest financial interest in the relief sought by the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The Pentwater Funds sustained losses of approximately $299 million when calculated on a FIFO basis and approximately $220 million when calculated on a LIFO basis on their Class Period purchases of Turquoise Hill securities. To the best of the Pentwater Funds' knowledge, no other applicant seeking Lead Plaintiff appointment has a larger financial interest in the litigation. Accordingly, the Pentwater Funds have the largest financial interest of any qualified movant seeking Lead Plaintiff status and are the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).[6]

**3. The Pentwater Funds Satisfy The Requirements Of Rule 23**

In addition to possessing the largest financial interest in the outcome of the litigation, the Pentwater Funds otherwise satisfy Rule 23's typicality and adequacy requirements. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also Faig v. Bioscrip, Inc.*, 2013 WL 6705045, at *3 (S.D.N.Y. Dec. 19, 2013) (at the lead plaintiff stage, "a moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements [of Rule 23] have been met") (citation and internal quotations omitted). Here, the Pentwater Funds indisputably satisfy the typicality and adequacy requirements.

[6] Pentwater Capital Management LP ("Pentwater Capital"), the asset manager for the Pentwater Funds, also serves as asset manager for two other related funds that traded Turquoise Hill securities during the Class Period. Although those funds incurred losses on those transactions, they have decided not to seek appointment as Lead Plaintiff. For the avoidance of doubt, Pentwater Capital is not seeking appointment as Lead Plaintiff.

The Pentwater Funds' claims are typical of the claims of other purchasers of Turquoise Hill securities. A plaintiff's claims "are typical of the class [when] their claims and injuries arise from the same conduct from which the other class members' claims and injuries arise." *In re Hebron Tech. Co. Sec. Litig.*, 2020 WL 5548856, at *5 (S.D.N.Y. Sept. 16, 2020) (quoting *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998)). Here, the Pentwater Funds and all other Class members' claims arise from the same course of events, and their legal arguments to prove Defendants' liability are identical. Like all other Class members, the Pentwater Funds purchased Turquoise Hill securities during the Class Period at prices allegedly artificially inflated by Defendants' materially false and misleading statements and omissions and suffered damages when the truth was revealed. *See Dookeran v. Xunlei Ltd.*, 2018 WL 1779348, at *3 (S.D.N.Y. Apr. 12, 2018) (finding typicality requirement "easily met" when proposed lead plaintiff "asserted that it purchased [the company's] securities during the class period and was injured by false and misleading representations made by defendants") (quoting *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 2011 WL 4831209, at *2 (S.D.N.Y. Oct. 12, 2011)). Thus, the Pentwater Funds are typical Class representatives.

The Pentwater Funds similarly satisfy Rule 23's adequacy requirement. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement is satisfied where the movant shows that "(1) class counsel is qualified, experienced, and general able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Bioscrip*, 2013 WL 6705045, at *3.

The Pentwater Funds satisfy these elements because their substantial financial stake in the litigation provides the ability and incentive to vigorously represent the Class's claims. The Pentwater Funds' interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between the Pentwater Funds and other Class members. In fact, Matthew Halbower, an authorized representative of the Pentwater Funds, submitted a Declaration on their behalf affirming their understanding and acceptance of the duties and responsibilities owed to other Class members through the Pentwater Funds' commitment to "maximize the recovery for all Class members, to supervise the litigation, and to ensure that the litigation is prosecuted effectively and efficiently" if appointed Lead Plaintiff in this action. Graziano Decl., Ex. C ¶ 11.

The Pentwater Funds have also demonstrated their commitment and willingness to act affirmatively to protect the best interests of the Class members. For example, the Pentwater Funds engaged in a campaign to provide Board representation for minority shareholders at the Company's July 2020 annual meeting. Mr. Halbower, the Chief Executive Officer of Pentwater Capital, the investment manager of the Pentwater Funds, stood as a candidate to represent minority shareholders on the Turquoise Hill Board. *See id.* ¶ 8. Mr. Halbower received 88% of the votes of minority shareholders who voted at the July 2020 meeting, and his candidacy was defeated only because Defendant Rio Tinto, the majority owner of Turquoise Hill stock, voted all of its 51% of the Company's stock against him. *See id.* ¶ 9.

Moreover, as stated in Mr. Halbower's Declaration, the Pentwater Funds' due diligence before seeking appointment as Lead Plaintiff and retaining counsel demonstrates that they fully appreciate the Lead Plaintiff's role under the PSLRA to supervise the prosecution of the action in the best interests of the Class. *See id.* ¶¶ 6-7. The Pentwater Funds are committed to satisfying the

Lead Plaintiff's fiduciary obligations and to ensuring that this action is vigorously litigated in the best interest of the Class. *See id.* ¶¶ 11, 17. Additionally, the Pentwater Funds have previously successfully served as lead plaintiff in a securities class action. *See id.* ¶¶ 3, 6, 12 (discussing *In re Salix*, No 1:14-cv-08925-KMW (S.D.N.Y.)).

Further, as related investment funds that share the same asset manager, *see id.* ¶ 3, the Pentwater Funds are the very sort of Lead Plaintiff that Congress envisioned in enacting the PSLRA—sophisticated institutional investors with a substantial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("the PSLRA was passed . . . to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one") (citation omitted).[7]

Finally, the Pentwater Funds have demonstrated their adequacy through their selection of Bernstein Litowitz as Lead Counsel to represent the Class in this action. The Pentwater Funds have negotiated a retainer agreement with Bernstein Litowitz that contains a competitive fee

[7] LMA SPC and Crown Managed Accounts SPC are segregated portfolio companies organized under the laws of the Cayman Islands and are single legal entities. LMA SPC allocated certain assets, including Turquoise Hill securities, to a segregated portfolio, MAP 98 Segregated Portfolio, which is not a legal entity separate from LMA SPC. *See* Graziano Decl., Ex. C ¶ 2. Similarly, Crown Managed Accounts SPC allocated certain assets, including Turquoise Hill securities, to a segregated portfolio, Crown/PW Segregated Portfolio, which is not a legal entity separate from Crown Managed Accounts SPC. *See id.* Accordingly, LMA SPC for and on behalf of the MAP 98 Segregated Portfolio and Crown Managed Accounts SPC acting for and on behalf of Crown/PW Segregated Portfolio are typical and adequate representatives of the Class. *See Woburn Ret. Sys. v. Salix Pharm., Ltd.*, 2015 WL 1311073, at *4-9 (S.D.N.Y. Mar. 23, 2015) (appointing LMA SPC for and on behalf of the MAP 98 Segregated Portfolio and four other Pentwater Funds, PWMF, PMAM, OCMF, and PEMF, as lead plaintiff).

arrangement that the Pentwater Funds believe is favorable to the Class. *See* Graziano Decl., Ex. C ¶ 16. As discussed more fully below, Bernstein Litowitz is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to prosecute complex securities class action litigation effectively.[8]

### B. <u>The Court Should Approve The Pentwater Funds' Selection of Lead Counsel</u>

The Court should approve the Pentwater Funds' selection of Bernstein Litowitz as Lead Counsel on behalf of the Class. Under the PSLRA, the Lead Plaintiff, subject to Court approval, selects and retains counsel to represent the class it seeks to represent, and the Court should not disturb the Lead Plaintiff's choice of counsel unless doing so is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Kit Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 448 (S.D.N.Y. 2013) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention") (citation and internal quotations omitted). Here, the Pentwater Funds retained Bernstein Litowitz as proposed Lead Counsel to represent the Class.

[8] As sophisticated institutional investors, the Pentwater Funds and Pentwater Capital had discussions with Turquoise Hill management concerning the Company's business and prospects. Graziano Decl., Ex. C ¶ 5. Those discussions were similar to the kinds of communications that were common between the Company's large shareholders and management during the Class Period, and that institutional investors routinely have with senior management and investor relations personnel of the public companies in which they invest. *See id*. Importantly, in the course of those discussions, no material nonpublic information was provided by management. *See id*.; *see also City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, 2019 WL 364570, at *8 (S.D.N.Y. Jan. 30, 2019) (finding that "courts have repeatedly recognized that the kind of communications between [movant] and Defendants pose no barrier to appointment as lead plaintiff where no [material non-public information] was exchanged"); *Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 4098741, at *5 & n.3 (D. Minn. July 28, 2016) (finding institutional investor typical where its adviser met one-on-one with management but received no material non-public information).

Bernstein Litowitz is among the preeminent securities class action law firms in the country. *See* Bernstein Litowitz's Firm Résumé, Graziano Decl., Ex. D. Bernstein Litowitz served as lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288-DLC (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class. More recently, Bernstein Litowitz secured class-action recoveries of $2.43 billion in *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, No. 09-md-2058-PKC (S.D.N.Y.); $1.06 billion in *In re Merck & Co. Securities, Derivative & ERISA Litigation,* No. 05-cv-1151-SRC (D.N.J.); and $730 million in *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522-SHS (S.D.N.Y.).

Other significant examples in which courts in this District have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include *In re Nortel Networks Corp. Securities Litigation*, No. 05-md-1659-LAP (S.D.N.Y) (recovering $1.3 billion for investors); *In re Wachovia Preferred Securities and Bond/Notes Litigation*, No. 09-cv-6351-RJS (S.D.N.Y) (recovering $627 million for investors); *In re Lehman Brothers Equity/Debt Securities Litigation*, No. 09-md-2017-LAK (S.D.N.Y.) (recovering $615 million for investors); *In re Refco, Inc. Securities Litigation*, No. 05-cv-8625-JSR (S.D.N.Y.) (recovering $367 million for investors); and *In re Salix Pharm. Ltd. Sec. Litig.*, No. 1:14-cv-08925-KMW (S.D.N.Y.) (recovering $210 million for investors, with five of the Pentwater Funds as lead plaintiff).

Accordingly, the Court should approve the Pentwater Funds' selection of Bernstein Litowitz as Lead Counsel for the Class.

## CONCLUSION

For the reasons discussed above, the Pentwater Funds respectfully request that the Court: (1) appoint them to serve as Lead Plaintiff in accordance with Section 21D(a)(3)(B) of the

Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B); (2) approve their selection of Bernstein Litowitz as Lead Counsel for the Class; and (3) grant any further relief that the Court may deem just and proper.

Dated: December 14, 2020

Respectfully submitted,

*<u>/s/ Salvatore J. Graziano</u>*
Salvatore J. Graziano
Gerald H. Silk
Mark Lebovitch
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
jerry@blbglaw.com
markl@blbglaw.com

*Counsel for Proposed Lead Plaintiff PWCM Master Fund Ltd., Pentwater Thanksgiving Fund LP, Pentwater Merger Arbitrage Master Fund Ltd., Oceana Master Fund Ltd., LMA SPC for and on behalf of the MAP 98 Segregated Portfolio, Pentwater Equity Opportunities Master Fund Ltd., and Crown Managed Accounts SPC acting for and on behalf of Crown/PW Segregated Portfolio, and Proposed Lead Counsel for the Class*