**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TURQUOISE HILL RESOURCES LTD. SECURITIES LITIGATION | Case No. 1:20-cv-08585-LJL |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF
THE PENTWATER FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL,
<u>AND IN OPPOSITION TO ALL COMPETING MOTIONS</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................. 4

       A.     The Pentwater Funds Are Entitled To Appointment As Lead Plaintiff ................. 4

              1.     The Pentwater Funds Have The Largest Financial Interest ....................... 5

              2.     The Pentwater Funds Satisfy The Requirements Of Rule 23 ................... 6

              3.     The Presumption That The Pentwater Funds Should Be Appointed
                    Lead Plaintiff Cannot Be Rebutted ......................................................... 11

                    a.     The Pentwater Funds Fully Disclosed Their Turquoise
                          Transactions, and Lin's Premature *Morrison* Challenge Is Wrong
                          and Irrelevant ..................................................................... 11

                    b.     The Pentwater Funds Have Vigorously Represented Turquoise Hill
                          Investors' Interests, Did Not Receive Any Material Nonpublic
                        Information, and Are Not Subject to Any Unique Defense ................ 15

                    c.     The Pentwater Funds Have A Proven Track Record in Successfully
                        Serving as Lead Plaintiff under the PSLRA ....................................... 19

       B.     The Court Should Approve The Pentwater Funds' Selection Of Lead Counsel .. 21

CONCLUSION ........................................................................................................ 21

# TABLE OF AUTHORITIES

CASES                                                                                                          PAGE(S)

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
    677 F.3d 60 (2d Cir. 2012)..............................................................................12, 13

*Beach v. Healthways Inc.*,
    2010 WL 1408791 (M.D. Tenn. Apr. 2, 2010)....................................................19

*Bo Young Cha v. Kinross Gold Corp.*,
    2012 WL 2025850 (S.D.N.Y. May 31, 2012) .........................................................5

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ...........................................................................4, 5

*City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*,
    2019 WL 364570 (S.D.N.Y. Jan. 30, 2019) .........................................9, 15, 17, 18

*Clark v. Barrick Gold Corp.*,
    2013 WL 5300698 (S.D.N.Y. Sept. 20, 2013)........................................................6

*Cohen v. Luckin Coffee Inc.*,
    2020 WL 3127808 (S.D.N.Y. June 12, 2020) ........................................................4

*Constance Sczesny Trust v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y. 2004) .........................................................................11

*Cosmas v. DelGiorno*,
    1995 WL 62598 (E.D.N.Y. Feb. 8, 1995)...........................................................19

*Dietrich v. Bauer*,
    192 F.R.D. 119 (S.D.N.Y. 2000) .......................................................................19

*Dookeran v. Xunlei Ltd.*,
    2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018)........................................................7

*In re DVI Inc. Sec. Litig.*,
    249 F.R.D. 196 (E.D. Pa. 2008), *aff'd*, 639 F.3d 623 (3d Cir. 2011) ...............16, 18

*Elliott Assocs. v. Porsche Automobil Holding SE*,
    759 F. Supp. 2d 469 (S.D.N.Y. 2010).....................................................................6

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    288 F.R.D. 26 (S.D.N.Y. 2012) ...........................................................................11

*Freudenberg v. E*Trade Fin. Corp.*,
    2008 WL 2876373 (S.D.N.Y. July 16, 2008) .........................................................6

*Hallet v. Li & Fung Ltd.*,
    1997 WL 621111 (S.D.N.Y. Oct. 6, 1997) ...........................................................................19

*In re Host Am. Corp. Sec. Litig.*,
    236 F.R.D. 102 (D. Conn. 2006)..........................................................................................9

*Howard v. Liquidity Servs. Inc.*,
    322 F.R.D. 103 (D.D.C. 2017)............................................................................................16

*In re Intuitive Surgical Sec. Litig.*,
    2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) ...................................................................19

*In re LightInTheBox Holding Co. Sec. Litig.*,
    2013 WL 6145114 (S.D.N.Y. Nov. 21, 2013) .....................................................................6

*Micholle v. Ophthotech Corp.*,
    2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) .....................................................................4

*In re Miller Indus. Sec. Litig.*,
    186 F.R.D. 680 (N.D. Ga. 1999)........................................................................................13

*Morrison v. Nat'l Austr. Bank Ltd.*,
    561 U.S. 247 (2010)...................................................................................3, 11, 12, 13

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin.
    Holdings Ltd.*,
    2011 WL 4831209 (S.D.N.Y. Oct. 12, 2011) .....................................................................7

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
    2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010) ................................................................9

*Beaver Cnty. Emps.' Ret. Fund. v. Tile Shop Holdings, Inc.*,
    2016 WL 4098741 (D. Minn. July 28, 2016) ...................................................................19

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Serv. Grp., Inc.*,
    269 F.R.D. 291 (S.D.N.Y. 2010) ........................................................................................5

*Sayce v. Forescout Techs., Inc.*,
    2020 WL 6802469 (N.D. Cal. Nov. 19, 2020) ...................................................................19

*Schleicher v. Wendt*,
    2009 WL 761157 (S.D. Ind. Mar. 20, 2009).......................................................................19

*Stackhouse v. Toyota Motor Co.*,
    2010 WL 3377409 (C.D. Cal. July 16, 2010) ....................................................................14

*Stone v. Agnico-Eagle Mines Ltd.*,
    280 F.R.D. 142 (S.D.N.Y. 2012) ......................................................................................14

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) .................................................................................9

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) .................................................................................7

*Welch v. Meaux*,
    2020 WL 4758269 (W.D. La. Aug. 17 2020) ...........................................................13

*Woburn Ret. Sys. v. Salix Pharm. Ltd.*,
    2015 WL 1311073 (S.D.N.Y. Mar. 23, 2015) ............................................... *passim*

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
    2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) .........................................................10

**STATUTES**

15 U.S.C. § 78u-4(a) ........................................................................................... *passim*

**OTHER AUTHORITIES**

FINRA Rule 6380B .........................................................................................................12

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995).....................9

IIROC Rule 6.4(2)(e) ......................................................................................................12

## PRELIMINARY STATEMENT

Congress enacted the PSLRA to vest control of securities class actions with sophisticated institutional investors. To that end, Congress directed courts to appoint as Lead Plaintiff the movant with the largest financial interest of any class member, with the expectation that that investor would be a sophisticated institutional investor with the financial incentive to maximize the recovery for the class. In the instant case, the Pentwater Funds—sophisticated and committed institutional investors—are the prototype of Congress' objectives.[1] The Pentwater Funds incurred over $220 million in losses (LIFO) on their investments in Turquoise Hill securities. This loss is orders of magnitude larger than the losses of all other movants combined.[2]

Moreover, here, the Pentwater Funds have already proven they will serve as an excellent advocate for Turquoise Hill investors by, among other things:

- conducting a thorough investigation into investors' claims, undertaking a deliberate and careful process in determining to seek Lead Plaintiff appointment, and negotiating a highly competitive fee with their proposed Lead Counsel;

- submitting substantial, unrebutted evidence of their adequacy to represent Turquoise Hill investors in this case;

- previously running a proxy contest to address the governance failures that facilitated the misconduct at the heart of this case following the revelation of the fraud in July 2019;

- receiving the support of Institutional Shareholder Services, Inc. ("ISS"), the leading proxy-advisory firm, for highlighting the "legitimate concerns around governance, delays, cost overruns, and the company's disclosure regarding the gravity of funding shortfalls"—the very issues at the heart of this case; and

---

[1] All capitalized terms are defined in the Pentwater Funds' initial brief, unless otherwise indicated. *See* ECF No. 67.

[2] In recognition that the Pentwater Funds have the largest financial interest of any movant and are otherwise adequate to represent the Class, movant Altannavch Sukhbaatar withdrew his motion (*see* ECF No. 79), and movant Paul Ciaglo filed a notice in support of the Pentwater Funds' appointment (*see* ECF No. 80).

- previously obtaining overwhelming 88% shareholder approval from Turquoise Hill's minority shareholders—*i.e.*, the members of the Class—in connection with the Pentwater Funds' proxy campaign and efforts to address Turquoise Hill's misconduct through changes at the Company's board of directors.

The Pentwater Funds' demonstrated commitment to vigorously pursuing the interests of Turquoise Hill investors embodies the kind of vigilant and motivated leadership of securities class actions that Congress envisioned in enacting the PSLRA. Moreover, the Pentwater Funds' leadership is further evidenced through five of the funds' prior experience serving as Lead Plaintiff and recovering $210 million for investors in a case prosecuted in this District before Judge Wood. As the only institutional investor movant before the Court, which has losses hundreds of times larger than any of the competing individual investor movants and has a previous track record of success managing complex securities cases, the Pentwater Funds are indisputably entitled to the presumption as the "most adequate plaintiff" and should be appointed as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

To rebut the powerful presumption entitling the Pentwater Funds to appointment as Lead Plaintiff, competing movants must come forward with "***proof***" that the Pentwater Funds are inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists. In fact, in response to the only questions about the Pentwater Funds' application—which were raised by one movant, Chang Pin Lin, an individual investor whose family claims a loss of about $344,000—the Pentwater Funds promptly and transparently provided detailed information, which fully addressed Lin's questions.[3] *See* ECF No. 77-1. Lin's subsequent request for discovery disregarded the Pentwater Funds' response (and rejected an offer to continue discussing his questions), and is based on pure

---

[3] Mr. Lin has moved individually, and on behalf of Southlight International, Inc., LIN FAMILY REV LIVING TRUST- L LIN LEE & C LIN TTEE, Yi Hsin Lin, and Yu Ting Lin (collectively, "Lin").

speculation—revealing that his request was pretextual and not based on any legitimate concerns about the Pentwater Funds' leadership of this case.[4]

In reality, there is no basis to question the Pentwater Funds' ability to lead this case, let alone the kind of "proof" of inadequacy that the PSLRA requires. Nevertheless, the Pentwater Funds have submitted additional evidence here to address any possible question about whether the Pentwater Funds are the proper Lead Plaintiff for this large and complex case. In fact, the quality of the evidence that the Pentwater Funds provide here far surpasses the showing Lead Plaintiff applicants are required to make under the PSLRA, and what almost all investors provide at this stage of a litigation. It far exceeds what any of the competing movants have provided the Court.

Among other things, the supplemental declaration of Mr. Halbower submitted with this memorandum affirms that the Pentwater Funds (1) complied with their legal obligations and were not in possession of any material nonpublic information concerning Turquoise Hill when making their investment, (2) disclosed the information required by the PSLRA about their Turquoise Hill transactions in their Lead Plaintiff motion here, and (3) carried out their duties as Lead Plaintiff in achieving a successful $210 million recovery in a prior securities class action prosecuted in this District, will fulfill those obligations here, and will ensure that the Class in this case receives the highest caliber representation. *See* Ex. 1 ¶¶ 4-12.[5] The Pentwater Funds also provided additional information in response to Lin's questions about whether a specific purchase of Turquoise Hill

---

[4] *See* ECF Nos. 76, 77 & 77-1. Notably, to date, no other lead plaintiff movant has contacted the Pentwater Funds to ask about their trading, any of the issues raised by Mr. Lin, or any other matter relating to their application—suggesting that any belated attack on the Pentwater Funds' motion would be uninformed and, for the reasons discussed in this memorandum, entirely without merit.

[5] All references to "Ex. _" are to the Declaration of Salvatore J. Graziano in Further Support of the Motion of the Pentwater Funds for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel, and in Opposition to All Competing Motions.

securities was a "domestic transaction" under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 267 (2010), and the documentary evidence that proves that transaction satisfies this test.

The Pentwater Funds possess a financial interest that is magnitudes larger than any competing movant, and they are committed to obtaining the best possible result in this case. The Class is entitled to have a sophisticated Lead Plaintiff with the greatest incentive to direct this litigation. The Pentwater Funds are that Lead Plaintiff. Accordingly, the Pentwater Funds should be appointed Lead Plaintiff, and their motion should otherwise be granted.[6]

## ARGUMENT

### A. The Pentwater Funds Are Entitled To Appointment As Lead Plaintiff

The PSLRA establishes a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Here, it is undisputed that the Pentwater Funds have the largest financial interest in the relief sought by the Class, and thus are entitled to this presumption. "In order to rebut the statutory presumption . . . another movant must provide *proof* that [the presumptive lead plaintiff] would not be able to 'fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *10 (S.D.N.Y. Mar. 13, 2018); *see also Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at *7 (S.D.N.Y. June 12, 2020) (Liman, J.) (requiring "'proof' that the presumptive lead plaintiff 'is subject to unique defenses'"); *In re Cavanaugh*, 306 F.3d 726, 729 n.2 (9th Cir. 2002) (noting that the fact that the presumption is

---

[6] If it would please the Court, Pentwater Capital's Founder and CEO, Matthew Halbower, would be glad to attend the December 30 hearing on this motion by Zoom (or other video conferencing service) rather than by phone.

"rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient. Rather, the statute provides that the presumption 'may be rebutted only upon proof.'").

In assessing whether the presumption is rebutted, the PSLRA does not "authorize the district judge to examine the relative merits of plaintiffs seeking lead status on a round-robin basis." *Cavanaugh*, 306 F.3d at 732. Instead, "[t]he statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical." *Id.* Here, the Pentwater Funds are entitled to the strong presumption that they are the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

## 1. The Pentwater Funds Have The Largest Financial Interest

The Pentwater Funds have, without a doubt, the largest financial interest in the relief sought by the Class. Courts in this District have held that a movant's loss is the most important factor in determining whether the movant has the largest financial interest in the litigation. *See Woburn Ret. Sys. v. Salix Pharm. Ltd.*, 2015 WL 1311073, at *4 (S.D.N.Y. Mar. 23, 2015) ("The most important factor is financial loss."); *see also Bo Young Cha v. Kinross Gold Corp.*, 2012 WL 2025850, at *2 (S.D.N.Y. May 31, 2012) ("[C]ourts have consistently held that . . . the magnitude of the loss suffered, is the most significant.").[7]

As demonstrated by the chart below, none of the other movants has a financial interest that even approaches the Pentwater Funds' financial interest:

---

[7] Although the PSLRA is silent on how to calculate a movant's "financial interest," courts almost universally apply the LIFO methodology at the lead plaintiff stage. *See City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Serv. Grp., Inc.*, 269 F.R.D. 291, 295 (S.D.N.Y. 2010) ("While the PSLRA does not address which method of loss calculation should be employed, courts in this district and others have stated a preference for LIFO over FIFO in assessing loss for purposes of the appointment of lead plaintiff.").

| Movant | LIFO Loss |
|---|---|
| **Pentwater Funds** | **$220,799,671** |
| Lin | $344,719 |
| John J. Murphy | $327,028 |
| Vitali Garon | $85,336 |
| ~~Altannavch Sukhbaatar~~ | ~~$45,643~~ |
| ~~Paul Ciaglo~~ | ~~$11,034~~ |
| Ramakrishnan Natesan | $251 |

Thus, the Pentwater Funds "have the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).[8]

### 2. The Pentwater Funds Satisfy The Requirements Of Rule 23

The PSLRA creates a strong presumption that the Lead Plaintiff is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The movant that has the largest financial interest must make only a "preliminary" showing that it satisfies Rule 23's typicality and adequacy requirements. *Clark v. Barrick Gold Corp.*, 2013 WL 5300698, at *2 (S.D.N.Y. Sept. 20, 2013) ("In an action under the PSLRA, a moving lead plaintiff need only make a preliminary showing that it will satisfy the typicality and adequacy requirements of Rule 23.") (citation and internal quotations omitted). "In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at

---

[8] In addition to trading common stock, the Pentwater Funds traded in Turquoise Hill stock options and equity swaps. The Class includes purchasers of all Turquoise Hill securities, which includes options and swaps. *See In re LightInTheBox Holding Co. Sec. Litig.*, 2013 WL 6145114, at *3 (S.D.N.Y. Nov. 21, 2013) (holding "options-related losses are properly considered in determining the presumptive lead plaintiff under the PSLRA"); *Elliott Assocs. v. Porsche Automobil Holding SE*, 759 F. Supp. 2d 469, 476 (S.D.N.Y. 2010) (explaining "since the economic value of securities-based swap agreements is intrinsically tied to the value of the reference security . . . swaps (are) the functional equivalent of trading the underlying . . . shares."). The Pentwater Funds properly included all transactions in Turquoise Hill securities in their certification. *See* ECF No. 68-1; *see also Freudenberg v. E*Trade Fin. Corp.*, 2008 WL 2876373, at *6 (S.D.N.Y. July 16, 2008) (rejecting argument that distinctions between securities purchased by presumptive lead plaintiff and common shares purchased by other class members presented unique defense or risked "diverting the focus of the litigation").

this initial stage of litigation] and should be left for consideration of a motion for class certification.'" *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) (citation omitted).

### a.   The Pentwater Funds Are Typical Of Other Class Members

As demonstrated in their opening brief, the Pentwater Funds are typical Class representatives. Like all other Class members, the Pentwater Funds (1) purchased Turquoise Hill securities during the Class Period (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions and (3) were damaged by Defendants' alleged fraud. *Dookeran v. Xunlei Ltd.*, 2018 WL 1779348, at *3 (S.D.N.Y. Apr. 12, 2018) (finding typicality requirement "easily met" when the proposed lead plaintiff "asserted that it purchased [the company's] securities during the class period and was injured by false and misleading representations made by defendants") (quoting *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 2011 WL 4831209, at *2 (S.D.N.Y. Oct. 12, 2011)). Thus, the Pentwater Funds are typical Class representatives.

### b.   The Pentwater Funds Satisfy The Adequacy Requirements of Rule 23

The Pentwater Funds satisfy Rule 23's adequacy requirement because they are capable of "fairly and adequately protect[ing] the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Moreover, as stated in their declaration, the Pentwater Funds' due diligence before seeking appointment as Lead Plaintiff and retaining counsel demonstrates that they fully appreciate the Lead Plaintiff's role under the PSLRA to supervise the prosecution of the action in the best interests of the Class. *See* ECF No. 68-3 ¶ 11. The Pentwater Funds are committed to satisfying the fiduciary obligations of a Lead Plaintiff and to ensuring that this action will be vigorously litigated in the best interest of the Class. *See id.* ¶ 12.

The Pentwater Funds' past efforts to hold Turquoise Hill's Board and Rio Tinto's Board accountable for the fraud alleged in this case further demonstrate that their interests are entirely aligned with those of other members of the Class. Indeed, the Pentwater Funds have demonstrated their commitment and willingness to take affirmative steps to protect the best interests of Class members. *See id.* ¶ 8.

Specifically, the Pentwater Funds have shown their commitment to protecting the best interests of the Class by publicly advocating for replacement of the Turquoise Hill directors who presided over the fraud alleged in this litigation. *See id.* ¶¶ 8-10; Ex. 1 ¶ 9. For example, after the final disclosure of the fraud at the end of the alleged Class Period, the Pentwater Funds engaged in a campaign leading up to the July 2020 annual meeting to provide Board representation for minority shareholders. *See* ECF No. 68-3 ¶¶ 8-9. That campaign was grounded on the very facts alleged in this lawsuit. Pentwater pointed out in its proxy the numerous false statements made by Turquoise Hill as late as March 14, 2019 when Turquoise Hill stated, "that project cost was expected to remain within the US$5.3 billion budget." Pentwater's proxy stated that just four months later, Rio Tinto and Turquoise Hill disclosed for the first time that their previous filings were false and the development cost of the mine would increase by $1.2 to $1.9 billion over the $5.3 billion. Finally, Pentwater's proxy disclosed the existence of a Rio Tinto whistleblower who has stated and will testify that Rio Tinto was fully aware that the mine was substantially over budget a year prior to public disclosure of that fact. ISS, the leading proxy-advisory firm, recognized that the Pentwater Funds had "highlighted legitimate concerns around governance, delays, cost overruns, and the company's disclosure regarding the gravity of funding shortfalls"— the very issues at the heart of the current litigation. *Id.* ¶ 8. Moreover, the fact that the Pentwater Funds' candidate—Matthew Halbower—received 88% of the votes of minority shareholders who

voted at the July 2020 annual meeting (a significant portion of which are members of the Class), at a minimum, demonstrates that a significant portion of the Class supports the Pentwater Funds' ability to address the misconduct at issue in this case. *See id.* ¶ 9.

Thus, the Pentwater Funds have already demonstrated they are committed to zealously representing the Turquoise Hill investor Class's interests. Rather than serve as any disability, that prior effort demonstrates the Pentwater Funds' suitability to continue advocating for investors. The Pentwater Funds are the epitome of the kind of active institutional investor plaintiff that Congress sought to promote in the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995). The Pentwater Funds' efforts to provide minority Board representation highlighted the very fraud at issue in this action, and the Pentwater Funds' interests are completely aligned with those of other Class members. Courts have repeatedly recognized such advocacy as exhibiting the very kind of qualities that Congress contemplated in encouraging institutional investors—including activist hedge funds such as the Pentwater Funds— to lead securities class actions.[9]

Further, there is no conflict of interest between the Pentwater Funds' interests and those of other Class members. To the contrary, the interests of the Pentwater Funds and Class members are

---

[9] For example, in *Salix*, 2015 WL 1311073, the court noted Congress' preference for institutional investors in rejecting the argument that certain Pentwater Funds were atypical because they had publicly opposed a sale of the defendant-company. *See id.* at *6. And in *City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, 2019 WL 364570 (S.D.N.Y. Jan. 30, 2019), the court appointed an investor fund that had sought to replace members of the defendant issuer's board and issued several public letters accusing the company of misleading investors, noting that the institution's appointment was particularly appropriate "since that campaign spawned from the same misrepresentations" at issue in the case. *See id.* at *8 & n.14; *see also In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 347 (S.D.N.Y. 2009) ("courts routinely appoint hedge funds . . . as lead plaintiffs"); *In re Host Am. Corp. Sec. Litig.*, 236 F.R.D. 102, 108 (D. Conn. 2006) (same); *In re Regions Morgan Keegan Closed-End Fund Litig.*, 2010 WL 5173851, at *8 (W.D. Tenn. Dec. 15, 2010) (same).

directly aligned because all suffered damages from their purchases of Turquoise Hill securities at prices that were artificially inflated by Defendants' misconduct. As discussed more fully above, the Pentwater Funds clearly have a sufficient interest in this case to ensure the vigorous prosecution of this litigation and have demonstrated their commitment to prosecuting this action efficiently and in the best interests of the Class. *See* ECF No. 67 at 7-11*;* ECF 68-3*.* In addition, the Pentwater Funds are the only movant with the proven ability to serve as a Lead Plaintiff and oversee the work of counsel. The Pentwater Funds have attested that they will "ensure that the claims are litigated vigorously, efficiently, and in the best interests of the Class," and that their primary goal is "to maximize the Class's recovery from all culpable parties." ECF No. 68-3 ¶ 7. The Pentwater Funds have also negotiated a competitive fee arrangement that they believe is favorable to the Class. *See id.* ¶ 16. Importantly, the Pentwater Funds have already successfully served as lead plaintiff in a securities class action, where they recovered $210 million for investors. *See Woburn Ret. Sys. v. Salix Pharm., Ltd.*, 2017 WL 3579892, at *1 (S.D.N.Y. Aug. 18, 2017).

The Pentwater Funds have further demonstrated their adequacy by selecting Bernstein Litowitz—counsel that is highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently—to serve as Lead Counsel for the Class. From the *Salix* litigation, Bernstein Litowitz understands that the Pentwater Funds will be actively involved in managing the case on behalf of the Class, and Bernstein Litowitz will endeavor to satisfy them with the results here. Accordingly, because the Pentwater Funds have the largest financial interest in the relief sought by the Class and otherwise satisfy Rule 23, the Court should appoint them as Lead Plaintiff.

### 3. The Presumption That The Pentwater Funds Should Be Appointed Lead Plaintiff Cannot Be Rebutted

To overcome the presumption entitling the Pentwater Funds to appointment as Lead Plaintiff, the PSLRA requires the remaining Lead Plaintiff movants to present ***proof*** that they are inadequate to serve as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 40 (S.D.N.Y. 2012) (requiring "exacting proof . . . to rebut the PSLRA's presumption"). No such proof exists here.

Nevertheless, as is unfortunately common in cases under the PSLRA, competing movants may still attempt to raise purported challenges to the Pentwater Funds' ability to serve as Lead Plaintiff. But there is no basis to rebut the presumption that the Pentwater Funds are the most adequate plaintiff. *See Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) (rejecting conclusory and speculative assertions of inadequacy as insufficient to rebut the statutory presumption under the PSLRA). To date, the only competing movant to raise any questions about the Pentwater Funds is Lin—an individual investor who lost a mere 0.16% of the Pentwater Funds' loss on Turquoise Hill securities. Lin's speculation is contradicted by the evidence in the record, does not come close to establishing "proof" of inadequacy under the PSLRA, and should be swiftly rejected.

### a. The Pentwater Funds Fully Disclosed Their Turquoise Transactions, and Lin's Premature *Morrison* Challenge Is Wrong and Irrelevant

First, Lin challenges the Pentwater Funds' application by arguing that the Pentwater Funds may not establish that one of their trades in Turquoise Hill securities was a "domestic transaction" under *Morrison*. *See* 561 U.S. at 267. Specifically, Lin cites a single trade on February 19, 2019, and wrongly claims that because this trade was reported on the Toronto Stock Exchange, the

transaction may not be a "domestic transaction" under *Morrison*. But, this trade was not made on the Toronto Stock Exchange; it was a block trade made in the United States.[10]

To start, the Pentwater Funds' Lead Plaintiff motion fully disclosed the information required by the PSLRA about its Turquoise Hill transactions, including this February 19 trade. The PSLRA requires a proposed lead plaintiff to "set[] forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u-4(a)(2)(A)(iv). Here, the Pentwater Funds' certification did just that. *See* ECF No. 68-1.[11]

Moreover, when Lin inquired about this trade, the Pentwater Funds immediately and transparently addressed Lin's questions. *See* ECF No. 77-1. As the Pentwater Funds promptly explained to Lin, the Pentwater Funds purchased the 70 million shares on February 19, 2019 in a block trade that was placed by the Pentwater Funds from their Evanston, Illinois office, through a broker at TD Securities (USA) LLC, under an agreement whose terms provide that irrevocable liability attached in the United States upon placement of the order.[12] Specifically, the Pentwater Funds' account documentation with TD Securities (USA) LLC, which was executed in the United

---

[10] The block trade was reported on the Toronto Stock Exchange because trading regulations require broker-dealers to publicly report off-exchange block trades either through an exchange's reporting system or through a marketplace or foreign organized regulated market. *See, e.g.*, FINRA Rule 6380B; IIROC Rule 6.4(2)(e). As the Second Circuit has made clear, the location of the broker, or where a broker may report an off-exchange transaction, does not control where irrevocable liability to purchase the securities was incurred or where title passed, which are the dispositive questions. *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68-70 (2d Cir. 2012).

[11] *See, e.g.*, Class Action Complaint, *Franchi v. Turquoise Hill Resources, Ltd.*, No. 20-cv-8585 (ECF No. 1 ¶ 1) (defining class as "all persons other than Defendants who purchased or otherwise acquired the securities of Turquoise Hill from July 17, 2018 to July 31, 2019, inclusive"); Class Action Complaint, *Lion v. Turquoise Hill Resources, Ltd.*, No. 20-cv-10198 (ECF No. 1 ¶ 1) (defining class as including "all persons and entities other than Defendants that purchased or otherwise acquired Turquoise Hill securities from July 17, 2018 to July 31, 2019, inclusive").

[12] *See, e.g.*, Lemke, et al., Soft Dollars and Other Trading Activities § 2:3 (describing block trades as those that are not made on the "exchange floor, but in a specially negotiated transaction").

States, includes a "Trading Authorization" that authorizes its designated trader to place orders and provides that "[t]he undersigned hereby agrees to indemnify and hold TD Securities (USA) LLC harmless from and pay you promptly on demand any and all losses arising [from transactions by the authorized trader] or debit due thereon." Ex. 1 ¶ 4. The Trading Authorization also provides that "[i]n all such purchases, sales or other transactions, or deliveries of securities or payments of monies, you are authorized to follow the instructions of the above named Agents in every respect concerning our account with you." *Id*.

In other words, Pentwater not only placed its order in the United States but also incurred irrevocable liability to take and pay for the securities upon placing the order under the terms of its account agreement with TD Securities (USA) LLC, and Pentwater paid for the securities in U.S. dollars in accounts at U.S. brokerages in the United States, and the securities were delivered to U.S. accounts. These are some of the quintessential facts establishing a domestic transaction under Second Circuit law. *See, e.g.*, *Absolute Activist*, 677 F. 3d at 70 ("[F]actual allegations suggesting that [plaintiffs] became irrevocably bound within the United States or that title was transferred within the United States, includ[e], but [are] not limited to, facts concerning the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money."). While the Pentwater Funds are not required to plead facts to satisfy *Morrison* at the Lead Plaintiff stage, Lin concedes that the kind of evidence offered by the Pentwater Funds here satisfies *Morrison* and should end any inquiry.[13]

---

[13] As with all of their transactions in Turquoise Hill securities, the Pentwater Funds and Pentwater Capital relied on the integrity of the market price for Turquoise Hill securities when making the block trade. Thus, the Pentwater Funds are typical of all other members of the Class. *See In re Miller Indus. Sec. Litig.*, 186 F.R.D. 680, 685-86 (N.D. Ga. 1999) (finding "no material variation" in the claims of a plaintiff who had purchased shares in a private transaction compared to claims of movants who had purchased shares on the exchange floor); *Welch v. Meaux*, 2020 WL 4758269,

Ultimately, any challenge to the February 19, 2019 trade is irrelevant, as the reality is that the Pentwater Funds have a financial interest that is hundreds of times larger than any competing movant regardless of how the Court or jury ultimately rules. This fact is dispositive, as courts have repeatedly held that the purchase of some shares on a foreign exchange does not pose "any barrier" to a presumptive institutional investor's "adequacy to serve as lead plaintiff." *Stone v. Agnico-Eagle Mines Ltd.*, 280 F.R.D. 142, 145-46 (S.D.N.Y. 2012) (appointing lead plaintiff that purchased substantial number of shares on the Toronto Stock Exchange); *Stackhouse v. Toyota Motor Co.*, 2010 WL 3377409, at *2 & n.4 (C.D. Cal. July 16, 2010) (appointing lead plaintiff with approximately $300,000 loss on domestically traded shares and up to $17 million loss on foreign trades).[14] If anything, the Pentwater Funds are especially well suited to serve as Lead Plaintiff here given their incentive to maximize any recovery on behalf of a broadly defined Class of investors that purchased a variety of Turquoise Hill securities.[15]

---

at *7 (W.D. La. Aug. 17 2020) (appointing lead plaintiff that had acquired all shares as part of a private transaction).

[14] The Pentwater Funds are providing additional documentation concerning all their Turquoise Hill trades from the Pentwater Funds' third-party fund administrator, Northern Trust. *See* Ex. 1 ¶ 6 & n.2. As third-party fund administrator, Northern Trust maintains the official books and records of Pentwater Capital and the Pentwater Funds, records all of Pentwater Capital's trading on its internal system, and performs daily reconciliation to verify all of the Pentwater Funds' securities trading activity, among other things. *See id*.

[15] Like the February 19, 2019 transaction, all the Pentwater Funds' transactions in Turquoise Hill securities were transacted in U.S. dollars from U.S.-based accounts, and the securities were delivered to U.S.-based accounts. *See* Ex. 1 ¶ 6 & n.2. In addition, the Pentwater Funds' transactions in Turquoise Hill stock options and equity swaps reference the United States (not Canadian) symbol code for Turquoise Hill stock. *See id*. The Pentwater Funds placed orders for Turquoise Hill options with a United States counterpart, which transacted on a United States-based securities exchange, and upon exercise or assignment, acquired Turquoise Hill United States-listed stock. *See id*. The swap contracts were entered into by Pentwater Capital on behalf of the Pentwater Funds in the United States pursuant to contracts governed by New York law and that are subject to exclusive jurisdiction of the federal and state courts in Manhattan under which irrevocable liability attached at the time of the placement of the order. *See id*.

**b.   The Pentwater Funds Have Vigorously Represented Turquoise Hill Investors' Interests, Did Not Receive Any Material Nonpublic Information, and Are Not Subject to Any Unique Defense**

Like many large institutional investors, in connection with the Pentwater Funds' due diligence into their Turquoise Hill investments, the Pentwater Funds had discussions with senior management—a fact that was publicly highlighted in the Pentwater Funds' proxy campaign and spelled out in the opening motion the Pentwater Funds filed seeking Lead Plaintiff appointment here. ECF No. 67. Those submissions include sworn affirmations from Pentwater Capital's CEO, Mr. Halbower, confirming the strict procedures the Pentwater Funds followed to ensure that they complied with all laws concerning insider trading, and that no material nonpublic information was obtained by the Pentwater Funds in connection with their investments in Turquoise Hill.

Lin questions the veracity of Mr. Halbower's sworn statements that the Pentwater Funds obtained no material nonpublic information—but without citing a shred of evidence that the Pentwater Funds did so, or providing any basis on which to question Mr. Halbower's sworn declaration. This rank speculation is wrong and only confirms there is no "proof" of inadequacy. For the avoidance of doubt, however, the Pentwater Funds for a second time have attested to the fact that neither they nor Pentwater Capital received any material nonpublic information in violation of any SEC rules during any discussions with Turquoise Hill management. *See* Ex. 1 ¶¶ 7-8 & n.3. The Pentwater Funds and Pentwater Capital maintain strict processes and procedures to ensure that they do not trade on material nonpublic information, and those processes and procedures were followed at all relevant times in connection with the Pentwater Funds' investment in Turquoise Hill securities. *See id*. Any incorrect speculation to the contrary does not rebut the PSLRA's presumption. *See Macquarie Infrastructure*, 2019 WL 364570, at *7 (competing movants' "failure to proffer any proof that [movant] received MNPI from Macquarie, coupled with [movant]'s declaration that no MNPI was communicated . . . is fatal" to lead plaintiff challenge).

While competing movants like Lin may try to attack the Pentwater Funds' active engagement with Turquoise Hill management as somehow improper or uncommon, in fact, the opposite is true, as courts have repeatedly recognized in rejecting arguments just like this one. *See e.g.*, *id.* at *8 ("[C]ourts have repeatedly recognized that the kind of communications between [the presumptive lead plaintiff] and Defendants pose no barrier to appointment as lead plaintiff where no MNPI was exchanged").

Indeed, communications with management are commonplace among large, sophisticated institutions—a fact that courts recognize in routinely appointing institutional investors that speak directly with management as lead plaintiffs and as class representatives in securities class actions. As these courts hold, and scholarly research confirms, sophisticated institutions' and their advisors' direct communications with management are simply part of the diligence responsible investors conduct. *See, e.g.*, *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 202 (E.D. Pa. 2008) (appointing institutional investors that had private communications with management as class representatives), *aff'd*, 639 F.3d 623 (3d Cir. 2011). A holding that major shareholders' communications with management are somehow disqualifying would directly conflict with one of the main goals of the PSLRA—to encourage institutional investors to serve as lead plaintiffs. *See Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 126-27 (D.D.C. 2017) (certifying class, appointing class representative that had extensive private discussions with management and noting that finding such communications disqualifying would "frustrate the purpose of the PSLRA").

Conceding the argument's lack of merit, Lin next suggests that the Pentwater Funds cannot serve as Lead Plaintiff by pointing out the obvious: that Defendants may explore these communications in discovery. But Defendants will seek discovery of any investor that is appointed

to lead this case, and that fact changes nothing about the demanding standard of "proof" that is required to rebut the presumption entitling the Pentwater Funds to appointment as Lead Plaintiff.

Nearly identical challenges to the Pentwater Funds were made by competing movants in *Salix* and were swiftly and correctly rejected in that case. *See Salix*, 2015 WL 1311073, at *7-8. In *Salix*, competing movants argued that the Pentwater Funds faced a conflict of interest based on their ongoing investments in the defendant issuer and their public opposition to a proposed merger of the issuer—a claim that mirrors Lin's argument that the Pentwater Funds are conflicted here based on their public position concerning the corporate governance failures at Turquoise Hill and their active engagement with management. But as Judge Wood correctly held in *Salix*, the notion that the Pentwater Funds would be conflicted due to their long-term, ongoing investment in a defendant issuer cannot be reconciled with the PSLRA—which was meant to empower institutional investors, which Congress obviously understood would continue to retain significant holdings in defendant-issuers when seeking to serve as lead plaintiff. *See Salix*, 2015 WL 1311073, at *4-8 & n.5 (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 244 (3d Cir. 2001)). And discovery of the Pentwater Funds in *Salix* did not in any way detract from the successful prosecution and resolution of investors' claims.

In fact, the argument that the Pentwater Funds' public efforts on behalf of Turquoise Hill investors are somehow disqualifying defies logic—as the views expressed in the Pentwater Funds' public comments on the Company's misconduct are entirely consistent with the allegations of fraud in this case. *See Macquarie Infrastructure*, 2019 WL 364570, at *8 n.14 (finding "no reason why that [proxy] campaign would detract from [event-driven fund]'s prosecution of investors' claims in this case, particularly since that campaign spawned from the same misrepresentations at issue in this action").

To the contrary, the Pentwater Funds' pursuit of governance changes at Turquoise Hill to address the improper conduct at issue in this case reflects the committed view that led to the Pentwater Funds' determination to seek a position as Lead Plaintiff in this case, and further demonstrates why the Pentwater Funds would serve as an excellent representative of the Class. In fact, the Pentwater Funds' efforts were supported by ISS, which recommended that stockholders vote in favor of Mr. Halbower's candidacy, as well as the overwhelming majority of Turquoise Hill's minority shareholders. *See* ECF No. 68-3 ¶¶ 8-9. The fact that Mr. Halbower received 88% of the votes of minority shareholders who voted at the July 2020 annual meeting (a significant portion of which are members of the Class) provides some of the best evidence that a substantial portion of the Class approves of the Pentwater Funds' leadership and ability to address the misconduct at issue in this case.

As explained in two declarations submitted by the Pentwater Funds, the discussions the Pentwater Funds had with Turquoise Hill management were similar to the kinds of communications that are common between shareholders and management; their proxy-contest efforts were entirely consistent with investors' allegations of fraud; and the Pentwater Funds' advocacy efforts are indistinguishable from those that courts have approved of in appointing sophisticated institutions as lead plaintiffs, as preferred by Congress. *See, e.g.*, Ex. 1 ¶¶ 7-8 & n.3; ECF No. 68-3 ¶¶ 5-10; *Macquarie Infrastructure*, 2019 WL 364570, at *6-7 & n.14 (citing PSLRA legislative history); *In re DVI*, 249 F.R.D. at 202-03 (certifying class representatives that had private communications with management and noting that "institutional investors, especially those with large holdings, [commonly] communicate directly with corporate officials," and in light of the PSLRA's preference for such institutions, courts have "decline[d] to find that an investor will be precluded from serving as class representative merely because of his private communications

with corporate insiders about publicly available information").[16] Any challenge to the Pentwater Funds' appointment should be flatly rejected here.[17]

### c.   The Pentwater Funds Have A Proven Track Record in Successfully Serving as Lead Plaintiff under the PSLRA

As noted above, the Pentwater Funds are fully committed to achieving the best possible result for the Class and fully understand their obligations as Lead Plaintiff, having successfully served in that role in the *Salix* securities class action before Judge Wood. In that case, the Pentwater Funds were certified as a class representative in connection with the $210 million recovery they achieved for investors—the largest securities class action recovery in 2017 and one of the 100 largest securities class action recoveries in history. This further evidences their ability to prosecute investors' claims against Turquoise Hill here.

---

[16] *See also Beaver Cnty. Emps.' Ret. Fund. v. Tile Shop Holdings, Inc.*, 2016 WL 4098741, at *5-6 & n.3 (D. Minn. July 28, 2016) (finding pension fund typical where its adviser met one-on-one with management but received no MNPI); *Hallet v. Li & Fung Ltd.*, 1997 WL 621111, at *3 (S.D.N.Y. Oct. 6, 1997) (holding that "if the plaintiff has received information from company insiders that confirms, reflects, repeats, or even digests publicly available market information, that plaintiff is an appropriate class representative"); *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *5 (N.D. Cal. Dec. 22, 2016) (rejecting argument that institutional investors were atypical because their advisors directly communicated with defendant executives in phone calls and in-person meetings that involved statements that were "different than those alleged to have defrauded the market"); *Beach v. Healthways Inc.*, 2010 WL 1408791, at *4 (M.D. Tenn. Apr. 2, 2010) (rejecting argument that investment manager's direct communications with executive rendered the fund atypical); *Schleicher v. Wendt*, 2009 WL 761157, at *2 (S.D. Ind. Mar. 20, 2009) (appointing investor who had one-on-one discussion with investor-relations personnel); *Dietrich v. Bauer*, 192 F.R.D. 119, 125 (S.D.N.Y. 2000) (appointing investor who spoke to company president); *Cosmas v. DelGiorno*, 1995 WL 62598, at *3 (E.D.N.Y. Feb. 8, 1995) (holding that plaintiff who, with his broker, had "numerous telephone conversations" with CFO was typical).

[17] Lin's conjecture that the Pentwater Funds engaged in an "event-driven" trading strategy (ECF No. 82 at 7), "does not constitute proof at this stage of the case that the [Pentwater Funds'] claims are not typical of the class as a whole." *Sayce v. Forescout Techs., Inc.*, 2020 WL 6802469, at *6 (N.D. Cal. Nov. 19, 2020); *see also Salix Pharm., Ltd.*, 2015 WL 1311073, at *7 (rejecting challenge to the Pentwater Funds and noting that "[i]nvestment strategies intended to mitigate risk do not render a movant atypical or inadequate").

Ignoring these facts, Lin challenges the Pentwater Funds' adequacy to serve as Lead Plaintiff here by parroting the meritless arguments made by the *Salix* defendants. Specifically, citing the *Salix* defendants' opposition to class certification, Lin suggests that Halbower refused to sit for a deposition in New York, that the Pentwater Funds submitted inaccurate information on their PSLRA certification, and that they withheld information in discovery. Nothing could be farther from the truth. As lead plaintiff in *Salix*, the Pentwater Funds fully participated in discovery, including by producing tens of thousands of pages of documents (including on an expedited basis at defendants' request), and having Pentwater Capital's head trader provide detailed testimony at a 30(b)(6) deposition concerning the Pentwater Funds' investments. *See* Ex. 1 ¶ 10. Further, the Pentwater Funds included all required information in their PSLRA certification and properly calculated their losses in accordance with the statute. *See id*. In fact, the *Salix* defendants' complaint about Halbower's proposed deposition was part of a disingenuous effort to manufacture an argument to oppose class certification. *See id*. The defendants did not respond to counsel's request for the reciprocal professional courtesy that Halbower be deposed in Evanston, Illinois (where he was located at the time) instead of New York, after plaintiff's counsel agreed to travel out of state to take depositions of defendants' witnesses. *See id*. Halbower and other representatives of the Pentwater Funds and Pentwater Capital were prepared to testify (and Pentwater Capital's head trader did testify) in *Salix* and are prepared to testify in this case. *See id*. That Lin resorts to copying meritless arguments lodged by defendants in a case where the Pentwater Funds recovered $210 million for investors—and without addressing the actual facts or the Pentwater Funds' response or even having any first-hand knowledge of that matter—speaks volumes about the legitimacy of these arguments. In reality, the Pentwater Funds treat their

obligations as Lead Plaintiff with the utmost seriousness and will serve as excellent representatives of the Class in this case.

**B.  <u>The Court Should Approve The Pentwater Funds' Selection Of Lead Counsel</u>**

The Court should also approve the Pentwater Funds' selection of Bernstein Litowitz as Lead Counsel. As discussed more fully in the Pentwater Funds' opening brief, the PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Bernstein Litowitz has a long history of successfully litigating securities class actions on behalf of injured investors, including several landmark recoveries in cases that were litigated in this District. *See* ECF No. 67 at 14-15; ECF No. 68-4. Accordingly, the Court should approve the Pentwater Funds' selection of Bernstein Litowitz as Lead Counsel for the Class.

<u>CONCLUSION</u>

For the reasons discussed above, the Pentwater Funds respectfully request that the Court: (1) appoint them to serve as Lead Plaintiff under Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B); (2) approve their selection of Bernstein Litowitz as Lead Counsel for the Class; (3) deny the competing motions for appointment as Lead Plaintiff; and (4) grant any other relief that the Court may deem just and proper.

Dated: December 28, 2020                                      Respectfully submitted,

                                                            */s/ Salvatore J. Graziano*
                                                            Salvatore J. Graziano
                                                            Gerald H. Silk
                                                            Mark Lebovitch
                                                            **BERNSTEIN LITOWITZ BERGER
                                                               & GROSSMANN LLP**
                                                            1251 Avenue of the Americas
                                                            New York, New York 10020
                                                            Telephone: (212) 554-1400

Facsimile: (212) 554-1444
salvatore@blbglaw.com
jerry@blbglaw.com
markl@blbglaw.com

*Counsel for Proposed Lead Plaintiff PWCM Master Fund Ltd., Pentwater Thanksgiving Fund LP, Pentwater Merger Arbitrage Master Fund Ltd., Oceana Master Fund Ltd., LMA SPC for and on behalf of the MAP 98 Segregated Portfolio, Pentwater Equity Opportunities Master Fund Ltd., and Crown Managed Accounts SPC acting for and on behalf of Crown/PW Segregated Portfolio, and Proposed Lead Counsel for the Class*