UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                            :
                                                            :
                                                            :
IN RE TURQUOISE HILL RESOURCES LTD.                         :
SECURITIES LITIGATION                                       :                20-cv-8585 (LJL)
                                                            :
                                                            :                OPINION AND ORDER
                                                            :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Before the Court are competing motions from movants seeking to be appointed lead

plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]  15

U.S.C. § 78u–4(a)(3)(B).  Each movant also proposes its respective retained counsel as class

counsel.  As explained below, the group identifying themselves as the Pentwater Funds have the

largest financial interest and satisfy all other requirements under the PSLRA.  The Court

therefore appoints the Pentwater Funds as lead plaintiff and appoints their counsel, Bernstein

Litowitz Berger & Grossman LLP, as class counsel.

## BACKGROUND

Plaintiffs bring claims under Sections 10(b) and 20(a) of the Securities Exchange Act of

1934 and Rule 10b–5 promulgated thereunder against Turquoise Hill Resources Ltd. ("Turquoise

Hill" or the "Company"), Rio Tinto plc, Rio Tinto Limited, Rio Tinto International Holdings,

Ltd. ("Rio Tinto International"), and five officers and directors of Turquoise Hill and Rio Tinto

---

[1] Movants are defined to include Altannavch Sukhbaatar, Paul Ciaglo, John J. Murphy, Chang Pin Lin, Vitali Garon, Ramakrishnan Natesan, and the Pentwater Funds.  The Pentwater Funds consist of seven related private investment funds, including PWCM Master Fund Ltd., Pentwater Thanksgiving Fund LP, Pentwater Merger Arbitrage Master Fund Ltd., Oceana Master Fund Ltd., LMA SPC for and on behalf of the MAP 98 Segregated Portfolio, Pentwater Equity Opportunities Master Fund Ltd., and Crown Managed Accounts SPC acting for and on behalf of Crown/PW Segregated Portfolio.

(collectively, "Defendants").  The action is brought on behalf of all persons who purchased or otherwise acquired the securities of Turquoise Hill from July 17, 2018 to and including July 31, 2019 (the "Class Period").

Turquoise Hill is an international mining company focused on the operation and development of the Oyu Tolgoi copper-gold mine in Southern Mongolia (the "Oyu Tolgoi project"), which is the Company's principal and only material resource property.  Turquoise Hill's subsidiary, Oyu Tolgoi LLC, holds a 66% interest in the Oyu Tolgoi project; the remainder is held by the Government of Mongolia.  Rio Tinto plc and Rio Tinto Limited own 50.8% of Turquoise Hill through their subsidiaries.  One of their subsidiaries, Rio Tinto International (collectively, with Rio Tinto plc and Rio Tinto Limited, "Rio Tinto") is also the manager of the Oyu Tolgoi project.  Through its subsidiaries, Rio Tinto owns 50.8% of Turquoise Hill.

The Turquoise Hill individual defendants include the Company's chief executive officer and director, Ulf Quellmann, its chief financial officer, Luke Colton, and its former vice president of operations and development from February 1, 2016 until March 2019, Brendan Lane.  The Rio Tino individual defendants include Rio Tinto's chief executive officer and director, Jean-Sébastien Jacques, and the chief executive of its copper & diamonds product group and director, Arnaud Soirat.

The case arises out of a series of allegedly materially false and misleading statements and omissions related to project delays and cost overruns incurred in connection with the development of the Oyu Tolgoi project.  Specifically, the complaint alleges that during the Class Period, Defendants made materially false and misleading statements and/or failed to disclose that: (i) the progress of underground development of the Oyu Tolgoi project was not proceeding

as planned; (ii) there were significant undisclosed underground stability issues that called into question the design of the mine, the projected cost, and the timing of production; (iii) the Company's publicly disclosed estimates of the cost, date of completion, and dates for production from the underground mine were not achievable; (iv) the development capital required for the underground development of the Oyu Tolgoi project would cost more than a billion dollars over what the Company had represented; and (v) the Company would require additional financing and/or equity to complete the project. Dkt. No. 7 ¶ 4. The trading price of Turquoise Hill's common stock fell in the wake of partial disclosures made on February 26, 2019, July 15, 2019, and July 31, 2019, which substantially diminished the Company's stock price. *Id.* ¶¶ 6-7, 9.

## PROCEDURAL HISTORY

The complaint in this action was filed by Plaintiff Anthony Franchi ("Franchi") on October 14, 2020. *See* Dkt. Nos. 1, 4, 7.

On October 15, 2020, the Court entered an order requiring Franchi to advise the Court of the date and manner in which he had published the requisite notice under the PSLRA, "advising members of the purported plaintiff class . . . of the pendency of the action, the claims asserted therein, and the purported class period." 15 U.S.C. § 78u–4(a)(3)(A)(i); *see* Dkt. No. 18. Franchi informed the Court that he had made such notice on October 15, 2020 by press release with Globe Newswire, a national business news wire. Dkt. No. 31.

On November 6, 2020, the Court entered a scheduling order that gave putative class members until December 14, 2020 to move to serve as lead plaintiff and provided for opposition to any such motions to be filed by December 28, 2020. Dkt. No. 36.

On December 3, 2020, a second action was filed asserting substantially the same claims by Plaintiff Nicholas Lion ("Lion") under the caption titled *Lion v. Turquoise Hill Resources Ltd.*, No. 20-cv-10198 (S.D.N.Y. Dec. 3, 2020). It was assigned to this Court as possibly related.

On December 7, 2020, Plaintiffs Franchi and Lion and Defendants jointly sought to consolidate the actions.  *See* 15 U.S.C. § 78u–4(a)(3)(B)(ii).  The Court granted the request on December 10, 2020, and the cases were consolidated.  Dkt. No. 45.  Seven parties filed timely motions seeking to be appointed lead plaintiff.  Dkt. Nos. 46, 49, 50, 55, 57, 62, 66.

On December 23, 2020, Movant Chang Pin Lin moved for limited discovery into the adequacy of Pentwater Funds.  Dkt. No. 76.  Pentwater Funds opposed such motion on December 24, 2020.  Dkt. No. 77.  The Court denied the motion for limited discovery and directed the parties to address any such issues in their opposition briefs and at the hearing.  It also directed that a representative from Pentwater Funds be present at the hearing.  Dkt. No. 78.

On December 28, 2020, Movants Altannavch Sukhbaatar and Paul Ciaglo withdrew their motions for lead plaintiff, Dkt. Nos. 79, 80, Vitali Garon acknowledged he was not the presumptive lead plaintiff but would serve as lead plaintiff if other movants were deemed inadequate, Dkt. No. 84, and Ramakrishnan Natesan did not file an opposition.  Movants Pentwater Funds, Chang Pin Lin, and John Murphy submitted opposition briefs.  Dkt. Nos. 81, 82, 85.

On December 30, 2020, the Court held a hearing on the motions.  *See* Dkt. No. 91 ("Hr'g Tr.").  At the hearing, the Court invited Pentwater Funds to submit a supplemental declaration with respect to certain issues raised during the hearing and Mr. Lin to submit the assignments of his children's shares by January 8, 2021, which they did.  *See* Hr'g Tr. at 46:13-20; Dkt. Nos. 93-96.  It further directed that any responses to those submissions would be due by January 13, 2021 at 5:00 p.m.  *See* Hr'g Tr. at 47:25-48:4.  Mr. Lin, Mr. Murphy, and Mr. Ciaglo submitted such responses.  Dkt. Nos. 100-02.

**LEGAL STANDARD**

The PSLRA establishes the framework courts use to select a lead plaintiff in class actions brought under the federal securities laws. First, the PSLRA requires any prospective lead plaintiff to file a motion for appointment as lead plaintiff within sixty days of the publication of notice of the securities class action. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa); *id.* § 78u–4(a)(3)(A)(i).

Next, the PSLRA lays out standards for choosing one lead plaintiff from among the candidates who file motions. The PSLRA provides that:

> the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice [of the complaint within sixty days of the publication of this notice];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u–4(a)(3)(B)(iii)(I). Once the Court identifies a presumptive lead plaintiff, this presumption:

> may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—
>
> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

*Id.* § 78u–4(a)(3)(B)(iii)(II). If the Court finds that the movant with the largest financial interest in the class action is otherwise ineligible for appointment as lead plaintiff, the Court applies the criteria of the PSLRA to the movant with the second-highest financial interest. This

investigation continues until the Court identifies a suitable lead plaintiff.  *See, e.g.*, *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 396 n.7 (S.D.N.Y. 2008).

For purposes of choosing a lead plaintiff under the PSLRA, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet Rule 23 [of the Fed. R. Civ. P.], and courts need only consider the typicality and adequacy requirements." *Aude v. Kobe Steel, Ltd.*, 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018).  Movants can demonstrate typicality by showing that their claims "arise from the same conduct from which the other class members' claims and injuries arise," *In re Crayfish Co. Sec. Litig.*, 2002 WL 1268013, at *5 (S.D.N.Y. June 6, 2002), and they can demonstrate adequacy if they "(1) [have] no conflict of interest with the other members of the class, (2) [have] sufficient interest in the outcome of the case, and (3) [have] selected counsel that is qualified, experienced, and generally able to conduct the litigation in question," *Aude*, 2018 WL 1634872, at *4.  The Court's determination of adequacy and typicality for purposes of appointing a lead plaintiff is not preclusive of a later challenge at the class certification stage with respect to those factors.  *See, e.g.*, *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015) ("[I]n deciding a motion to serve as lead plaintiff, [t]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met. . . . In fact, a wide ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and should be left for consideration of a motion for class certification.") (internal quotation marks, citations, and modifications omitted).

While the PSLRA permits a "group of persons" to serve as lead plaintiff, 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I), it does not specify what constitutes an acceptable grouping.  *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005).  "The majority of courts, including

those in this District . . . permit[] unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class." *Varghese*, 589 F. Supp. 2d at 392.

Finally, the PSLRA provides that, "[e]xcept as the court may otherwise permit . . . a person may be a lead plaintiff . . . in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period."  15 U.S.C. § 78u–4(a)(3)(B)(vi).

## DISCUSSION

### I.    The Applications

Seven putative class members filed motions to be lead plaintiff.  The Pentwater Funds suffered the largest loss in their investment in Turquoise Hill securities by orders of magnitude and have the greatest financial interest in the relief sought by the class.  All told, the Pentwater Funds reported a loss of approximately $299 million when calculated on a first-in, first-out ("FIFO") basis and approximately $220 million when calculated on a last-in, first-out ("LIFO") basis on their Class Period investments in Turquoise Hill securities.  Dkt. No. 68, Ex. B.  Their investment advisor, Pentwater Capital Management LP ("Pentwater Capital"), acquired shares of Turquoise Hill on behalf of seven different Pentwater Funds in numerous transactions beginning in late July 2018 and continuing until July 2019.  Pentwater Capital also sold Turquoise Hill shares from November 2018 through mid-July 2019.  *Id.*  The Pentwater Funds are comprised of seven related private investment funds and are institutional investors.  They propose Bernstein Litowitz Berger & Grossmann LLP as lead counsel.

Claiming the next greatest financial interest is Chang Pin Lin, who reports losses of $344,719.21 when calculated on a LIFO basis.  Dkt. No. 58, Ex. B.  In reaching this figure, Mr. Lin includes his own losses of $11,965.99 and also claims the estimated losses of $111,488.39

by daughter Yi Hsin Lin, $110,345.76 by son Yu Ting Lin, $54,665.21 by the Lin Family Rev

Living Trust – L Lin Lee & C Lin Ttee of which Mr. Lin is co-trustee, and $56,253.86 by

Southlight International, Inc., a commercial real estate investment business that Mr. Lin owns.[2]

Mr. Lin and the individuals and entities for which he claims losses acquired shares of Turquoise

Hill between October 2018 and July 2019.  They do not report sales of Turquoise Hill shares

during the Class Period.  Mr. Lin is a retired surgeon and owner and president of Southlight

International, Inc. and resides in California.  He proposes Levi & Korsinsky, LLP as lead

counsel.

John Murphy claims the third highest financial interest, with reported losses of

$327,028.02 calculated on a LIFO basis.  Dkt. No. 54, Ex. C.  He reports having acquired shares

of Turquoise Hill beginning in August 2018 through July 2019.  He both bought and sold shares

during this timeframe.  Mr. Murphy works in Nuclear Operations and Project Management and

resides in Pennsylvania.  He proposes Glancy Prongay & Murray LLP as lead counsel.

## II.      Lead Plaintiff

The movants here agree that the sixty-day window to move for appointment as lead

plaintiff closed on December 14, 2020.  All seven eligible movants filed their motions within

that window, and the Court therefore considers their filings timely.

In selecting a lead plaintiff, the PSLRA establishes a presumption in favor of the

applicant with "the largest financial interest in the relief sought by the class."  5 U.S.C. § 78u–

4(a)(3)(B)(iii)(I).  In determining the party with the largest financial interest, courts generally

consider several factors, the most significant of which is the magnitude of the party's loss.

---

[2] Because the Court appoints the Pentwater Funds as lead plaintiff, the Court does not reach the
question of whether Mr. Lin was properly assigned these interests.

*See Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007). The ranking, from largest to least, of loss by each candidate for lead plaintiff is as follows:

1. The Pentwater Funds, with a claimed interest of approximately $299 million when calculated on a FIFO basis and approximately $220 million when calculated on a LIFO basis. Dkt. No. 67 at 2; Dkt. No. 68, Ex. B.

2. Chang Pin Lin, with a claimed interest of $344,719.21 when calculated on a LIFO basis and including the losses of alleged assignees. Dkt. No. 56 at 8; Dkt. No. 58, Ex. B.

3. John J. Murphy, with a claimed interest of $327,028.02 calculated on a LIFO basis. Dkt. No. 54, Ex. C;

4. Vitali Garon, with a claimed interest of $85,336. Dkt. No. 59 at 4; Dkt. No. 60, Ex C.

5. Altannavch Sukhbaatar, with a claimed interest of $45,643. Dkt. No. 48 at 6, Ex. 3.

6. Paul Ciaglo, with a claimed interest of $11,034.12. Dkt. No. 51 at 2; Dkt. No. 53, Ex. C.

7. Ramakrishnan Natesan with a claimed interest of $251. Dkt. No. 64 at 8; Dkt. No. 65, Ex. A.

The Pentwater Funds filed their motion within the sixty-day window, have the largest financial interest, and otherwise satisfy the requirements of Federal Rule of Civil Procedure 23. They claim to have "purchased Turquoise Hill securities during the Class Period at prices allegedly artificially inflated by Defendants' materially false and misleading statements and omissions and suffered damages when the truth was revealed." Dkt. No. 67 at 8. Thus, their injury is of the same kind, and arises out of the same facts, as that of other class members. *Id.* The PSLRA allows for the appointment of a "person or group of persons," 5 U.S.C. § 78u–4(a)(3)(B)(iii)(I), and, as the Pentwater Funds consist of related—as opposed to unrelated—investors, no movant has challenged the grouping of Pentwater Funds or raised concerns in connection therewith. *See, e.g.*, *Varghese*, 589 F. Supp. 2d at 392. The Pentwater Funds have also retained counsel highly experienced with securities class actions, and the Pentwater Funds'

large financial stake incentivizes vigorous representation.  *See Lipetz v. Wachovia Corp.*, 2008 WL 4615895, at *3 (S.D.N.Y. Oct. 10, 2008) (observing that a party having "a substantial financial stake in the litigation . . . leads the Court to believe that as lead plaintiff, [the party] would prosecute the claim vigorously").  The Court concludes, at this stage, the Pentwater Funds are adequate under Rule 23.

Under the PSLRA, the presumption in favor of the party with the largest financial interest who otherwise satisfies Rule 23 may be rebutted upon "proof" that the presumptive lead plaintiff: (1) "will not fairly and adequately protect the interests of the class," or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. 78u–4(a)(3)(B)(iii)(II).  The statutory language of the PSLRA does not clearly establish what constitutes "proof."  *See Schaffer v. Horizon Pharma Plc*, 2016 WL 3566238, at *2 (S.D.N.Y. June 27, 2016).  Courts have made clear, however, that mere speculation is insufficient to rebut the presumption of adequacy.  *See, e.g.*, *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011) ("[T]he conflict of interest must be shown, not merely speculated, in order to rebut the presumption of the most adequate lead plaintiff.").

Mr. Lin and Mr. Murphy (together, the "Opposing Movants") make three primary arguments best understood to go towards the Pentwater Funds' ability to fairly and adequately represent the class.[3]

First, they argue that the Pentwater Funds' 9.3% equity stake in Turquoise Hill may undermine its willingness to pursue maximum recovery for all class members.  Mr. Lin asserts,

---

[3] On January 13, 2021, Mr. Murphy submitted a letter to the Court, which stated that after "[h]aving reviewed the supplemental declarations," he "no longer takes a position on the competing lead plaintiff motions of movants with larger financial interests."  Dkt. No. 100.  His earlier objections to the appointment of the Pentwater Funds are nonetheless discussed here.

for example, that as a result of Pentwater Funds' substantial stake in Turquoise Hill it might be unwilling to pursue relief that would have ruinous consequences for the Company, even if such relief was in the best interest of the class.  *See* Dkt. No. 82 at 7, 10.  Its position as a current shareholder would dampen its ardor in pursuing relief on behalf of a class that could include persons who purchased Turquoise Hill securities but are no longer current shareholders and thus would not be negatively affected, even derivatively, by a large plaintiff's verdict or settlement. *Id.*

In assessing this argument, the Court draws from congressional intent in the PSLRA.  In the lead plaintiff provision of the PSLRA, Congress established a presumption in favor of the investor with the "largest financial stake in the recovery sought by the class."  15 U.S.C. § 78u–4(a)(3)(B)(i).  This provision generally results in a presumption in favor of large institutional investors, a result that Congress both considered and intended.  *See* S. Rep. No. 104–98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The Committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the purported class with the largest financial stake in the relief is the 'most adequate plaintiff.'").  Thus, the fact that the Pentwater Funds are institutional investors is hardly disabling.

Pentwater Funds' status as a current investor is also not disabling, as Mr. Lin conceded at argument.  *See* Hr'g Tr. at 13:8-15:16.  To be sure, should there be a verdict in favor of Plaintiffs or a settlement in this case, a portion of the settlement consideration may be paid derivatively from the pocket of the Pentwater Funds, in the form of a reduction of the value of its stake in Turquoise Hill.  Pentwater Funds will, in that sense, be on both sides of the transaction.  That form of conflict, however, is not unique to an institutional investor but is present when any

current shareholder applies to represent a class that includes injured former shareholders, regardless of the size of that shareholder's ownership stake.  It is built into the securities laws and not a reason for denying Pentwater Funds lead plaintiff status.  *See In re Cendant Corp. Litig.,* 264 F.3d 201, 243-44 (3d Cir. 2001).

Congress presumably understood that institutional investors often maintain significant ownership of the relevant stock, yet it implemented no provisions requiring that parties divest themselves of such holdings in order to serve as lead plaintiff.  The sophistication and resources of institutional investors, when coupled with a significant stake in the litigation, facilitates vigorous and effective advocacy that benefits the class as a whole.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); *see also Villaire v. ABIOMED, Inc.*, 2020 WL 3497285, at *7 (S.D.N.Y. June 29, 2020) (appointing a "large, sophisticated institutional investor" as lead plaintiff, reasoning that its "sophistication and understanding of the responsibilities of a lead plaintiff, coupled with its size and resources, will be of significant assistance to the class in this action").  This Court, like other courts that have considered the issue, concludes that ownership in a defendant entity, even if such ownership is substantial, does not generally disqualify a party from serving as lead plaintiff.  *See, e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 414 (S.D.N.Y. 2004); *Cendant*, 264 F.3d at 243-44.

The parties also identified, and the Court raised at argument, another concern stemming from the Pentwater Funds' large stake in Turquoise Hill.  The trading volume in Turquoise Hill is small relative to the size of Pentwater Funds' stake and Defendant Rio Tinto is a majority

owner of Turquoise Hill.  The question arose as to whether those factors would create the risk

that Pentwater Funds in the future might need the assistance of Rio Tinto to dispose of the

Pentwater Funds' interest in Turquoise Hill and that, in order to obtain that assistance, Pentwater

Funds might compromise the interests of the class.  *See* Hr'g Tr. at 25.  Further, Mr. Lin

highlights Pentwater Funds' activist history with Turquoise Hill, which he argues suggests they

could use their bargaining power as lead plaintiff to negotiate for improvements at Turquoise

Hill—that would ultimately increase the value of that large stake and improve circumstances for

class members who are current shareholders but at the expense of class members who have since

sold such shares—in order to later sell their stake.  *See* Dkt. No. 102 at 7.

Following the hearing, the Pentwater Funds have made representations to disabuse the

Court of this concern.  Specifically, the Pentwater Funds have committed that they "will not

enter into any agreement at all relating to the Pentwater Funds' Turquoise Hill holdings with any

Defendant or their affiliates other than [as] a result for the entire Class that is subject to class

notice and Court approval."  Dkt. No. 93 ¶ 5(d).  "In other words, the Pentwater Funds will not

enter into any agreement with any Defendant regarding any increase or decrease of the Pentwater

Funds' holdings in Turquoise Hill securities other than in connection with a settlement in this

case that is subject to notice and Court approval."  *Id.*  Mechanisms exist to ensure that that

representation is not an empty promise.  If this case is settled, the Pentwater Funds will be

required to disclose all agreements made in connection with the proposed settlement under Rule

23(e)(3).[4]  Such agreements include formal and informal agreements and would assuredly

---

[4] If the case is not settled, the Court will have the opportunity to observe the performance of lead
plaintiff and its counsel and always has the opportunity to consider appointing an alternative lead
plaintiff as part of its "continuing duty to monitor whether lead plaintiffs are capable of
adequately protecting the interests of the class members."  *In re NYSE Specialists Sec. Litig.*, 240
F.R.D. 128, 133 (S.D.N.Y. 2007) (internal quotation marks omitted).

include any agreement with respect to the disposition of the Pentwater Funds' interest in Turquoise Hill.  That disclosure obligation exists, in part, to deter class representatives from striking agreements that favor their interests over those of the class.

The Pentwater Funds have refused to commit to retaining their shares in Turquoise Hill. *See* Hr'g Tr. at 24:18-25:5.  They have reserved for themselves the right to continue to purchase Turquoise Hill shares, but not on the basis of material nonpublic information.  Opposing Movants suggest, albeit obliquely, that such sales might create an incentive on the part of the Pentwater Funds to work with, and not against, Rio Tinto (as majority shareholder) and its affiliates.  At this stage, that concern is speculative.  Nonetheless, as an additional precaution, the Court will order Pentwater Funds to show cause why the Pentwater Funds should not be required to report to the Court any arrangements made with any of the Defendants or their affiliates to purchase Pentwater Funds' shares in Turquoise Hill or to otherwise find purchasers for those shares, during the pendency of this litigation, regardless of whether such arrangement is made in connection with settlement.[5]  In any event, should the disclosures—whether at the time of settlement or otherwise—or other evidence reveal that lead plaintiff has compromised the interests of the class or has created a non-speculative risk that it will do so, the Court has the option of appointing an alternative lead plaintiff or rejecting a settlement.  *See NYSE Specialists,* 240 F.R.D. at 133 (finding that courts have "the ability to consider motions to disqualify, remove, withdraw, substitute, and add lead plaintiffs throughout the litigation of a securities class action").  Disqualifying the Pentwater Funds at this stage based on speculation, merely because

---

[5] The Court invites Pentwater Funds to show cause why the Court should not impose such affirmative obligation by letter motion filed by January 29, 2021.

of their large financial stake in the company, is inconsistent with the PSLRA and would subvert the congressional intent set forth in the PSLRA.

Second, Opposing Movants make a related argument that the Pentwater Funds may use their position as lead plaintiff in order to secure a seat on Turquoise Hill's board of directors. Dkt. No. 81 at 2, 5-6; Dkt. No. 82 at 7-10.  As support for this concern, Opposing Movants point to the July 2020 campaign for a Turquoise Hill director position by Matthew Halbower ("Halbower"), the founder, chief executive officer, and chief investment officer of Pentwater Capital.  Holding a director position would create a conflict of interest precluding the Pentwater Funds from serving as lead plaintiff.  *See, e.g., In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 481 (S.D.N.Y. 2002) ("Courts have routinely found a disqualifying unique defense where the potential named plaintiff has had a direct or personal relationship with a board member or officer of the issuing company.").  The interests of the class of shareholders that lead plaintiff would be appointed by the Court to represent would potentially conflict with the interest of shareholders it would have a fiduciary duty as a director to represent.  Halbower's campaign, however, was ultimately unsuccessful as Opposing Movants acknowledge, Dkt. No. 82 at 13, making the conflict inapplicable here.  Concerns that the Pentwater Funds may undermine Class interests in order to obtain a future director position are alleviated by Halbower's declaration that the Pentwater Funds will not run a proxy contest at Turquoise Hill, nor will any of its representatives seek a position as director or on the board of Turquoise Hill.  Dkt. No. 93 ¶ 5(a). When Pentwater Funds ran its 2020 proxy context, Rio Tinto, which had a blocking interest, barred Pentwater Funds from obtaining a board seat.  There is no evidence that there would be a different outcome should Pentwater Funds decide in the future to run a second proxy contest and therefore any risk created by the prior proxy campaign is speculative.

Third, Opposing Movants argue that the Pentwater Funds' threat of separate, non-class litigation in Canada against Defendants will render them an inadequate representative of the Class.  Dkt. No. 82 at 6.  While Opposing Movants do not further develop this point, the Court imagines their concern to be that, if Pentwater Funds pursued simultaneous non-class litigation against Defendants, the Pentwater Funds would be in a position to compromise the interests of the class in this case in exchange for a favorable resolution of that non-class litigation.  In that circumstance, with actual and pending litigation, the risk of conflict would rise above the speculative.  Halbower's declaration states that the Pentwater Funds will not pursue simultaneous litigation against Defendants in another forum "that would conflict with this case." Dkt. No. 93 at ¶ 5(b).  The Court construes that representation to include the threatened oppression litigation in Canada; Turquoise Hill represented at the hearing that it would not pursue that litigation.  *See* Hr'g Tr. at 28:1-14.  Opposing Movants point out that Halbower's carefully-drafted statement leaves open the possibility that the Pentwater Funds would file litigation against Turquoise Hill and/or Rio Tinto for reasons that the Pentwater Funds deems not to conflict with the interests of the class but that the Court might determine would conflict with the interests of the class.  Dkt. No. 102 at 8.  That understandable concern is easily addressed. As a condition of the appointment of Pentwater Funds as lead plaintiff and in the exercise of its responsibility to supervise the litigation to protect the interests of absent class members, the Court will impose an affirmative obligation on Pentwater Funds to, if they launch any litigation against any of the Defendants or any of their affiliates, report that litigation to the Court within five (5) days of filing that litigation with an explanation as to why they believe it does not create a conflict of interest with the interests of the class or their position as lead plaintiff for the class.

Opposing Movants also make a series of arguments alleging that the Pentwater Funds are subject to unique defenses that will undermine their ability to adequately represent the class. While presumptive lead plaintiffs may be rejected on the basis of risks of unique defenses, such risks must be supported by proof and rise above the level of mere speculation. *Schaffer*, 2016 WL 3566238, at *1-2.

First, they claim that the majority of the 70 million Turquoise Hill shares that the Pentwater Funds purchased on a single date, February 19, 2019, were likely purchased on the Toronto Stock Exchange rather than the New York Stock Exchange and NASDAQ because the 70 million shares exceeded the total volume traded on the New York exchanges combined. They argue that the transaction therefore may not qualify as a domestic transaction covered by the Securities Exchange Act of 1934 under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 267 (2010) and *Absolute Activist Master Fund LLC v. Ficeto*, 677 F.3d 60, 66 (2d Cir. 2012) and thus may prevent the Pentwater Funds from asserting claims under Section 10(b) related to those shares. "Transactions involving securities that are not traded on a domestic exchange are domestic if irrevocable liability is incurred or title passes within the United States." *Absolute Activist*, 677 F.3d at 67. "The location or residency of the buyer, seller, or broker will not necessarily establish the situs of the transaction. Rather, plaintiffs demonstrate the location where irrevocable liability was incurred or legal title transferred by producing evidence 'including, but not limited to, facts concerning the formation of the contracts, the placement of purchase orders, . . . or the exchange of money.'" *In re Petrobras Sec.*, 862 F.3d 250, 262 (2d Cir. 2017) (quoting *Absolute Activist*, 677 F.3d at 70).

As the Opposing Movants acknowledge, however, the Pentwater Funds placed the order for those shares from the Illinois office of Pentwater Capital, the shares were purchased through

an off-exchange block trade and paid for in U.S. dollars from U.S.-based accounts, the shares

were delivered to U.S.-based accounts, and the block trade was arranged through a broker from

TD Securities (USA) LLC pursuant to an agreement whose terms provide that irrevocable

liability attached in the United States upon placement of that order.  Significantly, the account

documentation submitted by Pentwater Funds contains a "Trading Authorization" signed by

Pentwater Capital addressed to TD Securities (USA) LLC and an "Agreement for Prime

Brokerage Clearance Services" between Pentwater Capital and TD Securities (USA) LLC, and

Pentwater Funds states that the block trade was done pursuant to these agreements.  *See* Dkt. No.

86, Ex. A.  At this stage, the Court is satisfied that the Pentwater Funds have adequately alleged

a "domestic transaction," "meaning that [Pentwater Funds] (the purchaser) incurred irrevocable

liability within the United States to take and pay for a security."  *Giunta v. Dingman*, 893 F.3d

73, 79-80 (2d Cir. 2018) ("Irrevocable liability, for section 10(b) purposes, attaches when the

parties become bound to effectuate the transaction, that is when the parties obligated themselves

to perform what they had agreed to perform even if the formal performance of their agreement is

to be after a lapse of time."); *see Plumbers' Union Loc. No. 12 Pension Fund v. Swiss

Reinsurance Co.*, 753 F. Supp. 2d 166, 177 (S.D.N.Y. 2010) (holding that a purchase of

securities is "domestic" if the purchaser "incur[s] an irrevocable liability to take and pay for the

stock" in the United States).  And even excluding the block trade and claims in connection

therewith, the Pentwater Funds have over $100 million in losses, which still makes it the movant

with the largest financial stake.  Dkt. No. 77 at 2.  If *Morrison* issues become significant in the

prosecution of this case, the Court will have the means to deal with them.  *Cf. In re Petrobras

Sec.*, 862 F.3d at 274 (where *Morrison* issues exist during class certification, "we emphasize that

district courts are authorized to implement management strategies tailored to the particularities of

each case," including "modifying class definitions and issuing class-wide rulings," and "district courts can, for example, bifurcate the proceedings to home in on threshold class-wide inquiries; sever claims not properly adjudicated on a class-wide basis to isolate key common issues; or certify subclasses that separate class members into smaller, more homogenous groups defined by common legal or factual questions").[6]

Second, Opposing Movants argue that the Pentwater Funds' utilization of an event-driven investment strategy may allow Defendants to rebut the presumption of "reliance" necessary for liability under Section 10(b) and which would increase costs during class certification briefing that would come out of the pockets of class members. Dkt. No. 82 at 11-12. This argument is unduly speculative. Courts have rejected the argument that the use of sophisticated investment strategies disqualifies a party from serving as lead plaintiff or necessarily undermines reliance, particularly at this stage of the litigation. *See In re Imax Sec. Litig.,* 2011 WL 1487090, at *7 (S.D.N.Y. Apr. 15, 2011) (approving lead plaintiff that used merger arbitrage investment strategy); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 164 (S.D.N.Y.2007), *aff'd in relevant part*, 574 F.3d 29 (2d Cir. 2009) ("[I]t is well-established that an investor's sophistication does not preclude him from relying on the integrity of the market and asserting the fraud-on-the-market presumption."). To the extent that there are any concerns that the Pentwater

---

[6] At argument, the Court raised the concern that class counsel would be required to expend significant resources addressing Pentwater Funds' unique issues as to *Morrison*, in effect spreading the cost of addressing issues peculiar to the Pentwater Funds on the whole class. *See* Hr'g Tr. at 32:16-23. Counsel persuasively argued that *Morrison* issues were likely not to be idiosyncratic to the Pentwater Funds but could affect the class or significant portions of the class as a whole. *Id.* at 33:14-34:1. In any event, counsel agreed to keep detailed billing records, including records regarding time spent on *Morrison* or other issues unique to Pentwater Funds, *id.* at 32:24-33:13, and should it turn out that such costs should not be charged to the class as a whole, the Court can address that concern when it comes time to awarding fees—if such time arrives.

Funds' strategy indicates the absence of a generally efficient market that would jeopardize a showing by the class of reliance, *see Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988), this too is mere speculation.

Finally, Opposing Movants argue that the Pentwater Funds were privy to material, nonpublic information ("MNPI"). Dkt. No. 82 at 11-13. They claim access to MNPI will similarly undermine the Pentwater Funds' claims of "reliance" for the purposes of Section 10(b) liability. In support of their argument that the Pentwater Funds had access to MNPI, Opposing Movants cite to the Pentwater Funds' purchase of 100 million shares of Turquoise Hill stock on February 27, 2019 in the wake of Defendants' announcement regarding a delay in the Oyu Tolgoi project. Opposing Movants allege that such a large purchase in the face of negative announcements can only be the product of access to MNPI or, in the alternative, reliance on private valuation of the securities. They also cite to conceded communications between the Pentwater Funds and Turquoise Hill.

Similar allegations of MNPI have been found to be insufficient when such allegations are coupled with (1) a declaration from the presumptive lead plaintiff asserting that no MNPI had been received and (2) the failure of the opposing movants to offer any proof. *See City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, 2019 WL 364570, at *7 (S.D.N.Y. Jan. 30, 2019) ("The Rebuttal Movants' failure to proffer any proof that [the proposed plaintiff] received MNPI from Macquarie, coupled with [the proposed plaintiff]'s declaration that no MNPI was communicated . . . is fatal to the Rebuttal Movants' claim."). Both features are present in the instant matter. Halbower submitted a sworn declaration that the Pentwater Funds had not received any MNPI from any of the Defendants. Dkt. No. 68-3 ¶ 5; *see also* Dkt. No. 93 ¶ 5(c). Meanwhile, Opposing Movants fail to proffer any evidence that would elevate

20

their contention above the speculative.  Congress intended institutional investors to serve as lead

plaintiffs.  Such institutions frequently have conversations with company management about

publicly available information in the interests of their investors.  The Court thus will not

disqualify Pentwater Funds based on the fact that it had such conversations and in the absence of

any evidence of disclosure of MNPI.  *See City of Riviera*, 2019 WL 364570 at *8 ("[C]ourts

have repeatedly recognized that the kind of communications between [proposed plaintiff] and

Defendants pose no barrier to appointment as lead plaintiff where no MNPI was exchanged.");

*see also In re DVI Inc. Sec. Litig.,* 249 F.R.D. 196, 202 (E.D. Pa. 2008) (private conversations

that conveyed public or otherwise immaterial information did not render lead plaintiff atypical),

*aff'd*, 639 F.3d 623 (2d Cir. 2011); *In re Indep. Energy*, 210 F.R.D. at 482 ("[C]ourts have

consistently certified classes where there was no evidence that the named plaintiff received

non-public information from a corporate officer.").

The Pentwater Funds' February 27, 2019 purchases do not provide the "proof" required

by the PSLRA that they had access to MNPI or otherwise disqualify the Pentwater Funds from

representing the class.  Such post-disclosure purchases of additional shares of a defendant

company "has no bearing on whether or not [the representative] relied on the integrity of the

market during the class period."  *City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 178

(S.D.N.Y. 2012) (quoting *In re Monster Worldwide, Inc. Sec. Litig.* 251 F.R.D. 132, 135

(S.D.N.Y. 2008)).  And although courts have questioned the typicality of representatives who

made a "disproportionately large percentage" of their purchases following disclosure, *id.* at

178-79*,* that is not the case here.  The Pentwater Funds' February 27, 2019 purchases constitute

merely a fraction of the shares they purchased during the Class Period, including prior to the

February 27, 2019 announcement.  *See* Dkt. No. 68, Ex. A (transaction history).

In the end, Opposing Movants argue that conflicts and unique defenses will surface in this litigation and that the Court should disqualify the Pentwater Funds now rather than risk having to appoint a new lead plaintiff later on. Dkt. No. 102 at 4-5. It is a necessary corollary of the proposition that the adequacy determination at this stage of the litigation is relaxed, *see, e.g.*, *Batter v. Hecla Mining Co.*, 2020 WL 1444934, at *4 (S.D.N.Y. Mar. 25, 2020) ("[T]he Rule 23 adequacy showing is only preliminary at this stage. 'In fact, a wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'") (quoting *Pirelli Armstrong*, 229 F.R.D. at 412), that the Court and the class accept the risk that, after class certification discovery, a lead plaintiff who appeared to be adequate is demonstrated not to be such. The cases cited by the Opposing Movants demonstrate that such a result would not be unprecedented. That result would be unfortunate (and the Court does not expect it will happen), but, if a conflict develops or facts demonstrate Pentwater Funds are not adequate, the Court will have the means to deal with that circumstance then.

Consistent with the foregoing discussion, the presumption that the Pentwater Funds are the most adequate lead plaintiff remains unrebutted. It is therefore unnecessary to evaluate the remaining movants, all of whom claim a lesser financial interest.

## III.    Class Counsel

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008) (quoting

*Cendant*, 264 F.3d at 276); *see, e.g.*, *In re Ply Gem Holdings, Inc., Sec. Litig.*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (same).

The Pentwater Funds have selected Bernstein Litowitz Berger & Grossman LLP, a firm highly experienced in securities class action litigation.  The Court sees no reason why this firm would not adequately represent the class.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motion at Dkt. No. 66.  On the understandings set forth in this Opinion, the Court appoints the Pentwater Funds as lead plaintiff and appoints their counsel, Bernstein Litowitz Berger & Grossman LLP, as class counsel.

The Court therefore DENIES the remaining motions for appointment to lead plaintiff. The Clerk of Court is respectfully directed to terminate Dkt. Nos. 46, 49, 50, 55, 57, 62.

IT IS FURTHER ORDERED that the newly-appointed lead plaintiff shall meet and confer with Defendants on a briefing schedule for a consolidated amended complaint and any motion to dismiss.  The parties shall jointly submit a proposed schedule on ECF no later than January 29, 2021.  If the parties are unable to agree on a proposed schedule, they may file separate proposals.


SO ORDERED.

Dated: January 15, 2021
    New York, New York
                                     LEWIS J. LIMAN
                           United States District Judge