**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TURQUOISE HILL RESOURCES LTD. SECURITIES LITIGATION | Case No. 1:20-cv-08585-LJL<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**THE RIO DEFENDANTS' MOTION TO DISMISS**
**THE SECOND AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.     PLAINTIFFS LACK STANDING TO SUE THE RIO DEFENDANTS .......................... 2

       A.     Plaintiffs' Standing Is Foreclosed By *Nortel* And Its Progeny ............................. 2

       B.     Rio Is Not The "Maker" Of Statements By Turquoise Hill And Its
              Executives ......................................................................................................... 6

       C.     Rio Did Not Participate In A "Scheme" To Defraud Investors ............................ 8

II.    THE COMPLAINT FAILS TO ALLEGE A STRONG INFERENCE OF
       SCIENTER ...................................................................................................... 11

       A.     Plaintiffs' Motive Allegations Are Not Unique And Should Be Rejected ........... 11

       B.     The Complaint Fails To Allege That Any Rio Defendant Knew Their
              Statements Were False Or Misleading ............................................................. 12

III.   PLAINTIFFS DO NOT ALLEGE MATERIALLY FALSE OR MISLEADING
       STATEMENTS ................................................................................................. 19

       A.     The Statements Identified By Plaintiffs Are Not Actionable ............................. 19

       B.     Rio's Statements Were Not Materially False Or Misleading ............................. 22

IV.    PLAINTIFFS HAVE NOT ALLEGED LOSS CAUSATION ..................................... 24

V.     PLAINTIFFS' CONTROL PERSON LIABILITY CLAIM SHOULD BE
       DISMISSED .................................................................................................... 25

CONCLUSION .......................................................................................................... 26

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Adient plc Sec. Litig.*,
  2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) ...................................................................16, 24

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ...................................................................................................9

*In re: Altisource Portfolio Sols., S.A. Sec. Litig.*,
  2015 WL 12001262 (S.D. Fla. Sept. 4, 2015) ....................................................................4, 5

*In re APAC Teleservice, Inc. Sec. Litig.*,
  1999 WL 1052004 (S.D.N.Y. Nov. 19, 1999) .......................................................................20

*In re Aqua Metals, Inc. Sec. Litig.*,
  2019 WL 3817849 (N.D. Cal. Aug. 14, 2019) ......................................................................10

*In re Aratana Therapeutics Inc. Sec. Litig.*,
  315 F. Supp. 3d 737 (S.D.N.Y. 2018) ......................................................................17, 20, 21

*Arkansas Teacher Ret. Sys. v. Bankrate, Inc.*,
  18 F. Supp. 3d 482 (S.D.N.Y. 2014) ....................................................................................25

*In re Banco Bradesco S.A. Sec. Litig.*,
  277 F. Supp. 3d 600 (S.D.N.Y. 2017) ..................................................................................12

*In re Bank of America AIG Disclosure Sec. Litig.*,
  980 F. Supp. 2d 564 (S.D.N.Y. 2013) ..................................................................................25

*In re Barrick Gold Sec. Litig.*,
  2015 WL 1514597 (S.D.N.Y. Apr. 1, 2015) .........................................................................21

*Blythe v. Deutsche Bank AG*,
  399 F. Supp. 2d 274 (S.D.N.Y. 2005) ...................................................................................6

*Boston Ret. Sys. v. Alexion Pharms., Inc.*,
  2021 WL 3675180 (D. Conn. Aug. 19, 2021) ........................................................................9

*In re Bristol–Myers Squibb Co. Sec. Litig.*,
  586 F. Supp. 2d 148 (S.D.N.Y. 2008) ..................................................................................11

*Budhani v. Monster Energy Co.*,
  2021 WL 5761902 (S.D.N.Y. Dec. 3, 2021) ...........................................................................3

*Chill v. Gen. Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996) ................................................................................................12

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
  957 F. Supp. 2d 277 (S.D.N.Y. 2013) ..................................................................................20

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
  540 F. Supp. 2d 464 (S.D.N.Y. 2008) ..................................................................................18

*City of North Miami Beach Police Officers' and Firefighters' Ret. Plan v. National*
   *General Holdings Corp.*,
   2021 WL 212337 (S.D.N.Y. Jan. 21, 2021) ................................................................18

*City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*,
   875 F. Supp. 2d 359 (S.D.N.Y. 2012) .......................................................................20

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
   2020 WL 3026564 (D.N.J. June 5, 2020) ..............................................................9, 11

*Collier v. ModusLink Glob. Sols., Inc.*,
   9 F. Supp. 3d 61 (D. Mass. 2014) ...............................................................................18

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) .......................................................................................12

*In re EDAP TMS S.A. Sec. Litig.*,
   2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015) ..........................................................21

*In re Eletrobras Sec. Litig.*,
   245 F. Supp. 3d 450 (S.D.N.Y. 2017) .......................................................................11

*In re EZCorp., Inc. Sec. Litig.*,
   181 F. Supp. 3d 197 (S.D.N.Y. 2016) .......................................................................16

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
   2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018) ..........................................................16

*Fogel v. Wal-Mart de México SAB de CV*,
   2017 WL 751155 (S.D.N.Y. Feb. 27, 2017) .............................................................15

*Frankfurt-Trust Inv. Luxemburg AG v. United Tech. Corp.*,
   336 F. Supp. 3d 196 (S.D.N.Y. 2018) .......................................................................13

*Frederick v. Mechel OAO*,
   475 Fed.Appx. 353 (2d Cir. 2012) .............................................................................17

*Freudenberg v. E*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010) .......................................................................16

*Ga. Firefighters Pension Fund v. Anadarko Petroleum Corp.*,
   514 F. Supp. 3d 942 (S.D. Tex. 2021) ........................................................................9

*In re Galena Biopharma, Inc. Sec. Litig.*,
   117 F. Supp. 3d 1145 (D. Or. 2015) ......................................................................6, 11

*Garber v. Legg Mason, Inc.*,
   537 F. Supp. 2d 597 (S.D.N.Y. 2008) .......................................................................13

*Geoffrey A. Orley Revocable Trust U/A/D 1/26/2000 v. Genovese*,
   2020 WL 611506 (S.D.N.Y. Feb. 7, 2020) .................................................................9

*In re Global Crossing, Ltd. Sec. Litig.*,
   2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005) ............................................................25

*In re Gold Res. Corp. Sec. Litig*,
   776 F.3d 1103 (10th Cir. 2015) .................................................................................19

*Gray v. Wesco Aircraft Holdings, Inc.*,
    454 F. Supp. 3d 366 (S.D.N.Y. 2020) ...................................................................20

*Gregory v. ProNAi Therapeutics Inc.*,
    297 F. Supp. 3d 372 (S.D.N.Y. 2018) ...................................................................21

*Harbinger Capital Partners LLC v. Deere & Co.*,
    632 Fed. App'x 653 (2d Cir. 2015) ................................................................3, 4, 5

*Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*,
    422 F. Supp. 3d 821 (S.D.N.Y. 2019) ...................................................................22

*Hensley v. IEC Electronics Corp.*,
    2014 WL 4473373 (S.D.N.Y. Sept. 11, 2014) .......................................................16

*Hering v. Rite Aid Corp.*,
    331 F. Supp. 3d 412 (M.D. Pa. 2013).......................................................................6

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) ..........................................................25

*In re Initial Pub. Offering Sec. Litig.*,
    399 F. Supp. 2d 261 (S.D.N.Y. 2005) ...................................................................24

*IOP Cast Iron Holdings, LLC v. J.H. Whitney Cap. Partners, LLC*,
    91 F. Supp. 3d 456 (S.D.N.Y. 2015) .......................................................................6

*Jackson v. Abernathy*,
    960 F.3d 94 (2d Cir. 2020) .................................................................13, 14, 15, 18

*Jackson v. Halyard Health, Inc.*,
    2018 WL 1621539 (S.D.N.Y. Mar. 30, 2018)........................................................14

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) .................................................................................6, 7, 8, 9

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) ...................................................................................12

*Kasilingam v. Tilray*,
    2021 WL 4429788 (S.D.N.Y. Sept. 27, 2021) .......................................................11

*Klein v. Altria Grp. Inc.*,
    525 F. Supp. 3d 638 (E.D. Va. 2021) ...............................................................5, 11

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) ...................................................................................24

*LightSquared Inc. v. Deere & Co.*,
    2015 WL 585655 (S.D.N.Y. Feb. 5, 2015) ..............................................................3

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
    2021 WL 517934 (S.D.N.Y. Feb. 10, 2021) .........................................................14

*Martin v. Quartermain*,
    732 Fed. App'x 37 (2d Cir. 2018) .........................................................................19

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
    164 F. Supp. 3d 568 (S.D.N.Y. 2016) ..................................................................8

*Menaldi v. Och–Ziff Cap. Mgmt. Grp. LLC*,
    277 F. Supp. 3d 500 (S.D.N.Y. 2017) ................................................................10

*Menkes v. Stolt-Nielsen S.A.*,
    2005 WL 3050970 (D. Conn. Nov. 10, 2005) ....................................................15

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*,
    2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) ......................................................4

*In re Micro Focus Int'l Plc Sec. Litig.*,
    2020 WL 5817275 (S.D.N.Y. Sept. 29, 2020) ...................................................20

*In re Mindbody, Inc. Sec. Litig.*,
    489 F. Supp. 3d 188 (S.D.N.Y. 2020) ..................................................................9

*Moshell v. Sasol Ltd.*,
    481 F. Supp. 3d 280 (S.D.N.Y. 2020) ................................................................20

*N.Y. City Emps. Ret. Sys. v. Berry*,
    616 F. Supp. 2d 987 (N.D. Cal. 2009) ................................................................11

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
    455 F. App'x 10 (2d Cir. 2011) ..........................................................................18

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ...............................................................................13

*In re NYSE Specialists Sec. Litig.*,
    503 F.3d 89 (2d Cir. 2007) ...................................................................................5

*Oklahoma Police Pension Fund and Ret. Sys. v. Teligent, Inc.*,
    2020 WL 3268531 (S.D.N.Y. June 17, 2020) ....................................................14

*Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund*,
    575 U.S. 175 (2015) ............................................................................................21

*Ontario Pub. Serv. Emp. Union Pension Trust Fund v. Nortel Networks Corp.*,
    369 F.3d 27 (2d Cir. 2004) ..........................................................................*passim*

*Pirnik v. Fiat Chrysler Autos., N.V.*,
    2016 WL 5818590 (S.D.N.Y. Oct. 5, 2016) .......................................................18

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010) ................................................................11

*In re Pretium Res. Inc. Sec. Litig.*,
    256 F. Supp. 3d 459 (S.D.N.Y. 2017) ................................................................12

*Prod. Res. Grp., L.L.C. v. Stonebridge Partners Equity Fund, L.P.*,
    6 F. Supp. 2d 236 (S.D.N.Y. 1998) ......................................................................6

*In re Puda Coal Sec. Inc. Litig.*,
    30 F. Supp. 3d 261 (S.D.N.Y. 2014) ....................................................................7

*Puddu v. 6D Glob. Techs.*,
Inc., 2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021)............................................................7, 9

*In re Rockwell Medical, Inc. Sec. Litig.*,
2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018)...............................................................17, 18

*In re Salix Pharms., Ltd.*,
2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) .......................................................................18

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996) ..................................................................................................14

*In re Sanofi Sec. Litig.*,
155 F. Supp. 3d 386 (S.D.N.Y. 2016) ..................................................................................18

*Schaffer v. Horizon Pharma PLC*,
2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) .........................................................................17

*Schnall v. Annuity and Life Re (Holdings) Ltd.*,
2004 WL 231439 (D. Conn. Feb. 4, 2004)...........................................................................12

*SEC v. Rio Tinto PLC*,
2021 WL 818745 (S.D.N.Y. Mar. 3, 2021)............................................................................9

*SEC v. SeeThruEquity, LLC*,
2019 WL 1998027 (S.D.N.Y. Apr. 26, 2019) ........................................................................9

*SEC v. Sequential Brands Grp., Inc.*,
2021 WL 4482215 (S.D.N.Y. Sept. 30, 2021).......................................................................9

*SEC v. Winemaster*,
529 F. Supp. 3d 880 (N.D. Ill. 2021).....................................................................................9

*Semerenko v. Cendant Corp.*,
223 F.3d 165 (3d Cir. 2000) ..................................................................................................5

*In re Smith Barney Transfer Agent Litig.*,
884 F. Supp. 2d 152 (S.D.N.Y. 2012) ..................................................................................25

*STMicroelectronics v. Credit Suisse Grp.*,
775 F. Supp. 2d 525 (E.D.N.Y. 2011) ..................................................................................25

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
552 U.S. 148 (2008) .................................................................................................5, 9, 10

*In re Synchrony Fin. Sec. Litig.*,
988 F.3d 157 (2d Cir. 2021)..................................................................................................20

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
531 F.3d 190 (2d Cir. 2008) .................................................................................................13

*In re Teva Sec. Litig.*,
2021 WL 1197805 (D. Conn. Mar. 30, 2021) ........................................................................9

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
195 F. Supp. 3d 528 (S.D.N.Y. 2016) ...................................................................................7

*In re Vivendi Universal, S.A. Sec. Litig.*,
    2004 WL 876050 (S.D.N.Y. Apr. 22, 2004) .......................................................................20

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
    845 F.3d 384 (8th Cir. 2016) ...........................................................................................11

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
    504 F. Supp. 3d 224 (S.D.N.Y. 2020) .................................................................................7

## <u>Statutory Authorities</u>

15 U.S.C. § 77o .........................................................................................................................25

15 U.S.C. § 78t ...........................................................................................................................25

15 U.S.C. § 78u-4(b)(2).............................................................................................................11

Defendants Rio Tinto plc and Rio Tinto Limited (together, "Rio"), Rio Tinto International Holdings Limited ("RTIH"), Jean-Sébastien Jacques and Arnaud Soirat (collectively, the "Rio Defendants") respectfully submit this reply memorandum of law in support of their Motion to Dismiss the Second Amended Complaint (Dkt. 131) ("Rio Mot.").

## PRELIMINARY STATEMENT

Despite an amendment, Plaintiffs' Second Amended Complaint suffers from the same fatal flaw as the first:  It seeks to broadly expand the scope of liability under the Exchange Act to encompass non-issuers.  This Court should find that Plaintiffs—who purport to represent a class of investors who purchased Turquoise Hill[1] stock—lack standing to sue the Rio Defendants for statements made in Rio's own disclosures.  The Court should likewise reject Plaintiffs' attempt to hold Rio and RTIH liable as the "makers" of statements contained in disclosures made by Turquoise Hill and its executives, as neither Rio nor RTIH had "ultimate authority" over Turquoise Hill's disclosures to investors.

Even assuming *arguendo* that Plaintiffs have standing, however, the Complaint fails to allege any facts raising a strong inference that the Rio Defendants knew statements about Oyu Tolgoi were false when made and intended to mislead investors.  While Plaintiffs' Opposition is full of assertions that "Defendants knew" or "were told" certain information regarding the project's schedule and budget, the Complaint itself alleges no specific information received by any Rio Defendant that conferred knowledge that Oyu Tolgoi's schedule and budget were unattainable and were contrary to Defendants' public statements.  Instead, Plaintiffs rely on vague references to reports that "would have" contained certain information.  Plaintiffs' failure to specifically allege what information was contained in those reports, when those reports were given to Rio Defendants,

---

[1]    Unless otherwise defined herein, capitalized terms have the meanings set forth in the Rio Defendants' Motion to Dismiss (Dkt. 131).

or how and when information was "relayed" or "passed on" to Rio executives Jacques and Soirat is fatal to Plaintiffs' claims.

While the issues of standing and scienter provide two independent reasons to dismiss Complaint in its entirety, it should also be dismissed for failing to plead that Rio made any materially misleading statements. The statements identified by Plaintiffs are classic forward-looking statements protected by the PSLRA's safe harbor, are statements of opinion, are too immaterial to be relied upon by investors, and simply were not false or misleading in light of Rio's disclosures to the market.

For the foregoing reasons and those set forth in the Rio Defendants' Motion to Dismiss, the Rio Defendants respectfully request that the claims against them be dismissed.

## ARGUMENT

## I.    PLAINTIFFS LACK STANDING TO SUE THE RIO DEFENDANTS

This Court can—and should—dismiss the claims against the Rio Defendants because Plaintiffs—who purchased stock in Turquoise Hill, *not* Rio—do not have standing to sue the Rio Defendants. The Rio Defendants are neither liable to Plaintiffs for Rio's statements nor as the "maker" of statements contained in disclosures made by Turquoise Hill and its executives.

### A.    Plaintiffs' Standing Is Foreclosed By *Nortel* And Its Progeny

Plaintiffs—shareholders in a legally separate, public company other than Rio—are barred from pursuing 10b-5 claims against the Rio Defendants. Rio Mot. 9-14. "Stockholders do not have standing to sue under Section 10(b) and Rule 10b–5 when the company whose stock they purchased is negatively impacted by the material misstatement of another company, whose stock they do not purchase," *Ontario Pub. Serv. Emp. Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 34 (2d Cir. 2004), and Plaintiffs provide no compelling reason to deviate from

this rule.[2]

Plaintiffs' core argument is that *Nortel* does not bar all third-party security claims, and Rio's "substantial relationship" with Turquoise Hill is sufficient to confer standing. Opp. 24-33. However, the case law is clear that while not all third-party securities claims are barred, there must be a much closer link between Rio and Turquoise Hill securities than what Plaintiffs have alleged.[3]

For instance, the Second Circuit has already rejected assertions of standing where investors in Company A sued Company B based on Company B's misstatements regarding a key product sold by Company A. *See Harbinger Capital Partners LLC v. Deere & Co.*, 632 Fed. App'x 653, 656 (2d Cir. 2015).[4] Despite the fact that the alleged misstatements were about the issuer and its product, this did not create a sufficient connection between the alleged misstatements and plaintiffs' investments to confer standing. *Id.* This Court recently reaffirmed *Harbinger*'s holding, rejecting claims brought by shareholders of one company against a company it acquired for alleged misrepresentations because "plaintiffs never purchased or sold [acquired company's] securities,

---

[2] Plaintiffs purport to cite cases where parent corporations have been held liable for "making fraudulent statements about a controlled subsidiary like TRQ." Opp. 25. In fact, the question in each case was whether the parent was liable as the "maker" of statements made by a subsidiary, which is addressed *infra* at § I(B).

[3] Plaintiffs assert for the first time that Rio was "the sole source of information about TRQ's business and operations for both TRQ and investors" (Opp. 24-25) and that "TRQ had no other source of information about its own mine" (*id.* at 27). Despite citing over one hundred paragraphs of the Complaint (*id.*), this allegation is nowhere to be found. Rather, Plaintiffs explicitly acknowledge that Turquoise Hill "had equal or…even greater access to information about OT." Opp. 71-72, 92. Plaintiffs' opposition cannot amend their Complaint. *Budhani v. Monster Energy Co.*, 2021 WL 5761902, at *3 (S.D.N.Y. Dec. 3, 2021). Even if the Complaint did contain such allegations, Plaintiffs cite no authority for the proposition that the sharing of information between companies confers standing for investors of one company to sue another.

[4] Plaintiffs attempt to distinguish this case as involving omissions rather than misstatements. Opp. 29. That is incorrect, as the case involved alleged "false statements" *and* "misrepresentations." *LightSquared Inc. v. Deere & Co.*, 2015 WL 585655, at *13-14 (S.D.N.Y. Feb. 5, 2015). Regardless, Plaintiffs do not articulate why misstatements would warrant a different outcome from a case based on omission when the key question is standing.

3

never stood to be contingent direct shareholders in [the acquired company] (as opposed to IFF that became the sole shareholder), and never owned a derivative security linked to the ownership value of [the acquired company]." *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at *32 (S.D.N.Y. Mar. 30, 2021) ("*IFF*").[5]

Relying on *Nortel* and *Harbinger*, the Southern District of Florida has likewise rejected claims of standing premised on an even closer relationship than that alleged between Rio and Turquoise Hill. *See In re: Altisource Portfolio Sols., S.A. Sec. Litig.*, 2015 WL 12001262, at *4 (S.D. Fla. Sept. 4, 2015). In *Altisource*, the two companies at issue were "allegedly operated as one company and were founded and run by [a defendant]." *Id.* Despite this close relationship between the companies, the court dismissed the action for lack of standing.

Plaintiffs strain to distinguish the facts of this case from the clear authority cited in Rio's Motion by arguing that Rio's statements were not "self-referential" or about its business relationships but rather were related to Turquoise Hill and Oyu Tolgoi. Opp. 30. However, the statements at issue in both *Harbinger* and *Altisource* also directly concerned the issuers—the fact that Rio made statements about Oyu Tolgoi and Turquoise Hill does not confer standing for Plaintiffs to sue Rio. *See Harbinger*, 632 Fed. App'x at 656 (defendants' alleged misstatements and omissions "directly concerned" the issuer and that company's main product); *Altisource*, 2015 WL 12001262, at *4 (Non-issuer defendant allegedly "made statements directly to Altisource

---

[5] Plaintiffs endeavor to distinguish *IFF* (Opp. 31, n.3), but the fact that the court dismissed the complaint on multiple independent grounds does not turn the court's standing discussion into dicta. Nor is Plaintiffs' guess that "plaintiffs would have had standing had the executives of the acquired third-party defendant made their statements after the subsidiary was acquired" (*id.*) founded in the decision. Like plaintiffs in *IFF*, Plaintiffs here are not suing as Rio shareholders, never stood to be shareholders in Rio via their ownership of Turquoise Hill securities, and are not suing based on their ownership of securities directly linked to the ownership value of Rio. *IFF*, 2021 WL 1199035, at *32.

shareholders about Altisource . . . .").

The cases relied on by Plaintiffs do not establish any applicable exception to *Nortel*'s rule. For instance, Plaintiffs cite *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 102 (2d Cir. 2007), which identified "underwriters, brokers, bankers, and non-issuer sellers" as parties whom shareholders may have standing to sue. The application and limits of *Nortel* have been further developed since *NYSE*, and Plaintiffs' claims are not the type that *NYSE* meant to protect. Plaintiffs also cite *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008), but ignore its holding, which rejected a 10b-5 claim by shareholders against a separate company.[6]

Plaintiffs' heavy reliance on *Semerenko v. Cendant Corp.,* 223 F.3d 165 (3d Cir. 2000) is also misplaced. *Cendant* involved a tender offer, and the Second Circuit in *Nortel* explicitly considered *Cendant* and rejected it because it was based on the "in connection with" requirement, and "the opinion never explicitly addressed the standing requirement of Rule 10b–5." *Nortel*, 369 F.3d 27, 33. The Second Circuit further distinguished *Cendant* because plaintiffs' stock would be exchanged for defendants' stock, and thus there was "a direct link between the value of [the two companies'] stock that is not present in this case." *Nortel*, 369 F.3d 27, 34.

Also unavailing is Plaintiffs' reliance on *Klein v. Altria Group, Inc.*, 525 F. Supp. 3d 638 (E.D. Va. 2021), as this Court has already rejected *Klein*, noting:

> *Klein* failed to engage with the continuing vitality of *Nortel* following *Stoneridge*, as recognized in *Harbinger*. Moreover, whereas the Eastern District of Virginia court merely found JUUL's reliance on *Nortel* to be "unpersuasive," this Court must follow *Nortel*'s precedent as binding authority.

*IFF*, 2021 WL 1199035, at *31 (citations omitted). Plaintiffs' additional authority similarly fails.[7]

---

[6] "*Nortel*'s holding remains in effect after *Stoneridge* . . . ." *IFF*, 2021 WL 1199035, at *31.

[7] For instance, this court has recognized that *Hering v. Rite Aid Corp.*, 331 F. Supp. 3d

Plaintiffs' lack of standing to assert their claims itself warrants dismissal.[8]

## B.     Rio Is Not The "Maker" Of Statements By Turquoise Hill And Its Executives

In the alternative, Plaintiffs continue to argue that this Court should hold Rio and RTIH liable for statements made by Turquoise Hill, a legally separate entity responsible for its own disclosures.  Opp. 34-36.[9]  However, the Supreme Court has made clear that the only "maker of a statement is the person or entity with ***ultimate authority*** over the statement, including its content and whether and how to communicate it." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142, 143 n.6 (2011) (emphasis added).  Plaintiffs have not alleged—and cannot allege— that Rio had "ultimate authority" over Turquoise Hill's disclosures.  Rio Mot. 15-18.

Plaintiffs' argument is twofold:  (1) that Rio and RTIH had influence over Turquoise Hill via its ownership interest in the company and its influence over the election of board members; and (2) that Rio and RTIH had the ability to review and comment on Turquoise Hill's public filings

---

412 (M.D. Pa. 2013) is "of little persuasive value" because it "never analyzed statutory standing." *IFF*, 2021 WL 1199035, at *31 n.31.  Likewise unhelpful, *IOP Cast Iron Holdings, LLC v. J.H. Whitney Cap. Partners, LLC*, 91 F. Supp. 3d 456, 473-74 (S.D.N.Y. 2015) involved a parent company selling issuer's stock to plaintiffs.  Plaintiffs also incorrectly cite *In re Galena Biopharma, Inc. Securities Litigation*, 117 F. Supp. 3d 1145, 1184, 1191 (D. Or. 2015), which did not sustain a 10(b)-5(b) claim against a non-issuer investor relations firm because it was not the "maker" of the relevant statements.

[8]   Plaintiffs have also failed to satisfy the "in connection with" requirement because none of the Rio Defendants' alleged misstatements were made "in connection with" the sale or purchase of Turquoise Hill securities.  Despite citing to a handful of cases (Opp. 33, n.5), alleging they stand for the proposition that statements about an issuer can satisfy the requirement, not a single one of those cases discusses the "in connection with" requirement.  Here, Rio's statements "did not pertain to the value, nature or investment characteristics of the [Turquoise Hill] securities at issue." *Prod. Res. Grp., L.L.C. v. Stonebridge Partners Equity Fund, L.P.*, 6 F. Supp. 2d 236, 240 (S.D.N.Y. 1998) (dismissing claims brought by shareholders of one company against another). Nor were Rio's statements "integral" in inducing Plaintiffs to purchase Turquoise Hill stock.  *See Blythe v. Deutsche Bank AG*, 399 F. Supp. 2d 274, 279 (S.D.N.Y. 2005).  This is an independent ground justifying dismissal.

[9]   In any event, Turquoise Hill's statements were not false or misleading.  *See* Turquoise Hill Defendants' Motion to Dismiss the Complaint (Dkt. 133) ("TRQ Mot.") at 33-42.

and thus had influence over the content.  Opp. 34-36.  Even if established, neither of these would turn Rio or RTIH into the "maker" of Turquoise Hill's statements.[10]

While Plaintiffs emphasize Rio and RTIH's ownership interest in Turquoise Hill and influence over the election of board members, courts have rejected this as insufficient to hold a separate entity liable for another's statements.[11]  *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 262 (S.D.N.Y. 2020) (ownership of "a large stake in [issuer]" and placing board members "falls short of demonstrating that [non-issuer] has 'ultimate authority' to make statements.").  This theory of liability "based on a relationship of influence" was explicitly rejected by the Supreme Court in *Janus* because such liability resembles a broad control person liability, and "would read into Rule 10b-5 a theory of liability similar to—but broader in application than . . . what Congress has already created expressly elsewhere."  564 U.S. at 146.

Plaintiffs also rely on a contract provision requiring that Turquoise Hill provide RTIH "reasonable opportunity to review and comment" on its filings and that Turquoise Hill's statements

---

[10]    The precedent relied on by Plaintiffs involves significantly more authority over the relevant disclosures than Rio or RTIH had over Turquoise Hill's disclosures.  *See In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 540-41 (S.D.N.Y. 2016) (defendant signed registration statements and prospectuses throughout the class period, approved offering documents, and was responsible for substantive revisions); *Puddu v. 6D Glob. Techs., Inc.*, 2021 WL 1198566, at *1, 7-9 (S.D.N.Y. Mar. 30, 2021) ("unofficial CEO" of defendant company "reviewed SEC filings, provided instructions on what to include and not include, and participated in conference calls concerning the preparation of 6D's 10-Ks and 10-Qs"); *In re Puda Coal Sec. Inc. Litig.*, 30 F. Supp. 3d 261, 267 (S.D.N.Y. 2014) (underwriters "actively participated in creating the Prospectus, drafting it jointly with Puda management," underwriters' "sign off" was necessary for to the publication of the prospectus, "[t]he front cover of the prospectus prominently displayed both underwriters' names," one of the underwriters "solicited investors for the offering and distributed the prospectus to investors," and the prospectus specifically "provided that the underwriters were authorized to make representations about Puda shares").

[11]    Plaintiffs do not even attempt to address the fact that RTIH has only a minority interest in Turquoise Hill, and Rio Tinto Limited has **no** ownership interest in Turquoise Hill.  Plaintiffs have thus failed to allege how RTIH or Rio Tinto Limited could have been the "ultimate authority" of Turquoise Hill's statements.  *See* Rio Mot. 17 n.17.

should be "consistent with the information provided by [RTIH]."  SAC ¶ 53.  Neither of these provisions makes the Rio Defendants the "ultimate authority" over Turquoise Hill's statements.

*First*, while Plaintiffs assert in their Opposition that Rio "actually exercised its contractual control over TRQ's public statements" (Opp. 35), none of the paragraphs cited by Plaintiffs alleges that Rio or RTIH ever made a single comment on or edit to any Turquoise Hill disclosure.  *See* SAC ¶¶ 53-56, 450.  *Second*, even if Plaintiffs had alleged that Rio or RTIH were actually involved in preparing Turquoise Hill's disclosures, *Janus* is clear that such involvement is legally insufficient to hold Rio liable as the maker of the statement.  *Janus*, 564 U.S. at 142, 143 n.6, 148 (an entity that was "significantly involved in preparing" the disclosures was not the "maker" of the statement where issuer had ultimate authority).  *Third*, the requirement that Turquoise Hill's statements be "consistent with" information provided by RTIH is insufficient.  Even if RTIH provided inaccurate information to Turquoise Hill—which it did not—*Janus* expressly rejects liability for "a person who provides the false or misleading information that another person then puts into the statement."  *Janus*, 564 U.S. at 144-45 (quotations omitted).

Because Turquoise Hill had "ultimate authority" over its own disclosures, neither Rio nor RTIH can be liable for Turquoise Hill's alleged misstatements or omissions.

### C.    Rio Did Not Participate In A "Scheme" To Defraud Investors

Plaintiffs' final effort to hold Rio liable for the statements of Turquoise Hill is through the allegation that Rio provided false information to Turquoise Hill, which Turquoise Hill then disseminated to its investors (Opp. 37).  As well as being factually incorrect, Plaintiffs' allegation is legally insufficient to state a claim and should be dismissed.

*First*, Plaintiffs have failed to plead scienter, which is fatal for scheme liability.  *See infra* at § II; *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 577 (S.D.N.Y. 2016).

*Second*, Plaintiffs do not identify a single case sustaining a scheme liability claim where

one entity allegedly provided information to a separate entity, which then disseminated the information to its investors. In fact, courts have held the opposite—providing information to the entity that ultimately disseminates it does not create liability under 10b-5(a) or (c). *See Geoffrey A. Orley Revocable Trust U/A/D 1/26/2000 v. Genovese*, 2020 WL 611506, at *8 (S.D.N.Y. Feb. 7, 2020) (attorney who provided language and assistance in drafting document disseminated to investors could not be liable under sections 10-b5(a) or (c) because plaintiffs "may not take advantage of any additional liability *Lorenzo* may have carved out of *Janus*")[12]; *see also SEC v. Rio Tinto PLC*, 2021 WL 818745, at *2-3 (S.D.N.Y. Mar. 3, 2021).[13]

Even post-*Lorenzo*, courts have rejected claims are centered on misstatements and omissions. *See In re Teva Sec. Litig.*, 2021 WL 1197805, at *6 (D. Conn. Mar. 30, 2021) (distinguishing *Lorenzo* and dismissing claims because "*Lorenzo* did not address whether a Defendant could be held primarily liable under all three subsections of Rule 10b-5 for a series of misstatements and omissions"); *In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 216

---

[12]    Plaintiffs incorrectly argue that *Janus* applied only to 10b-5(b) claims (Opp. 37 n.8), but Janus discusses Rule 10b-5 generally and cites *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 165 (2008) and its scheme liability holding. *Janus*, 564 U.S. at 142.

[13]    Plaintiffs' authorities are all distinguishable. In some cases, defendants did not move to dismiss scheme liability claims. *See Ga. Firefighters Pension Fund v. Anadarko Petroleum Corp.*, 514 F. Supp. 3d 942, 951 (S.D. Tex. 2021); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021). In others, the defendants themselves disseminated the allegedly false information to the market. *See SEC v. SeeThruEquity, LLC*, 2019 WL 1998027, at *5 (S.D.N.Y. Apr. 26, 2019) (defendants made false or misleading statements themselves online). Others involve the conduct of the issuer or an employee of the issuer who was involved in the scheme to disseminate the false information but could not be the "maker" of the statements. *See SEC v. Sequential Brands Grp., Inc.*, 2021 WL 4482215, at *6 (S.D.N.Y. Sept. 30, 2021) (issuer used deceptive goodwill calculation); *Boston Ret. Sys. v. Alexion Pharms., Inc.*, 2021 WL 3675180 (D. Conn. Aug. 19, 2021) (CEOs of issuer company participated in scheme to provide false information to the market); *SEC v. Winemaster*, 529 F. Supp. 3d 880, 908 (N.D. Ill. 2021) (CEO, not vice-president or general manager, was "maker" of misstatements in SEC filings); *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564, at *17 (D.N.J. June 5, 2020); *Puddu*, 2021 WL 1198566, at *7-9.

(S.D.N.Y. 2020) (dismissing scheme liability claim "because it is indistinguishable from the misstatements and omissions alleged under [Section 10(b)]").[14]

*Third*, in any event, Plaintiffs have failed to plead that Rio or Turquoise Hill disseminated false information to investors.  *See infra* at § III.

*Fourth*, Plaintiffs have not adequately pleaded that any Turquoise Hill investor relied on Rio's alleged conduct rather than Turquoise Hill's public statements.[15]  Rio's alleged misconduct did not make it "necessary or inevitable" that Turquoise Hill—a completely separate entity with direct access to information about its own asset, Oyu Tolgoi—would disseminate allegedly false or misleading information.  *See Stoneridge*, 552 U.S. at 161.  Even taking as true Plaintiffs' allegation that Rio provided misleading information to Turquoise Hill, as Plaintiffs acknowledge, Turquoise Hill "***had equal or…even greater access to information about OT***" (Opp. 71) (emphasis added) and could have used that access to acquire information to draft its own disclosures.  Rio's conduct certainly did not make it "inevitable" that Turquoise Hill would issue misleading statements, especially considering the lack of any allegation that Rio ever revised or had input into Turquoise Hill's disclosures, and any alleged conduct by Rio was "too remote to satisfy the requirement of reliance."  *Stoneridge*, 552 U.S. at 161; *see also Menaldi v. Och–Ziff Cap. Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 518 (S.D.N.Y. 2017).[16]

---

[14]    As set forth in Rio's motion, Plaintiffs do not adequately plead any claims of additional deceptive conduct such as the termination of whistleblowers or destruction of documents.  *Id.* at 44.  In any event, a scheme liability claim premised on this conduct still fails for the reasons above.

[15]    While Plaintiffs argue that reliance is established by the fraud-on-the-market presumption (Opp. 39), the Supreme Court in *Stoneridge* declined to apply this presumption where the defendant did not actually disseminate false information to investors.  552 U.S. at 160-64.

[16]    Plaintiffs' authorities either do not discuss reliance in the scheme liability context at all, *see Altria*, 525 F. Supp. 3d at 665; *In re Aqua Metals, Inc. Sec. Litig.*, 2019 WL 3817849, at *9 (N.D. Cal. Aug. 14, 2019), involved the conduct of an employee of the issuing company or the issuer itself, which did make false disclosures necessary or inevitable, *see Cognizant*, 2020 WL

## II.     THE COMPLAINT FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER

The Complaint should be dismissed for the independent reason that its allegations are insufficient to create a strong inference that any Rio Defendant knew their statements were false and intended to mislead investors.  15 U.S.C. § 78u-4(b)(2).  Plaintiffs attempt to cobble together allegations based on conversations between non-Defendants and vague descriptions of "issues" at Oyu Tolgoi, but what is lacking in the Complaint—and Plaintiffs' Opposition—is any allegation that Jacques or Soirat received specific information showing the project's budget or schedule were unattainable while making public statements to the contrary.  Put simply, "Plaintiffs should, but do not, provide specific instances in which Defendants received information that was contrary to their public declarations."  *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010).

While Plaintiffs allege that Oyu Tolgoi was ultimately not able to adhere to its original schedule or budget, "being wrong—even embarrassingly so—is not the same as being dishonest." *Kasilingam v. Tilray*, 2021 WL 4429788, at *11 (S.D.N.Y. Sept. 27, 2021).

### A.     Plaintiffs' Motive Allegations Are Not Unique And Should Be Rejected

Plaintiffs allege that Jacques and Soirat had personal motives to commit fraud, namely: (1) to avoid renegotiating terms of certain agreements with the Mongolian government; (2) to avoid liability in ongoing criminal investigations; and (3) because Jacques and Soirat "staked their careers" on the success of the mine.  Opp. 84-85.  Plaintiffs do not contest that "[m]otives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must

---

3026564, at *19, 21-22; *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 845 F.3d 384, 394 (8th Cir. 2016); *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 472 (S.D.N.Y. 2017); *N.Y. City Emps. Ret. Sys. v. Berry*, 616 F. Supp. 2d 987, 997-98 (N.D. Cal. 2009); *In re Bristol–Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 170 (S.D.N.Y. 2008), or involved the individual who directly disseminated the false information, *see In re Galena*, 117 F. Supp. 3d at 1198.

assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). Courts routinely reject similar motives as indicative of scienter, and the same conclusion is warranted here. *See In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 665 (S.D.N.Y. 2017) (finding insufficient motive "to avoid potential criminal liability [and] prosecution"); *Schnall v. Annuity and Life Re (Holdings) Ltd.*, 2004 WL 231439, at *6 (D. Conn. Feb. 4, 2004) (allegation that defendant's "career was at stake" and motive to maintain financial ratings "are insufficient to give rise to a strong inference of fraudulent intent"); *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (the "motive to maintain the appearance of corporate profitability, or of the success of an investment" does not establish scienter).

**B.    The Complaint Fails To Allege That Any Rio Defendant Knew Their Statements Were False Or Misleading**

The Complaint is also devoid of any factual allegations raising a strong inference that Jacques or Soirat knew that the first drawbell or first sustainable production projections were unattainable, that the project definitively could not be completed within budget, or that any other statements were false or misleading.[17] Rio Mot. 35-45. While Plaintiffs repeatedly rely on general allegations that delays and expenses at Oyu Tolgoi were common knowledge or discussed among non-Defendants, "nowhere in the [Complaint] do Plaintiffs identify with specificity the documents or way in which this contrary information was communicated to Defendants." *In re Pretium Res. Inc. Sec. Litig.*, 256 F. Supp. 3d 459, 481 (S.D.N.Y. 2017).[18] This failure is fatal.[19]

---

[17]    Because Plaintiffs have failed to adequately allege motive and opportunity, the strength of the allegations regarding knowledge of contrary information "must be correspondingly greater." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198-99 (2d Cir. 2009).

[18]    As discussed in the Rio Defendants' Motion to Dismiss, the ICG Report's general statements about what unnamed "Senior Management" must have known cannot establish scienter. Rio Mot. 45 n.35.

[19]    Plaintiffs briefly argue that corporate scienter may be inferred. Opp. 63 n.27. However,

"Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000); *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 615 (S.D.N.Y. 2008) (A plaintiff "needs to specify the internal reports, who prepared them and when, how firm the numbers were or which company officers reviewed them.") (citation omitted).

Plaintiffs emphasize reports that Duffy compiled—which consisted of "comments from Rio Personnel" (SAC ¶ 135)—and allegedly provided to Rio's executive committee. Opp. 67-68. Not only is the Complaint devoid of any allegation of when any Rio Defendant received these reports, *Frankfurt-Trust Inv. Luxemburg AG v. United Tech. Corp.*, 336 F. Supp. 3d 196, 222 (S.D.N.Y. 2018) (dismissing complaint where "[t]here are no descriptions of when these reports would have been provided to the Executive Defendants"), but critically Plaintiffs admit that the reports stopped in 2017 (SAC ¶ 134). The most plausible inference is that if Jacques or Soirat received these compilation of comments in or prior to 2017, Defendants believed that the October 2018 reforecast addressed any concerns raised the year prior.

Plaintiffs' other allegations fare no better, as the Complaint lacks any description of any other specific contrary information relayed to Jacques or Soirat or when. *See*, *e.g.*, SAC ¶ 84 ("progress reports" delivered to Oyu Tolgoi managers without allegations that reports were ever distributed to Soirat or Jacques), ¶¶ 87-88 (Shaft 2 discussed with senior Oyu Tolgoi leadership but not Soirat or Jacques), ¶ 94 (generally alleging that "senior management" was aware of delays

---

corporate scienter requires "facts [which] create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). Neither the Opposition nor the Complaint identifies a single individual that acted with fraudulent intent that may be imputed to Rio. *See Abernathy*, 960 F.3d at 99 (affirming dismissal where plaintiff failed to identify "any individual whose scienter may be imputed to the Corporate Defendants").

and cost overruns without identifying any specific reports, when they were distributed, or to whom), ¶ 92 (describing project schedules without any allegation as to their content or that Jacques or Soirat received them), ¶ 277 (allegations that Jacques received TEG/BED reports without allegations of what was contained in such reports or when Jacques received them), ¶ 13 (allegations of a 2017 Broadleaf report without allegations of when it was received by Defendants).

These vague allegations that do not specify the contents of the reports, or if or when any Defendant ever received them, cannot establish a strong inference of scienter.  *See Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 2021 WL 517934, at *5 (S.D.N.Y. Feb. 10, 2021) ("[T]he complaint fails to specify exactly what information was contained in the report or how said information 'contradicted Defendants' public statements,' as is required to show scienter.") (citation omitted); *Jackson v. Halyard Health, Inc.*, 2018 WL 1621539, at *8-9 & n.5 (S.D.N.Y. Mar. 30, 2018), *aff'd Jackson v. Abernathy*, 960 F.3d 94 (2d Cir. 2020) (dismissing complaint where plaintiffs failed to allege defendants "personally received" a damaging report about a subpar product); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812 (2d Cir. 1996) (An "unsupported general claim of the existence of confidential company sales reports that revealed [unfavorable figures] is insufficient to survive a motion to dismiss.").[20] Regardless, Plaintiffs have not identified a single report provided to the Defendants that is alleged to have contained information regarding the project's expenditures.[21]

---

[20]    While not mentioned in the scienter section of Plaintiffs' Opposition, the Complaint does allege that beginning in October 2018, Jacques had access to reports showing development progress at Oyu Tolgoi falling short.  Opp. 44; SAC ¶ 275.  For the reasons set forth in the Rio Defendants' Motion (Rio Mot. 40-41), such reports showing a slower development schedule than planned does not equate to knowledge that reaching certain milestones was impossible.  *See, e.g.*, *Oklahoma Police Pension Fund and Ret. Sys. v. Teligent, Inc.*, 2020 WL 3268531, at *12 (S.D.N.Y. June 17, 2020).

[21]    While Plaintiffs cite dozens of paragraphs in an attempt to refute this (Opp. 77), none contain an allegation of a report containing budget information provided directly to Defendants.

Unable to identify any report containing contrary information that Jacques or Soirat received, Plaintiffs instead refer to paragraphs in the Complaint describing communications between non-Defendants, concluding that those non-Defendants must have passed on certain information to Soirat and Jacques. In reality, the Complaint contains no factual basis for Plaintiffs' assertion. While Plaintiffs argue that "Defendants were repeatedly informed in detail about delays and cost overruns at OT" (Opp. 62), the allegations in the Complaint do not describe any relevant direct communications with Soirat or Jacques.[22] *See, e.g.*, SAC ¶ 137 ("Duffy understood that Kirikova **would report what he told her** to Defendant Jacques"), ¶ 271 (Bowley reported cost overruns and delays "***to Kinnell and Fagen***, who relayed them to Defendant Soirat"), *id.* ("Bowley informed ***Kinnell and Fagen*** in writing (who delivered the report to Soirat) . . . ."), ¶ 272 ("Bowley sent emails to Defendant Soirat ***through his gatekeeper, Fagen*** . . . .") (emphases added).

Without allegations as to what specific information was relayed to Jacques or Soirat, when, or how,[23] Plaintiffs' assertion that other Rio employees *must have* relayed information to them is insufficient. *See Menkes v. Stolt-Nielsen S.A.*, 2005 WL 3050970, at *11 (D. Conn. Nov. 10, 2005) ("[P]laintiffs do not allege any facts supporting the conclusion that Cooperman relayed this information to SNSA management."); *Fogel v. Wal-Mart de México SAB de CV*, 2017 WL 751155, at *16 (S.D.N.Y. Feb. 27, 2017) ("Plaintiff invites the Court to speculate that because Vega was responsible for supervising a culpable individual, that individual . . . must have conveyed

---

[22] Plaintiffs misconstrue Rio Defendants' argument. It's not that Jacques or Soirat did not read "email sent by Bowley directly to them or forwarded to them by Fagen" (Opp. 76), but rather that the Complaint never alleges that any specific emails were sent directly to Jacques or Soirat.

[23] There is no allegation that Bowley was copied on any emails from Kinnell or Fagen to Soirat or that he was present when they passed such information on to Soirat. *See Jackson*, 2018 WL 1621539, at *8-9, *aff'd Abernathy*, 960 F.3d 94 (dismissing claim where plaintiffs failed to allege that confidential witnesses "attended meetings with any of the Individual Defendants where the alleged issues were discussed").

information that would make Vega at least reckless not to know of the [misconduct]. The Court declines Plaintiff's invitation, as courts in this Circuit have done consistently.").[24]

Plaintiffs emphasize an alleged May 2018 meeting between Bowley and Soirat. Opp. 70, 75. However, the Complaint only vaguely alleges that "Bowley spoke with Defendant Soirat for an hour in May 2018" regarding "problems facing the expansion." SAC ¶ 144. Bowley claimed he discussed "the factors around strategy, [and] exposure to schedule risk." *Id.* This discussion of "schedule risk" does not equate to Bowley communicating his alleged opinion that the first drawbell and sustainable production dates were unattainable, and Bowley does not claim to have discussed ***anything*** regarding the project's budget. Bowley's speculation that Soirat "seemed to be saying" that he knew there was a "problem with the project" (SAC ¶ 282) is insufficient without identifying exactly what problem Soirat was allegedly aware of. *In re Ferrellgas Partners, L.P., Sec. Litig.*, 2018 WL 2081859, at *19 (S.D.N.Y. Mar. 30, 2018) (rejecting allegations of scienter premised on conversations where complaint failed to "provide specific allegations regarding what was discussed"). In any event, such suppositions cannot create an inference of scienter. *See Hensley v. IEC Electronics Corp.*, 2014 WL 4473373, at *5 n.1 (S.D.N.Y. Sept. 11, 2014) (speculation by confidential witness insufficient).

Even assuming—which this Court should not—that Bowley did discuss delays or cost overruns, the more likely conclusion is that Soirat disagreed with his concerns. *See* Rio Mot. 27, 37, 40; *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *28 (S.D.N.Y. Apr. 2, 2020) (allegations

---

[24] Ignoring this authority, Plaintiffs do not cite a single case permitting an assumption that subordinates passed information to upper management without alleging facts supporting that communication. Rather, much of Plaintiffs' authority relies on direct conversations with defendants, which are lacking here. *See, e.g., Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 198 (S.D.N.Y. 2010) (describing "direct conversations with Individual Defendants [and] meetings at which Individual Defendants were present"); *In re EZCorp., Inc. Sec. Litig.*, 181 F. Supp. 3d 197, 209 (S.D.N.Y. 2016) (similar).

that employees "rais[ed] the flags" insufficient where complaint did not contain details regarding the data, how concerns related to operational issues, or how data made public disclosures false or misleading).

There is also no basis for Plaintiffs' assertion (Opp. 66-67) that the October 2018 re-forecast was meant to conceal the truth rather than announce new developments. Emails allegedly exchanged between Bowley and Fagen regarding the re-forecast (Opp. 66) do not establish that either Jacques or Soirat believed that the re-forecast was inaccurate. Instead, Plaintiffs rely on fraud by hindsight, emphasizing that the re-forecast was later revised. Such an approach should be rejected. *See In re Aratana*, 315 F. Supp. 3d at 761. The far more compelling inference is that Rio Defendants believed that Oyu Tolgoi could achieve sustainable production on the revised timeline, and "upon encountering setbacks and changes . . . timely updated the market." *Id.* at 766.

Unable to identify specific information that Jacques and Soirat had that contradicted their public statements, Plaintiffs rely on a "core operations" theory of scienter, arguing that Oyu Tolgoi—a single project—was so important to Turquoise Hill that the Rio Defendants must have known that the schedule and budget were impossible to adhere to. Opp. 73. This argument fails. Not only has the Second Circuit questioned whether the core operations doctrine has survived the PSLRA[25], but even if the doctrine is valid, it can only "constitute supplementary but not independently sufficient means to plead scienter." *Schaffer v. Horizon Pharma PLC*, 2018 WL 481883, at *12 (S.D.N.Y. Jan. 18, 2018) (citation omitted). Plaintiffs also offer no response to the fatal fact that "there are no particularized allegations whatsoever in the [Complaint] regarding what specific portion of [Rio]'s business depended on [Oyu Tolgoi]. Accordingly, Plaintiffs cannot rely

---

[25]    *In re Rockwell Medical, Inc. Sec. Litig.*, 2018 WL 1725553, at *14 (S.D.N.Y. Mar. 30, 2018) (citing *Frederick v. Mechel OAO*, 475 Fed.Appx. 353, 356 (2d Cir. 2012)).

on the core operations doctrine to raise an inference of scienter." *In re Rockwell*, 2018 WL 1725553, at *14; *see Abernathy*, 960 F.3d at 99 ("naked assertion" that product at issue was "key" insufficient to raise strong inference of scienter).[26]

Similarly, Plaintiffs' allegations that Soirat and Jacques were closely involved in the project are insufficient to show they knew the sustainable production and first drawbell dates or budget were impossible. *See City of North Miami Beach Police Officers' and Firefighters' Ret. Plan v. National General Holdings Corp.*, 2021 WL 212337, at *10 (S.D.N.Y. Jan. 21, 2021) ("alleging that executive defendants are 'closely involved' in running their business is not enough to show that they had access to contrary information"); *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 473 (S.D.N.Y. 2008) (similar).

Finally, the termination of Bowley and other former employees cannot create a strong inference of scienter because Plaintiffs have failed to allege that any Rio Defendant had knowledge of contrary information prior to their terminations. *See In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 406-07 (S.D.N.Y. 2016) (allegations based on termination of whistleblower insufficient where specific information conveyed to defendants is not alleged).[27]

---

[26] Other facts beyond the core operations doctrine raised a strong inference of scienter in the cases cited by Plaintiffs. *See New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 13 (2d Cir. 2011) (Confidential witnesses "either provided information about rising inventory levels to [defendants] directly or participated in meetings where they heard [defendants] informed by others about the company's inventory management problems."); *Pirnik v. Fiat Chrysler Autos., N.V.*, 2016 WL 5818590, at *7 (S.D.N.Y. Oct. 5, 2016) (defendants conceded they were aware of certain deficient recalls); *In re Salix Pharms., Ltd.*, 2016 WL 1629341, at *16 (S.D.N.Y. Apr. 22, 2016) ("Plaintiffs have identified specific reports and statements containing information about Salix's true wholesale inventory level") (emphasis omitted).

[27] This distinguishes this case from Plaintiffs' authority. *See Collier v. ModusLink Glob. Sols., Inc.*, 9 F. Supp. 3d 61, 71-72 (D. Mass. 2014) (complaint alleged former employee raised specific contrary information directly to defendants and was terminated shortly thereafter).

III.    **PLAINTIFFS DO NOT ALLEGE MATERIALLY FALSE OR MISLEADING STATEMENTS**

Plaintiffs' Opposition confirms that not a single statement identified in the Complaint is actionable and materially false or misleading.[28]  Plaintiffs argue that the statements are actionable because Defendants had actual knowledge that their statements were false when made.  That assertion should be rejected.  *See supra* at § II.  Further, none of the statements identified by Plaintiffs were materially misleading because they were made in the "risky" context of a mine still under development, *Martin v. Quartermain*, 732 Fed. App'x 37, 42 (2d Cir. 2018), where "it is not always possible to anticipate what miners will face as they dig deeper," *In re Gold Res. Corp. Sec. Litig*, 776 F.3d 1103, 1117 (10th Cir. 2015).

A.    **The Statements Identified By Plaintiffs Are Not Actionable**

The statements made by the Rio Defendants are either protected by the PSLRA's safe harbor, statements of opinion, or classic corporate puffery that is immaterial to investors.

***Statements concerning the Oyu Tolgoi underground expansion:***   Despite Plaintiffs' attempts to turn statements that the project was "on track," "on budget," or "progressing well" into false descriptions of existing facts, these statements—and the corresponding predictions for construction dates—are inactionable because they are protected by the PSLRA's safe harbor for forward-looking statements, statements of opinion, and too general to be relied upon.

Plaintiffs argue that this category of statements is actionable because the statements falsely describe current facts.  Opp. 53-55.  However, the PSLRA explicitly includes projections of "capital expenditures" and "future operations" as the types of statements that are forward-looking.

---

[28]   Plaintiffs do not address the argument that RTIH, a subsidiary of Rio Tinto plc, did not make a single alleged misstatement or omission, and Plaintiffs do not articulate how a subsidiary of Rio Tinto plc could be liable for a statement made by Rio.  Rio MTD 15, n.15.  This alone justifies dismissal of the claim against RTIH.

19

*See Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 385 (S.D.N.Y. 2020); *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 758 (S.D.N.Y. 2018) (statement that company was "on track" to have products reach the market by a particular year was inactionable as forward-looking; *In re Micro Focus Int'l Plc Sec. Litig.*, 2020 WL 5817275, at *13 (S.D.N.Y. Sept. 29, 2020) (similar); Rio Mot. 21-26.[29]

Plaintiffs also argue that Rio's cautionary language was insufficient to confer protection under the PSLRA's safe harbor. Opp. 56-57. However, Rio repeatedly warned investors specifically of the potential for "[a] delay or overrun in a project schedule." Rio Mot Ex. 2. This warning was not the only one: Rio's disclosures also included cautionary language about the company's "production forecast," "production [and] performance results," and "production or construction dates." Rio Mot. 24-25.[30] Because Rio "conveyed substantive warnings referring to some of the very risks that materialized here," the statements identified by Plaintiffs are

---

[29] Plaintiffs' authority is fundamentally different from the facts here, because in most cases cited by Plaintiffs, defendants had actual knowledge their statements were false when made. *See Moshell v. Sasol Ltd.*, 481 F. Supp. 3d 280, 290-92 (S.D.N.Y. 2020) (at-issue statements were not protected because defendants knew they were false when made based on repeated conversations directly with certain confidential witnesses about the budget overruns and significant delays); *In re Vivendi Universal, S.A. Sec. Litig.*, 2004 WL 876050, at *7 (S.D.N.Y. Apr. 22, 2004) ("[P]laintiffs had pled sufficient facts to create a strong inference that defendants did not reasonably believe their own statements at the time they were made."); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 305 (S.D.N.Y. 2013) (defendants knew schedule was unattainable). Other cases cited by Plaintiffs are distinguishable because they involve statements describing present, verifiable facts rather than the description of an ongoing development. *See In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 168 (2d Cir. 2021) (statement that company was "not getting any pushback" was actionable); *City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 366 (S.D.N.Y. 2012) (statements about artificially inflated backlog were actionable); *In re APAC Teleservice, Inc. Sec. Litig.*, 1999 WL 1052004, at *8 (S.D.N.Y. Nov. 19, 1999) (description of satisfaction of current customers was actionable).

[30] The facts here are easily distinguishable from *Lockheed*, 875 F. Supp. 2d at 365, in which the court determined the statements at issue were not forward-looking, and the cautionary language warned of vague "difficulties."

inactionable.  *In re Barrick Gold Sec. Litig.*, 2015 WL 1514597, *8 (S.D.N.Y. Apr. 1, 2015).

The statements in this category are also statements of opinion, as they "express expectations about the future rather than presently existing, objective facts."  *In re Aratana*, 315 F. Supp. 3d at 758 (citation omitted).  Plaintiffs object that not all statements began with "qualifying language" such as "we believe."  Opp. 58.  Many of the relevant statements did contain such language.  *E.g.*, SAC ¶¶ 307, 323, 331.  In any event, such language is not necessary, as the statements expressed expectations for the future development of the mine.  *See Gregory v. ProNai Therapeutics Inc.*, 297 F. Supp. 3d 372, 406 (S.D.N.Y. 2018).

Plaintiffs again argue that, even if the statements were opinions, Rio Defendants knew and failed to disclose information contrary to those opinions.  *First*, as explained above, Plaintiffs have not alleged that Defendants knew the development schedule and budget were unachievable at the time of their statements.  *See supra* at § II.  *Second*, *Omnicare* is clear that a statement of opinion "is not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way" because "[a] reasonable investor does not expect that *every* fact known to an issuer supports its opinion statement."  *Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund*, 575 U.S. 175, 190 (2015).[31]  Thus, the fact that Rio Defendants did not mention the concerns of Bowley or certain employees does not render the statements misleading.

Finally, statements that the project was "on track" or "progressing well" are too immaterial to be relied on by reasonable investors, and such puffery is inactionable.  Rio Mot. 28-29; *In re EDAP TMS S.A. Sec. Litig.*, 2015 WL 5326166, *9-10 (S.D.N.Y. Sept. 14, 2015).[32]  In fact,

---

[31]   This is a far cry from the situation set forth by Plaintiffs, where a company states that their conduct is lawful when their attorneys and the government take a contrary position.  Opp. 59 (citing *Omnicare*, 575 U.S. 188-89).

[32]   While Plaintiffs argue that statements made in direct response to investors' questions

Plaintiffs incorrectly cite *Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821, 845 (S.D.N.Y. 2019), citing it as "finding actionable statements that integration was making 'great progress.'" Opp. 51. In reality, the court held that "even drawing all reasonable inferences in favor of Plaintiffs, even though they relate to past performance, 'quick,' 'very smooth' and 'great progress' are so vague and ill-suited to concrete measurement that they constitute puffery." *Haw. Structural*, 422 F. Supp. 3d at 846.

*Risk disclosures*: Plaintiffs argue that Rio's risk disclosures were false and misleading because the risks described therein had already manifested. Opp. 49-50. However, as described below, Rio made explicit disclosures about the scheduling delays and budget revisions as the project developed (*see infra* at § III(B)), and Plaintiffs have not alleged that Defendants knew adjustments would be required prior to those disclosures (*see supra* at § II). Further, Rio's robust disclosures accurately communicated to investors the schedule and budget risks associated with Oyu Tolgoi's development. *See infra* at § III(B); *see also* Rio Mot. 29-30.

*SOX certifications*: Because Plaintiffs have not alleged any misstatements in Rio's financials, Rio's SOX certifications are not actionable. Rio Mot. 29. Plaintiffs also have not alleged that Jacques or Soirat had the requisite knowledge for liability. *See supra* at § II.

**B.    Rio's Statements Were Not Materially False Or Misleading**

Even if the statements identified by Plaintiffs were actionable—which they are not—Plaintiffs have still failed to allege that they were materially false or misleading. Plaintiffs repeatedly emphasize three specific statements as demonstrably false or misleading: (1) that Shaft

---

cannot be immaterial (Opp. 51-52), the paragraphs referenced by Plaintiffs (assuming Plaintiffs failed to update their Opposition to cite to the SAC and instead cite to the First Amended Complaint, "FAC") describe either statements made by Turquoise Hill (FAC ¶¶ 274, 303), regular SEC filings (*id.* ¶¶ 294, 325-26), or presentations prepared by Rio in advance of investor calls, not in response to any investor questions (*id.* ¶¶ 282, 289). In any event, no responses to investor questions provided by Rio Defendants were false or misleading. *See infra* at § III(B).

5 was "fully operational" in the second quarter of 2018 (Opp. 53, 59); (2) that Shaft 2 equipping was "well under way" at the same time (*id.* at 54, 59); and (3) that Oyu Tolgoi had made 2.3 kilometers of lateral expansion during the third quarter of 2018 (*id.* at 54). The second and third statements were made by Turquoise Hill, not any Rio Defendant. Regarding Shaft 5, in a July 17, 2018 press release, Rio stated that "the shaft five ventilation system has been fully commissioned and is now operational." SAC ¶ 307. Plaintiffs argue that this statement was false because the heating unit for Oyu Tolgoi was not functional, which was required for work in the mine. SAC ¶ 308. However, Plaintiffs do not contest that Shaft 5 was itself in fact fully commissioned. The fact that the heating unit was not yet functional is a separate issue that does not render Rio's statement about Shaft 5 false or misleading.

As set forth in the Rio Defendants' Motion, Rio disclosed shaft sinking challenges and budget revisions as the Oyu Tolgoi project progressed. Rio Mot. 30-34. In October 2018, Rio explicitly disclosed that the project was facing "ground conditions and shaft sinking challenges" that would delay the date of the first sustainable production. SAC ¶ 338. Plaintiffs' Opposition argues that at the time of the October 2018 re-forecast, the projection that the first drawbell would occur in 2020 was false (Opp. 44, n.14), but Plaintiffs continue to ignore that this projected date did not change because Oyu Tolgoi management had changed the "draw bell sequencing strategy." SAC ¶ 336. Further, Rio specifically cautioned investors that it was still evaluating the impact of Shaft 2 to the project's cost and schedule in February 2019. *See* Rio Mot. 25, n.23.

Plaintiffs' allegations that the 2017 and 2018 Broadleaf reports indicate that statements about the first drawbell and sustainable production dates were false (Opp. 44) are also inaccurate. While a 2017 Broadleaf Report indicated there was a slim chance of the first drawbell occurring by April 26, 2020, Plaintiffs never allege that Defendants ever publicly referenced that April 2020

date after the 2017 Broadleaf report.  In fact, the new "mid-2020" predicted first drawbell was explicitly premised on a change to the "draw bell sequencing strategy."  SAC ¶ 336.  Further, Defendants announced that the sustainable production date would be delayed shortly after the August 2018 Broadleaf report in the October 2018 re-forecast.  These developments support the more plausible inference that as delays were determined to be unavoidable, Rio disclosed them.

Finally, Plaintiffs attempt to use a July 2019 impairment as an additional basis for fraud, but Plaintiffs have failed to plead "the amount by which certain assets should have been written down" and "when the write-down[ ] should have occurred."  *In re Adient*, 2020 WL 1644018, at *23 (citation omitted).  Instead, Plaintiffs vaguely claim that "the project was impaired and had been since before the Class Period" (SAC ¶ 375) without being able to point to any allegations of facts that the Rio Defendants would have been aware of prior to the impairment (*see supra* at § II).  The fact that Turquoise Hill ultimately took an impairment charge cannot provide a basis for alleging it should have been taken earlier.  *In re Adient*, at *24.

The more plausible inference—that detailed information was not relayed far enough up the chain for Jacques or Soirat at Rio to have had definitive information contrary to their statements—is clear on the face of the Complaint and is actually supported by the ICG Report.  SAC ¶ 299 (there was a "lack of contemporaneous documentation concerning the schedule delays and their impact on the critical path" and "reporting and tracking" were lacking).

## IV.    PLAINTIFFS HAVE NOT ALLEGED LOSS CAUSATION

Plaintiffs' claims can also be rejected for the simple reason that the materialization of a risk that was disclosed to the market cannot legally constitute the "loss causation" required for a securities fraud action.  Rio Mot. 45-47; s*ee Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005).  To hold that the materialization of disclosed risks can constitute loss causation would "convert the securities laws into an insurance policy for investors."  *In re Initial Pub. Offering Sec.*

*Litig.*, 399 F. Supp. 2d 261, 266–67 (S.D.N.Y. 2005). Plaintiffs' central response is that the risks disclosed to investors were more "general" than the specific delays and cost overruns that were eventually disclosed. Opp. 89-90. However, where a risks disclosure is broad enough to cover a specific risk, the risk has been sufficiently disclosed. *See In re Bank of America AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 579 (S.D.N.Y. 2013).

## V.   PLAINTIFFS' CONTROL PERSON LIABILITY CLAIM SHOULD BE DISMISSED

Because Plaintiffs have failed to plead a primary violation of Section 10(b), the Section 20(a) claim should also be dismissed. *See* 15 U.S.C. § 77o; 15 U.S.C. § 78t. The Rio Defendants also cannot be liable as control persons of Turquoise Hill. Rio Mot. 47-48. Courts routinely dismiss control person claims against companies based on majority ownership and the ability to influence board elections. *See*, *e.g.*, *Arkansas Teacher Ret. Sys. v. Bankrate, Inc.*, 18 F. Supp. 3d 482, 486 (S.D.N.Y. 2014) (granting motion to dismiss control person claims). While Plaintiffs continue to emphasize that Rio and RTIH had the ability to review and comment on Turquoise Hill's filings, the opportunity to review is routinely rejected as sufficient to impose control person liability. Rio Mot. 40; *In re Global Crossing, Ltd. Sec. Litig.*, 2005 WL 1907005, *9 (S.D.N.Y. Aug. 8, 2005).[33] Because the Complaint is devoid of any allegation that any Rio Defendant "signed, drafted, approved, or confirmed a misleading statement," the Rio Defendants cannot be liable as control persons for Turquoise Hill's statements. *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166-7 (S.D.N.Y. 2012).

---

[33] Plaintiffs' cases involved significantly more control. *STMicroelectronics v. Credit Suisse Grp.*, 775 F. Supp. 2d 525, 536 (E.D.N.Y. 2011) (two companies "operate internally and market themselves externally as a single entity," and "the entities' executives overlap significantly at the highest levels"); *In re Hi-Crush Partners L.P. Sec. Litig.*, 2013 WL 6233561, at *27 (S.D.N.Y. Dec. 2, 2013) (individual defendants "managed the daily affairs" of allegedly controlled company and were involved in disclosures).

## CONCLUSION

For the foregoing reasons and those stated in the Rio Defendants' Motion, the Second

Amended Complaint should be dismissed.

Respectfully submitted,

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

Dated:  December 17, 2021          */s/ Corey Worcester*

Corey Worcester
Renita Sharma
Jomaire Crawford
Jesse Bernstein
Leigha Empson
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue
New York, NY 10010
Tel: 212-849-7000
Fax: 212-849-7100

*Counsel for Defendants Rio Tinto plc, Rio
Tinto Limited, Rio Tinto International
Holdings Limited, Jean-Sébastien Jacques
and Arnaud Soirat*