**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TURQUOISE HILL RESOURCES LTD. SECURITIES LITIGATION | Case No. 1:20-cv-08585-LJL<br><br>**ORAL ARGUMENT REQUESTED** |

**LEAD PLAINTIFF PENTWATER FUNDS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO ADD JOHN J. MURPHY AS A NAMED PLAINTIFF**

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................... 1

I.     STATEMENT OF FACTS ................................................................................... 8

       A.     Rio and Turquoise Hill's New Acts of Oppression After This Court Appointed
              Pentwater as Lead Plaintiff ..................................................................... 8

       B.     Rio Is Attempting to Broadly Release Claims Belonging to Turquoise Hill
              Minority Investors ................................................................................ 11

       C.     Pentwater's Exemplary Prosecution of the Class's Claims to Date .................... 13

       D.     Mr. Murphy's Prior Motion for Lead Plaintiff and Current Desire to Serve as an
              Additional Plaintiff .............................................................................. 15

       E.     Pentwater's Contemplated Challenge to Rio and TRQ's Plan of Arrangement and
              Oppressive Misconduct in a Canadian Proceeding ............................................ 16

ARGUMENT ............................................................................................................ 17

I.     PENTWATER HAS PROVIDED EXCELLENT REPRESENTATION TO THE CLASS
       AND WILL CONTINUE TO DO SO IF REQUIRED TO PURSUE LEGAL ACTION
       IN CANADA ................................................................................................... 17

II.    MR. MURPHY SHOULD BE ADDED AS A PLAINTIFF AND PROPOSED CLASS
       REPRESENTATIVE ......................................................................................... 22

CONCLUSION ......................................................................................................... 24

## **TABLE OF AUTHORITIES**

CASES                                                                    Page(s)

*Anderson v. Bank of S., N.A.*,
   118 F.R.D. 136 (M.D. Fla. 1987)........................................................................20, 21

*Andujar v. Rogowski*,
   113 F.R.D. 151 (S.D.N.Y. 1986) .................................................................................24

*In re Bearingpoint, Inc. Sec. Litig.*,
   232 F.R.D. 534 (E.D. Va. 2006) ..................................................................................20

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) .......................................................................................18

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001).........................................................................................18

*In re Global Crossing, Ltd. Sec. Litig.*,
   313 F. Supp. 2d 189 (S.D.N.Y. 2003).......................................................................6, 23

*Hevesi v. Citigroup, Inc.*,
   366 F.3d 70 (2d Cir. 2004).........................................................................................22

*In re IPO Sec. Litig.*,
   214 F.R.D. 117 (S.D.N.Y. 2002) .................................................................................23

*Juris v. Inamed Corp.*,
   685 F.3d 1294 (11th Cir. 2012) ...................................................................................21

*Leonard v. Abbot Labs., Inc.*,
   2012 WL 764199 (E.D.N.Y. Mar. 5, 2012).................................................................23

*Luviano v. Multi Cable, Inc.*,
   2017 WL 9360851 (C.D. Cal. Mar. 24, 2017).............................................................20

*Mendell v. Am. Med. Response, Inc.*,
   2021 WL 1102423 (S.D. Cal. Mar. 23, 2021) .............................................................20

*Mortimer v. Diplomat Pharmacy Inc.*,
   2019 WL 3252221 (N.D. Ill. July 19, 2019)...............................................................21

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
   2013 WL 6839093 (S.D.N.Y. Dec. 27, 2013) ............................................................23

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*,
   2016 WL 7409840 (S.D.N.Y. Nov. 4, 2016)..............................................................23

*In re NFL Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016)................................................................21

*Nieberding v. Barrette Outdoor Living, Inc.*,
302 F.R.D. 600 (D. Kan. 2014).............................................................20

*Pelletier v. Endo Int'l PLC*,
338 F.R.D. 446 (E.D. Pa. 2021)............................................................21

*Professional Firefighters Ass'n of Omaha, Local 385 v. Zalewski*,
678 F.3d 640 (8th Cir. 2012) ................................................................21

*Sandoval v. Ali*,
34 F. Supp. 3d 1031 (N.D. Cal. 2014) ..................................................20

*Sheftelman v. Jones*,
667 F. Supp. 859 (N.D. Ga. 1987) ..................................................20, 21

*In re Tyco Int'l, Ltd.*,
236 F.R.D. 62 (D.N.H. 2006) ...............................................................19

*Williams v. Empire Funding Corp.*,
183 F.R.D. 428 (E.D. Pa. 1998)............................................................20

**RULES & OTHER AUTHORITIES**

Fed. R. Civ. P. 21 ............................................................................................23

7 C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. § 1688 (3d ed. 1986)................24

Lead Plaintiff the Pentwater Funds ("Pentwater" or the "Pentwater Funds") respectfully submit this memorandum of law in support of their motion to include prior Lead Plaintiff movant John J. Murphy as an additional named Plaintiff in this action under Federal Rules of Civil Procedure 21 and 23.

## PRELIMINARY STATEMENT

When devising the lead plaintiff provisions of the PSLRA, Congress confirmed its preference that a class be led by the investor with the largest stake in an action seeking to rectify harm from securities fraud, while recognizing that the lead plaintiff would often continue to hold an ongoing stake in the company at issue.  In this Action, Pentwater has the largest loss of any Class member—by far—and is Turquoise Hill's largest current minority investor.

Pentwater was appointed as Lead Plaintiff in this Action in January 2021.  At that time, Pentwater confirmed that it would notify the Court if subsequent events ever compelled it to file additional litigation against any of the Defendants.  Rio's actions following the Court's appointment of Pentwater as Lead Plaintiff have made it imperative for Pentwater to strongly consider and plan for filing additional litigation in Canada.  In particular, Rio's actions leading to and in connection with a recently proposed squeeze-out of TRQ's public investors have made a Canadian litigation necessary to protect the interests of the Class and TRQ minority investors.

After the end of the Class Period, Rio abused its power to oppress Turquoise Hill for Rio's benefit in several ways.  First, Rio caused Turquoise Hill to forgive a $2.4 billion loan owed by the Mongolian Government to Turquoise Hill in order to resolve claims arising from Rio's own misconduct as operator of the Oyu Tolgoi mine.  Second, in connection with a recently announced transaction that would squeeze out the Turquoise Hill minority investors, Rio seeks to release the claims pending before this Court and other claims belonging to Turquoise Hill minority investors.

Through these actions, Rio improperly used Turquoise Hill to enrich itself at the expense of minority shareholders like Pentwater. Rio's proposed squeeze-out of minority shareholders now makes necessary Pentwater's actions to protect the interests of TRQ minority investors, including Class members.  While no judicial action has yet been filed by Pentwater in Canada, fast-moving events will require Pentwater to take steps to protect its and other TRQ investors' interests through litigation in Canada.

Indeed, as described below, in order to preserve claims that could be extinguished in connection with the Rio-TRQ deal, Pentwater must take steps to challenge or vary the terms of the Plan of Arrangement in the very near-term—as the Canadian court overseeing the Plan of Arrangement and determining whether it is "fair and reasonable" will likely do so within days of the scheduled November 1, 2022 shareholder vote. Further, due to the pending Plan of Arrangement, Pentwater may soon need to assert in a Canadian court its substantive oppression claims that arose after Pentwater was appointed Lead Plaintiff.

Pentwater does not believe that this separate litigation will create any actual conflict with the Class's interests in this action or with Pentwater's role as Lead Plaintiff.  In fact, the opposite is true.  Pentwater's objective regarding the Plan of Arrangement is to ensure that not only its own, but also other shareholders' rights to assert Canadian corporate law claims in oppression and otherwise against TRQ, Rio Tinto, and their affiliates, officers, and directors are preserved. Nevertheless, Pentwater is now moving to add Mr. Murphy—an investor who had meaningful losses on TRQ stock during the Class Period and who previously moved for Lead Plaintiff, has since sold all his TRQ stock, and therefore has no interest in any separate Canadian litigation—as a named Plaintiff with his own counsel to mitigate the potential conflicts that could arise if Pentwater files separate litigation against Defendants.  Adding Mr. Murphy will provide the Court

and the Class the utmost assurance that the entire Class's interests are protected without regard for events affecting only current TRQ investors.

Since its appointment to lead the Class, Pentwater has vigorously prosecuted this action, investigating and filing a 182-page complaint, and successfully opposing, in part, Defendants' motions to dismiss.  On September 2, 2022, the Court sustained Pentwater and the Class's claims in part against Rio Tinto, holding the Complaint sufficiently alleged that Rio's statements were false and gave rise to securities law claims.  Pentwater has served the Class well to date and has every intention to continue to do so until this action is pursued to final judgment.

However, on September 5, 2022, TRQ and Rio agreed to a deal in which Rio would buy out the rest of the Turquoise Hill shares it does not own, via a Plan of Arrangement.  That Plan of Arrangement contains broad language that facially purports to extinguish the U.S. federal securities fraud claims that the Court just sustained, as well as any Canadian claims TRQ investors may have to seek redress for the more recent oppressive conduct by TRQ and Rio in granting billions of dollars in loan forgiveness for Rio's benefit to pay for the delays and cost overruns Rio caused in developing the mine and releasing Rio from any liability.  Specifically, the Plan of Arrangement purports to extinguish "all actions, causes of action, claims or proceedings (actual or contingent and whether or not previously asserted) based on or in any way relating to any [Turquoise Hill] Shares," requiring Pentwater to take action.  Ex. 1.[1]

Consistent with its duties to Pentwater's own investors, as well to the members of the Class in this case, Pentwater has already taken non-judicial action, sending a letter to Rio demanding that it modify the Plan of Arrangement to ensure that no litigation rights are released by virtue of

---

[1] All references to "Ex. ___" are to the exhibits accompanying the Declaration of Salvatore J. Graziano.

the squeeze-out.  *See* Ex. 2.  On the evening of September 15, 2022, Rio's Canadian counsel represented that the release would not affect any TRQ investors' ***existing*** (i.e., pending) litigation claims, either in this Court or under Canadian law.  *See* Ex. 3.  Pentwater's letter appears to have partially succeeded in protecting the Class members in this case, and Rio's response indicates that Rio will superficially make certain representations to the Canadian court.  However, Rio's response ignores Pentwater's specific request that the Plan of Arrangement be amended to preserve oppression and derivative claims under the Yukon Business Corporations Act.

As a result, Pentwater ***must*** take further action to protect the rights of the Class and current TRQ shareholders to continue to investigate and bring claims for oppression or otherwise under Canadian corporate law related to the Canadian proceedings, as those rights to bring any further Canadian proceedings to object to Rio's oppressive conduct will otherwise be extinguished upon approval of the Plan of Arrangement and the transaction closing.

Rio's wrongful conduct over the past several months, purportedly now being released in the squeeze-out deal, precipitated the drastic change of circumstances that gives rise to this Motion and Pentwater's need to protect its rights in Canada.  First, in January 2022, Rio forced Turquoise Hill to forgive $2.4 billion of indebtedness owed to TRQ by the Mongolian Government.  *See* Ex. 4.  This loan forgiveness served to compensate the Government for Rio's misconduct as operator of the mine that led to material schedule delays and cost overruns.  The owners of the mine had a right to be compensated for the harm caused by Rio's misconduct.  TRQ owns 66% of the mine and the Government of Mongolia owns 34%, so any compensation should have been split 66%/34%.  Rio paid nothing to TRQ for its 66% share.  Instead, Rio forced TRQ to pay the Government of Mongolia $2.4 billion and to waive TRQ's rights against Rio.

As a result, independent of and subsequent to the wrongs giving rise to their securities fraud claims, TRQ minority shareholders have suffered damages, given that TRQ received no compensation from Rio. The forced forgiveness of the Government's debt was particularly oppressive to TRQ's minority shareholders, who were already harmed by Rio's misconduct and mismanagement of the mine. Indeed, because the Government of Mongolia holds a 34% share of Oyu Tolgoi and TRQ holds 66%, payment to TRQ should have been approximately twice as large as the $2.4 billion paid to the Government, but TRQ and its investors received nothing from Rio and were required to pay for their share of the $2.4 billion loan forgiveness.

Put another way, through TRQ's forced loan forgiveness, TRQ's minority shareholders were harmed twice—first, by Rio's misconduct in managing the mine, and second, by having to pay the Government of Mongolia for Rio's misconduct. Moreover, the same day in January 2022 as the Mongolian debt forgiveness, Rio oppressively compelled TRQ to execute Amended and Restated Heads of Agreement that released any rights TRQ had to seek indemnity from Rio or assert any other claim against Rio in connection with that debt forgiveness or Rio's underlying misconduct. *See* Ex. 5 at ¶35.

Then, on September 5, 2022, Rio and Turquoise Hill agreed to a squeeze-out merger in which Rio will acquire the entire minority interest in TRQ, subject to approval by a Canadian court. *See* Ex. 6. Entirely separate and apart from the wrongful loan forgiveness, the squeeze-out price does not adequately reflect TRQ's value of $42 CAD to $58 CAD per common share stated by TRQ's own investment bankers. *See id.* at 2. If TRQ had not been forced to give away $2.4 billion, then the low end of that range would have been over $10 USD or $13 CAD higher ($2.4 billion divided by approximately 200 million shares outstanding). The squeeze-out price also represents a fraction of the free cash flow that Turquoise Hill will generate over the next decade.

In other words, after driving down Turquoise Hill's stock price through its own misconduct, Rio is swooping in to buy out the TRQ minority on the cheap—and attempting to extinguish its liability for its misconduct in the process.

Rio's new misconduct and the need for Pentwater to pursue its resulting oppression claims were not foreseen when the Court appointed Pentwater as Lead Plaintiff. Pentwater's lead plaintiff motion papers represented that it would not pursue simultaneous litigation against Defendants in another forum that would conflict with this case (ECF No. 93 at ¶ 5(b)), and the Court conditioned Pentwater's appointment on alerting the Court to the filing of any other action against Defendants.

As discussed below, Pentwater does not believe that seeking to protect its rights harmed by Rio's 2022 misconduct would create any actual conflict of interest with the Class in this action, whose claims rest on events from July 2018 to July 2019. Moreover, as one of the largest mining companies in the world, with over $14 billion in liquid assets, Rio can easily satisfy any judgment in both this case and any action brought in Canada. Pentwater wishes to continue its service as Lead Plaintiff for the Class. Nonetheless, consistent with its responsibilities as Lead Plaintiff and as a prophylactic measure to prioritize the Class's greatest protection, Pentwater moves for Mr. Murphy to serve as an additional named Plaintiff. *See, e.g.*, *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003) ("Lead Plaintiffs have a responsibility to identify and include named plaintiffs who have . . . distinct interests").

Mr. Murphy originally filed a motion seeking lead plaintiff appointment in this case, but subsequently withdrew his opposition to the competing motions in deference to Pentwater's application. Mr. Murphy intends to serve as a proposed Class Representative along with Pentwater in a motion for class certification at the appropriate time. Since seeking Lead Plaintiff appointment, Mr. Murphy sold all his Turquoise Hill shares, and is thus unaffected by Rio's

6

pending squeeze-out or the claims Pentwater or any other current investor may pursue in Canada. As discussed below, Mr. Murphy's participation in this action would provide an additional safeguard under Rule 23 to ensure the Class is provided the best representation in this case.

Allowing Mr. Murphy to supplement Pentwater's continued service as Lead Plaintiff by serving as an additional named Plaintiff is the best possible outcome for the Class.  As the Court has seen, Pentwater has vigorously and loyally represented the Class, including through extensive investigative work by Pentwater itself, on top of Lead Counsel's efforts.  Pentwater's investigation included interviewing two whistleblowers, Richard Bowley and Maurice Duffy, whose statements were extensively cited in the Court's decision partially sustaining claims against the Rio Tinto Defendants.  Lead Plaintiff also drafted a detailed amended complaint and opposed two hard-fought motions to dismiss that resulted in the Court's decision partially sustaining securities-fraud claims against Rio Tinto and two of its top executives for false statements spanning the Class Period.  Pentwater believes that no other minority investor in Turquoise Hill could have achieved such important results for the Class as Lead Plaintiff.

Pentwater remains committed to vigorously and loyally prosecuting this action on behalf of the Class.  However, Rio and Turquoise Hill's latest oppressive misconduct and attempts to obtain for themselves a broad release for that conduct require Pentwater to pursue legal remedies in Canada, both to object to the proposed litigation release on behalf of all TRQ investors and to bring litigation in Canada.  Pentwater believes other similarly situated shareholders may also bring oppression claims because of Rio's oppressive behavior.  Adding Mr. Murphy as a Plaintiff at this time is in the Class's interests.  Lead Plaintiff Pentwater has consulted with and been advised by New York University School of Law Professor Samuel Issacharoff, a preeminent class action expert, who fully endorses Lead Plaintiff's proposal and is available to address it with the Court.

I.    **STATEMENT OF FACTS**

    A.    **Rio and Turquoise Hill's New Acts of Oppression After This Court
Appointed Pentwater as Lead Plaintiff**

This Court recently sustained in part Lead Plaintiff's securities-fraud claims against Rio
Tinto and two of its top executives, former Chief Executive Officer Jean-Sébastien Jacques and
current Chief Operating Officer Arnaud Soirat, based on these Defendants' alleged materially false
and misleading statements during the period from July 17, 2018 through July 31, 2019 (the "Class
Period"), concerning the development of the underground mine at Oyu Tolgoi. *See* ECF No. 149.
The Oyu Tolgoi copper and gold mine at the center of this lawsuit is owned 66% by Turquoise
Hill and 34% by the Government of Mongolia, and is expected to be the third largest copper and
gold mine in the world when the mine's underground portion is completed.  Rio Tinto owns over
50% of Turquoise Hill's common stock and operates the Oyu Tolgoi mine as the mine's
contractual manager.

    Unfortunately, Rio's misconduct did not end when the Class Period ended in July 2019.
Throughout 2020-22, Rio continued to abuse its power over Turquoise Hill for its own benefit.
Rio's overreaching was so blatantly abusive that on November 4, 2020, Turquoise Hill issued a
press release announcing that it was commencing arbitration proceedings against its own
controlling shareholder, Rio Tinto.  *See* Ex. 7.

    Then, less than one month later, on December 1, 2020, representatives of the Government
of Mongolia and Turquoise Hill voted against Rio Tinto to have Oyu Tolgoi LLC establish a
special board committee mandated to conduct an independent review of the causes of the cost
overruns and delays to the Oyu Tolgoi underground development announced in 2019.  Ulf
Quellmann, CEO of TRQ, commenting on the resolution, said "TRQ fully supports our

government partner . . . in securing an independent and objective review of the cost overruns and delays announced last year." Ex. 8.

Less than two months later, on January 28, 2021, Turquoise Hill filed a press release stating that it had "brought an application for an interim order before the Tribunal in its arbitration proceedings with Rio Tinto" to enable Turquoise Hill to communicate directly with the Government of Mongolia and to explore financing options, and that it was "taking this step in response to certain actions taken by Rio Tinto." Ex. 9. at 1. Then, on February 4, 2021, Turquoise Hill announced in a press release "that it was successful in obtaining a temporary order . . . on its application for urgent interim relief in the arbitration proceedings with Rio Tinto." Ex. 10.

These appeared to be rare steps signaling a positive change for Turquoise Hill minority investors, all of which occured around the time that Pentwater was appointed to lead this action. However, all of these challenges to Rio Tinto's dominance were simply too much for Rio Tinto to stomach. Exactly one month after Turquoise Hill's success in obtaining a temporary injunction against Rio Tinto, Rio Tinto took action to force out the CEO of Turquoise Hill. In a press release dated March 4, 2021, TRQ admitted that Rio was behind the requested resignation of TRQ's CEO: "[T]he Special Committee discussed [with Mr. Quellmann] views received from Rio Tinto on the leadership of the Company, including Rio Tinto's view that new leadership at Turquoise Hill was necessary to advance work on matters of mutual interest and importance to the project." Ex. 11.

Once Rio Tinto had orchestrated Mr. Quellmann's departure, the TRQ Board began to again follow Rio's instructions, which enriched Rio to the detriment of minority shareholders. One month and one week later, on April 9, 2021, Turquoise Hill cut a deal with Rio Tinto in which it agreed to drop the arbitration proceeding. *See* Ex. 12 at ¶32. Turquoise Hill also agreed to cease

its own negotiations with the Government of Mongolia so that Rio Tinto would be exclusively in charge of all Mongolian Government negotiations. *See id.* at ¶35.

These negotiations were centered on compensating the Government of Mongolia for the cost overruns and schedule delays caused by Rio's construction operations. Mongolia's only damages from the cost overruns and schedule delays came as a result of its 34% ownership in the mine—the same mine that TRQ owns 66% of. But for Rio's continued abuse of control, TRQ would have required Rio to provide those financial reparations. Instead, Rio abused its control to make *TRQ itself* compensate the Government of Mongolia for the harm caused by Rio, rather than Rio compensating **both** the Government and TRQ and its minority shareholders—who were also injured by Rio's fraud and mismanagement.

Ultimately, Rio used its control over Turquoise Hill to cause TRQ to agree in January 2022 to forgive a $2.4 billion debt then owed by the Government of Mongolia to TRQ. *See* Ex. 4. The same day, Rio Tinto caused Turquoise Hill to release Rio and all its affiliates from "any claim" under "any agreement" between TRQ and Rio. In a January 24, 2022 press release, TRQ stated:

> Turquoise Hill has agreed to waive in full the US$2.4 billion carry account loan of the Government of Mongolia's state-owned entity through which it owns its interest in [Oyu Tolgoi]. The loan comprises the amount of equity invested (US$1.4 billion) in [Oyu Tolgoi] by Turquoise Hill on behalf of [the state-owned entity] to date, plus US$1.0 billion of accrued interest. . . .
>
> As the [independent report] has now become part of ongoing class action litigation brought against the Company, the Company cannot comment on the report. Similarly, the Company cannot comment on its review of the conclusions and findings of the [independent report] because these matters have been put in issue by the plaintiffs in the ongoing class action litigation in Canadian and US courts. . . .
>
> [Under the Amended Heads of Agreement, Turquoise Hill would] not assert any claims of breach of any obligation of Rio Tinto or its affiliates under any agreement between the Company or any of its subsidiaries and Rio Tinto or any of its affiliates based on facts available to and known by the Company as of the date of the Amended [Heads of Agreement].

*Id.* at 1, 6, 7.

In this one press release, Turquoise Hill did incredible financial damage to its minority shareholders, insulated Rio Tinto from liability, and attempted to bury the evidence of Rio Tinto's previous bad actions.  The actions captured in this press release are quintessentially oppressive.

Thus, TRQ and its minority shareholders were harmed three times: first, by Rio's misconduct as the mine's operator; second, by having to pay the Government of Mongolia for Rio's misconduct while receiving nothing for the harm that they also suffered; and third, by relinquishing TRQ's rights to recoup its losses from Rio.

### B.    Rio Is Attempting to Broadly Release Claims Belonging to Turquoise Hill Minority Investors

Now, Rio seeks to harm the minority shareholders for a final time, by acquiring their shares at a low price and purporting to require the minority to release any claims they may have for Rio's oppressive conduct.  Specifically, the need for Pentwater to take action to protect its current TRQ stake only became imminent recently, because Rio is not only seeking to cash out the TRQ minority on the cheap, but also seeking through the Plan of Arrangement to include a broad release that risks extinguishing TRQ minority shareholders' right to seek compensation for the harm caused by Rio and TRQ's violations of the U.S. securities laws and their oppressive conduct under Canadian corporate law.

On September 5, 2022, Turquoise Hill and Rio entered into an Arrangement Agreement under which, if the related Plan of Arrangement is approved by a Canadian court, Rio would acquire all minority shares of TRQ at $43.00 CAD per common share.  This price significantly undervalues the common shares, as it implies an equity value of $8.65 billion CAD, which is a fraction of the free cash flow that Turquoise Hill is expected to generate over the next decade.  As noted above, the squeeze-out price is at the low end of the range of $42 CAD to $58 CAD per

common share provided by TRQ's own investment bankers.  Specifically, TRQ is expected to generate over $10.5 billion CAD of free cash flow through 2030 assuming $3.50 USD copper, or almost $14.2 billion CAD of free cash flow assuming $4.00 USD copper.  The proposed squeeze-out price undervalues TRQ's minority shares in light of the Oyu Tolgoi mine's anticipated value.  *See* Ex. 13.

Of critical importance, the proposed Plan of Arrangement includes a "Paramountcy" clause that purports to eliminate all rights of TRQ's minority shareholders, arguably including the Class's rights under the U.S. securities laws in this action:

> From and after the Effective Time: (i) this Plan of Arrangement shall take precedence and priority over any and all Company Shares, Company RSU, Company DSUs and Company PSUs issued prior to the Effective Time; (ii) the rights and obligations of the registered holders of Company Shares (other than the Purchaser, Parent or any of their respective affiliates), Company RSUs, Company DSU, Company PSUs, and of the Company, the Purchaser, Parent, the Depositary and any transfer agent or other depositary in relation thereto, shall be solely as provided for in this Plan of Arrangement and the Arrangement Agreement; and (iii) ***all actions, causes of action, claims or proceedings (actual or contingent and whether or not previously asserted) based on or in any way relating to any Company Shares and Company RSU, Company DSUs and Company PSUs shall be deemed to have been settled, compromised, released and determined without liability except as set forth herein***.

Ex. 1 at ¶5.6

As Pentwater wrote in a letter from Lead Counsel to Rio's counsel dated September 13, 2022, Pentwater does not believe that Section 5.6 of the plan of arrangement should "settle[], compromise[], release[] and determine[] without liability" litigation claims that Turquoise Hill's present or former shareholders have against Turquoise Hill, Rio Tinto International Holdings, Rio Tinto plc, or any of these companies' officers and directors, including without limitation the pending U.S. securities law claims in this action, or any oppression or derivative claims under Canadian law.  Ex. 2.

Although Rio's September 15 response letter purports to deny any intention to interpret the release so broadly, Rio's letter only addresses "existing litigation," ignoring Pentwater's request to confirm that no release of oppression and derivative claims that may yet be filed is intended; does not agree to an express amendment to the Plan of Arrangement to confirm that there is no release of such claims; and does not state that Rio and TRQ would file a revised Plan of Arrangement reflecting these necessary changes with the Court overseeing the Plan. *See* Ex. 3. Therefore, the applicability of estoppel principles to preclude enforcement of the overbroad release language cannot be left to chance.

Accordingly, in the absence of action by any other TRQ investor, Pentwater must challenge the proposed release in the Canadian court, and will seek to remove the release for all TRQ shareholders. If Pentwater is successful, all TRQ minority shareholders would be free to pursue compensation for damages caused by Rio and TRQ's acts of oppression in proceedings in the Yukon Territory, where TRQ is located. However, there is uncertainty about the outcome of Pentwater's efforts, and the scope of any carve-out that the Canadian Court will approve. Accordingly, Pentwater and other shareholders may have to initiate oppression proceedings before the close of any transaction to preserve their rights. That closing is likely to happen within days of any approval of the Plan of Arrangement.

## C. Pentwater's Exemplary Prosecution of the Class's Claims to Date

Several Turquoise Hill investors moved for Lead Plaintiff in this action, but Pentwater indisputably had by far the largest financial interest in the action. Several of the competing movants tried unsuccessfully to challenge Pentwater's adequacy as Lead Plaintiff, arguing that Pentwater's large stake in TRQ might make it unwilling to maximize a recovery in this action that could be financially harmful to TRQ, *see* ECF No. 103 (Lead Plaintiff Order), at 10-11; that Pentwater might seek Rio's help in selling its large block of TRQ stock, *see id.* at 12-13; that Pentwater might

use its position as Lead Plaintiff to seek a seat on the TRQ Board, *see id.* at 15; and that Pentwater's prior threat of litigation in Canada against Defendants might conflict with its service as Lead Plaintiff, *see id.* at 16.  The Court inquired into these arguments at the hearing on the lead plaintiff motions, asking probing questions of Pentwater as to how it would address potential conflicts given its position as a large TRQ shareholder.

Ultimately, the Court rejected these arguments, concluding that Pentwater satisfied the relevant requirements under the PSLRA and should be appointed as Lead Plaintiff.  In particular, the Court held that Congress intended in the PSLRA for large institutional investors that likely would continue to hold shares in defendant companies to serve as lead plaintiffs, *see id.* at 11-12; that any risk of arrangements between Pentwater and Rio to dispose of Pentwater's holdings in TRQ could be addressed by requiring Pentwater to disclose any such arrangement to the Court, *see id.* at 14 (a requirement that Pentwater accepted, *see* ECF Nos. 107, 108); that Rio's majority ownership of TRQ would enable it to prevent Pentwater from every obtaining a seat on the TRQ Board, *see* ECF No. 103 at 15; and that any potential conflicts of interest arising from separate litigation in Canada could be addressed by requiring the Pentwater Funds to disclose any such litigation within five days of filing "with an explanation as to why they believe it does not create a conflict of interest with the interests of the class or their position as lead plaintiff for the class," *id.* at 16.

Since being appointed as Lead Plaintiff, Pentwater has vigorously and loyally prosecuted the Class's claims.  Among other things, Pentwater (both through its own personnel and through counsel) conducted an exceptionally thorough and fruitful investigation, including identifying and obtaining information from the two key whistleblowers, Bowley and Duffy.  Pentwater then filed the 182-page operative complaint and successfully opposed the Rio Tinto Defendants' motion to

dismiss.  This Court's Order on the motion to dismiss partially sustained claims based on alleged false statements by the Rio Tinto Defendants throughout the Class Period.

When Rio Tinto's conduct in seeking to extinguish the Turquoise Hill minority's rights through a squeeze-out merger that includes a palpably overbroad release compelled Pentwater to consider filing an oppression action in Canada, Pentwater was fully mindful of this Court's concerns expressed at the Lead Plaintiff hearing and in the Lead Plaintiff Order. Accordingly, Pentwater identified Mr. Murphy as a Lead Plaintiff movant who has a significant financial interest in the case that was not challenged at the Lead Plaintiff stage, and who sold his Turquoise Hill shares after the Lead Plaintiff Order. Thus, adding Mr. Murphy as a named Plaintiff now and proffering him as an additional Class Representative at class certification will protect the interests of Class members who no longer own shares—and who will not be impacted by the price ultimately paid in the squeeze-out merger or the outcome of any litigation in Canada—and will provide a prophylactic layer of protection in ensuring that this action maximizes the recovery for the losses caused by Defendants' fraud during the Class Period.

### D.    Mr. Murphy's Prior Motion for Lead Plaintiff and Current Desire to Serve as an Additional Plaintiff

John J. Murphy, an engineer and experienced individual investor, timely moved for appointment as Lead Plaintiff in this action and asserted losses of $327,028 based on his purchases of Turquoise Hill shares during the Class Period—a significant loss for an individual investor in a securities class action like this one. After reviewing the competing motions and Pentwater's submissions and position at oral argument, Mr. Murphy filed a response to the competing motions stating that he "no longer [took] a position on the competing lead plaintiff motions of movants with larger financial interests" but "remain[ed] willing and able to serve as lead plaintiff or as a class representative." ECF No. 100, at 2.

After Rio's recent misconduct created pressure on Pentwater to pursue litigation in Canada, Pentwater identified Mr. Murphy as a potential additional named Plaintiff who could help to obviate any concerns over Pentwater's contemplated challenge to Defendants' acts of oppression. Mr. Murphy—who sold his position in Turquoise Hill shares and has no interest in the proposed squeeze-out merger or any claims that Pentwater may pursue in Canada—agreed to serve as an additional named Plaintiff and ultimately as a proposed Class Representative along with Pentwater, which will provide an additional layer of protection for the Class. *See* Ex. 14.

### E.   Pentwater's Contemplated Challenge to Rio and TRQ's Plan of Arrangement and Oppressive Misconduct in a Canadian Proceeding

As set forth above, Pentwater and other TRQ investors possess meritorious unasserted claims for the oppressive conduct occurring after the end of the Class Period in this case. While Rio has clarified its intention to not read Section 5.6 to compromise the claims pending in this case, the current language in Section 5.6 leaves open the likelihood of release of oppression and other claims of Pentwater and other TRQ minority shareholders, particularly if they are not filed by the time the Plan is implemented (if approved).

Accordingly, Pentwater must articulate (including, if necessary, by filing a proceeding in the Yukon) such claims to Defendants and the court overseeing the approval of the Plan of Arrangement in the Yukon to ensure that they are not released. As set forth in the Declaration of Pentwater's CEO, Matthew Halbower, Pentwater intends to do just that, and to challenge language in the Plan of Arrangement to preserve all TRQ minority shareholders' rights to bring oppression and other corporate law claims for the misconduct described above. *See* Ex. 15. Pentwater will argue that the Plan, as drafted, is not "fair and reasonable" to the extent it releases the claims described above. Those claims will need to be preserved by an amendment to the Plan of Arrangement or a court order.

Under the fairness hearing procedures in the Yukon, Pentwater must formally file this challenge in the very near-term: the record date for shareholders to vote on the Plan of Arrangement is September 19, 2022; the special meeting for shareholder approval of the transaction is November 1, 2022; and the court overseeing whether the Plan of Arrangement is "fair and reasonable" is likely to rule within days of the shareholder vote. *See* Ex. 16.

Notably, while Pentwater's challenge to the Plan of the Arrangement would provide generalized relief to all TRQ minority shareholders, and if successful provide substantial and certain relief by preserving the claims described above, there is no established statutory class action procedure in the Yukon to assert investors' oppression claims leading to some uncertainty about the applicable procedures. In addition, Canadian class proceeding litigation would require outside funding subject to Court approval. Thus, if ultimately compelled to file an oppression action in the Yukon, Pentwater would do so on an individual basis. Pentwater expects that any similarly filed shareholder proceedings would be heard together in the Yukon.

## ARGUMENT

## I.   PENTWATER HAS PROVIDED EXCELLENT REPRESENTATION TO THE CLASS AND WILL CONTINUE TO DO SO IF REQUIRED TO PURSUE LEGAL ACTION IN CANADA

As discussed above, the Pentwater Funds have served as a diligent Lead Plaintiff, vigorously prosecuted this action in the best interests of the Class, and achieved substantial success in partially defeating the Rio Defendants' motion to dismiss. The Pentwater Funds are committed to maximizing the Class's recovery in this action, and are pressing ahead to commence discovery to do just that. However, Defendants' unlawful and oppressive conduct since Pentwater's appointment as Lead Plaintiff has made it necessary that Pentwater take legal action in Canada, as the pending squeeze-out merger threatens to extinguish Turquoise Hill investors' legal claims.

Under these circumstances, not only is Pentwater's potential pursuit of legal remedies available to Turquoise Hill investors in a Canadian proceeding appropriate, but its willingness to do so demonstrates its suitability to continue to lead this action.  Moreover, despite the Court's concerns at the Lead Plaintiff hearing and Order in this action—which Pentwater has carefully considered and worked to address to ensure that the Class is adequately protected—Pentwater believes its pursuit of any remedies in a Canadian proceeding would not pose any actual conflict with its representation of Turquoise Hill investors in this case.  To the contrary, in light of the coercive nature of Rio's bid, Pentwater believes that, if anything, pursuing oppression and other remedies in Canada will only serve to benefit the many Class members who still hold TRQ shares.[2]

It is well settled that different interests of investors who still hold their shares and those who have sold their shares do not present conflicts of interest that prevent lead plaintiffs from just one of those groups from representing the entire class in a securities class action.  *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 244 (3d Cir. 2001) (holding that continuing holder can properly serve as lead plaintiff for class including both holders and sellers, in light of Congress's intent in PSLRA that large institutional investors who are likely to be continuing holders serve as lead plaintiffs); *Blackie v. Barrack*, 524 F.2d 891, 909-10 (9th Cir. 1975) (holding that there is no fundamental conflict between purchasers and sellers at different times during class period in

---

[2] *Cf.* 1 Newberg & Rubenstein on Class Actions § 3:75 (6th ed. & June 2022 update) ("courts have recognized that concurrent representation [by class counsel in related actions] may enable counsel to leverage a better settlement for both sets of plaintiffs due to a defendants' desire to obtain a global resolution" or enable counsel to "gain useful legal and factual knowledge in pursuing the concurrent action").  Here, of course, Lead Counsel will not represent Pentwater in any Canadian proceeding, but Pentwater's involvement in the concurrent actions will benefit the Class in this action.

securities class action); *In re Tyco Int'l, Ltd.*, 236 F.R.D. 62, 69 (D.N.H. 2006) (holding that seller

lead plaintiff can properly represent class of both sellers and holders).[3]

In any event, several key points demonstrate why pursuing TRQ investors' rights in Canada

poses no actual conflict with Pentwater's prosecution of the Class's claims in this case.  First, the

unlawful acts of oppression that form the basis for Pentwater's claims in Canada occurred more

recently, after Pentwater's appointment as Lead Plaintiff, and are different from the securities fraud

that occurred in the period from July 2018 to July 2019 and that forms the basis for investors'

claims in this action.

Second, the damages and remedies that could be sought in the two proceedings are also

entirely different.  In this action, damages are based on Turquoise Hill investors' losses that were

caused by the Rio Defendants' fraudulent statements and omissions and the revelation of the truth

about those statements and omissions in February through July 2019.  By contrast, in any Canadian

proceeding, the damages would be focused on Rio's wrongful conduct in forcing TRQ, after the

end of the Class Period and after Pentwater was appointed as Lead Plaintiff, to forgive $2.4 billion

of debt when that burden should have been borne by Rio and TRQ investors also should have been

compensated, and then forcing TRQ to release Rio from any liability or contribution obligation.

Third, Rio is one of the world's largest corporations, with approximately $14 billion of

liquid assets on its balance sheet and a current market capitalization of approximately $92 billion.

Thus, Rio is more than able to satisfy any judgments that investors could obtain in this action and

---

[3] *See also* 1 Newberg & Rubenstein on Class Actions § 3:58 (6th ed. & June 22 update) ("Only conflicts that are fundamental in the suit and that go to the heart of the litigation prevent a proposed class representative from meeting the Rule 23(a)(4) adequacy requirement. . . . Conflicts that are merely speculative or hypothetical will not affect the adequacy inquiry.  A conflict must be manifest at the time of certification rather than dependent on some future event or turn in the litigation that might never occur.").

in any proceeding in Canada, and Pentwater has no reason to sacrifice the Class's interests here to Pentwater's interest in a Canadian proceeding.

In fact, the opposite is true, and Pentwater is fully committed to maximizing the recovery in this action. Courts commonly find that a class action plaintiff's or counsel's separate action against the same defendant presents no actual conflict with the class's interests where there is no limited fund problem. *See, e.g.*, *Mendell v. Am. Med. Response, Inc.*, 2021 WL 1102423, at *3 (S.D. Cal. Mar. 23, 2021); *Luviano v. Multi Cable, Inc.*, 2017 WL 9360851, at *8 (C.D. Cal. Mar. 24, 2017); *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1047 (N.D. Cal. 2014); *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 610-11 (D. Kan. 2014).

Despite the lack of any actual conflict, in light of the Court's concerns expressed at the Lead Plaintiff hearing and in the Lead Plaintiff Order, Pentwater undertook steps to ensure that the Class will be provided with an additional safeguard while taking legal action in Canada. Specifically, the addition of proposed named Plaintiff Mr. Murphy—who sold all his Turquoise Hill stock after the end of the Class Period and has no interest in the squeeze-out merger or in any Canadian litigation—obviates any potential conflict that could arise as a result of Pentwater pursuing litigation in Canada.

In similar situations, courts have rejected the notion that a lead plaintiff that pursues separate litigation against the same defendants faces an insurmountable conflict of interest unless the circumstances truly present a limited fund scenario—a fact pattern that simply does not apply here in light of Rio's financial condition. *See In re Bearingpoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 541 (E.D. Va. 2006); *Williams v. Empire Funding Corp.*, 183 F.R.D. 428, 440 (E.D. Pa. 1998); *Anderson v. Bank of S., N.A.*, 118 F.R.D. 136, 149 (M.D. Fla. 1987); *Sheftelman v. Jones*, 667 F. Supp. 859, 865 (N.D. Ga. 1987). Moreover, even in those limited fund situations, courts have held

that pursuing separate litigation does not pose an insurmountable conflict where there are "structural protections" such as separate counsel in place to guard against a potential conflict— protections that are similar to those proposed by Pentwater's addition of Mr. Murphy as a named Plaintiff here.  *See, e.g.*, *Anderson*, 118 F.R.D. at 149; *Sheftelman*, 667 F. Supp. at 865.

For example, on similar facts, a court held that the roles of a governmental entity serving as a lead plaintiff in a securities action, which was also pursuing separate opioid litigation against the same defendant, did not disqualify it from representing the class.  The court relied in part on the "structural protection" provided by two other plaintiffs who had no such conflicts:

> [T]he Court is confident that there are "sufficient structural protections" to protect the interests of class members from Defendants' proposed conflicts of interest. This case has three lead plaintiffs . . . . Part of the Court's previous reason for appointing a coalition for class leadership here was to "rel[y] on the guidance of other lead plaintiffs to 'balance any conflicts [the other representatives] may have.'"  The Federal Rules ensure that any settlement of this litigation will require the Court's approval.  In the presence of these structural protections, the Court does not find there are any non-hypothetical conflicts of interests that render [the allegedly conflicted lead plaintiff] inadequate.

*Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 474-75 (E.D. Pa. 2021); *see also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 432 (3d Cir. 2016) (appointment of class representative with current injuries and one with injuries that might manifest in the future, with separate counsel, provided adequate representation of both groups); *Juris v. Inamed Corp.*, 685 F.3d 1294, 1324 (11th Cir. 2012) (in defective breast implant case, holding that appointment of "a representative with no manifested injury, one with minor to moderate injuries, and one who was totally disabled" and "separate counsel" provided "structural assurances of adequate representation"); *Professional Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 643, 647 (8th Cir. 2012) (appointment of both unions and retirees as class representatives with common counsel adequately protected both current and retired employees); *Mortimer v. Diplomat Pharmacy Inc.*, 2019 WL 3252221, at *4 (N.D. Ill. July 19, 2019) (rejecting argument pursuing separate litigation against

defendant presented actual conflict of interest; there was no proof defendant's financial capacity presented a "limited fund scenario"; and additional plaintiffs and counsel and court approval of settlement obviated any potential conflict).

Likewise, here, adding Mr. Murphy as an additional Plaintiff and proposed Class Representative will provide "structural protection" for the Class's interests against any potential conflict created if Pentwater pursues legal action in Canada.  As Mr. Murphy explains in his declaration, he appreciates and understands that he will owe independent fiduciary duties to the Class if included as an additional named Plaintiff, and is committed to fulfilling those fiduciary duties by making decisions in the best interests of the Class, irrespective of the Pentwater Funds' role as the Court-appointed Lead Plaintiff.  *See* Ex. 14 at ¶¶5-6.  These commitments, the involvement of Mr. Murphy's counsel, and the Court's approval of any settlement ultimately obtained in this matter obviate any potential concern about Pentwater's pursuit of legal remedies in Canada.

## II.   MR. MURPHY SHOULD BE ADDED AS A PLAINTIFF AND PROPOSED CLASS REPRESENTATIVE

As discussed above, as part of fulfilling its fiduciary responsibilities as Lead Plaintiff, Pentwater properly considered the concerns the Court expressed at the Lead Plaintiff hearing and identified Mr. Murphy as an appropriate Class member whose addition as a named Plaintiff would serve as an additional safeguard to protect the interests of the Class.  In doing so, Pentwater has acted in accordance with its responsibilities as Lead Plaintiff.

Indeed, the "PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class." *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 83 (2d Cir. 2004). To the contrary, the PSLRA imposes an obligation on court-appointed Lead Plaintiffs to identify additional named plaintiffs where there may be "distinct interests or claims"—just as Pentwater

has done here.  *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003) ("Lead Plaintiffs have a responsibility to identify and include named plaintiffs . . . who may be determined, at the class certification stage, to have distinct interests or claims."); *see also In re IPO Sec. Litig.*, 214 F.R.D. 117, 122-23 (S.D.N.Y. 2002) (permitting joinder of additional named plaintiffs).

For the reasons explained above, the Pentwater Funds respectfully request that the Court permit Lead Plaintiff to add Mr. Murphy as an additional named Plaintiff, as doing so will enhance the representation of the Class.  Adding Mr. Murphy as a named Plaintiff and proposed Class Representative is appropriate under Rule 21, which provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  For example, in *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*, 2016 WL 7409840 (S.D.N.Y. Nov. 4, 2016), the court certified an investor class and approved the addition of a new proposed class representative under Rule 21 where "the inclusion of additional class representatives . . . strengthens the adequacy of representation."  *Id.* at *6 & n.8 (internal quotation marks and citation omitted); *see also Leonard v. Abbot Labs., Inc.*, 2012 WL 764199, at *7-8 (E.D.N.Y. Mar. 5, 2012) (adding named plaintiff for class under Rule 21); *In re IPO*, 214 F.R.D. at 122-23 (adding class representatives and citing Rule 21).

As discussed above, Pentwater has vigorously and loyally represented the Class and can and should continue to do so.  If, however, the Court has any concerns about Pentwater's need to pursue the claims arising from Rio's oppressive conduct and the coercive Rio-Tinto squeeze-out, granting the request for Mr. Murphy to be included as an additional named Plaintiff would address them.  *See, e.g.*, *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 2013 WL 6839093, at *3 (S.D.N.Y. Dec. 27, 2013) ("the inclusion of additional class representatives who made

purchases in different offerings strengthens the adequacy of representation"); *Andujar v. Rogowski*, 113 F.R.D. 151, 154 (S.D.N.Y. 1986) ("the Court possesses broad discretion under Rule 21"); 7 C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. § 1688 (3d ed. 1986).

Last, the inclusion of Mr. Murphy, who brings the identical claims based on the identical facts and legal theories as Pentwater, poses no possible prejudice to Defendants. The parties are currently negotiating a case schedule, and adding Mr. Murphy at this early stage, at the commencement of discovery, ensures that including him as an additional named Plaintiff will not impose any delay in the case prosecution or prejudice Defendants in any way. On the other hand, denying this motion would risk prejudice to the Class were the Court to question Pentwater's ability by itself to represent all Class members.

## CONCLUSION

For the reasons discussed above, the Pentwater Funds respectfully request that the Court (i) find that Pentwater may appropriately challenge the Plan of Arrangement in a Canadian court, while continuing to serve as Lead Plaintiff and a proposed Class Representative in this action, and (ii) grant leave for Mr. Murphy to be added as an additional Plaintiff and proposed Class Representative.

Dated: September 20, 2022

Respectfully submitted,

*/s/ Salvatore J. Graziano*
Salvatore J. Graziano
Mark Lebovitch
Michael D. Blatchley
Jai Chandrasekhar
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
markl@blbglaw.com

michaelb@blbglaw.com
jai@blbglaw.com

*Counsel for Lead Plaintiff the Pentwater
Funds and Lead Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Proposed Named Plaintiff John J.
Murphy*