**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE TURQUOISE HILL RESOURCES LTD.
SECURITIES LITIGATION

Case No. 1:20-cv-08585-LJL

ORAL ARGUMENT REQUESTED

---

**MEMORANDUM OF LAW IN SUPPORT**
**OF THE RIO DEFENDANTS' MOTION**
**FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b)**

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ..............................................................................................................3

ARGUMENT ...................................................................................................................6

I.      THE COURT SHOULD GRANT CERTIFICATION ON THE CONTROLLING
LEGAL QUESTION OF WHETHER STANDING EXISTS WHERE
INVESTORS IN ONE COMPANY SUE ANOTHER FOR MISSTATEMENTS............6

      A.     The Applicable Standard For Determining Whether Plaintiffs Lack
Standing To Sue The Rio Defendants Presents A Controlling Question Of
Law ...............................................................................................................6

      B.     Substantial Ground For Difference Of Opinion Exists On This Question
Of Law ..........................................................................................................7

      C.     Certification Of This Question Will Materially Advance The Termination
Of The Case ................................................................................................11

CONCLUSION ..............................................................................................................13

# <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

<u>Cases</u>

*In re Actos End-Payor Antitrust Litig.*,
  2020 WL 433710 (S.D.N.Y. Jan. 28, 2020) ........................................................... 5

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  2006 WL 708303 (S.D.N.Y. Mar. 20, 2006) .......................................................... 7

*In re Altisource Portfolio Sols., S.A. Sec. Litig.*,
  2015 WL 12001262 (S.D. Fla. Sept. 4, 2015) ..................................................... 11

*Balintulo v. Daimler AG*,
  727 F.3d 174 (2d Cir. 2013)........................................................................... 3, 5, 7, 11

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
  390 F. Supp. 3d 432 (S.D.N.Y. 2019)..................................................................... 9

*Bellino v. JPMorgan Chase Bank, N.A.*,
  2017 WL 129021 (S.D.N.Y. Jan. 13, 2017) ................................................. 6, 7, 12

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975)............................................................................................... 8

*Capitol Records, LLC v. Vimeo, LLC*,
  972 F. Supp. 2d 537 (S.D.N.Y. 2013)................................................................ 6, 12

*Consub Del. LLC v. Schahin Engenharia Limitada*,
  476 F. Supp. 2d 305 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008) ...................... 6, 12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  986 F. Supp. 2d 524 (S.D.N.Y. 2014) .................................................................. 6

*Ferring B.V. v. Allergan, Inc.*,
  343 F. Supp. 3d 284 (S.D.N.Y. 2018)..................................................................... 7

*Glatt v. Fox Searchlight Pictures Inc.*,
  2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013)....................................................... 11

*Harbinger Capital Partners LLC v. Deere & Co.*,
  632 F. App'x 653 (2d Cir. 2015) ........................................................................... 9

*Islam v. Lyft, Inc.*,
  2021 WL 2651653 (S.D.N.Y. June 28, 2021) ........................................................ 5

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011)............................................................................................ 2, 8

*Klinghoffer v. S.N.C. Achille Lauro*,
  921 F.2d 21 (2d Cir. 1990)................................................................................ 1, 5, 6

*Koehler v. Bank of Berm. Ltd.*,
  101 F.3d 863 (2d Cir. 1996)................................................................................... 12

*Lerner v. Millenco, L.P.*,
   23 F. Supp. 2d 345 (S.D.N.Y. 1998)....................................................................... 12

*LightSquared Inc. v. Deere & Co.*,
   2015 WL 585655 (S.D.N.Y. Feb. 5, 2015), *aff'd*, 632 F. App'x 653 (2d Cir. 2015)............. 10

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*,
   2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) ............................................................. 9, 10

*In re NYSE Specialists Sec. Litig.*,
   503 F.3d 89 (2d Cir. 2007).................................................................. 2, 3, 4, 8, 9, 10, 11

*Ont. Pub. Serv. Emps. Union Pension Trust Fund v. Nortel Networks Corp.*,
   369 F.3d 27 (2d Cir. 2004)................................................................ 2, 3, 4, 7, 8, 9, 11

*Padilla v. Rumsfeld*,
   256 F. Supp. 2d 218 (S.D.N.Y. 2003) ..................................................................... 5, 6, 12

*Pollack v. Laidlaw Holdings, Inc.*,
   1993 WL 254932 (S.D.N.Y. June 25, 1993) ................................................................ 5

*United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*,
   521 F. Supp. 3d 265 (E.D.N.Y. 2021) ..................................................................... 10

*Republic of Colombia v. Diageo N. Am. Inc.*,
   619 F. Supp. 2d 7 (E.D.N.Y. 2007) ......................................................................... 10

*S.E.C. v. Credit Bancorp, Ltd.*,
   103 F. Supp. 2d 223 (S.D.N.Y. 2000)....................................................................... 11

*In re Scotts EZ Seed Litig.*,
   2017 WL 6398627 (S.D.N.Y. Aug. 31, 2017) ........................................................... 11

*Seneca Nation v. Cuomo*,
   484 F. Supp. 3d 65 (W.D.N.Y. 2020) ....................................................................... 10

*In re Stockbridge Funding Corp.*,
   1993 WL 205225 (S.D.N.Y. June 8, 1993) ............................................................... 10

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta*,
   552 U.S. 148 (2008)................................................................................................ 8

*Tantaros v. Fox News Network, LLC*,
   465 F. Supp. 3d 385 (S.D.N.Y. 2020)..................................................................... 5, 7, 10

*Transp. Workers Union of Am. v. N.Y.C. Transit Auth.*,
   358 F. Supp. 2d 347 (S.D.N.Y. 2005)....................................................................... 12

*Weber v. United States*,
   484 F.3d 154 (2d Cir. 2007).................................................................................. 5

## Rules / Statutory Authorities

28 U.S.C. § 1292(b) ....................................................................... 1, 2, 3, 4, 7, 11, 12, 13

Securities Exchange Act of 1934 § 10(b) ............................................. 1, 2, 3, 7, 8, 10

SEC Rule 10b-5 ........................................................................... 1, 2, 3, 7, 8, 11

Defendants Rio Tinto plc, Rio Tinto Limited, Jean-Sébastien Jacques, and Arnaud Soirat (the "Rio Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to 28 U.S.C. § 1292(b), to certify for interlocutory review the Court's order (ECF No. 149) denying the Rio Defendants' motion to dismiss on the question of Plaintiffs' standing to pursue this action.

## PRELIMINARY STATEMENT

This Court should certify its order denying in part the Rio Defendants' motion to dismiss (ECF No. 149, the "Order") for interlocutory review under 28 U.S.C. § 1292(b). The Order presents a controlling question of law as to the scope of standing for a claim under Section 10(b) of the Exchange Act and SEC Rule 10b-5. A substantial ground for difference of opinion exists as to this question, and its resolution would materially advance the ultimate termination of the litigation. Indeed, a conclusion that Plaintiffs do not have standing would end the case entirely.

*First*, whether Plaintiffs have standing to pursue this action presents a controlling question of law because, if Plaintiffs lack standing, they cannot pursue their claims against the Rio Defendants. Thus, courts in this Circuit routinely recognize that the issue of standing presents a controlling legal question. Because "reversal of the district court's order would terminate the action," *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990), the standing question presented here satisfies the controlling question of law requirement for certification under Section 1292(b).

*Second*, substantial ground for difference of opinion exists as to the standard for assessing standing on a securities fraud claim. Specifically, in deciding the motion to dismiss, the Court concluded that Plaintiffs have standing to sue the Rio Defendants under Section 10(b) and Rule 10b-5 even though Plaintiffs do not allege any purchase or sale of Rio Tinto securities. In doing so, the Court determined that the Second Circuit's *Nortel* decision had been subsequently narrowed

by the Second Circuit's decision in *In re NYSE*, which the Court concluded "confined the potential reach of *Nortel*'s holding substantially."  Order at 30.  The Court rejected the Rio Defendants' argument that *In re NYSE* "'carv[ed]' out certain narrow exceptions to *Nortel*'s general holding." *Id*.  But the Second Circuit's *Nortel* decision clearly states that "[s]tockholders do not have standing to sue under Section 10(b) and Rule 10b–5 when the company whose stock they purchased is negatively impacted by the material misstatement of another company, whose stock they do not purchase." *Ont. Pub. Serv. Emps. Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 34 (2d Cir. 2004) ("*Nortel*").  Those facts are the ones present here and, even if the Court ultimately is correct in concluding that Plaintiffs have standing, the Second Circuit should consider whether such conclusion is consistent with *Nortel* and *In re NYSE* in light of the substantial ground for difference of opinion on this issue.

To be clear, this Court does not need to conclude it erred in rejecting the Rio Defendants' standing argument to grant certification under Section 1292(b).  Rather, this Court need only determine that, whether or not it ultimately reached the correct conclusion on standing, a substantial ground for difference of opinion exists.  That is the case here, particularly because the Second Circuit's precedent must be read in light of the Supreme Court's statement that "[c]oncerns with the judicial creation of a private cause of action [under Section 10(b)] caution against its expansion." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). Resolution of this issue therefore is needed to ensure the Court's Order accords with Second Circuit law, as informed by Supreme Court authority, and such resolution would provide benefits not only to this case but to the wide-range of securities fraud cases that proceed in this Circuit.

*Finally*, resolution of this controlling legal question now would materially advance the termination of the litigation because, should the Rio Defendants prevail, it would end the case.

Courts in this Circuit place particular weight on this factor because of the benefits gained by avoiding protracted litigation on the merits only for a later reversal on appeal based on a legal question.

At bottom, Section 1292(b)'s purpose is to ensure the prompt and efficient resolution of complex legal issues.  Where, as here, all of the statute's criteria are met and the order at issue "is of special consequence," the district court "should not hesitate to certify an interlocutory appeal." *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (citation omitted).  The Rio Defendants' motion should be granted and the Court's Order certified for interlocutory review to permit the Second Circuit to rule on the dispositive gateway question of standing in a securities fraud action.

## BACKGROUND

In October 2021, the Rio Defendants moved to dismiss Plaintiffs' Second Amended Consolidated Complaint on several grounds, including that Plaintiffs lack standing to sue.  ECF No. 131.  The Rio Defendants argued that Plaintiffs lack standing because they purport to assert claims on behalf of investors "who purchased or otherwise acquired Turquoise Hill securities" (SAC ¶ 1, ECF No. 127), not Rio securities.  ECF No. 131 at 9–14.  The Rio Defendants based their argument on the Second Circuit's statement that "[s]tockholders do not have standing to sue under Section 10(b) and Rule 10b–5 when the company whose stock they purchased is negatively impacted by the material misstatement of another company, whose stock they do not purchase." *Id.* at 10 (quoting *Nortel*, 369 F.3d at 34).  Thus, the Rio Defendants asserted, while the Second Circuit in *In re NYSE* subsequently recognized that Rule 10b-5 claims against a non-issuer could lie to redress "false statements made by underwriters, brokers, bankers, and non-issuer sellers," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 102 (2d Cir. 2007), that decision provided only a limited carve-out of exceptions to *Nortel*'s general rule.  ECF No. 131 at 10–12.  Accordingly, because Plaintiffs' alleged losses stem solely from their purchases of stock in another company—

Turquoise Hill—Plaintiffs could not maintain Exchange Act claims against the Rio Defendants. *Id*. at 9–10.

On September 2, 2022, the Court granted in part and denied in part the Rio Defendants' motion to dismiss, declining to hold that Plaintiffs lack standing. Order at 28–38. The Court held that *Nortel*'s holding is "much narrower than the Rio Defendants claim and applies to cases with similar facts to those present in *Nortel*—that is, where the non-issuers' misstatements do not directly relate to the issuer and there is no more than a 'business relationship' between the two parties." *Id*. at 32. The Court explained that, in its view, *In re NYSE* did not "'carve' out certain narrow exceptions to *Nortel*'s general holding. Instead, *In re NYSE* confined the potential reach of *Nortel*'s holding substantially," limiting its application to situations where the connection between the false statements of the non-issuer and a plaintiff's stock purchase are "too remote." *Id*. at 30–31 (record citation omitted). *Nortel* accordingly would not bar a claim against a third party "where that third party had substantial connections to the issuer and, more importantly, made statements *directly about the issuer's own securities*." *Id*. at 36 (original emphasis). Thus, the Court concluded, because "Rio Tinto elected to make statements directly about the operation of Turquoise Hill's Oyu Tolgoi project" in which it had invested, Plaintiffs had standing. *Id*. at 37.

## LEGAL STANDARD

A district court may certify an order for interlocutory appeal where the order involves (1) "a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," (3) such "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). In enacting Section 1292(b), Congress "sought to assure the prompt resolution of knotty legal problems." *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007). Thus, when a ruling satisfies these criteria and "involves a new legal question

or is of special consequence," then the district court "should not hesitate to certify an interlocutory appeal." *Balintulo*, 727 F.3d at 186 (citation omitted).

"Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer*, 921 F.2d at 24 (citations omitted); *see also, e.g.*, *Islam v. Lyft, Inc.*, 2021 WL 2651653, at *4 (S.D.N.Y. June 28, 2021) ("Although a question of law is generally controlling if reversal of the district court's order would terminate the action, a district [court] may also consider the system-wide costs and benefits of allowing the appeal, including the impact that an appeal will have on other cases." (cleaned up)).

A substantial ground for difference of opinion will exist, for instance, where "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 391 (S.D.N.Y. 2020); *see, e.g.*, *In re Actos End-Payor Antitrust Litig.*, 2020 WL 433710, at *2 (S.D.N.Y. Jan. 28, 2020) (substantial ground for difference of opinion considering "the absence of controlling authority, as well as the novelty and complexity of the issue"); *Padilla v. Rumsfeld*, 256 F. Supp. 2d 218, 223 (S.D.N.Y. 2003) (substantial ground for difference of opinion when order was "based in part on circuit law that is not entirely settled and has not been applied to facts like those present here"); *Pollack v. Laidlaw Holdings, Inc.*, 1993 WL 254932, at *3 (S.D.N.Y. June 25, 1993) (substantial ground for difference of opinion considering "area of the law that has, as yet, undefined boundaries").

Finally, courts "place particular weight" on the third factor:  whether an immediate appeal may materially advance the ultimate termination of the litigation.  *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013); *see also, e.g.*, *Consub Del. LLC v. Schahin*

*Engenharia Limitada*, 476 F. Supp. 2d 305, 310 (S.D.N.Y. 2007) ("Courts place particular emphasis on the importance of this last factor."), *aff'd*, 543 F.3d 104 (2d Cir. 2008).  This requirement, "which in practice is 'closely connected' to the first factor," is met when the appeal "promises to advance the time for trial or to shorten the time required for trial."  *Capitol Records, LLC*, 972 F. Supp. 2d at 551 (citations omitted).  That includes, of course, where the action would be terminated entirely if the district court's order were reversed.  *See, e.g.*, *Bellino v. JPMorgan Chase Bank, N.A.*, 2017 WL 129021, at *4 (S.D.N.Y. Jan. 13, 2017) ("A reversal on the question of standing would materially advance the termination of litigation because 'reversal could result in dismissal of the [entire] action' in Defendant's favor." (citation omitted)); *Padilla*, 256 F. Supp. 2d at 223 ("It seems fairly obvious how the litigation could be materially advanced—indeed terminated—depending on how these questions are answered, and there seems little need to make the obvious explicit.").

## ARGUMENT

I.   **THE COURT SHOULD GRANT CERTIFICATION ON THE CONTROLLING LEGAL QUESTION OF WHETHER STANDING EXISTS WHERE INVESTORS IN ONE COMPANY SUE ANOTHER FOR MISSTATEMENTS**

### A.   **The Applicable Standard For Determining Whether Plaintiffs Lack Standing To Sue The Rio Defendants Presents A Controlling Question Of Law**

At the threshold, this Court's Order, which determines that Plaintiffs have standing, presents a controlling question of law.

The Second Circuit has made "clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action."  *Klinghoffer*, 921 F.2d at 24;  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 536 (S.D.N.Y. 2014) (question is controlling if it could "significantly affect the conduct of the action" by requiring its dismissal).  Without standing, a plaintiff cannot pursue a claim, rendering the question of standing

"controlling" under Section 1292(b).  *See, e.g.*, *Ferring B.V. v. Allergan, Inc.*, 343 F. Supp. 3d 284, 288 (S.D.N.Y. 2018) (question controlling where reversal of order "would require dismissal for lack of standing"); *Bellino*, 2017 WL 129021, at *2 (holding standing question "is a controlling question of law, and that reversal on this issue would end this litigation"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 708303, at *3 (S.D.N.Y. Mar. 20, 2006) (question controlling because, "if this Court's August 30 Order were reversed on the ground that Huff lacks standing, that would be an end of the case").

Here, the Rio Defendants moved to dismiss for lack of standing, which this Court denied. The Rio Defendants seek appellate review of this particular issue and resolution in the Rio Defendants' favor would terminate the action.  Thus, the Rio Defendants unquestionably meet the first requirement for certification under Section 1292(b).

**B.      Substantial Ground For Difference Of Opinion Exists On This Question Of Law**

The second factor also favors certification because the applicable standard for assessing standing in a securities fraud action presents substantial ground for difference of opinion since the issue concerns the undefined boundaries of prior Second Circuit authority; "conflicting authority on the issue" exists, *Tantaros*, 465 F. Supp. 3d at 391; and the question "is of special consequence," *Balintulo*, 727 F.3d at 186, not just to this action, but to all securities fraud cases.

While this Court concluded that *Nortel* applies only "where the non-issuers' misstatements do not directly relate to the issuer and there is no more than a 'business relationship' between the two parties," the plain language of *Nortel* raises doubt about that conclusion.  Order at 32.  *Nortel* states that "[s]tockholders do not have standing to sue under Section 10(b) and Rule 10b–5 when the company whose stock they purchased is negatively impacted by the material misstatement of another company, whose stock they do not purchase."  *Nortel*, 369 F.3d at 34.  That the Second

Circuit has concluded that *Nortel* does not apply to "underwriters, brokers, bankers, and non-issuer sellers," *In re NYSE*, 503 F.3d at 102, does not answer the question here, since the Rio Defendants are not "underwriters, brokers, bankers, [or] non-issuer sellers."  The plain language of both *Nortel* and *In re NYSE* therefore supports the Rio Defendants' interpretation of the scope of standing in a securities fraud action.

While the Court reasoned that other third parties could be sued, or else the Supreme Court's decisions in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) and *Stoneridge Investment Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008), "would largely be nullities," Order at 33, the Supreme Court has cautioned against expanding Section 10(b) standing.  "Although neither Rule 10b–5 nor § 10(b) expressly creates a private right of action," the Supreme Court has held that an implied right of action exists.  *Janus*, 564 U.S. at 142.  But, because the private right of action is implied, and not express, "[c]oncerns with the judicial creation of a private cause of action caution against its expansion."  *Id.* (quoting *Stoneridge*, 552 U.S. at 165).  A court therefore "must give 'narrow dimensions ... to a right of action Congress did not authorize when it first enacted the statute and did not expand when it revisited the law.'"  *Id.* (quoting *Stoneridge*, 552 U.S. at 167); *see also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 739 (1975) ("There has been widespread recognition that litigation under Rule 10b–5 presents a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general.").  Thus, in light of the Second Circuit's plain statement in *Nortel* and the Supreme Court's warning against expansion of Section 10(b) standing, substantial ground for difference of opinion exists.

Aside from this case, the Rio Defendants are aware of no cases in this Circuit—including those cited in the Order—that have addressed the precise scenario at issue here under *Nortel* or *In*

*re NYSE*, further indicating that substantial ground for difference of opinion exists.  *See* Order at 32–33.  For example, last year in *Menora Mivtachim* the court observed that it could locate **no case** "in the 16-plus years since *Nortel* in which a court in this Circuit has sustained a Section 10(b) lawsuit by plaintiffs against a company whose stock they never" owned for "misrepresentations the company made about itself."  *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at *31 (S.D.N.Y. Mar. 30, 2021).  The *Menora Mivtachim* court, however, did not purport to narrow *Nortel*'s application, but rather applied *Nortel* to the specific facts of that case, which involved "self-referential statements made by a company in which plaintiffs never invested."  *Id.* at *30.  Similarly, in *Harbinger*, the plaintiff purchased "stock based on [the issuer's] 'optimistic projections' about the feasibility of its plan given defendants' alleged failure to disclose" their products' design issues "for their own business reasons."  *Harbinger Capital Partners LLC v. Deere & Co.*, 632 F. App'x 653, 656 (2d Cir. 2015).  Far from reining in *Nortel*, the Second Circuit held that "[t]here is no relevant difference between Harbinger and the plaintiffs in *Nortel Networks*," even though the plaintiff specifically alleged it had relied on defendant's omissions and misstatements to the issuer in purchasing the issuer's securities.  *Id.*  And in *Barclays*, the court held that plaintiffs' entirely dissimilar allegations that "they were systematically victimized by distorted prices" in certain exchanges conferred standing, but *still* noted that cases post-*Nortel* and *In re NYSE* had "led to some uncertainty about the precise limits of Section 10(b)'s cause of action."  *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 390 F. Supp. 3d 432, 447 (S.D.N.Y. 2019).

The core question that remains unanswered in the wake of *Nortel* and *In re NYSE*, however, and what drove the Court's conclusion here, is what it means for the "connection between" the alleged misstatements and plaintiff's purchase of stock to be "too remote."  Order at 30–31

(quoting *In re NYSE*, 503 F.3d at 102).  This question not only is unsettled in the Second Circuit, it is "particularly difficult" in light of the Supreme Court's repeated cautioning against expanding the private right of action under Section 10(b), indicating substantial ground for difference of opinion.  *Tantaros*, 465 F. Supp. 3d at 391-92 (substantial ground for difference of opinion where novel question was "complex and subject to legitimate dispute"); *see also, e.g.*, *United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc*., 521 F. Supp. 3d 265, 277 (E.D.N.Y. 2021) (substantial ground for difference of opinion where question presented "a novel issue in the Second Circuit"); *Seneca Nation v. Cuomo*, 484 F. Supp. 3d 65, 78 (W.D.N.Y. 2020) (substantial ground for difference of opinion where "case law 'is less than crystal clear'").[1]

What authority does exist, moreover, indicates that subsequent courts have interpreted the *In re NYSE* exception narrowly.  *See, e.g.*, *LightSquared Inc. v. Deere & Co.*, 2015 WL 585655, at *1 (S.D.N.Y. Feb. 5, 2015) (no standing even though plaintiff alleged it invested "in LightSquared . . . in reliance upon Defendants' 'represent[ations]—sometimes through affirmative misstatements, sometimes through deliberate omissions—that they were not going to raise the objections [to LightSquared's network] they ultimately asserted [to the FCC]"), *aff'd*, 632 F. App'x 653 (2d Cir. 2015); *Menora Mivtachim*, 2021 WL 1199035, at *32 (holding shareholders of IFF lacked standing to sue executives of company acquired by IFF for misstatements about acquired company, because "plaintiffs never purchased or sold [acquired company] securities, never stood to be contingent direct shareholders in [the acquired company] (as opposed to <u>IFF</u> that

---

[1]    *See also, e.g.*, *Republic of Colombia v. Diageo N. Am. Inc.*, 619 F. Supp. 2d 7, 11 (E.D.N.Y. 2007) (substantial ground for difference of opinion given "close and difficult questions about which courts could disagree" and "the fact that there are so few decisions considering these doctrines"); *In re Stockbridge Funding Corp.*, 1993 WL 205225, at *4 (S.D.N.Y. June 8, 1993) ("While the Trustee argues that there must be a split in authority to satisfy this requirement, the Court disagrees.  A substantial ground for difference of opinion can exist in a case of first impression.").

became the sole shareholder), and never owned a derivative security linked to the ownership value of [the acquired company]"); *see also In re Altisource Portfolio Sols., S.A. Sec. Litig.*, 2015 WL 12001262, at *4 (S.D. Fla. Sept. 4, 2015) ("Plaintiffs have not identified any case holding that shareholders of one public company have standing to bring a 10b-5 claim against another public company that neither issued nor sol[d] stock to those shareholders."). The tension between this Court's more expansive reading of *Nortel* and *In re NYSE*'s standing requirements and other decisions that have addressed the issue further supports a substantial ground for difference of opinion. *See, e.g.*, *Glatt v. Fox Searchlight Pictures Inc.*, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013) ("The intra-district split and decisions from other circuits clearly show a substantial basis exists for difference of opinion.").

To be clear, this Court need not conclude that its decision was incorrect to find this factor satisfied: it need only find that a "substantial ground for difference of opinion" exists. 28 U.S.C. § 1292(b). That standard is met here. And appellate review of the scope of standing in a securities fraud action will have a significant impact on not just this case, but all securities fraud cases. Thus, because a definitive answer to the standing question posed in this case undoubtedly "is of special consequence," particularly in light of its far-reaching precedential impact, the Court "should not hesitate to certify an interlocutory appeal." *Balintulo*, 727 F.3d at 186; *see, e.g.*, *In re Scotts EZ Seed Litig.*, 2017 WL 6398627, at *1 (S.D.N.Y. Aug. 31, 2017) (certification proper where "this issue has potential precedential value for a large number of cases"); *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000) (noting that "[p]recedential value," while not determinative, is "certainly something that should be considered").

### C.  Certification Of This Question Will Materially Advance The Termination Of The Case

Finally, an immediate appeal of the Court's Order with respect to the single, controlling

question of law on standing in a securities fraud action will materially advance the termination of this litigation.

"An immediate appeal is considered to advance the ultimate termination of the litigation if that 'appeal promises to advance the time for trial or to shorten the time required for trial.'" *Transp. Workers Union of Am. v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005). An interlocutory appeal here would do just that, because if the Second Circuit reverses the Court's finding of standing, that would end the case. *See, e.g.*, *Bellino*, 2017 WL 129021, at *4 ("A reversal on the question of standing would materially advance the termination of litigation because 'reversal could result in dismissal of the [entire] action' in Defendant's favor." (citation omitted)); *Padilla*, 256 F. Supp. 2d at 223 ("It seems fairly obvious how the litigation could be materially advanced—indeed terminated—depending on how these questions are answered, and there seems little need to make the obvious explicit.").

The dispositive nature of the Rio Defendants' interlocutory appeal only enhances the weight district courts accord this factor. *See, e.g.*, *Capitol Records*, 972 F. Supp. 2d at 551 (courts "place particular weight" on the third factor); *Consub Delaware*, 476 F. Supp. 2d at 310 ("Courts place particular emphasis on the importance of this last factor."). Specifically, "[t]he use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation." *Koehler v. Bank of Berm. Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996); *see also, e.g.*, *Lerner v. Millenco, L.P.*, 23 F. Supp. 2d 345, 347 (S.D.N.Y. 1998) ("The Court of Appeals has emphasized the importance of the third consideration in determining the propriety of an interlocutory appeal."). Where, as here, an appeal would dispose of the action entirely, this factor unequivocally weighs in favor of granting leave to appeal.

## CONCLUSION

For the reasons set forth above, the Rio Defendants respectfully request that the Court grant the motion to certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b), and amend the Order accordingly to state that the Order involves a controlling question of law as to the issue of standing as to which there is substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation.

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Dated:  September 30, 2022        */s/ Corey Worcester*
Corey Worcester
Renita Sharma
Jomaire Crawford
Hope Skibitsky
Leigha Empson
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue
New York, NY 10010
Tel:  212-849-7000
Fax: 212-849-7100

*Counsel for Defendants Rio Tinto plc, Rio Tinto Limited, Jean-Sébastien Jacques, and Arnaud Soirat*