UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Turquoise Hill Resources Ltd. Securities Litigation | Case No.: 1:20-cv-08585-LJL <br><br> <u>CLASS ACTION</u> <br><br> Hon. Lewis J. Liman |

# LEAD PLAINTIFF MOVANT CHANG PIN LIN'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND SELECTION OF LEAD COUNSEL

Nicholas I. Porritt
Adam M. Apton
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171

*Attorneys for Lead Plaintiff Movant Chang Pin Lin and [Proposed] Lead Counsel for the Class*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PROCEDURAL HISTORY | 3 |
| III. | ARGUMENT | 5 |
| | A. THE COURT SHOULD APPOINT CHANG LIN PIN | 5 |
| |     1. The Court Should Appoint a New Lead Plaintiff | 5 |
| |     2. Mr. Lin Should Be Appointed as the Lead Plaintiff to Represent the Interests of the Class Pursuant to the PSLRA. | 7 |
| | B. MR. LIN'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED | 12 |
| IV. | CONCLUSION | 13 |

i

# **TABLE OF AUTORITIES**

**Cases**

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ................................................................................................ 8, 10

*Claude v. Robert*,
    2015 U.S. Dist. LEXIS 44319 (W.D. Wash. Apr. 3, 2015) ....................................................... 6

*Crawford v. Honig*,
    37 F.3d 485 (9th Cir. 1994) ...................................................................................................... 11

*Daniels Family 2001 v. Las Vegas Sands Corp.*,
    2021 U.S. Dist. LEXIS 974 (D. Nev. Jan. 5, 2021) ................................................................. 12

*Deinnocentis v. Dropbox, Inc.*,
    2020 U.S. Dist. LEXIS 8680 (N.D. Cal. Jan. 16, 2020) ........................................................... 12

*In re Drexel Burnham Lambert Group*,
    960 F.2d 285 (2d Cir. 1992) ..................................................................................................... 11

*Ferrari v. Gisch*,
    225 F.R.D. 599 (C.D. Cal. 2004) .............................................................................................. 10

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
    862 F. Supp. 2d 322 (S.D.N.Y. 2012) ........................................................................................ 7

*Gronich v. Omega Healthcare Inv'rs., Inc.*,
    2018 U.S. Dist. LEXIS 51934 (S.D.N.Y. Mar. 27, 2018) .......................................................... 2

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................................................................. 10

*Haung v. Acterna Corp.*,
    220 F.R.D. 255 (D. Md. 2004) .................................................................................................. 10

*In re Herley Indus. Sec. Litig.*,
    2009 U.S. Dist. LEXIS 91600 (E.D. Pa. Sep. 30, 2009) ............................................................ 1

*In re Initial Pub. Offering Sec. Litig.*,
    214 F.R.D. 117 (S.D.N.Y. 2002) ....................................................................................... passim

*Jiang v. BlueCity Holdings Limited, et al.*,
    No. 1:21-cv-04044-CLP (E.D.N.Y. Dec. 22, 2021) ................................................................. 12

*Johnson v. Aljian*,
    2008 WL 11338773 (C.D. Cal. Nov. 14, 2008) ......................................................................... 5

*Malriat v. Quantumscape Corp.*,
   2021 U.S. Dist. LEXIS 76914 (N.D. Cal. April 20, 2021) .................................................. 12

*In re Neopharm, Inc.*,
   2004 U.S. Dist. LEXIS 5814 (N.D. Ill. Apr. 8, 2004) ................................................... 5, 6, 7

*In re NYSE Specialists Sec. Litig.*,
   240 F.R.D. 128 (S.D.N.Y. 2007) ........................................................................................ 1

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................................................ 10

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ............................................................................................. 10

*In re Smith Barney Transfer Agent Litig.*,
    2011 U.S. Dist. LEXIS 144351 (S.D.N.Y. Dec. 15, 2011) ................................................ 7

*Snyder v. Baozun Inc.,*
   2020 U.S. Dist. LEXIS 163967 (S.D.N.Y. Sept. 8, 2020) ................................................. 12

*Subramanian v. Watford, et. al.*,
   2021 U.S. Dist. LEXIS 81823 (D. Colo. April 29, 2021) .................................................. 12

*Takeda v. Turbodyne Techs., Inc.*,
   67 F. Supp. 2d. 1129 (C.D. Cal. 1999) ............................................................................. 10

*Weiss v. York Hosp.*,
   745 F.2d 786 (3d Cir. 1984) ........................................................................................ 10, 11

*Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*,
   231 F.3d 1215 (9th Cir. 2000) ............................................................................................ 5

**Statutes**

15 U.S.C. § 78u-4(a)(3) ............................................................................................... passim

**Rules**

F.R.C.P. 23 ............................................................................................................... 9, 10, 11

**I.     INTRODUCTION**

Movant Chang Pin Lin previously sought to be appointed as the Lead Plaintiff on behalf of investors in Turquoise Hill at the beginning of this case in December 2020. Although Mr. Lin did not have the "largest financial interest" in the action, he argued that the only other movant with a larger financial interest was inadequate and/or subject to a "unique defense." This other movant was Pentwater and, as previously briefed, it faced a conflict due to its then-current ownership of Turquoise Hill shares and ongoing shareholder litigation against the company and its largest shareholder, Rio Tinto. The Court ultimately appointed Pentwater on the basis that the "conflicts" alleged by Mr. Lin were not sufficient to disqualify it. *See* Dkt. No. 103, p. 22. Those "conflicts" have since grown to a point where Pentwater can no longer serve as the lead plaintiff, as evidenced by Pentwater's recent admissions concerning its increased ownership stake in Turquoise Hill and ongoing shareholder litigation against Rio Tinto. Mr. Lin therefore renews his motion to be appointed as the Lead Plaintiff as the "next 'most adequate' plaintiff." *See In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121-22 & n.6 (S.D.N.Y. 2002).

The PSLRA provides the process for appointing a Lead Plaintiff at the outset of a class action under the Securities Exchange Act of 1934. *See* 15 U.S.C. § 78u-4(a)(3). If the Lead Plaintiff cannot continue its representative role for any reason, he or she must be substituted in order for the case to go forward. Courts have created a high bar for altering a lead plaintiff's status, 'generally restrict[ing] appointment of substitute and additional lead plaintiffs to those instances where it is *necessary* to maintain representation of the prospective class.'" *In re Herley Indus. Sec. Litig.*, No. 06-CV-2596, 2009 U.S. Dist. LEXIS 91600, at *28 (E.D. Pa. Sep. 30, 2009) (quoting *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 133 (S.D.N.Y. 2007) (emphasis added)). When substitution is necessary, courts look to the movants who previously sought appointment and select

the "next 'most adequate' plaintiff" in accordance with the PSLRA's appointment criteria. *See In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. at 120.

Mr. Lin, relative to the other shareholders who moved for Lead Plaintiff, had the "largest financial interest" in the outcome of the action (after excluding Pentwater). Mr. Lin on behalf of himself and his family members sustained a loss of nearly $350,000 as a result of Defendants' alleged fraud during the Class Period. *See* Lin Loss Chart, p. 5 (Dkt. No. 58-2). This loss represents more than 50% of the total $618,000 they invested. *See id.* Mr. Lin's damages constitute a "financial interest" in the lawsuit large enough to "ensure vigorous advocacy." *See Gronich v. Omega Healthcare Inv'rs., Inc.*, No. 17 Civ. 8983 (NRB), 2018 U.S. Dist. LEXIS 51934, at *9-10 (S.D.N.Y. Mar. 27, 2018). Mr. Lin, personally, is also qualified to serve as the Lead Plaintiff given his background as a medical doctor and commercial real estate investor, which evidence his level of sophistication and wherewithal to pursue this litigation as an active steward. *See* Lin Certification, ¶1 (Dkt. No. 58-1). In support of this motion, Mr. Lin submits a declaration renewing his commitment to the action and willingness to serve as its Lead Plaintiff. *See* Declaration of Chang Pin Lin dated October 3, 2022 ("Lin Decl."). Consequently, Mr. Lin, on behalf of the Lin Family, meets the adequacy and typicality requirements necessary to serve as the Lead Plaintiff.

With the action still at the pleading stage (albeit post-motion to dismiss), it is imperative that a Class member be appointed to serve as the Lead Plaintiff to fulfill the dictates of the PSLRA, actively oversee counsel, make decisions on behalf of the members of the Class through these crucial steps, and to ensure there is a Class member who is significantly invested in obtaining the best possible recovery for the Class overseeing the litigation. In contrast to Pentwater, Mr. Lin is ready, willing, and able to oversee the action through trial, if necessary.

## II.     PROCEDURAL HISTORY

Mr. Lin timely moved for Lead Plaintiff on December 14, 2020. Dkt. No. 55. Six other shareholders also filed motions for Lead Plaintiff, including Pentwater whom the Court ultimately appointed. *See* Dkt. Nos. 46, 49, 50, 57, 62, 66.

During the Lead Plaintiff briefing, Mr. Lin and other movants (including John J. Murphy) argued that Pentwater faced a conflict that prevented it from adequately representing the Class. This conflict related to Pentwater's then-existing 9.3% ownership of Turquoise Hill and recent efforts to join Turquoise Hill's Board of Directors. *See* Dkt. No. 82, pp. 7-10; Dkt. No. 81, pp. 4-6. The Court ultimately rejected these arguments, holding in pertinent part as follows:

> In the end, Opposing Movants argue that conflicts and unique defenses will surface in this litigation and that the Court should disqualify the Pentwater Funds now rather than risk having to appoint a new lead plaintiff later on. Dkt. No. 102 at 4-5. It is a necessary corollary of the proposition that the adequacy determination at this stage of the litigation is relaxed, *see, e.g.*, *Batter v. Hecla Mining Co.*, 2020 WL 1444934, at *4 (S.D.N.Y. Mar. 25, 2020) ("[T]he Rule 23 adequacy showing is only preliminary at this stage. 'In fact, a wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'") (quoting *Pirelli Armstrong*, 229 F.R.D. at 412), that the Court and the class accept the risk that, after class certification discovery, a lead plaintiff who appeared to be adequate is demonstrated not to be such. The cases cited by the Opposing Movants demonstrate that such a result would not be unprecedented. That result would be unfortunate (and the Court does not expect it will happen), but, ***if a conflict develops or facts demonstrate Pentwater Funds are not adequate, the Court will have the means to deal with that circumstance then***.

Dkt. No. 103, p. 22 (emphasis added).

On September 20, 2022, Pentwater filed a motion to add movant John J. Murphy as an "additional plaintiff." Dkt. No. 155. In the motion, Pentwater revealed that its ownership of Turquoise Hill had grown to 13.77% and that it intended to imminently file a shareholder oppression action in Canada against Turquoise Hill's controlling shareholder, Rio Tinto. Dkt. No. 157-15, ¶¶7-8. Thus, Pentwater explained that it was seeking to add Mr. Murphy as an "additional

3

plaintiff" in order to "provide adequate structural protections against any potential conflict of interest from the Pentwater's contemplated Canadian litigation." Dkt. No. 155 at 1-2. The need for "adequate structural protections" arises from "new acts of misconduct, including entering into a proposed transaction that makes it necessary for Pentwater, as TRQ's largest minority shareholder and as a fiduciary for Pentwater's investors, to pursue legal remedies in Canada because the transaction also purports to release Rio from any liability for its misconduct." *See* Dkt. No. 157-15 at ¶2.

Contemporaneously with the filing of this motion, Mr. Lin is opposing Pentwater's motion to add Mr. Murphy as an "additional plaintiff." As explained by Mr. Lin in his opposition, Pentwater faces an unavoidable and incurable conflict presently due to its ongoing ownership of Turquoise Hill stock and efforts to wrestle control of the company away from Rio Tinto. Mr. Lin's opposition is supported by the Declaration of Professor J. Andrew Kent, which describes in detail the nature of Pentwater's conflict. *See* Declaration of Professor J. Andrew Kent dated October 4, 2022. As explained by Professor Kent, Pentwater's conflict has or will manifest itself in three different ways. First, Pentwater stands to gain significantly more from its unrelated shareholder litigation in Canada than it does in this action, thus giving rise to an incentive to focus efforts on its current position in Turquoise Hill and potentially sell the Class claims short. *Id*. at ¶¶23-25. Second, if Rio Tinto perceives Pentwater's opposition as a threat, it will attempt to resolve all the shareholder claims at once and, in turn, Pentwater would be in the precarious position of having to protect the interests of the Class on terms that may be financially unfavorable to itself. *Id*. at ¶¶26-27. Third, as a current significant shareholder in Turquoise Hill, Pentwater may look to resolve its shareholder claims in Canada in a way that preserves the value of its current shareholder stake and the value of Turquoise Hill in general, even though that interest no longer exists among

Class members. *Id*. at ¶28.

## III.     ARGUMENT

### A.     THE COURT SHOULD APPOINT CHANG LIN PIN

#### 1.     The Court Should Appoint a New Lead Plaintiff

Given the current procedural and factual posture of the action, it is imperative that the Court appoint a new Lead Plaintiff. It is within the Court's authority to appoint a new Lead Plaintiff at any time, and especially, if an earlier-appointed Lead Plaintiff turns out to be inadequate:

> Nothing in the statutory language requires a specific reservation before a lead plaintiff designation can be re-opened. Quite the contrary. Under 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc), the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(d) provides that Rule 23 orders "may be altered or amended as may be desirable from time to time." Fed. R. Civ. P. 23(d); *see also Social Servs. Union, Local 535 v. Santa Clara County*, 609 F.2d 944, 949 (9th Cir.1979). It is not inconceivable that a lead plaintiff appointed originally might turn out to be an inadequate class representative and that a change might have to be made. Ordering such a change would be consistent with the district court's *continuing* duty to see that a class is adequately represented by counsel. *North Am. Acceptance Corp. Sec. Cases v. Arnall, Golden & Gregory*, 593 F.2d 642, 645 (5th Cir.1979).

*Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218–19 (9th Cir. 2000).

Under such circumstances or when an earlier-appointed Lead Plaintiff is unable or unwilling to serve as such, the procedure dictated by the PSLRA should control the appointment of a new Lead Plaintiff. *See, e.g.*, *In re Initial Pub*, 214 F.R.D. at 120-22 (applying the PSLRA procedure to appoint new Lead Plaintiffs when plaintiff sought to amend their pleadings); *Johnson v. Aljian*, No. 03-cv-5986-FMC(PJWx), 2008 WL 11338773, at *1-5 (C.D. Cal. Nov. 14, 2008) (applying the PSLRA procedure to appoint new Lead Plaintiffs rather despite the lack of other class members willing to prosecute the claims); *In re Neopharm, Inc.*, 2004 U.S. Dist. LEXIS 5814, at *7-8 (N.D. Ill. Apr. 8, 2004) (denying proposed lead plaintiffs hand selection by lead counsel and allowing additional time for class members to come forth to be evaluated by the

5

PSLRA procedure as no other class members filed an opposition to the pending motion or a new motion to be appointed as the lead plaintiff); *Claude v. Robert*, No C08-1008 MJP, 2015 U.S. Dist. LEXIS 44319, at *9-11 (W.D. Wash. Apr. 3, 2015) (same). It is imperative that a Lead Plaintiff be appointed pursuant to the PSLRA's procedure to ensure adequate representation of the Class pursuant to the procedure set forth by Congress and especially so here in light of the current facts and the current and proposed plaintiffs and Class representatives.

Indeed, although Pentwater recognizes that it faces a disabling conflict, it refuses to simply withdraw but instead proposes that another movant, John J. Murphy, be installed as an "additional plaintiff." Neither Pentwater nor Mr. Murphy however provide any assurances or information as to how the "additional plaintiff" will be able to protect unnamed class members from Pentwater's conflict of interest or otherwise ensure that the action is litigated free of undue influence from Pentwater's counsel. The severity of Pentwater's conflict confirms that it is necessary and appropriate to appoint a new Lead Plaintiff under the procedures set forth by the PSLRA. Although "[t]he PSLRA is entirely silent on the proper procedure for substituting a new lead plaintiff . . . [i]t only stands to reason that the appropriate lead plaintiff would be the next 'most adequate' plaintiff in accordance with the above criteria." *In re Initial Pub.*, 214 F.R.D. at 120.

The *Neopharm* case is instructive as to why the Court should not grant deference to Pentwater's selection of Mr. Murphy. In *Neopharm*, the Lead Plaintiff sought to withdraw from serving as Lead Plaintiff and Lead Counsel presented two class members to replace him as the Lead Plaintiff. The court took issue with this proposal because it circumvented the express procedures set forth by the PSLRA and supported the premise that Lead Counsel "believes that is should decide who the new lead plaintiff will be." *Id.* at *3-4. Not parsing its words, the court further stated that the handpicking of a replacement Lead Plaintiff is an approach that "either

6

ignore[s] one of the factors [for appointment as Lead Plaintiff] under the PSLRA or . . . turn[s] the analysis on its head." *Id.* at *5-6.

"[W]here a new lead plaintiff is willing to step forward, there is no need to start the process anew when all putative class members were given notice of the opportunity to move for appointment as lead plaintiff by means of the statutorily required published notice." *In re Initial Pub.*, 214 F.R.D. at 120; *see also Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 328 (S.D.N.Y. 2012) (allowing for class members to request appointment rather than approving substitution of Lead Plaintiff because, in part, no "other potential lead plaintiff has sought appointment as lead plaintiff or otherwise intervened). Accordingly, Mr. Lin believes that it is unnecessary to delay the litigation by reopening the notice procedures. Here, Mr. Lin timely sought appointment as Lead Plaintiff; has the largest financial interest of any qualified movant; and, by the instant motion, has already reiterated his request to be appointed as Lead Plaintiff. *See In re Smith Barney Transfer Agent Litig.*, 2011 U.S. Dist. LEXIS 144351, at *8-9 (S.D.N.Y. Dec. 15, 2011) ("Plaintiffs who moved for lead plaintiff appointment within sixty days of the original notice are entitled to priority over plaintiffs who only moved within sixty days of the order dismissing the prior lead plaintiff.").

## 2. Mr. Lin Should Be Appointed as the Lead Plaintiff to Represent the Interests of the Class Pursuant to the PSLRA.

The PSLRA sets forth a sequential procedure for the appointment of a lead plaintiff in a securities class action. This includes first identifying which plaintiff or movant has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The person that the court identifies as possessing the "largest financial interest" is entitled to a presumption that they are the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The

PSLRA further states that the court "shall appoint" the "most adequate plaintiff" as lead plaintiff unless this presumption is rebutted by "evidence" or "proof" that the most adequate plaintiff will "not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see* 15 U.S.C. § 78u-4(a)(3)(B)(i) (stating that the court "shall appoint as the lead plaintiff . . . 'the most adequate plaintiff[.]'"). If the presumption is rebutted, the process starts anew. *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff. If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23.").

### a. Mr. Lin Is Willing to Serve as Lead Plaintiff and Class Representative.

Mr. Lin timely filed a motion for Lead Plaintiff at the outset of this action. Dkt. No. 55. Mr. Lin supported his initial motion with the statutorily required certification, which confirmed his willingness to serve as a representative party in this action. *See* Dkt.No. 58-1. In support of his present motion, Mr. Lin has once again confirmed his willingness to serve as the Lead Plaintiff and Class Representative, as demonstrated in the accompanying Lin Declaration. *See* Lin Decl. at ¶¶7-8. Thus, Mr. Lin has repeatedly demonstrated his willingness to serve as the Lead Plaintiff and the class representative.

### b. Mr. Lin Has the Requisite Financial Interest in the Relief Sought By the Class.

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant or movants with the largest financial loss in the relief sought by the action. As demonstrated herein and in his initial respective Motion for Appointment, Mr. Lin and his family incurred losses of nearly $350,000 as a result of the fraud alleged in connection with their investment in Turquoise Hill during the Class Period. Dkt. No. 58-2. As such, Mr. Lin possesses the largest known financial interest in the relief sought by the Class of any qualified movant who originally sought appointment as Lead Plaintiff, as demonstrated in the following table:

| Chang Pin Lin | $ 344,719.21 |
| John J. Murphy | $ 327,028.02 |
| Vitali Garon | $ 85,336.41 |
| Altannavch Sukhbaatar | $ 45,643.20 |
| Paul Ciaglo | $ 11,034.12 |
| Ramakrishnan Natesan | $ 251.00 |

*See* Dkt. Nos. 58-2 (Lin); 48-3 (Sukhbaatar); 53-3 (Ciaglo); 54-3 (Murphy); 60-3 (Garon); 65-1 (Natesan).[1]

### c. Mr. Lin Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure.

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Only a "preliminary showing" of typicality and adequacy is necessary. *See Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d.

---

[1] Mr. Lin's financial interest in this action is premised on claims that he holds individually as well as those from his family members. His family members assigned their claims to him pursuant to valid and timely assignments. *See* Dkt. Nos. 94-96.

1129, 1136 (C.D. Cal. 1999). Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Cavanaugh*, 306 F.3d at 732; *see also Haung v. Acterna Corp.*, 220 F.R.D. 255, 259 (D. Md. 2004); *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998).

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." Mr. Lin plainly meets the typicality requirement of Rule 23 because: (i) he suffered the same injuries as the absent Class members; (ii) he suffered as a result of the same course of conduct by Defendants; and (iii) his claims are based on the same legal issues. *See Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiff's claims "arise from the same conduct from which the other class members' claims and injuries arise"). Rule 23 does not require that the named plaintiff be identically situated with all class members. It is enough if their situations share a common issue of law or fact. *See Weiss v. York Hosp.*, 745 F.2d 786, 808-09 (3d Cir. 1984). A finding of commonality frequently supports a finding of typicality. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

In this case, the typicality requirement is met because Mr. Lin's claims are identical to, and neither compete nor conflict with, the claims of the other Class members. Mr. Lin, like the other members of the Class, acquired Turquoise Hill shares during the Class Period, and was damaged thereby. Thus, his claims are typical, if not identical, to those of the other members of the Class

because he suffered losses similar to those of other Class members and his losses result from Defendants' common course of wrongful conduct. Accordingly, Mr. Lin satisfies the typicality requirement of Rule 23(a)(3). *See Weiss*, 745 F.2d at 809; *see also In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

Moreover, Mr. Lin is an adequate representative for the Class. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B); *see Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994) (citation omitted).

Mr. Lin's interests are clearly aligned with those of the other members of the Class. Not only is there no evidence of antagonism between their interests and those of the Class, but Mr. Lin has a significant and compelling interest in prosecuting the action based on the large financial losses he and his family have suffered as a result of the wrongful conduct alleged in the action. This motivation, combined with his interest identical to that of the other members of the Class, demonstrates that Mr. Lin will vigorously pursue the interests of the Class. In addition, Mr. Lin has retained counsel highly experienced in prosecuting securities class actions, and submits their choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). Therefore, it is clear that Mr. Lin will prosecute the action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Stewart and Weisman have made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Mr. Lin has

sustained the greatest amount of losses from Defendants' alleged wrongdoing, he is, therefore, the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-4(3)(B)(iii)(I), and should be appointed as such to lead the action.

### B. MR. LIN'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Mr. Lin has selected and retained Levi & Korsinsky, LLP as the proposed Lead Counsel for the Class. The members of Levi & Korsinsky have extensive experience in successfully prosecuting complex securities class actions such as this one, are well-qualified to represent the Class, and have worked numerous times to achieve favorable settlements on behalf of shareholders. *See* Dkt. No. 58-4 (Levi & Korsinsky's firm resume). *See also e.g., Jiang v. BlueCity Holdings Limited, et al.*, No. 1:21-cv-04044-CLP, Dkt. No. 16 (E.D.N.Y. Dec. 22, 2021); *Subramanian v. Watford, et. al.*, 2021 U.S. Dist. LEXIS 81823, at *10 (D. Colo. April 29, 2021) (appointing Levi & Korsinsky noting they are "qualified, experienced, and able to vigorously conduct the proposed litigation."); *Malriat v. Quantumscape Corp.*, 2021 U.S. Dist. LEXIS 76914, at *21 (N.D. Cal. April 20, 2021); *Daniels Family 2001 v. Las Vegas Sands Corp.*, 2021 U.S. Dist. LEXIS 974, at *8 (D. Nev. Jan. 5, 2021) (appointing Levi & Korsinsky as lead counsel noting the firm's "extensive experience in complex securities class actions"); *Snyder v. Baozun Inc.,* 2020 U.S. Dist. LEXIS 163967, at *11 (S.D.N.Y. Sept. 8, 2020) (appointing Levi & Korsinsky noting the firm has "obtained numerous favorable judgments for clients in these past representations"). Thus, this Court may be assured that the members of the Class will receive the highest caliber of

legal representation if Mr. Lin is approved as the Lead Plaintiff.

## IV. CONCLUSION

For the foregoing reasons, Mr. Lin respectfully requests that this Court enter an Order: (1) appointing Mr. Lin as Lead Plaintiff for the Class; and (2) and approving his selectin of Levi & Korsinsky, LLP as Lead Counsel for the Class.

Dated: October 4, 2022                               Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: /s/ *Adam M. Apton*
Nicholas I. Porritt
Adam M. Apton
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171

*Attorneys for Lead Plaintiff Movant Chang Pin Lin and [Proposed] Lead Counsel for the Class*