UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/23/2022
```

IN RE TURQUOISE HILL RESOURCES LTD.
SECURITIES LITIGATION

20-cv-08585 (LJL)

OPINION AND ORDER

-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

The Pentwater Funds ("Pentwater")[1] moves for entry of an order: (i) concluding that Pentwater may continue to serve as lead plaintiff and a proposed class representative in this action while challenging the plan of arrangement between Turquoise Hill Resources Ltd. ("Turquoise Hill") and Rio Tinto in a Canadian court; and (ii) granting leave for John J. Murphy to be added as an additional lead plaintiff and proposed class representative. Dkt. No. 155. Chang Pin Lin, a member of the putative class, separately moves for an order appointing himself as lead plaintiff instead of Pentwater and approving his selection of lead counsel. Dkt. No. 163.

For the reasons that follow, Pentwater's motion for leave to add Murphy as an additional lead plaintiff and Lin's motion requesting that he replace Pentwater as lead plaintiff in this action are denied without prejudice to renewal. Pentwater may continue to serve as lead plaintiff and a proposed class representative in the interim.

---

[1] The "Pentwater Funds" consist of seven related private investment funds, including PWCM Master Fund Ltd., Pentwater Thanksgiving Fund LP, Pentwater Merger Arbitrage Master Fund Ltd., Oceana Master Fund Ltd., LMA SPC for and on behalf of the MAP 98 Segregated Portfolio, Pentwater Equity Opportunities Master Fund Ltd., and Crown Managed Accounts SPC acting for and on behalf of Crown/PW Segregated Portfolio. Dkt. No. 155 at 1 n.1.

**BACKGROUND**

This case was initiated through a class complaint which was accepted for filing on

October 15, 2022.  Dkt. No. 7.  That complaint asserted various causes of action against

Turquoise Hill, Ulf Quellmann, Brendan Lane, and Luke Colton (collectively, "the Turquoise

Defendants") as well as Rio Tinto plc, Rio Tinto Limited, Rio Tinto International, Jean-Sébastien

Jacques, and Arnaud Soirat (collectively, the "Rio Defendants").  *Id.*  Namely, the complaint

asserted that the Turquoise Defendants and the Rio Defendants made a number of

misrepresentations or omissions in connection with the development of the Oyu Tolgoi copper

mine in Southern Mongolia in violation of the Securities Exchange Act of 1934 and Rule 10b-5

promulgated thereunder.  *Id.*  The allegations were made on behalf of a class of persons who had

acquired the securities of Turquoise Hill from July 17, 2018 to and including July 31, 2019.  *Id.* ¶

1.

On November 6, 2020, this Court ordered, pursuant to the Private Securities

Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(A), that members of the purported

class had until December 14, 2020 to move to serve as lead plaintiff in the case.  Dkt. No. 36.

Seven parties filed timely motions seeking to be appointed lead plaintiff.  Dkt. Nos. 46, 49, 50,

55, 57, 62, 66.

On January 15, 2021, the Court appointed Pentwater as lead plaintiff in the action and

appointed their counsel, Bernstein, Litowitz Berger & Grossman LLP, as class counsel.  Dkt. No.

103.  The Court noted that "[i]n selecting a lead plaintiff, the PSLRA establishes a presumption

in favor of the applicant with 'the largest financial interest in the relief sought by the class.'"  *Id.*

at 8 (quoting 5 U.S.C. § 78u–4(a)(3)(B)(iii)(I)).  The Court then stated that "[t]he Pentwater

Funds filed their motion within the sixty-day window, have the largest financial interest, and

otherwise satisfy the requirements of Federal Rule of Civil Procedure 23." *Id.* at 9.  While, as

the Court stated, there exists a presumption under the PSLRA in favor of the party with the

largest financial interest, that presumption may be rebutted upon "proof" that the presumptive

lead plaintiff: (1) "will not fairly and adequately protect the interests of the class," or (2) "is

subject to unique defenses that render such plaintiff incapable of adequately representing the

class." *Id.* at 10 (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)).  The Court stated that such proof

must be more, however, than "mere speculation." *Id.*

The Court then considered arguments that Pentwater should not be lead plaintiff,

specifically because Pentwater was currently invested in Turquoise Hill and the "Pentwater

Funds' activist history with Turquoise Hill . . . suggests they could use their bargaining power as

lead plaintiff to negotiate for improvements at Turquoise Hill—that would ultimately increase

the value of that large stake and improve circumstances for class members who are current

shareholders but at the expense of class members who have since sold such shares—in order to

later sell their stake." *Id.* at 13.  The Court stated that Pentwater made representations to

disabuse the Court of this notion: Pentwater "ha[s] committed that they 'will not enter into any

agreement at all relating to the Pentwater Funds' Turquoise Hill holdings with any Defendant or

their affiliates other than [as] a result for the entire Class that is subject to class notice and Court

approval.'" *Id.* (citation omitted).  The Court stated that "[m]echanisms exist to ensure that that

representation is not an empty promise," including the requirement that if the case is settled,

Pentwater will be required to disclose all agreements made in connection with the proposed

settlement. *Id.*

The Court also considered the argument that Pentwater's threat of separate, non-class

litigation in Canada against defendants would make them an inadequate representative of the

class. *Id.* at 16.  The Court found this concern "easily addressed" noting:

> As a condition of the appointment of Pentwater Funds as lead plaintiff and in the exercise of its responsibility to supervise the litigation to protect the interests of absent class members, the Court will impose an affirmative obligation on Pentwater Funds to, if they launch any litigation against any of the Defendants or any of their affiliates, report that litigation to the Court within five (5) days of filing that litigation with an explanation as to why they believe it does not create a conflict of interest with the interests of the class or their position as lead plaintiff for the class.

*Id.*

Subsequent to the Court's order appointing Pentwater as lead plaintiff, the Turquoise Defendants moved for a protective order directing Pentwater, until the conclusion of the litigation, from "ceas[ing] all communications with Turquoise Hill concerning Oyu Tolgoi (including by calling or emailing management, Board members, or the Investor Relations department) and . . . prohibit[ing it] from posing questions—or proposing questions for others to ask—on Turquoise Hill's earnings calls and during other presentations to investors or analysts."  Dkt. No. 117 at 4.  The Turquoise Defendants complained that representatives of Pentwater have contacted individuals in Turquoise Hill's investor relations department and sought answers to a number of questions about the Oyu Tolgoi mine.  *Id.*  The Court denied the request, concluding that the communications did not threaten the proper functioning of the class action or violate the rules of professional conduct.  Dkt. No. 120.  The Court noted that the Turquoise Defendants "invoke the concern expressed by the Court in its prior opinion appointing lead plaintiff about Pentwater wearing two hats, as the largest minority shareholder in Turquoise Hill and as class representative."  *Id.* at 11.  The Court stated, however, that this concern was "markedly different from the concern that Turquoise Hill presents here."  *Id.*  The Court continued:

One circumstance in which such a conflict might arise would be if Pentwater were concerned about the small trading volume in Turquoise Hill stock relat[ive] to the large size of its position and stuck a deal with the majority holder of Turquoise Hill and its litigation adversary here, Defendant Rio Tinto, to take Pentwater out of its position.  The obvious concern is that such a transaction would be done in exchange for Pentwater somehow compromising the interests of the absent class members for whom it is acting as fiduciary.  Another circumstance would be if Pentwater, as a current large shareholder, pursued simultaneous non-class foreign litigation against Turquoise Hill and used its position to compromise the interests of the class in this case in exchange for a favorable resolution of that litigation. Relatedly, Pentwater could pursue and settle a derivative action on behalf of Turquoise Hill, drawing funds into the corporation that would benefit Pentwater derivatively through its large ownership stake, while at the same time—perhaps in exchange for a favorable settlement—compromising the interests of the class of Turquoise Hill shareholders on whose behalf it is acting in this case.

*Id.* at 11–12.  The Court then stated that it had addressed those concerns first, by having Pentwater confirm that it was not pursuing "any litigation . . . that would conflict with this case," including a previously threatened oppression action in Canada, Dkt. No. 93 ¶ 5(b), and second, by having Pentwater submit a letter committing that it "will not enter into any agreement at all relating to the Pentwater Funds' Turquoise Hill holdings with any Defendant or their affiliates other than [as] a result for the entire Class that is subject to class notice and Court approval," *id.* ¶ 5(d).  Dkt. No. 120 at 12.  The Court concluded that the concerns that the Turquoise Defendants present are very different.  *Id.* at 13.

On March 17, 2021, Pentwater filed an amended complaint.  Dkt. No. 110.  On September 16, 2021, Pentwater filed a second amended class complaint.  Dkt. No. 127. On October 19, 2021, the Turquoise Defendants and the Rio Defendants each separately moved to dismiss the second amended class complaint.  Dkt. Nos. 129, 132.  On September 2, 2021, the Court granted the Turquoise Defendants' motion to dismiss in full and granted in part and denied in part the Rio Defendants' motion to dismiss.  Dkt. No. 149.

On September 20, 2022, Pentwater filed a motion for an order (i) permitting it to

5

challenge the plan of arrangement between Turquoise Hill and Rio Tinto in a Canadian court,

while continuing to serve as lead plaintiff and a proposed class representative in this action; and

(ii) granting leave for Murphy to be added as an additional lead plaintiff and proposed class

representative. Dkt. No. 155. In that motion, Pentwater noted that on September 5, 2022

Turquoise Hill and Rio Tinto had agreed to a deal in which Rio Tinto would acquire the entire

minority interest in Turquoise Hill, subject to approval by a Canadian court, via a plan of

arrangement (the "Plan of Arrangement"). Dkt. No. 156 at 3, 5. Pentwater also noted that, in

January 2022, Rio Tinto forced Turquoise Hill to forgive $2.4 billion of indebtedness owed to

Turquoise Hill by the Mongolian Government in an attempt to compensate the government for

Rio Tinto's misconduct. *Id*. at 4. It asserted that such actions favored the interests of Rio Tinto,

as majority shareholder of Turquoise Hill, over the interests of the minority shareholders,

including Pentwater. Pentwater therefore implied that it planned to pursue oppression claims as

well as to challenge the Plan of Arrangement. *Id.*

Lin, a putative class member who had previously moved to be lead plaintiff, filed a

memorandum of law in opposition to Pentwater's motion, and filed his own motion to be

appointed to serve as lead plaintiff in place of Pentwater. Dkt. Nos. 162–63. The Rio

Defendants also filed a memorandum of law in response to Pentwater's motion to add Murphy as

an additional lead plaintiff in this action. Dkt. No. 168. Pentwater filed a reply memorandum of

law in support of its motion to add Murphy as an additional lead plaintiff in this action and a

response memorandum of law as well as supporting documentation in opposition to Lin's motion

to appoint himself as lead plaintiff. Dkt. Nos. 174–75, 177–78. Lin filed a reply memorandum

of law and a supporting declaration in support of his motion to be appointed lead plaintiff. Dkt.

Nos. 184–85. The Court held a hearing on the two motions on October 26, 2022. Dkt. No. 172.

Following that hearing, the Court received a number of letters on the status of Rio Tinto's plans to acquire the remaining shares in Turquoise Hill, as well as the nature of any oppression claims Pentwater may pursue.  Dkt. Nos. 188–91, 194–96.  On December 12, 2022, Pentwater wrote to the Court concerning the proposed acquisition by Rio Tinto of all shares of Turquoise Hill not already owned by Rio Tinto.  Dkt. No. 196.  Pentwater wrote that the acquisition was approved by a vote of Turquoise Hill's minority shareholders on December 9, 2022.  *Id.*  Pentwater then stated:

> If approved, under the arrangement, all minority shareholders can pursue oppression claims against Turquoise Hill, Rio Tinto or their respective affiliates where such claims are served on or provided to Turquoise Hill and Rio Tinto no later than seven days following the date the arrangement becomes effective. Further, minority shareholders who have validly dissented to the arrangement can pursue those dissent rights as provided under Section 193 of the Yukon Business Corporations Act and the terms of the arrangement. Pentwater intends to pursue its dissent rights and a shareholder oppression claim in Canada.

*Id.*

An initial pretrial conference has yet to be held in this case and discovery has not commenced.

## LEGAL STANDARD

The PSLRA establishes the framework courts use to select a lead plaintiff in class actions brought under the federal securities laws.  First, the PSLRA requires any prospective lead plaintiff to file a motion for appointment as lead plaintiff within sixty days of the publication of notice of the securities class action.  15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa); *id.* § 78u–4(a)(3)(A)(i).

Next, the PSLRA lays out standards for choosing one lead plaintiff from among the candidates who file motions.  The PSLRA provides that:

> the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—

7

> (aa) has either filed the complaint or made a motion in response to a notice [of the complaint within sixty days of the publication of this notice];
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u–4(a)(3)(B)(iii)(I).  Once the Court identifies a presumptive lead plaintiff, this presumption:

> may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—
> (aa) will not fairly and adequately protect the interests of the class; or
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

*Id.* § 78u–4(a)(3)(B)(iii)(II).  For purposes of choosing a lead plaintiff under the PSLRA, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet Rule 23 [of the Fed. R. Civ. P.], and courts need only consider the typicality and adequacy requirements." *Aude v. Kobe Steel, Ltd.*, 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018). Movants can demonstrate typicality by showing that their claims "arise from the same conduct from which the other class members' claims and injuries arise," *In re Crayfish Co. Sec. Litig.*, 2002 WL 1268013, at *5 (S.D.N.Y. June 6, 2002), and they can demonstrate adequacy if they "(1) [have] no conflict of interest with the other members of the class, (2) [have] sufficient interest in the outcome of the case, and (3) [have] selected counsel that is qualified, experienced, and generally able to conduct the litigation in question," *Aude*, 2018 WL 1634872, at *4.  The Court's determination of adequacy and typicality for purposes of appointing a lead plaintiff is not preclusive of a later challenge at the class certification stage with respect to those factors.  *See, e.g., Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015) ("[I]n deciding a motion to serve as lead plaintiff, [t]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met . . . .  In

8

fact, a wide ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and should be left for consideration of a motion for class certification." (internal quotation marks, citations, and modifications omitted)).

While the PSLRA permits a "group of persons" to serve as lead plaintiff, 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I), it does not specify what constitutes an acceptable grouping. *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005).  "The majority of courts, including those in this District ... permit[ ] unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008).[2]

## DISCUSSION

### I.  Request to Disqualify Pentwater as Lead Plaintiff and to Appoint Lin

Pentwater requests that it be allowed to continue as lead plaintiff despite its decision to pursue the oppression and dissenters' rights suits in Canada.  Dkt. No. 155.  In opposition, Lin argues that he should replace Pentwater as lead plaintiff as Pentwater can no longer adequately protect the interests of the class.  Dkt. No. 162 at 3.

Lin argues that there are three primary ways in which Pentwater's Canadian lawsuits could jeopardize the rights and recovery of the class: First, "Pentwater stands to gain significantly more from its unrelated shareholder litigation in Canada than it does in this action, thus giving rise to an incentive to focus efforts on its current position in Turquoise Hill and potentially sell the Class claims short." *Id.* at 2.  Second, "if Rio Tinto perceives Pentwater's

---

[2] The proposed group must make "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs." *Id.*; *see Chauhan v. Intercept Pharmaceuticals*, 2021 WL 235890, at *5 (S.D.N.Y. Jan. 25, 2021); *Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at *3 (S.D.N.Y. June 12, 2020).

opposition as a threat, it will attempt to resolve all the shareholder claims at once and, in turn,

Pentwater would be in the precarious position of having to protect the interests of the Class on

terms that may be financial unfavorable to itself." *Id.* Third, "as a current significant

shareholder in Turquoise Hill, Pentwater may look to resolve its shareholder claims in Canada in

a way that preserves the value of its current shareholder stake and the value of Turquoise Hill in

general, even though that interest no longer exists among Class members." *Id.*

In response, Pentwater argues that its pursuit of claims in Canada does not create a

conflict of interest with its representation of the class as "there is no ability-to-pay or limited

fund scenario in this case" and thus there is "no incentive for Pentwater to compromise the

recovery for investors in this case for a better result in a Canadian proceeding." Dkt. No. 174 at

2–3. Plaintiff also argues that to the extent that the Court has any concerns about Pentwater

pursuing claims in Canada, Pentwater has proposed adding Murphy as an additional lead plaintiff

and further discussed with "Professor Issacharoff and explored with Frank J.C. Newbould, K.C.,

a retired judge of the Ontario Superior Court of Justice and former leader of the court's

Commercial List, granting Mr. Newbould independent irrevocable authority to prosecute and

resolve any such claims, if doing so would provide additional assurance to the Court." *Id.* at 3.

Pentwater also notes that it has served as an exemplary lead plaintiff in this action so far,

including filing an amended complaint that included significant evidence developed through its

own and lead counsel's extensive investigation, and responded to the Rio Defendants' motions to

dismiss that was denied in part. *Id.* at 4.

Rio Tinto states it takes no position on Pentwater's ability to file an action that the Rio

Defendants have not yet seen based on a complaint that they have not yet reviewed. Dkt. No.

168 at 1. However, they note that "Pentwater's request that it may appropriately bring suit in a

Canadian court, while continuing to serve as lead Plaintiff and class representative in this

action— no matter how that separate litigation may unfold—[] should be rejected as premature."

*Id.*  They argue that this is an issue that should be dealt on with on a full record at class

certification.  *Id.*

The Court agrees with Rio Tinto that the request to replace Pentwater as lead counsel is

premature at this stage.  "Courts have interpreted their lead plaintiff responsibilities under the

PSLRA to encompass a continuing 'duty to monitor whether lead plaintiffs are capable of

adequately protecting the interests of the class members.'"  *In re NYSE Specialists Sec. Litig.*,

240 F.R.D. 128, 133 (S.D.N.Y. 2007) (citation omitted)); *see In re Terayon Commc'ns Sys., Inc.*,

2004 WL 413277, at *7 (N.D. Cal. Feb. 23, 2004) (holding that courts have an ongoing

obligation to determine whether lead plaintiffs "meet the typicality and adequacy prongs of Rule

23 such that the interests of the class are protected").  Under the PSLRA, the moving party must

offer proof beyond "mere speculation" to rebut the presumption of adequacy.  *In re Turquoise*

*Hill Res. Ltd. Sec. Litig.*, 2021 WL 148752, at *5 (S.D.N.Y. Jan. 15, 2021).  "[A] plaintiff cannot

be an adequate representative if she has a conflict of interest with other class members."  1

Newberg and Rubenstein on Class Actions § 3:58 (6th ed.).  But, not every distinction between a

class representative and class members will result in the class representative being deemed

inadequate.  *Id.*  "Conflicts that are merely speculative or hypothetical" or that are "dependent on

some future event" "will not affect the adequacy inquiry."  *Id.*

In certain instances, the fact that a class representative is pursuing non-class claims

against the defendant may result in the class representative having a conflict of interest.  For

example, "courts have found disqualifying conflicts of interest in cases in which corporate

shareholders attempt to pursue both class and derivative claims in the same action."  5 Moore's

Federal Practice § 23.25 (2022); *see Ryan v. Aetna Life Ins. Co.*, 765 F. Supp. 133, 136–37

(S.D.N.Y. 1991) ("In sum, the Court finds that Ryan is subject to a conflict of interest in

pursuing both direct and derivative claims in this action, which renders him unable 'fairly and

adequately [to] represent the interests of the shareholders' as required under Fed. R. Civ. P.

23.1.").  In those actions, counsel, and the lead plaintiff, as fiduciaries, are purporting to

represent both the interests of the shareholder class and of the corporation which the shareholder

class is suing.  "When a plaintiff brings a derivative suit seeking recovery for the corporation and

simultaneously files a class suit for damages against that same corporation, there is an inherent

conflict." *Koenig v. Benson*, 117 F.R.D. 330, 334 (E.D.N.Y. 1987).  As "[o]ne court has written,

'it is difficult to understand how an attorney can properly represent the interests of a corporation

and its present shareholders in a derivative action brought on their behalf, and, at one and the

same time, properly represent its present and/or former shareholders in a class action against the

corporation without compromising the independence of professional judgment and loyalty to

these two groups of clients with potentially conflicting interests.'" *Id.* (quoting *Stull v. Baker*,

410 F. Supp. 1326, 1336–37 (S.D.N.Y.1976)).  There may also be a conflict of interest where

there is a "limited settlement pie" which would result in both the class and non-class claims

competing for a larger share. *In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.*, 795

F.3d 380, 394 (3d Cir. 2015); *cf.* 7 Newberg On Class Actions §22:74 (5th ed.) ("A class

representative whose interests are materially adverse to some of the class's interests cannot be an

adequate representative for the whole class because in promoting her own interests she may

undercut the interests of other class members.").

  While Pentwater's decision to pursue oppression and dissenter's rights claims in Canada

raises the potential for an incurable conflict of interest, that conflict of interest is still largely

speculative at this stage.  The typical examples of non-class claims that may compromise a lead

plaintiff's ability to adequately represent a class are not present here.  There is no evidence of a

limited fund:  Rio Tinto appears just as able to satisfy both a large settlement or judgment in this

action and in Pentwater's Canadian actions and, thus, there is no clear incentive for Pentwater to

trade a lesser settlement in this action in order to get a better one in its non-class actions.

Pentwater has also represented to the Court that its Canadian actions are not derivative claims

and instead it "seeks a direct recovery from the Defendants through its Canadian claims and not a

payment to Turquoise Hill for the benefit of all of its current and former Shareholders" and that

such "form of direct relief is available to Pentwater under Yukon law."   Dkt. No. 189-2 ¶ 35.

Lead plaintiff's counsel, who is acting for the putative shareholder class here, is not involved in

the Canadian actions and will not be representing Pentwater in any action there.  Dkt. No. 192 at

5.

The Court is also not convinced that the three ways that Lin argues that Pentwater's

Canadian lawsuits could jeopardize the rights and recovery of the class requires Pentwater to be

replaced as lead plaintiff at this early stage of the litigation.  As to Lin's fear that Pentwater will

"focus efforts on its current position in Turquoise Hill and potentially sell the Class claims

short," there is no evidence yet to substantiate this fear.  Dkt. No. 162 at 2.  As noted,

Pentwater's counsel in this action is separate from its counsel in the Canadian matters and is

therefore unlikely to be distracted by the Canadian litigation.  Furthermore, throughout this

litigation, Pentwater and its class counsel have aggressively pursued the class's claims, including

filing a 187-page operative complaint and successfully opposing Rio Tinto's motion to dismiss

certain claims brought against it.

Regarding Lin's third argument that "as a current significant shareholder in Turquoise

Hill, Pentwater may look to resolve its shareholder claims in Canada in a way that preserves the value of its current shareholder stake and the value of Turquoise Hill in general," this argument merely rehashes arguments that this Court rejected in its January 15, 2021 order appointing Pentwater as lead plaintiff. *Id.* In its January 15 order, the Court acknowledged that "[t]o be sure, should there be a verdict in favor of Plaintiffs or a settlement in this case, a portion of the settlement consideration may be paid derivatively from the pocket of the Pentwater Funds, in the form of a reduction of the value of its stake in Turquoise Hill." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2021 WL 148752, at *6. The Court noted that "[t]hat form of conflict, however, is not unique to an institutional investor but is present when any current shareholder applies to represent a class that includes injured former shareholders, regardless of the size of that shareholder's ownership stake. It is built into the securities laws and not a reason for denying Pentwater Funds lead plaintiff status." *Id.* Moreover, the Court stated that "Congress presumably understood that institutional investors often maintain significant ownership of the relevant stock, yet it implemented no provisions requiring that parties divest themselves of such holdings in order to serve as lead plaintiff." *Id.* The Court finds no reason on this record to depart from its prior view.

With regard to Lin's second argument—*i.e.*, that Rio Tinto may attempt to resolve all claims at once and presumably resolve its non-class claims on more favorable terms in exchange for a less-than favorable class settlement—the Court is again not convinced at this stage that this is sufficient to meet the "high bar" for altering a lead plaintiff's status. *See In re Herley Indus. Inc. Sec. Litig.*, 2009 WL 3169888, at *9 (E.D. Pa. Sept. 30, 2009) ("Since 1995, courts have created a high bar for altering a lead plaintiff's status, generally restrict[ing] appointment of substitute and additional lead plaintiffs to those instances." (cleaned up)). Such a categorical rule

14

would bar a lead plaintiff from ever pursuing simultaneous litigation no matter how distinct the claims in the two lawsuits are. *See, e.g.*, *Mendell v. Am. Med. Response, Inc.*, 2021 WL 1102423, at \*3 (S.D. Cal. Mar. 23, 2021) ("Similarly, here, AMR points to Mendell's individual action in the San Diego Superior Court against AMR, without providing any evidence that Mendell is likely to advance his own interests at the cost of the interests of the class. Without evidence of manifest conflict, the Court declines to find that Mendell's parallel, state litigation renders his representation inadequate in this case."); *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 610–11 (D. Kan. 2014) ("First, the Court does not believe that the personal injury claims create the type of 'fundamental' conflict that renders plaintiff unable to serve as class representative."). Moreover, there may be less drastic methods than replacing lead counsel for safeguarding against such an occurrence. For one, Pentwater has noted that it would be open to hiring a retired judge and granting him independent irrevocable authority to settle any class claims. Another option is to appoint an additional lead plaintiff—as Pentwater has proposed— who has no interests in the Canadian actions and who would have an equal say in the decision to settle the putative class claims at issue here. And, "[o]f course, if a class is certified here, any class settlement would be subject to Court oversight for fairness and adequacy of counsel." *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1047 (N.D. Cal. 2014)

Finally, to the extent that the Canadian litigation does pose a conflict of interest with Pentwater's duties to the class, the Court will be in a better position to assess the nature of this conflict and whether it can be cured, including by the measures above, or requires the withdrawal of Pentwater as lead plaintiff and its lawyers as lead counsel at the time of class certification. *See In re Terayon Commc'ns Sys., Inc.*, 2004 WL 413277, at \*7 ("The doctrine against conducting a searching inquiry under Rule 23 at the earliest stage of the lawsuit encourages

efficiency."). The Court is tasked at class certification with conducting a more fulsome analysis of a proposed class representative's adequacy and typicality. *See, e.g., Khunt*, 102 F. Supp. 3d at 536 ("[I]n deciding a motion to serve as lead plaintiff, [t]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met . . . . In fact, a wide ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and should be left for consideration of a motion for class certification."). The requirement that Pentwater inform the Court (and thereby any prospective class members) of litigation it pursues has served its purpose. The class members have transparency and can pursue the issue at the time of class certification. Also, at the time of class certification, the Canadian actions will presumably be further along and the Court will be able to assess the nature of the claims Pentwater intends to bring in those suits as well as what arguments Pentwater is likely to make and whether those conflict with the claims and arguments that a lead plaintiff is likely required to make in this litigation. Further, Rio Tinto indicated at oral argument that it intends "to proceed with discovery at the class cert stage on a lot of these issues." Dkt. No. 192 at 36. The Court is likely to be aided in its determination of Pentwater's adequacy as a class representative through further developments and/or such discovery.

Waiting till class certification will also not result in substantial prejudice to any of the parties. The Court intends to address class certification at an early point in this litigation in compliance with Rule 23, which directs the Court to "determine by order whether to certify the action as a class action" "[a]t an *early practicable time* after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A) (emphasis added).

For these reasons, the Court denies the request to replace Pentwater as lead plaintiff as premature.

## II.    Request to Add John J. Murphy as an Additional Lead Plaintiff

Pentwater also requests that Murphy be added as an additional lead plaintiff in this action

in order to temper any concerns about Pentwater's decision to pursue oppression and dissenter's

rights claims.  Dkt. No. 156 at 23.  They note that Murphy has since sold all of his Turquoise Hill

stock and therefore has no interest in any separate Canadian litigation and Murphy would be

represented by his own counsel.  *Id.* at 2.  Pentwater also notes that inclusion of Murphy, "who

brings the identical claims based on the identical facts and legal theories as Pentwater, poses no

possible prejudice to Defendants."  *Id.* at 24.  "Murphy originally filed a motion seeking lead

plaintiff appointment in this case, but subsequently withdrew his opposition to the competing

motions in deference to Pentwater's application."  *Id.* at 6.  In response, Lin states that

Pentwater's selection of Murphy as additional lead counsel raises questions about Murphy's

adequacy as Murphy originally agreed with Lin at the lead plaintiff stage that Pentwater faced

serious questions about its adequacy.  Dkt. No. 162 at 17.  Lin then states that "neither Pentwater

nor Mr. Murphy explain why or under what terms Mr. Murphy is now willing to support

Pentwater's continued role as the lead plaintiff in this action."  *Id.* at 17–18.  Lin further states

that "Pentwater's motion conspicuously fails to provide any insight as to how Mr. Murphy will

in fact monitor the action or protect unnamed class members from Pentwater's conflict of interest

application."[3]  *Id.* at 18.

"[T]he PSLRA does not . . . prohibit the addition of named plaintiffs to aid the lead

plaintiff in representing a class."  *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 (2d Cir. 2004).

---

[3] Lin also appears to argue that Murphy may not be substituted as lead counsel as the PSLRA
does not allow lead counsel to unilaterally select its replacement.  *Id.* at 17.  The Pentwater
Funds, however, do not appear to claim that they may unilaterally substitute Murphy as lead
counsel—they instead appear to only seek to add him as additional lead counsel.

17

Moreover, under Rule 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21; *see New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 2016 WL 7409840, at \*6 (S.D.N.Y. Nov. 4, 2016). "Indeed, 'the Court possesses broad discretion under Rule 21, Fed. R. Civ. P., to permit a change in the parties at any stage in the litigation.'" *New Jersey Carpenters Health Fund*, 2016 WL 7409840, at \*6 (quoting *Andujar v. Rogowski*, 113 F.R.D. 151, 154 (S.D.N.Y. 1986)); *see In re Initial Pub. Offering Sec. Litig.*, 224 F.R.D. 550, 554 (S.D.N.Y. 2004) (permitting addition of lead plaintiff).

However, while the Court may appoint an additional lead plaintiff, "[f]ederal courts have reached varying conclusions concerning the propriety of appointing co-lead plaintiffs or multiple lead plaintiffs under the PSLRA." *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. at 139 (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 418 (S.D.N.Y. 2004)). "Some courts have refused to appoint co-lead plaintiffs on the grounds that the PSLRA envisioned the appointment of only a sole lead plaintiff (even if that lead plaintiff comprises multiple plaintiffs who moved jointly for lead plaintiff designation), or on the basis that the appointment of multiple lead plaintiffs would undermine the PSLRA's aims." *LaBranche & Co.*, 229 F.R.D. at 418. "Other courts have determined that the interests of a proposed class will be served best by the appointment of co-lead plaintiffs or multiple lead plaintiffs who did not move initially as a group." *Id.* at 419. "Still other courts have suggested their possible amenability to the appointment of co-lead plaintiffs, declining to appoint co-lead plaintiffs not on the basis of any hard-line prohibition but instead on the grounds that the need for or benefit of such a structure had not been established in the circumstances of the particular case." *Id.* "Overall, courts have generally restricted appointment of . . . additional lead plaintiffs to those instances where it is necessary to maintain representation of the prospective class." *In*

18

*re NYSE Specialists Sec. Litig.*, 240 F.R.D. at 139–40.

The Court denies the request to add Murphy as an additional lead plaintiff without prejudice to Pentwater renewing this request at a later stage in the litigation including at class certification.  As noted, it is not clear at this juncture that Pentwater is incapable of adequately protecting the interests of the class and, if it is incapable, on what basis and whether this can be cured merely through the addition of another lead plaintiff.  It also is not clear that if another lead plaintiff should be appointed, Murphy should be that lead plaintiff.  The Court will be in a better position to assess all of these questions and their implications at class certification after class discovery has been conducted and during which the Court is tasked with conducting a more "searching inquiry" of named plaintiffs' compliance with Rule 23.  *In re Terayon Commc'ns Sys., Inc.*, 2004 WL 413277, at *7.

Another reason to wait for class certification is that, in the event that Pentwater is found not adequate under Rule 23, the most appropriate procedure would be to allow other putative class members, including Lin, to move for appointment as lead plaintiff upon Pentwater's withdrawal.  *See Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 326 (S.D.N.Y. 2012) ("Although there is limited guidance on the proper procedure for the replacement of a duly appointed lead plaintiff, the Court determines that a limited allowance of opportunity for other class members to move for appointment as lead plaintiff is appropriate under the circumstances."); *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 120 (S.D.N.Y. 2002).  This would not be possible, however, if the Court added Murphy as an additional lead plaintiff at this stage: Murphy would presumably continue as lead plaintiff even if Pentwater could no longer serve as co-lead plaintiff and Pentwater would effectively have unilaterally selected its replacement.  *See Fort Worth Employees' Ret. Fund*, 862 F. Supp. 2d at 326

("[C]ourts have held that in appointing a substitute lead plaintiff they should not 'simply assume[ ] that [lead counsel's] choice of [substitute] lead plaintiff is the most adequate plaintiff.'" (citation omitted)); *In re Neopharm, Inc. Sec. Litig.*, 2004 WL 742084, at *3 (N.D. Ill. Apr. 7, 2004) ("That approach, however, simply assumes that Milberg Weiss' choice of lead plaintiff is the most adequate plaintiff.  The better approach is to grant Larson's motion for withdrawal as lead plaintiff and allow for any prospective lead plaintiffs to make a motion for appointment."). Consequently, Lin who claims to have "had the second 'largest financial interest' with nearly $350,000 in losses," would have no opportunity to claim that he was better situated to become lead plaintiff and is the party next in line under the PSLRA.  Dkt. No. 162 at 1; *see In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. at 120 (noting that after a lead plaintiff withdraws, "[i]t only stands to reason that the appropriate lead plaintiff would be the next "most adequate" plaintiff under the PSRLA).  The Court thus denies this request at this stage of the proceeding.

## CONCLUSION

Pentwater's motion for leave to add Murphy as an additional lead plaintiff and Lin's motion requesting that he replace Pentwater as lead plaintiff are DENIED without prejudice to renewal.  The Clerk of Court is respectfully directed to close Dkt. Nos. 155, 163.

An initial conference in this matter is scheduled for January 23, 2023 at 10:00am before Judge Lewis J. Liman.  The hearing will be held in-person in Courtroom 15C at the 500 Pearl Street Courthouse.  A proposed case management plan is due to the Court one week prior to the initial conference.

SO ORDERED.

Dated: December 23, 2022
      New York, New York
                                LEWIS J. LIMAN
                          United States District Judge