UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TURQUOISE HILL RESOURCES LTD. SECURITIES LITIGATION | Case No. 1:20-cv-08585-LJL |

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS

The United States District Court for the Southern District of New York ("Southern District") presents its compliments to the appropriate judicial authority of the United Kingdom for assistance in obtaining evidence to be used at trial in the above-captioned civil proceeding before this Court. This request is made pursuant to Chapter I of the Hague Convention of 18 March 1970 on the Taking of Evidence in Civil or Commercial Matters ("Hague Convention"). The Southern District is a court of law and equity and has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §§ 15(a) and 26.

The Southern District has determined that it would further the interests of justice and that justice cannot be completely done between the parties without documents in the possession of Mr. Maurice Duffy and the testimony, under oath, of Mr. Duffy residing within your jurisdiction. This is an action alleging violation of United States securities laws. Mr. Duffy is a former Rio Tinto contractor and appears to be one of Plaintiff's main witnesses in support of their allegation that Defendants violated securities laws by failing to timely disclose alleged schedule delays and cost overruns at the Oyu Tolgoi Underground Project.

The testimony of Mr. Duffy is not available from any source within the jurisdiction of the Southern District, and cannot be obtained by any means other than pursuant to an order of an appropriate judicial authority of the United Kingdom, compelling the witness to appear for

examination. Mr. Duffy, a non-party to this action, resides at 1 Warkworth Terrace, North Shields, Tynemouth, NE30 4ES, United Kingdom.

This request is made with the understanding that, and on the basis that any order made pursuant to this request: (1) will not require Mr. Duffy to commit any offense; (2) will not require Mr. Duffy to undergo a broader form of inquiry than he would have if the litigation were conducted in the United Kingdom; and (3) will not violate the laws of civil procedure of any United Kingdom court.

The Southern District, therefore, and in conformity with Article 3 of the Hague Convention, respectfully requests that you, in furtherance of justice by proper and usual process of your court, cause Mr. Duffy to produce the documents listed in Exhibit 1 and to appear before an official examiner authorized to administer oaths, and to take testimony, at a precise time to be fixed between counsel for the Applicant and the appointed Examiner under 34.15, and answer on his oath or affirmation questions and cross-questions, and that you will direct his deposition to be transcribed and recorded by video, and the transcript and video be sent to counsel for the parties in the action, who so request a copy. The Southern District stands ready to provide similar judicial assistance to judicial authorities in the United Kingdom when required.

Finally, this Court requests from the judicial authority of the United Kingdom that this Letter of Request and its exhibits, and the declaration of Corey Worcester dated February 9, 2023, and its exhibits be closed to public inspection to the maximum extent permitted by your laws because they will be subject to the protective order in this case.

THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK THEREFORE MAKES THE FOLLOWING REQUEST:

1. **Sender**

    The Honorable Lewis J. Liman
    United States District Judge
    United States District Court for the Southern District of New York
    Daniel Patrick Moynihan United States Courthouse
    500 Pearl St.
    Courtroom 15C
    New York, NY 10007-1312
    United States of America

2. **Central Authority of the Requested State**

    The Senior Master of the King's Bench Division
    The High Court of England and Wales
    For the attention of the Foreign Process Section
    Room E16
    Royal Courts of Justice
    Strand
    LONDON WC2A 2LL
    United Kingdom

3. **Person to whom the executed request is to be returned**

    The Honorable Lewis J. Liman
    United States District Judge
    United States District Court for the Southern District of New York
    Daniel Patrick Moynihan United States Courthouse
    500 Pearl St.
    Courtroom 15C
    New York, NY 10007-1312
    United States of America

    and

    Sam Cleveland
    Quinn Emanuel Urquhart & Sullivan LLP
    51 Madison Avenue, 22nd Floor
    New York, NY 10010
    United States of America

4. **Specification of the date by which the requesting authority requires receipt of the response to the Request for International Judicial Assistance ("Request for Assistance")**

The requesting authority would greatly appreciate a response to the Request for Assistance within 21 days or as soon thereafter as is practicable.

5.
    a.   **Requesting Judicial Authority**

United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
Courtroom 15C
New York, NY 10007-1312
United States of America

    b.   **To the competent authority of**

United Kingdom

    c.   **Name of the case and any identifying number**

*In re Turquoise Hill Resources Ltd. Securities Litigation,* Case No. 1:20-cv-08585-LJL (S.D.N.Y.)

6.   **Names and addresses of the parties and their representatives**

    a.   **Plaintiffs**
The Pentwater Funds, individually and on behalf of all others similar situated.

    b.   **Names and addresses of Plaintiffs' representatives**
Michael D. Blatchley
Salvatore J. Graziano
Bernstein Litowitz Berger & Grossmann LLP
1251 Avenue of the Americas,
New York, New York 10020

*Counsel for Lead Plaintiff The Pentwater Funds*

    c.   **Defendants**
Rio Tinto PLC; Rio Tinto Limited; Jean-Sébastien Jacques, and Arnaud Soirat

    d.   **Names and addresses of Defendants' representatives**

Corey Worcester
Renita Sharma
Quinn Emanuel Urquhart & Sullivan, LLP

> 51 Madison Avenue, 22nd Floor,
> New York, New York 10010
>
> *Counsel for Defendants Rio Tinto PLC, Rio Tinto Limited, Jean-Sébastien Jacques, and Arnaud Soirat*

7.

  a. **Nature and purpose of the proceedings:**

The Plaintiff in this case alleges that Defendants Rio Tinto PLC, Rio Tinto Limited, Jean-Sébastien Jacques, and Arnaud Soirat ("Defendants") violated United States Securities laws by failing to timely disclose schedule delays and budget overruns that occurred at the Oyu Tolgoi Underground Project ("OTUP"). A copy of Plaintiff's Second Amended Complaint ("Complaint"), dated September 16, 2021, is attached as Exhibit 3 hereto. The nature of the action is summarized at Complaint ¶¶ 1-27. Plaintiff seeks damages and other relief for injury caused by Defendants' alleged wrongdoing. Complaint at 182.

  b. **Summary of complaint**

Defendants partially and indirectly own and operate the Oyu Tolgoi mine in Mongolia. Complaint ¶ 3. One component of this mine is the OTUP. *Id.* Work on the OTUP began in 2010, but was temporarily halted before work continued in 2015. *Id.* ¶¶ 5-6.

Throughout the class period, Defendants reported to the market on the progress and budget of the OTUP. *See e.g., id.* ¶ 7. These disclosures included an overview of progress towards certain developmental milestones related to the OTUP, such as the firing of the first drawbell and reaching sustainable production. Before October 2018, Defendants generally disclosed that the mine was on budget and on schedule. *See e.g., id.* ¶¶ 323-24. In October 2018, Defendants disclosed that while the project remained on budget and that the first drawbell milestone was still in line for mid-2020, "[t]he preliminary re-forecast assessment indicates ground conditions and shaft sinking challenges that are ultimately expected to result in a revised ramp-up schedule to sustainable first

5

production." *See id.* ¶ 338. Later, in February 2019, Defendants disclosed that "overall construction progress is mostly on track," but that there would be a further delay to reaching the sustainable production milestone. *See id.* ¶ 371. Then, in July 2019, Defendants announced a further delay to the sustainable production milestone, and also that the capital spend would be greater than initially forecasted. *See id.* ¶ 242. Plaintiffs allege that the stock price of Turquoise Hill stock decreased in connection with these disclosures. *See, e.g., id.* ¶ 244.

The main thrust of Plaintiffs' allegations is that Defendants' statements that the OTUP was progressing in line with schedule and costs estimates were false or misleading when made, because allegedly, Defendants were actually aware of schedule delays and cost overruns at the time of these disclosures, but failed to disclose them. *See, e.g., id.* ¶ 447. Plaintiffs further allege that these statements were made knowingly or with reckless disregard for the truth of the statements, and as such, that Defendants allegedly violated United States securities laws through these disclosures. *Id.* Specifically, Plaintiff alleges that Defendant violated (1) Section 10(b) of the Exchange Act and SEC Rule 10b-5; and (2) Section 20(a) of the Exchange Act. *See e.g., id.* ¶¶ 1-13, 465-525, 583-619. These allegations are apparently informed, at least in part, by Mr. Duffy. *See, e.g.,* ¶¶ 10-12.

### c. Summary of defense[1]

Defendants moved to dismiss Plaintiff's claims on various legal grounds, including failing to state a claim for relief, and the Court dismissed portions of Plaintiff's claims.

Generally, Defendants aver that none of the disclosures regarding the OTUP were false or misleading when made. The OTUP is a highly complex project, and Defendants disclosed any

---

[1] The following is a high-level overview of the defenses that Defendants will press in this case, and is in no way intended to be a comprehensive description of all defenses Defendants may raise or argue.

delays or cost overruns promptly after becoming aware of them. Further, Defendants will argue that even if any of the statements concerning the OTUP were false or misleading (which they were not), that these alleged false or misleading statements were made innocently, and not with an intent to deceive, because Defendants had no specific motive to defraud investors and there is no evidence that these allegedly false or misleading statements were made with scienter.

8.

### a. Evidence to be obtained

This Court respectfully requests that the appropriate judicial authority in the United Kingdom cause the appropriate orders to be issued to direct Mr. Duffy to produce the documents listed in Exhibit 1 and to give oral testimony on the topics enumerated in Exhibit 2, which are to be used at trial in these proceedings.

### b. Purpose of the evidence or judicial act sought

To mount a defense at trial, Defendants must show that allegations attributed to Mr. Duffy in the Complaint are without basis and must show that contrary to Plaintiff's allegations, Defendants did not make materially misleading statements with scienter.

Mr. Worcester has represented and furnished sufficient evidence to satisfy this Court that Mr. Duffy has personal knowledge of matters material and relevant to the matters at issue in the proceedings. As set forth below, the evidence sought by Defendants relates to the matters in question. Because Mr. Duffy resides outside the subpoena power of this Court, and therefore cannot be compelled to testify at trial, Plaintiffs seek the production of documents in Mr. Duffy's possession to support their defenses at trial regarding the progress and budget of the Oyu Tolgoi Underground Project, as well as Mr. Duffy's testimony about the same.

Mr. Duffy, through his consulting firm, GFI Blackswan ("Blackswan"), provided executive coaching services to Rio Tinto employees since 2007. Later, the contract between Rio Tinto and Blackswan was terminated.

Mr. Duffy now appears to be one of Plaintiff's main witnesses, featuring in the Complaint over 70 times. Allegations attributed to Mr. Duffy primarily concern purported "problems" at the Oyu Tolgoi Underground Project and Defendants purported awareness of these problems. *See* Complaint ¶ 12. These concerns apparently related to "concerns from senior leaders in Mongolia about unethical behavior and 'potential overstatements'" that Mr. Duffy "began to hear" in 2016. *See id.* ¶ 133.

Mr. Duffy also claims to have "provided detailed reports from coaches and senior leadership at Oyu Tolgoi to Rio's Executive Committee" identifying the concerns he had about the Oyu Tolgoi Underground Project. *See id.* ¶ 12. Mr. Duffy also claims he was told to discontinue these reports in mid-2017, and the allegations attributed to him imply that this instruction coincided with a wider move at the Oyu Tolgoi Underground project toward less transparent reporting on the Project's progress. *See id.* ¶ 134.

Allegations attributed to Mr. Duffy also claim that Mr. Duffy presented a host of "comments from senior leaders involved with OT" that Mr. Duffy collected from "coaching assessments" that purportedly establish that "Defendants Jacques and Soirat knew about the cost overruns and delays by no later than September 2017." *Id.* ¶ 135.

Refuting these wide-ranging allegations will be an important part of Defendants' defense in this case. As such, Defendants need documents that Duffy believes support the allegations attributed to him in the Complaint so Defendants can assess the veracity of those allegations. Or, alternatively, if Duffy produces no documents or documents that do not support the allegations

8

attributed to him, it would support that Duffy had no basis for those allegations, thus supporting Defendants' defenses. In short, Mr. Duffy's production (or lack thereof) will be informative as to whether the allegations attributed to him in the Complaint are credible and will go a long way toward disproving Plaintiff's allegations writ large.

Further, even though Mr. Duffy contracted with Rio Tinto during some of the relevant period, Defendants believe it is likely that that Mr. Duffy used methods of communications that would not otherwise be available to Rio Tinto, such as personal email or text messaging. Further, GFI Blackswan's contract with Rio Tinto was terminated before the end of the purported class period, meaning that Rio Tinto would not have access to Mr. Duffy's relevant documents from this time. In addition, to the extent Mr. Duffy communicated with his colleagues at GFI Blackswan, Rio Tinto would not have access to these communications, because they would be hosted on GFI Blackswan's computer systems, not Rio Tinto's. Because Mr. Duffy is likely to have relevant documents and communications that Defendants cannot otherwise obtain in the underlying proceeding, Defendants must obtain these documents and communications through a Letter of Request.

In addition, because he is not a party to the underlying proceeding, Defendants may only obtain Mr. Duffy's oral testimony through a Letter of Request.

**9.     Identity of any person to be examined**

Maurice Duffy
1 Warkworth Terrace
Tynemouth
Tyne And Wear
NE30 4 ES
United Kingdom

**Name and address of witness's counsel**

Unknown

10. **Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined**

See Exhibit 2.

11. **Documents or other property to be inspected**

See Exhibit 1.

12. **Any requirement that the evidence be given on oath or affirmation and any special form to be used**

The examination of the witness identified at Section 9 above will be taken under oath before: (1) a secretary of embassy, counsel general, consul, vice-consul, or consular agent of the United States of America or any officer authorized to administer oaths under the laws of the United States of America or of the United Kingdom; or (2) before a person appointed by the Court and empowered to administer oaths and take testimony. This Court will be content if the requested Court appoints a duly qualified and authorized Examiner.

This Court further requests that you, by your proper and usual process, require that the testimony given during the above-described deposition be given under the following oath or affirmation: "I [deponent] swear that the testimony that I am about to give is the truth, the whole truth and nothing but the truth, so help me God" or "I [deponent] swear that the testimony that I am about to give is the truth, the whole truth and nothing but the truth."

**13. Special methods or procedure to be followed**

The examination of the individual identified in Section 9 above will be taken under the Federal Rules of Civil Procedure, except to the extent that any such procedure is incompatible with United Kingdom law. The examinations and cross-examinations shall be the same as though the

deponent were testifying at trial. The examinations and cross-examinations will be recorded stenographically and by videotape. The examination will be conducted at such time and date to be agreed with by the witness.

This Court respectfully requests that the judicial authority in England permit the examination of Mr. Duffy to be conducted by (i) attorneys for the Plaintiffs or other duly authorized representatives, qualified to practice law in United States jurisdictions and/or in England and Wales, nominated by the Plaintiffs, and that Plaintiffs be permitted to cross-examine Mr. Duffy; and (ii) the witness's counsel (if instructed).

**14. Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified**

Sam Cleveland
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
United States of America

Counsel for Defendants will promptly send notice to counsel for all parties to the action.

**15. Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request**

Omitted.

**16. Specification of privilege or duty to refuse to produce documents under law of the State of origin**

Neither this request for international judicial assistance, the transmission of documents pursuant to the Hague Convention, shall waive, or be deemed or argued to have waived, the attorney-client privilege, the work product doctrine, or any other privileges, rights, protections, or prohibitions that may apply to that evidence under the laws of the United Kingdom, the United States of America, or the State of New York, including the privilege against self-incrimination under the Fifth Amendment of the U.S. Constitution.

Mr. Duffy's production of documents will not be oppressive. In addition, documents Mr. Duffy produces will be produced under the terms of the protective order and, therefore, will be given confidential treatment in connection with this litigation.

**17.    The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by**

Defendants.

Date of Request: _____
Signature and Seal of the Requesting Authority:

3/10/2023