USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/21/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                     :

IN RE TURQUOISE HILL RESOURCES LTD.   :   20-cv-8585 (LJL)
SECURITIES LITIGATION                             :

                                                     :   MEMORANDUM AND
                                                     :         ORDER

-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendants Rio Tinto plc and Rio Tinto Limited (collectively "Rio Tinto"), and Jean-Sébastien Jacques ("Jacques") and Arnaud Soirat ("Soirat" and, collectively with Rio Tinto and Jacques, "Defendants") move, pursuant to Local Civil Rule 6.3, for an order granting reconsideration of the portion of the Court's January 8, 2024 Memorandum and Order granting Plaintiffs' Motion for Leave to File a Third Amended Complaint, and upon reconsideration, denying in part Plaintiffs' Motion for Leave to File a Third Amended Complaint. Dkt. No. 320.

      For the following reasons, the motion for reconsideration is granted in part and denied in part.

## BACKGROUND

      By Memorandum and Order of January 8, 2024 (the "January 8 Order"), the Court addressed three different sets of motions: (1) motions to redact and seal portions of Plaintiffs' motion to compel; (2) motions to redact and seal portions of Plaintiffs' motion for leave to file a Third Amended Consolidated Class Action Complaint (the "Third Amended Complaint" or "TAC"); and (3) a motion for leave to file a Third Amended Complaint. Dkt. No. 314. The bulk of the Court's January 8 Order and the entirety of its discussion was devoted to the motions to

seal and redact certain of Plaintiffs' filings, which the Court granted in part and denied in part. *Id.* at 2–7. The Court addressed the motion to file the Third Amended Complaint in a single footnote which preceded the discussion and stated simply that the motion satisfied the standards for amendment under Federal Rule of Civil Procedure 15(a)(2). *Id.* at 2 n.1. The Court stated: "Lead Plaintiff has shown good cause for its Motion for Leave to File the TAC. The Court thus exercises its discretion to grant the motion." *Id.* (internal citation omitted). Defendants argue that the Court should reconsider those portions of the January 8 Order that permitted the filing of the Third Amended Complaint because it was rendered prior to Defendants having submitted its opposition to Plaintiffs' motion and without the opportunity for the Court to consider Defendants' arguments. Dkt. No. 321 at 1. Defendants also argue that the January 8 Order overlooked controlling case law, reflected clear error, and resulted in manifest injustice. *Id.* at 2.[1]

## LEGAL STANDARD

"A motion for reconsideration should be granted only if the movant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Spin Master Ltd. v. 158*, 2020 WL 5350541, at *1 (S.D.N.Y. Sept. 4, 2020) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)). Reconsideration of a court's previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation omitted). A motion for reconsideration "is not a 'vehicle for

---

[1] In issuing the January 8 Order, the Court overlooked the Stipulation and Order filed by the parties on November 17, 2023, and signed by the Court on that same day, permitting Defendants until January 17, 2024, to file a memorandum in opposition to the then-contemplated motion to file the Third Amended Complaint. Dkt. No. 303.

2

relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" *Spin Master*, 2020 WL 5350541, at *1 (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *cert. denied*, 569 U.S. 918 (2013)).  Where, however, the opposing party previously had been unable to respond to the motion before the court has rendered an opinion, it is appropriate to consider the "motion for reconsideration and supporting memoranda . . . as [an] opposition in the normal course instead of under the more exacting standards of a motion for reconsideration." *Gerber Sci. Int'l, Inc. v. Satisloh AG*, 2009 WL 10689139, at *1 (D. Conn. Oct. 9, 2009).

As a general matter, under Rule 15(a), "[l]eave to amend a complaint [is to] be freely given when justice so requires." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002) (citing Fed. R. Civ. P. 15(a)).  The court may deny such a motion only on grounds of "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995).  However, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).  Additionally, "[t]he generous approach that courts take to Rule 15 and Rule 21 motions does not extend to motions filed after a previously ordered deadline has run." *Cheng v. Via Quadronno LLC*, 2022 WL 1210839, at *2 (S.D.N.Y. Apr. 25, 2022).  "When a party files a motion to amend after the pleading deadline set forth in the case management plan and scheduling order," Federal Rule of Civil Procedure 16(b) "governs and the party must establish 'good cause' to amend its pleadings." *Pristine Jewelers NY, Inc. v. Broner*, 492 F. Supp. 3d 130, 131–32 (S.D.N.Y. 2020) (citing *Sherman v. Fivesky, LLC*, 2020 WL 5105164, at *1 (S.D.N.Y. Aug. 31, 2020)).  "This is not a forgiving standard." *Mangahas v.*

*Eight Oranges Inc.*, 2023 WL 3170404, at *3 (S.D.N.Y. May 1, 2023).  "[A] scheduling order is an order just like any other order of the Court." *Furry Puppet Studio Inc. v. Fall Out Boy*, 2020 WL 4978080, at *1 (S.D.N.Y. Feb. 24, 2020).  It is entitled to respect.  "To show good cause, a movant must demonstrate diligence before filing her motion, such that despite the movant's effort, the deadline to amend the pleadings could not have been reasonably met." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 197 (S.D.N.Y. 2014).  "[T]he good cause standard of Rule 16 is not satisfied when the proposed amendment rests on information that the party knew or should have known, in advance of the deadline." *Sherman*, 2020 WL 5105164, at *1 (quoting *DeCastro v. City of New York*, 2020 WL 4932778, at *7 (S.D.N.Y. Aug. 24, 2020)). "The Court 'also may consider other relevant factors, including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [non-movants].'" *Weng v. HungryPanda US, Inc.*, 2021 WL 1750305, at *2 (S.D.N.Y. May 4, 2021) (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)).[2]

## DISCUSSION

The Court assumes familiarity with its September 2, 2022 Opinion and Order granting in part and denying in part Defendants' motion to dismiss the Second Amended Complaint ("SAC").  Dkt. No. 149.  The Opinion and Order summarized the allegations of the then-operative SAC.  As relevant here, the Court dismissed all claims seeking to hold Rio Tinto liable for alleged misstatements made by Turquoise Hill, reasoning that Plaintiffs failed to plead that Rio Tinto was the "maker" under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 141 (2011), of statements that were not explicitly attributed to it, and that the

---

[2] "Even if good cause is established . . . , a court may deny a motion to amend if the proposed amendment 'would be futile, unduly prejudicial, or otherwise improper.'" *DeCastro*, 2020 WL 4932778, at *7 (quoting *Youngers v. Virtus Inv. Partners Inc.*, 2017 WL 5991800, at *6 (S.D.N.Y. Dec. 4, 2017)).

4

statements that were explicitly attributed to Rio Tinto were non-actionable forward-looking statements, Dkt. No. 149 at 38–47.  The Court also dismissed Plaintiffs' claims under Section 10(b) of the Securities Exchange Act of 1934 against Jacques, finding that the SAC did not contain allegations that raised a strong inference of scienter with respect to him.  *Id.* at 113–15.  While the SAC alleged that Jacques knew about delays at Oyu Tolgoi in 2017, it did not allege that Jacques knew at the beginning of the Class Period, an entire year later, that progress at the underground development was still delayed.  *Id.* at 113.

The proposed Third Amended Complaint seeks to add several sets of new allegations, falling within four broad categories.  *See* Dkt. No. 311-2.  First, the Third Amended Complaint seeks to add new allegations against Jacques for the violation of Section 10(b) of the Securities Exchange Act, asserting that Jacques closely monitored the progress of Oyu Tolgoi through his role as chairperson of Rio Tinto's Investment Committee, and through the work of the Technical Evaluation Group ("TEG").  *Id.* ¶¶ 6, 53.  Accordingly, the Third Amended Complaint adds a new section, entitled "Defendants Jacques and Soirat Are Informed of the Massive Delays at OT and Their Impact on Cost by Rio's Experts, Yet Continue to Conceal Them," which relies on information conveyed to an October 2018 Investment Committee meeting about delays with respect to the Oyu Tolgoi schedule.  *Id.* ¶¶ 174–79; *see also id.* ¶ 154.  Second, the proposed Third Amended Complaint adds allegations with respect to statements made by Soirat during a November 2018 television interview with a Mongolian opinion leader and economist on Mongolian television.  *Id.* ¶¶ 18, 205, 402–03.  Third, the Third Amended Complaint seeks to impose liability on Rio Tinto for statements of Turquoise Hill—a theory that the Court previously dismissed in its September 2, 2022 Opinion and Order—that Plaintiffs now assert were explicitly attributed to Rio Tinto, including statements made in a November 1, 2018

Turquoise Hill press release, *id.* ¶¶ 378–79, during a November 2, 2018 Turquoise Hill investor conference call, *id.* ¶¶ 381–82, and in a February 27, 2019 Turquoise Hill press release, *id.* ¶ 408. Finally, the proposed Third Amended Complaint adds a new section entitled "Rio Fails to Take A Required Impairment of the OT Asset," which alleges that Rio Tinto violated International Financial Reporting Standards (the "IFRS") by issuing materially false and misleading annual statements in 2017 and semi-annual financial statements in 2018, and by failing to conduct an impairment test in connection with Oyu Tolgoi as required by the IFRS. *Id.* ¶¶ 418–28. Finally, the Third Amended Complaint seeks to add a new claim against Jacques for violation of Section 10(b) of the Securities Exchange Act and asserts, in support of that claim, allegations that Jacques closely monitored the progress of Oyu Tolgoi through his role as chairperson of Rio Tinto's Investment Committee, and through the work of the Technical Evaluation Group ("TEG"). *Id.* ¶¶ 6, 53. Accordingly, the Third Amended Complaint adds a new section, entitled "Defendants Jacques and Soirat Are Informed of the Massive Delays at OT and Their Impact on Cost by Rio's Experts, Yet Continue to Conceal Them," which relies on information conveyed during an October 2018 Investment Committee meeting about delays with respect to the Oyu Tolgoi schedule. *Id.* ¶¶ 174–79; *see also id.* ¶ 154.

      Defendants argue that Plaintiffs' allegations regarding Rio Tinto's liability for Turquoise Hill statements, Soirat's November 10, 2018 interview, and Rio Tinto's impairment testing are untimely and do not satisfy the standards of Rule 16 or Rule 15 because they are based on information that has been public for years, including several allegations that were based on information available before the first complaint was filed in this action in 2020. Dkt. No. 321 at 2, 9–11. Defendants also argue that Plaintiffs should not be permitted to bring a Section 10(b) claim against Jacques based on information that Plaintiffs were able to obtain only with the

benefit of discovery. *Id.* at 12–13.  Finally, Defendants argue that the proposed amendments should not be permitted because their addition would unduly prejudice Defendants, "who have already expended significant resources litigating this case based on its current schedule and contours." *Id.* at 3.[3]

Defendants' motion for reconsideration is granted in part and denied in part.  The Court grants reconsideration of the January 8 Order, and denies Plaintiffs leave to include the following sets of allegations in the Third Amended Complaint: (1) allegations that seek to impose liability on Rio Tinto for statements of Turquoise Hill, Dkt. No. 311-2 ¶¶ 378–79, 381–82, 408; (2) allegations with respect to Soirat's statements during the November 2018 television interview, *id.* ¶¶ 205, 402–03; and (3) allegations that Rio Tinto failed to take a needed impairment charge, *id.* ¶¶ 418–28.  Plaintiffs have provided no good cause for the late addition of those allegations under Rule 16(b), and Defendants have shown that Plaintiffs engaged in undue delay under Rule 15(a)(2).  The initial complaint in this case was filed on October 15, 2020.  Dkt. No. 7.[4]  An Amended Complaint was filed on March 17, 2021, Dkt. No. 110,[5] and the SAC was filed on September 16, 2021, Dkt. No. 127.  On February 2, 2023, the Court entered a Case Management Plan and Scheduling Order, providing that any motion to amend would be filed by February 22, 2023, Dkt. No. 202, adopting the date for amendment that had been proposed by the parties, Dkt. No. 200.  On May 11, 2023, the parties jointly requested that the Case Management Plan be amended, but did not request that the date for amendment be altered or extended.  Dkt. No. 247.

---

[3] Defendants do not seek reconsideration of every single new amendment in the Third Amended Complaint, reserving their rights to argue at the motion to dismiss stage that such new allegations failed to state a claim for relief.  Dkt. No. 321 at 1 n.1.
[4] Plaintiffs attempted to file the complaint on October 14, 2020, but it was rejected due to a filing error.  Dkt. No. 1.
[5] Plaintiffs sought to file the amended complaint on March 16, 2021, but it was rejected due to a filing error.  Dkt. No. 109.

The Court adopted the proposed amended Case Management Plan the following day. Dkt. No. 248. Plaintiffs did not make the motion to file the Third Amended Complaint until December 15, 2023, Dkt. No. 305, ten months after the date for the filing of amendments had run.

Plaintiffs offer no good cause for their failure to move to amend earlier to add allegations with respect to the statements of Turquoise Hill, Soirat's statements during the November 2018 television interview, or the alleged failure to take an impairment charge. Plaintiffs identify no information supporting those allegations that was not available to them by February 22, 2023. The Turquoise Hill statements for which Plaintiffs seek to hold Rio Tinto liable were made on November 1, 2018, November 2, 2018, and February 27, 2019, well before Plaintiffs initiated this action. Dkt. No. 311-2 ¶¶ 378, 381, 408. The statements were public. There is no reason that Plaintiffs could not have made the allegations that they seek to make now in the original complaint or, if they wanted the benefit of the Court's reasoning on the SAC, after the Court's decision on the motion to dismiss the SAC, which was issued in September 2022, well before the deadline for amendments. *See* Dkt. No. 149. The same can be said for the allegations that Soirat made misstatements on Mongolian television in November 2018, Dkt. No. 311-2 ¶ 402, two years before the filing of the Amended Complaint. Finally, Plaintiffs' allegations that Defendants should have taken an impairment charge for 2017 and 2018 is based on information supposedly conveyed to Defendants by their consultant Bowley beginning in 2017, *id.* ¶ 421.

Moreover, while not necessary to the Court's decision, the addition of these allegations would cause prejudice to Defendants and unduly delay the resolution of this case. The identification of alleged misstatements in a complaint is a matter of significance in a securities fraud case. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). It permits the defendants to test, at the motion to dismiss stage, whether the alleged misstatement

8

is supported by allegations of falsity and scienter, and is otherwise actionable. *See, e.g.*, *In re AppHarvest Sec. Litig.*, 2023 WL 4866233, at *15–16 (S.D.N.Y. July 31, 2023). It frames discovery. It forms the basis of expert conclusions regarding issues such as loss causation, *see* 15 U.S.C. § 78u-4(b)(4) (plaintiff has the burden to prove "that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages"), and damages. The identification of the actionable misstatement or omission is critical to class certification. *See generally Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S 113 (2021) (discussing the *Basic Inc. v. Levinson* presumption also known as the fraud-on-the-market presumption). It is no doubt, for that reason, that the Private Securities Litigation Reform Act ("PSLRA") requires a complaint in a private securities fraud action to "specify each statement alleged to have been misleading," as well as "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). The requirement that alleged misstatements be identified with particularity not only puts the plaintiff to the burden of showing—before discovery is permitted to go forward—an alleged misstatement, but also defines the universe of misstatements against which the defendant must defend. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (holding that a securities fraud complaint "must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent"); *see also In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 418 (S.D.N.Y. 2003) (examining whether allegations were "too far removed from the fraud underlying the false statements . . . to put [the] defendants on notice of those frauds").

Plaintiffs' belated addition of these new statements would frustrate the objectives of the PSLRA and impede the "just, speedy, and inexpensive determination" of this action. Fed. R.

9

Civ. P. 1; *see In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 391 (S.D.N.Y. 2003) (denying leave to amend where the new allegations were based on information available to the plaintiffs before the case was dismissed). Discovery has been ongoing for many months. Document discovery is by now substantially complete, fact discovery is scheduled to be completed by August 1, 2024 and expert depositions are scheduled to be completed by November 21, 2024. Dkt. No. 248. And the scope of discovery has been extensive, including substantial international discovery. *See, e.g.*, Dkt. Nos. 219, 234–37 (Plaintiffs' motion for the Court to issue Requests for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters for the production of documents and taking of testimony overseas, and the Court's issuance of such Requests); Dkt. Nos. 250, 263–64 (parties' joint request for the Court to issue a Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters for the production of documents and taking of testimony overseas, and the Court's issuance of such Request). The addition of these new claims now, particularly those seeking to hold Rio Tinto liable for Turquoise Hill's statements, and for an alleged failure to take an impairment charge, will undoubtedly lead to significant additional document discovery, including international discovery, in a case that should be progressing towards a conclusion. *See Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (amendment causes prejudice where it would require "opponent to expend significant additional resources to conduct discovery and prepare for trial [and] significantly delay the resolution of the dispute"). Both investors and the public writ large have an interest in the expeditious adjudication of a case charging a public company with securities fraud that is undermined when the case is repeatedly delayed.

Plaintiffs' arguments to the contrary are not persuasive. Although Plaintiffs claim that document discovery supports their new allegations, Dkt. No. 323 at 5–6, they do not contend that any discovery was necessary to bring these claims. Plaintiffs previously sought to hold Turquoise Hill liable for the misstatements that they now attribute to Rio Tinto. As to the false statements by Rio Tinto itself, Plaintiffs admit that they "are similar to previously sustained statements." *Id.* at 6. If so, there is no reason the allegations could not have been made earlier. Plaintiffs also protest that they should not have been required "to amend immediately, on an-allegation-by-allegation basis, regardless of the impact on the case schedule or any prejudice to the parties." *Id.* at 9. But the purpose of an amendment deadline in a case management plan is to establish a date by which the pleadings are fixed. "Parties structure their approach to litigation based on case management plans and are entitled to rely upon them being enforced absent some good reason why they should not be." *Cheng*, 2022 WL 1210839, at *2. Plaintiffs need not have filed new amendments each time they thought of a new allegation. But they were required to seek to add all of their new allegations by the deadline established in the case management plan at the expense that, if they did not do so, they would have to show not only the absence of prejudice to Defendants, but the existence of good cause for the delay. *See, e.g.*, *Pristine Jewelers NY, Inc. v. Broner*, 492 F. Supp. 3d 130, 131–32 (S.D.N.Y. 2020). Plaintiffs simply misstate the law when they state that "delay alone does not constitute ground for denying leave" and that Defendants "must demonstrate bad faith or undue prejudice" to defeat Plaintiffs' proposed amendment. Dkt. No. 323 at 10. That may be so with respect to Rule 15, but it decidedly is not so under Rule 16. *See Congelados del Cibao v. 3 Kids Corp.*, 2021 WL 4635919, at *2 (S.D.N.Y. Oct. 6, 2021).

Finally, Plaintiffs' reliance on *In re Vivendi Universal, S.A. Sec. Litig.*, 838 F.3d 223, 242 n.11 (2d Cir. 2016), is misplaced. Defendants in that case argued that they were entitled to a new trial because the verdict form permitted the jury to find them liable based on misstatements that were not revealed by Plaintiffs until after the close of the evidence. *See In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 577 (S.D.N.Y. Feb. 17, 2011). The district court rejected that argument, finding that the defendants "were aware long before trial" of the statements the plaintiffs alleged to be misleading, either because they were identified in the operative complaint or were similar to those statements, or because they had been identified in an interrogatory response or expert reports. *Id.* at 578–79. The Second Circuit affirmed on the grounds relied upon by the district court. *In re Vivendi*, 838 F.3d at 242 n.11 ("We thus agree with the district court that [one of the defendants] was 'aware long before trial' both 'that [P]laintiffs believed the fifty-seven [alleged mis]statements . . . were misleading' and 'why [P]laintiffs believed each of [those] statements was misleading.'" (quoting *In re Vivendi*, 765 F. Supp.2d at 579))). The court also stated that it had not been able to identify a rule that "confine[d] securities-fraud plaintiffs [at trial] to the particular alleged misstatements identified in their complaint" or that bound such plaintiffs "to the precise set of alleged misstatements identified in their complaint throughout the entire course of litigation." *Id.* The Circuit in *Vivendi* thus did not purport to address the standards applicable to motions to amend a securities fraud claim to add additional misstatements. Indeed, courts in this Circuit have held proposed amendments to add new misstatements in securities cases to Rule 16's good cause standard. *See, e.g.*, *380544 Can., Inc. v. Aspen Tech., Inc.*, 2011 WL 4089876, at *2–4 (S.D.N.Y. Sept. 14, 2011); *Indus. Tech. Ventures, L.P. v. Pleasant T, Rowland Revocable Tr.*, 280 F.R.D. 86, 89–93 (W.D.N.Y. 2012).

The motion for reconsideration is denied with respect to the scienter and Section 10(b) allegations against Soirat, and Plaintiffs will be permitted to file a Third Amended Complaint containing those allegations.  Defendants do not dispute that the allegations are based on information disclosed for the first time in discovery, and that good cause therefore exists for this particular amendment not being proposed earlier.  Defendants base their opposition primarily on two opinions in this District that, in the course of denying proposed amendments, state that permitting a plaintiff to add new scienter allegations against a previously dismissed defendant based on information obtained in discovery would effect an "end run around" the PSLRA's "stringent pleading requirements and mandatory discovery stays for securities fraud class actions filed in federal court."  *In re Petrobras Sec. Litig.*, 2016 WL 3144395, at *3 (S.D.N.Y. May 5, 2016) (quoting *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 122 (2d Cir. 2003)); *see also In re Bisys Sec. Litig.*, 496 F. Supp. 2d 384, 3887 (S.D.N.Y. 2007) ("In addition to the prejudice to PwC, to reinstate the claims against PwC under these circumstances would defeat one of the central aims of the [PSLRA] . . . to 'filter out strike suits' and reduce the litigation burden for defendants." (quoting *Spielman*, 332 F.3d at 122)).

This Court does not find that the cases cited by Defendants require a different conclusion here.  "There is not a categorical bar on amending PSLRA complaints." *Lickteig v. Cerberus Cap. Mgmt., L.P.*, 2020 WL 7629876, at *6 (S.D.N.Y. Dec. 22, 2020); *see In re Pfizer Inc. Sec. Litig.*, 2012 WL 983548, at *2–3 (S.D.N.Y. Mar. 22, 2012) (granting leave to amend PSLRA complaint based upon information obtained during discovery, while noting that "[c]ourts routinely grant leave to amend when a plaintiff seeks to refine the complaint to reflect evidence obtained during discovery"); *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007) ("If a private securities case proceeds past the pleadings stage against a corporation and discovery

13

reveals individual culpability, a plaintiff may seek permission to amend the complaint to assert claims against individual defendants."); *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 335 F.R.D. 54, 75–76 (M.D. Pa. 2020) ("[T]he PSLRA discovery stay, explicitly directed at limiting the availability of discovery prior to a court sustaining the sufficiency of a complaint, does not bar the use of subsequently discovered evidence in support of a motion for leave to amend."). In each of *Bisys* and *Petrobras*, the court's orders were supportable on conventional grounds of undue delay and prejudice. In *Bisys*, the plaintiffs sought to bring back into a case a defendant who had been dismissed eighteen months earlier with prejudice, had not had the opportunity to participate in discovery, and against whom there was no smoking gun. 496 F. Supp.2d at 386. In *Petrobras*, the motion to amend—which sought to add a claim that would create a new basis for calculation of damages and include a new set of plaintiff class members—was not only made after the close of fact discovery, but was also made within months of a scheduled trial that the court had previously advised would not be delayed. 2016 WL 3144395, at *1–2. Unlike both *Bisys* and *Petrobas*, fact discovery in this case has not already closed; at the consent of both parties, fact discovery is not scheduled to close for several months. *Cf. In re Petrobas*, 2016 WL 3144395, at *1–2 ("[I]t would be unfair not to give PwC a meaningful opportunity to take fact discovery and expert discovery beyond supplemental reports on a § 10(b) claim. Fact discovery [has] closed in this case."); *In re Bisys*, 496 F. Supp. 2d at 387 ("It would wholly defeat this policy [of the PSLRA to filter out strike suits and reduce the litigation burden for defendants] to allow plaintiffs who failed as to a given defendant to sustain their pleading burden at the outset of the case to wait until all discovery in the rest of the case was completed and then add that defendant back into the case."). Thus, permitting amendment here would not cause undue delay by necessitating an extension of deadlines, nor would it cause undue prejudice by altering the

14

universe of allegations without granting Defendants the opportunity to participate in discovery with full knowledge of the claims against them.

Further, permitting amendment in this case would not contravene the objectives of federal securities laws. Although an objective of the federal securities laws, as amended by the PSLRA, is to "filter out strike suits," *Spielman*, 332 F.3d at 122, the statute is not intended to achieve that objective "at all costs," *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987). It is at least equally objectives of the securities laws to "to insure honest securities markets and thereby promote investor confidence," *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 390 (2014) (quoting *United States v. O'Hagan*, 521 U.S. 642, 658 (1997)), and to protect investors against those who would defraud them, *see Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 201–06 (1976).

"Congress enacted the discovery stay provision of the PSLRA to limit 'abusive discovery to prevent fishing expedition lawsuits.'" *See In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2009 WL 4796169, at *1 (S.D.N.Y. 2009) (Chin, J.) (quoting H.R. Conf. Rep. No. 104-369, at 37 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 736)). The PSLRA discharged that function in this case. Discovery was delayed for several months until Plaintiffs' SAC was tested and was found to state a claim for relief. But it was not the objective of the PSLRA or the federal securities laws writ large to provide immunity to a defendant sued within the statute of limitations for claims based on later-discovered evidence. Before discovery began, Plaintiffs would have been permitted to seek to amend their complaint to add allegations based on information obtained from independent sources, including from other lawsuits. *See Lickteig*, 2020 WL 7629876, at *6. There is no reason, in logic or in law, why if after discovery began Plaintiffs discovered a "smoking gun" through that discovery, they should

15

be categorically barred from seeking an amendment based on that smoking gun. The protection that Defendants seek from the misuse of discovery to add belated and poorly-founded charges against previously dismissed defendants lies with Federal Rule of Civil Procedure 26, s*ee Oppenheimer Fund, Inc. v. Saunders*, 437 U.S. 340, 352 n.17 (1978) ("In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information."); *cf. Sec. & Exch. Comm'n v. Javice*, 2023 WL 4073797, at *7 (S.D.N.Y. June 20, 2023), Rules 15(a) and 16, and the stringent rules for pleading fraud under the federal securities laws, *see* Fed. R. Civ. P. Rule 9(b). It does not lie in a categorical rule that would require the Court and the parties to blind themselves to information obtained in discovery, no matter how incriminating that information might be.

Defendants have not demonstrated that they would be prejudiced by the addition of the Section 10(b) claims against Soirat here, or that Plaintiffs are guilty of undue delay. Soirat is already a defendant in this case. The Court sustained control-person liability claims against him. Dkt. No. 149 at 129–31. He has participated in discovery. The claims which Plaintiffs seek to allege against him have already been leveled against Rio Tinto, and thereby against Soirat in his control-person position, *see In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 660 (S.D.N.Y. 2007) (Lynch, J.), and are at the heart of this lawsuit—whether Rio Tinto belatedly made disclosures about the financial impact of the delays at Oyu Tolgoi. The Court assumes, and has not been advised otherwise, that the addition of these claims against Soirat will not add appreciably to document discovery. Soirat has not yet been deposed. There thus should be no need to reopen deposition discovery.[6] In short, Defendants have not shown that the addition of

---

[6] Moreover, to establish their case of control-person liability, Plaintiffs will have to show "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled

16

the new allegations against Soirat will in any way delay the completion of discovery in this case, the date by which class certification can be determined, or when the case can proceed to trial.

## CONCLUSION

The motion for reconsideration is GRANTED IN PART and DENIED IN PART. Plaintiffs are directed to file the amended complaint in accordance with this Memorandum and Order on or before February 28, 2024.

The Clerk of Court is respectfully directed to close Dkt. No. 320.

SO ORDERED.

Dated: February 21, 2024
New York, New York

LEWIS J. LIMAN
United States District Judge

---

person's fraud." Dkt. No. 149 at 129 (quoting *Kraft v. Third Coast Mistream*, 2021 WL 860987, at *26 (S.D.N.Y. Mar. 8, 2021)). Thus, prior to the addition of the Section 10(b) claims, Soirat's culpability for Rio Tinto's alleged Section 10(b) violations was a relevant issue in the case.