**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(202) 538-8122**

WRITER'S EMAIL ADDRESS
**sarahconcannon@quinnemanuel.com**

*The motion is granted. The presumption of public access is lower for filings submitted in connection with the disqualification motion than for filings submitted in connection with dispositive motions.  See Brown v. Maxwell, 929 F.3d 41, 50 (2d Cir. 2019).   Defendants have shown that the targeted redactions proposed are justified to protect confidential and commercially sensitive information.*

*Date: 3/20/25*

SO ORDERED.

LEWIS J. LIMAN
United States District Judge

March 19, 2025

<u>V</u>IA **ECF**

Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007

Re:    *In re Turquoise Hill Resources Ltd. Sec. Litig.*, No. 1:20-cv-08585-LJL

Dear Judge Liman:

Pursuant to Your Honor's Individual Practices § 2(H)(ii) and § 4(b) of Attachment B thereto, and to Your Honor's March 5, 2025 Sealing Order (ECF No. 428, the "Order"), we move on behalf of Rio Tinto plc, Rio Tinto Limited, Jean-Sébastien Jacques, and Arnaud Soirat (collectively, "Defendants") to redact Personally Identifiable Information ("PII") of non-parties and confidential commercially sensitive information filed in connection with Defendants' Motion to Disqualify Plaintiffs' Expert John C. Barber (ECF No. 354, the "Motion) and Lead Plaintiff's Opposition thereto (ECF No. 363, the "Opposition").   Specifically, Defendants seek minimal redactions to **Exhibits 4** and **5** to the Declaration of Sarah Heaton Concannon in Support of Defendants' Motion (ECF No. 349, "Concannon Declaration") and to **Exhibits 23** and **25** to the Declaration of Salvatore Graziano in Support of Plaintiff's Opposition (ECF No. 364, the "Graziano Declaration").

*First*, Defendants seek approval of redactions to **Exhibits 4** and **5** to the Concannon Declaration to protect confidential and competitively sensitive information, as well as minimal PII.[1]   These exhibits are 2010 and 2012 agreements between AMEC and Oyu Tolgoi LLC ("OT LLC").   Each is over 90 pages in length and contains commercially sensitive terms and pricing information that is not relevant to the merits of Defendants' motion, as well as the PII of third parties.   Defendants' proposed redactions are narrowly tailored and would not impede public access to information including "the confidentiality provisions and information necessary to

---

[1]   Defendants' proposed redactions to Concannon Declaration **Exhibits 4** and **5** are attached hereto as, respectively: **Exhibits A** and **C** (sealed and highlighted) and **B** and **D** (redacted).

**quinn emanuel urquhart & sullivan, llp**

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON |

understanding them, including the parties to the agreement, relevant definitions, and the scope of the engagement." Order at 2-3; *see Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 311 F. Supp. 3d 653, 666 (S.D.N.Y. 2018) (permitting proposed redactions where a "member of the public reviewing the parties' redacted submissions . . . would have information sufficient to understand the parties' arguments and the Court's adjudication"); ECF No. 297 at 2 (permitting PII redactions); ECF No. 314 at 6-7 (same).

    *Second*, Defendants seek minimal redactions to **Exhibits 23** and **25** to the Graziano Declaration, which contain confidential communications in the course of discovery in this action.[2] In **Exhibit 25**, Defendants solely seek redaction of PII of third parties and of confidential and sensitive information regarding regulatory matters that is not relevant to the merits of Defendants' Motion and in no way impacts the public's ability to "understand the parties' arguments and the Court's adjudication." *Dependable Sales*, 311 F. Supp. 3d at 666 (S.D.N.Y. 2018).  In **Exhibit 23**, Defendants solely seek redaction of limited PII.[3]  *See* ECF No. 297 at 2; ECF No. 314 at 6-7.

***

    For these documents, the confidentiality interest and potential competitive harm that would be posed by disclosure of the information which Defendants seek to redact outweighs and public need. *See News Corp. v. CB Neptune Holdings, LLC*, 2021 WL 3409663, at *2 (S.D.N.Y. Aug. 4, 2021) ("[D]isclosure of . . . competitively sensitive financial information provides no specific benefit to the public, including competitors. The competitive disadvantages … if such information were disclosed outweighs the general public interest in disclosure.").  Further, because Defendants did not seek to seal or redact any portions of their Motion or of the Opposition that cite these exhibits, access to these underlying documents is not critical to understanding the parties' dispute. *See Tyson Foods, Inc. v. Keystone Foods Holdings, Ltd.*, 2020 WL 5819864, at *2 (S.D.N.Y. Sept. 30, 2020); *Dependable Sales*, 311 F. Supp. 3d at 666 (S.D.N.Y. 2018).

    Defendants respectfully request that the Court grant Defendants' motion to redact sensitive commercial information and PII from **Exhibits 4** and **5** to the Concannon Declaration and **Exhibits 23** and **25** to the Graziano Declaration.

Respectfully submitted,

Sarah Heaton Concannon

cc:  All counsel of record via ECF

---

    [2]  Defendants' proposed redactions to Graziano Declaration **Exhibit 25** are attached hereto as Exhibits E (sealed and highlighted) and F (redacted).
    [3]  Defendants' proposed redactions to Graziano Declaration **Exhibit 23** are attached hereto as Exhibits G (sealed and highlighted) and H (redacted).

# EXHIBIT A
# FILED UNDER SEAL

# EXHIBIT B

# EXHIBIT 4





**Contract for Services**

**(and Associated Goods)**

**Underground Feasibility Study**

**Contract No. UG_007272**

## KEY TERMS

| Company | Oyu Tolgoi LLC | |
|---|---|---|
| | Registration No.: 2657457 | |
| | Address: | Level 12, Monnis Tower<br>Chinggis Avenue -15, |
| | | 1st Khoroo Sukhbaatar District<br>Ulaanbaatar, Mongolia, 210648. |
| | Phone: | +976 11 33 1880 |
| | Fax: | +976 11 33 1980 |
| **Service Provider** | **AMEC Americas Limited** | |
| | Registration No.: 454550-8 | |
| | Address: | Suite 400 |
| | | 111 Dunsmuir Street |
| | | Vancouver, British Columbia |
| | | V6G 5W3 |
| | | Canada |
| | Phone: | +1 604.664.4315 |
| | Fax: | +1 604.669.9615 |
| **Company Representative** | Name: | |
| | Position: | Chief Financial Officer |
| | Address: | Level 12, Monnis Tower<br>Chinggis Avenue -15, |
| | | 1st Khoroo Sukhbaatar District<br>Ulaanbaatar, Mongolia, 210648. |
| | Phone: | +976 11 33 1880 |
| | Fax: | +976 11 33 1980 |
| | E-mail: | @ot.mn |
| **Service Provider** | Name: | |
| **Representative** | Position: | VP North America Operations, Mining & Metals |



|  | Address: | Suite 400 |
|--|----------|-----------|
|  |  | 111 Dunsmuir Street |
|  |  | Vancouver, British Columbia |
|  |  | V6G 5W3 |
|  |  | Canada |
|  | Phone: | +1 604.664.4778 |
|  | Fax: | +1 604.669.9516 |
|  | E-mail: | ████@amec.com |

| **Services** | As set out in Schedule A. |
|---|---|
| **Associated Goods (if applicable, and including specifications)** | As set out in Schedule B. |
| **Prices** | As set out in Schedule C. |
| **Commencement Date** | 17 June 2010 |
| **Services Timetable** | As set out in Schedule D. |
| **Term** | Valid for two (2) years from the Commencement Date unless otherwise terminated, completed or extended pursuant to the terms and provisions of this Contract. |
| **Defects Liability Period** | As set out in Schedule F – Special Conditions Item 6 |
| **Site** | Oyu Tolgoi Project Site, Omnogovi Aimag, Mongolia. |
| **Delivery Point** | Oyu Tolgoi Project Site, Omnogovi Aimag, Mongolia. |
| **Site Specific Terms** | As set out in Schedule E. |
| **Special Conditions** | As set out in Schedule F. |

*ORIGINAL*

**Date of the Contract**
*(ie. the date the last Party signed the Contract)*

25 / OCT / 2010


ORIGINAL

## EXECUTION PAGE

The Parties agree to the terms and conditions set out in the Contract, comprising:

1. Key Terms set out above

2. Schedule A : Services

3. Schedule B : Associated Goods (if applicable, and including specifications)

4. Schedule C : Prices

5. Schedule D : Services Timetable

6. Schedule E : Site Specific Terms

7. Schedule F : Special Conditions

9. Attachment : General Conditions

Executed by the Parties as an agreement.

SIGNED by the Company's duly authorised
representative in the presence of:

........................................

Signature of witness
CHAD BLEWITT

Name of witness (block letters)
1-1 DREAMLAND, ZAISAN, ULAANBAATAR

Address of witness

Signature
ருற் MARSHALL

Name of signatory (block letters)
PRESIDENT

Title/Position (block letters)
Date: 5/14/10

SIGNED by the Service Provider's duly authorised
representative in the presence of:

........................................

Signature of witness
MICHAEL RADCLIFFE

Name of witness (block letters)
OPERATIONS MANAGER - M+M

Address of witness
111 DUNSMUIR ST. VANCOUVER, B.C., CANADA

Signature
ROBERT C. STANLAKE

Name of signatory (block letters)
PRESIDENT, MINING & METALS

Title/Position (block letters)
Date: 05 OCTOBER 2010



## SCHEDULE A

### SERVICES

## 1.    SCOPE OF FACILITIES

1.1    This Scope of Facilities can generally be described as the Oyu Tolgoi Lift 1 Block Cave Mine.

## 2.    ELEMENTS OF WORK BREAKDOWN STRUCTURE

The estimated work breakdown structure (*WBS*) elements are included below.

2.1    **9.06    Ore handling and shafts**

   9.06.01  Reviews

   9.06.02  Crushers

   9.06.03  Conveyors and bins

   9.06.04  Surface Conveyors

   9.06.07  Shaft #3

   9.06.08  Shaft #4

   9.06.09  "Pre Production" system

   9.06.10  Estimate and report – Ore handling and Shafts

2.2    **9.07    Infrastructure and Services**

   9.07.01  Reviews

   9.07.02  Materials logistics

   9.07.03  Personnel logistics

   9.07.04  Shaft #2 station

   9.07.05  UG Lunchroom

   9.07.06  Workshops

   9.07.07  Shotcrete / concrete

   9.07.08  Explosives

   9.07.09  Fuel and lube

   9.07.10  Satellite Storage

   9.07.11  Pumping and mud removal

   9.07.12  Sample prep and assay lab

   9.07.13  Surface Buildings and other

   9.07.15  Compressed Air system

   9.07.16  Power system

   9.07.17  Communications and Instrumentation system

   9.07.18  "Pre Production" system

9.07.19 Estimate and report – Infrastructure and services

**2.3    9.08    Resource Management**

9.08.01 Reviews

9.08.02 Equipment plan

9.08.03 Personnel plan

9.08.04 Training Plan

9.08.05 Health, Safety and Environmental plan

9.08.06 Engineering plan

9.08.07 Construction plan (including closure plan, as per discussions with the Company)

9.08.08 Estimate and Report – Resource Management

**2.4    9.09    Controls**

9.09.01 Reviews

9.09.02 Project controls plan

9.09.03 Risk plan

9.09.04 Communications plan

9.09.05 Procurement plan

9.09.06 Contracts

9.09.07 Quality plan

9.09.08 Commissioning plan

9.09.09 Estimate and Report – Controls

**2.5    9.10    Final Estimate**

9.12.01 Estimate database and report format

9.12.02 Basis of Estimate Document

9.12.03 Scope book / design criteria

9.12.04 CAPEX AND OPEX

9.12.05 Estimate Personnel

9.12.06 Equipment lists, Material lists

9.12.07 Master P6 schedule Primavera

9.12.08 Value engineering

**2.6    9.13    Final Report**

9.13.02 Final risk assessment

9.13.03 Drawing list

9.13.04 Feasibility Study Report

9.13.07 Appendices

9.13.08 Presentation TEG / Stakeholders

**2.7   9.20   Management & Controls**

   9.20.01  Project Management

   9.20.02  Meetings and Discipline Coordination

   9.20.03  Project Controls & Reporting

   9.20.04  Project Scheduling

   9.20.05  Document Control

   9.20.06  Procurement Assistance

   9.20.07  Administration

   9.20.08  Project Set-Up

**2.8   9.21   Mine Development**

   9.21.01  Excavation and Development Design and Planning

   9.21.02  Estimate and Report – Mine Development

## 3.   SCOPE OF SERVICES

**3.1   Milestone #1, Definitive Estimate**

   (a)   Complete Project set-up and initiation activities including site visits, kick-off meetings and other necessary tasks as described in Section 6.1.

   (a)   Review the existing PFS cost estimates and schedules for "Red Flags/Fatal Flaws".

   (b)   Integrate recent mine plan changes (provided by the Company) into the mine schedule and cost estimate.

   (c)   Using updated pricing for equipment, materials, consumables, labour, logistics, etc. Update the Capex and Opex cost models.

   (d)   Develop new cash flow model based on updated schedule and design provided by the Company.

   (e)   Update Company-supplied Primavera P6 project schedule.

   (f)   Prepare a report detailing the updated prefeasibility-level cost estimate and cash flows, and comparing the updated values with the values from the original prefeasibility study.

**3.2   Milestone #2, Prefeasibility Re-Baseline**

   (a)   Incorporate the results of significant design changes, trade-off studies and other design and schedule changes performed by the Company into the work.

   (b)   Expand the existing mine ore handling simulation to extend from Extraction Level grizzlies, through the ore passes, the truck haulage levels and the crusher dumps through to various stockpile discharge configurations. This will include changes in conveyor, ore bins and shaft loading configurations, and will likely include modifying shaft operations delay and loading factors. This simulation will be required to support trade-off studies and engineering in the Milestone #2 work and the subsequent Milestone #3 feasibility study.

   (c)   Develop new cost models in both Xeras (mine operating costs) and Timberline (capital and construction costs). Utilise these models for the re-baseline estimate and cash-flow

ORIGINAL

models. This work was originally planned for Milestone #3, but will be moved to Milestone #2 and only updated in Milestone #3.

(d) Develop and review options to reduce hoist height. These include:

    (i)    multiple crushed ore bins at the shaft load-outs, equipped to feed multiple shaft loading stations;

    (ii)    optimised ore bin heights and capacities;

    (iii)    examination of different types of conveyor transfer designs;

    (iv)    review of conveyor alignment for potential elevation savings.

(e) Review opportunities to improve crusher feed dynamics by including surge capacity before the crusher and scalping grizzlies at the crusher feed.

(f) Review and optimise truck haulage study, addressing:

    (i)    different truck capacities and styles (rear vs side tip, etc) and electric truck option;

    (ii)    haulage level layout, including crusher dumps and number/capacity of ore passes.

(g) Perform a logistics simulation and study. This work was originally planned for Milestone #3, but will be moved to Milestone #2 and only updated in Milestone #3. The study will include:

    (i)    moving personnel, materials, supplies, etc from surface to the underground via the shaft and hoist system and ancillary facilities;

    (ii)    development muck, waste and material from underground to surface;

    (iii)    various phases of mine life including development, construction, production ramp up and steady state production;

    (iv)    shaft station design review;

    (v)    concrete/shotcrete delivery system review;

    (vi)    fuel delivery review.

(h) Examine the Capital and Operating costs of sinking #3 & #4 shaft to a diameter of 11.0 metres but equipping them to the current standards. (Study by RSV)

(i) Update the existing electric power load study.

(j) Update the mine and project schedule.

(k) Update personnel and equipment schedules.

(l) Prepare an addendum to the prefeasibility study report incorporating all scope elements of Milestone #2.

## 3.3 Budget Development

(a) Concurrently with the Milestone #1 Work, the Service Provider will develop a mine development budget for the 2011-2012 year through June. The budget will be based on mine plans and schedules provided by the Company, and operating costs and performance factors provided by contractors Redpath and RUC, and the existing 2010 budget. The scope of the budget includes:



(i)  All lateral development and associated construction. The Company does not anticipate any large mass excavation or major construction projects such as crushers.

(ii)  Budget of shaft and raisebore work will be included, but provided by contractors and Company construction personnel as a package to be included in the budget.

(iii)  Diamond drilling is not in the scope.

(iv)  There will not be Company crews working during this period.

(v)  The Company will provide owner's costs, indirects, overhead and G&A.

(vi)  The Service Provider will have access to Redpath and Fluor cost and productivity data to support the development of the budget.

(vii)  The budget will be developed along the same format as the 2010 budget supplied to the Service Provider.

(viii)  Budget Delivery date is 31 August 2010.

## 3.4    Milestone #3, Feasibility Study

(a)  The Service Provider will undertake the following activities:

(i)  An estimate of both capital and operating costs, estimated capital equipment replacement costs (fixed and mobile), estimated strategic insurance type spares, estimated operating spares for a five year period;

(ii)  A schedule, commencing from the end of feasibility study phase, extending through the implementation phase, which will include design, procurement, delivery, construction, commissioning, ramp up to full production, training of the mine's personnel, handover of the mine to the Company;

(iii)  A complete design criteria for the entire mine;

(iv)  Option studies and evaluations of equipment and systems selection;

(v)  Independent third party design reviews and audits of various system designs and output deliverables (managed and implemented by the Company's team; however, interface and liaison will be required from the Service Provider);

(vi)  A detailed human resource management plan supported with a detailed schedule of all personnel required for the duration of the project, commencing with the start of the implementation phase and extending through to full production and hand over;

(vii)  A risk assessment for the entire feasibility study which will be carried out in accordance with the Oyu Tolgoi risk policy and standard, the output being a risk register for the overall project;

(b)  Documentation supporting the study which will include:

(i)  a decision register of all decisions recorded during the feasibility study;

(ii)  a risk register for the entire project;

(iii)  a detailed narrative report prepared in numerous categorised volumes of the entire feasibility study;

(iv)  a drawing list and preliminary drawings;

(v)  a specification list and specifications;

ORIGINAL

(vi)     a procurement list and all competitively priced major equipment and contracts together with supporting evaluations;

(vii)    a list of Scopes of Work for all major equipment and contracts prepared for the feasibility study, including a number of proposed forms of contracts for various aspects of the work;

(viii)   a mechanical equipment list;

(ix)     a motor list including all significant electrical loads;

(x)      an instrumentation list;

(xi)     a valve list including both manual and automatic valves;

(xii)    systems functional philosophies list and functional philosophies;

(xiii)   various documents such as equipment data sheets, cable schedules, material take off sheets, pipeline schedules and isometrics;

(xiv)    detailed estimate and schedule of construction and mine operation quantities including bulk earthworks, concrete and civil works, structural steel, piping, electrical cables, development drifting and raising, mass excavation, undercut caving and drilled metres, drawbells, ground support material, shotcrete and concrete, ventilation supplies and materials, explosives and accessories, drilling consumables, fuel, cement, etc.;

(xv)     detailed list of direct and indirect construction and mine operation man hours by trade and discipline.

## 4.     DELIVERABLES

Deliverables for each study milestone are listed in this Section 4. Milestone #1.











ORIGINAL



ORIGINAL



ORIGINAL



ORIGINAL



ORIGINAL



ORIGINAL



ORIGINAL







ORIGINAL



ORIGINAL





ORIGINAL



ORIGINAL



ORIGINAL



ORIGINAL





ORIGINAL



ORIGINAL



ORIGINAL



ORIGINAL



ORIGINAL



 ORIGINAL

ANNEXURE 1- SCHEDULE A

Consent Form for Use of Non-AMEC Content

In the Company's Project Report





SCHEDULE B

ASSOCIATED GOODS

(INCLUDING SPECIFICATIONS)


Not applicable.

*ORIGINAL*

SCHEDULE C

PRICES







ORIGINAL



ORIGINAL



ORIGINAL



ORIGINAL





ORIGINAL



ORIGINAL

ORIGINAL

ORIGINAL





## SCHEDULE D
## SERVICES TIMETABLE



Revised AMEC
proposal for OT unde







ORIGINAL

ORIGINAL

ORIGINAL

SCHEDULE E

SITE SPECIFIC TERMS



ORIGINAL



ORIGINAL

**SCHEDULE F**

**SPECIAL CONDITIONS**

## 1.    DEFINITIONS

Clause 1.1 of the General Conditions (**Definitions**) is amended by:

(a)    with respect to the definition of "Contract IP" inserting the following words at the end of the definition:

*"For further clarity, such Intellectual Property Rights shall not include existing Intellectual Property that has already been developed by the Service Provider prior to the commencement of Services regardless of whether it will be used in the delivery of such Services."*

(b)    inserting a new definition of "Key Personnel" as:

*"Senior personnel with the following job titles: project manager, manager of mining or deputy study manager."*

(c)    inserting a new definition of "Wilful Misconduct" as:

*"An intentional breach of this Contract or other intentional act, either of which demonstrates reckless disregard for the personal safety of the property of third parties or of the other Party to this Contract."*

## 2.    SERVICE PROVIDER'S REPRESENTATIONS

## 3.    SERVICE PROVIDER'S INVESTIGATIONS



ORIGINAL



ORIGINAL



ORIGINAL



ORIGINAL



ORIGINAL



ORIGINAL



ORIGINAL



ORIGINAL



ORIGINAL



ORIGINAL



## 29.    CONFIDENTIALITY

(a)    Clause 40 of the General Conditions (**Confidentiality**) is amended by deleting all instances of the words "*each End User*".

(b)    Clause 40.5 (b) of the General Conditions (**Indemnity**) is deleted in its entirety and replaced with the words [Not Used].

(c)    Clause 40.7 of the General Conditions (**Return of Confidential Information**) is amended by inserting the words "*in writing*" after the word "*requested*".

(d)    Clause 40.7 of the General Conditions (**Return of Confidential Information**) is amended by inserting the following at the end of the paragraph:

*"The Service Provider may nonetheless retain its confidential files for legal and archival purposes;*

*(a)    copies of its analyses using the Confidential Information, and*

*(b)    documentation establishing or relating to any Purchase Order entered into between the Parties with respect of the Services.*

*Additionally, notwithstanding the foregoing obligation to permanently delete all data, the Service Provider will not be obligated to delete any Confidential Information that is in a computer backup system in accordance with its archival, security and/or disaster recovery procedures for the period that such Confidential Information is normally backed up pursuant to such procedures. Any such backup electronic copies of the Confidential Information shall continue to be subject to the terms of this Contract for the applicable period specified in Clause 40.8."*

(e)    Clause 40.8 of the General Conditions (**Survival of Clause**) is amended by replacing the words "*survive the termination of the Contract*" with the words "*be effective during the*

ORIGINAL



ORIGINAL



ORIGINAL



## 42. GOVERNING LAW

Clause 57 of the General Conditions (**Governing law**) is amended by replacing the words "*laws of Mongolia*" with the words "*laws of Canada*".



**ATTACHMENT**

**GENERAL CONDITIONS FOR SERVICES (AND ASSOCIATED GOODS)**

General Conditions
for Services _Laws of

AMEC
reviewed

Version:
May 2010
NOT June 2010

## Oyu Tolgoi
## General Conditions for Services (and Associated Goods)

## TABLE OF CONTENTS

1. Definitions and Interpretation

   1.1. Definitions
   1.2. Interpretation
   1.3. Joint Venture

2. Evidence of Contract and precedence of documents

   2.1. Contract
   2.2. Precedence of Contract documents
   2.3. Entire agreement
   2.4. Amendment to be in writing

3. Service Provider's representations

4. Service Provider's investigations

   4.1. Investigations regarding Contract
   4.2. No representation by Company
   4.3. Service Provider satisfied with accuracy
   4.4. No relief
   4.5. Company not liable

5. Performance by Service Provider

   5.1. Performance of Services
   5.2. Ordering

6. Variations

   6.1. Variations
   6.2. Cost of Variations
   6.3. Variation procedure

7. Service Provider's warranties

   7.1. Service Provider's warranties
   7.2. Copies of trade warranties

8. Defects liability and correction of deficient Services

   8.1. Correction of deficient Services
   8.2. Warranty
   8.3. Commencement of Defects Liability Period
   8.4. Rectification of defects
   8.5. Service Provider failure to rectify

9. Services Timetable

   9.1. Adherence to Services Timetable
   9.2. Amendments to Services Timetable

10. Term

11. Representatives

   11.1. Performance
   11.2. Company Representative
   11.3. Service Provider Representative

12. Delivery, title and risk

   12.1. Delivery
   12.2. Title
   12.3. Risk

13. Contract Price

   13.1. Contract Price
   13.2. Contract Price to be inclusive

14. Taxes

   14.1. Taxes (including Indirect Transactions Taxes)
   14.2. Withholding Taxes
   14.3. Customs and Excise Duties
   14.4. Survival of Clause

15. Payments to Service Provider

   15.1. Method of payment
   15.2. Invoices
   15.3. Payment of Invoices
   15.4. Disputed Invoices
   15.5. Errors or exceptions in invoicing

16. Deduction from payments

   16.1. Deductions
   16.2. Deductions and withholdings required by law
   16.3. Notification of withholding or deductions
   16.4. Survival of Clause

17. Alternative Services

   17.1. Alternative Services
   17.2. Service Provider responsible for incremental costs

18. Service Provider's information, accounts and records

   18.1. Provision of information
   18.2. Service Provider to maintain accounts and records
   18.3. Service Provider to provide access

## 19. Right to audit by Company

19.1.   Right of audit of Service Provider performance
19.2.   Action by Service Provider

## 20. Performance Security

20.1.   Security
20.2.   Additional Security
20.3.   Stamp duty and other Taxes
20.4.   No payment prior to lodgement of Security
20.5.   Release Date
20.6.   Recourse to Security
20.7.   Return of Security

## 21. Preservation of existing third party Services arrangements

## 22. No minimum purchase or exclusivity

22.1.   No minimum purchase
22.2.   No exclusivity

## 23. Service Provider Personnel, Facilities and Equipment

23.1.   Service Provider Personnel
23.2.   Engagement of Personnel
23.3.   Service Provider Personnel information
23.4.   Company may object to Personnel
23.5.   Service Provider responsibilities
23.6.   Company Facilities
23.7.   Improper or defective items

## 24. Packing, dispatch and transport

24.1.   Service Provider responsible
24.2.   Where Company to arrange transport
24.3.   Preparation for transport
24.4.   Notification of dispatch dates

## 25. Inspection

25.1.   Inspection
25.2.   Access
25.3.   Cost of inspections

## 26. Health, safety and environment

26.1.   Application of Clause
26.2.   Service Provider acknowledgement
26.3.   Compliance with health, safety and environmental laws, policies and standards
26.4.   Health, Safety and Environmental Management Plan
26.5.   Induction Courses
26.6.   Service Provider to remain liable
26.7.   Removal from Site

## 27. Quality control

27.1.   Quality control systems and procedures

## 28. Cleaning of Site

## 29. Access to Site

29.1.   Access
29.2.   Service Provider obligations
29.3.   Delayed or suspended access
29.4.   Right to deny access
29.5.   No exclusive possession

## 30. Compliance with Company policies

## 31. Laws

31.1.   Compliance with laws
31.2.   Consequences of breach

## 32. Co-operation with third parties

32.1.   No interference
32.2.   No compensation
32.3.   Amendment to Services Timetable

## 33. Force Majeure

33.1.   Notice of Force Majeure
33.2.   Force Majeure notice
33.3.   Obligation to remedy and mitigate
33.4.   No compensation

## 34. Insurances

34.1.   Service Provider Insurances
34.2.   General and Product Liability Insurance
34.3.   Workers' Compensation, Employer's Liability Health and Social Insurance
34.4.   Service Provider's Plant and Equipment
34.5.   Goods in transit
34.6.   Motor Vehicle/Automobile Third Party Liability Insurance
34.7.   Professional Indemnity Insurance
34.8.   Marine Insurance
34.9.   Aviation insurance
34.10.  Insurance terms
34.11.  Notification under Service Provider's policy
34.12.  Sub-contractors' insurance
34.13.  Insurance claims and payment of insurance excess
34.14.  Survival of Clause

## 35. Indemnities

35.1.   Acknowledgement
35.2.   Indemnity
35.3.   Exclusions
35.4.   Indemnity held for benefit of Company, End User and Oyu Tolgoi Personnel
35.5.   Indemnity continuing
35.6.   No requirement for expense before enforcing

indemnity right

## 36. No fault termination

36.1. Termination Notice
36.2. Obligations upon receipt of Termination Notice
36.3. Obligations upon termination
36.4. Service Provider compensation

## 37. Service Provider Default and Insolvency

37.1. Service Provider Default Notice
37.2. Service Provider Default Notice requirements
37.3. Obligations upon termination
37.4. No prejudice
37.5. Service Provider insolvency or bankruptcy

## 38. Default by Company

38.1. Company Default
38.2. Company Default Notice
38.3. Company Default Notice requirements
38.4. Costs recoverable by Service Provider
38.5. Company access to Service Provider records

## 39. Dispute Resolution

39.1. Dispute
39.2. Dispute Representatives to seek resolution
39.3. Performance of obligations during Dispute

## 40. Confidentiality

40.1. Obligation of confidentiality
40.2. Exceptions
40.3. Breach of consent
40.4. Service Provider acknowledgment
40.5. Indemnity
40.6. Additional obligations
40.7. Return of Confidential Information
40.8. Survival of Clause

## 41. Public announcements

## 42. Intellectual Property Rights in Services

42.1. Service Provider IP
42.2. Contract IP
42.3. Sub-licence of Service Provider IP
42.4. Oyu Tolgoi IP
42.5. Service Provider warranty
42.6. General Service Provider obligations
42.7. Survival of Clause

## 43. Third party Intellectual Property Rights

43.1. Third party Intellectual Property Rights
43.2. Indemnity
43.3. Procurement of Intellectual Property Rights
43.4. Procedure where Intellectual Property Rights cannot be procured

43.5. Moral rights

## 44. Notices

44.1. Form of Notices
44.2. Notices deemed given

## 45. Conflict of interest

45.1. Warranty
45.2. Conflicts of interest
45.3. Indemnity

## 46. Business Standards

46.1. Establishment of procedures
46.2. Improper advantage or benefit to Official
46.3. Notification regarding change of interests
46.4. Clause to apply to Sub-contractors
46.5. Notification of failure to comply with Clause

## 47. Illegal Information Brokering

47.1. Prohibition
47.2. Notification

## 48. Oyu Tolgoi Business Practices and Standards

## 49. Support of local labour and Sub-contractors

49.1. Support of local labour
49.2. Support of local Sub-contractors

## 50. Costs

50.1. Each Party to bear its own costs
50.2. Stamp duty

## 51. Status of Service Provider

51.1. Independent contractor
51.2. Partnership and joint venture suppliers

## 52. Assignment and sub-contracting

52.1. Company consent required
52.2. Obligations survive assignment or sub-contract
52.3. Status of Sub-contractor

## 53. Privacy and data protection

53.1. Personal Information
53.2. Warranty
53.3. Data protection
53.4. Individual complaints
53.5. Service Provider indemnity
53.6. Survival of Clause

## 54. Waiver

**ORIGINAL**

55.   Further assurances

56.   Severability

   56.1.   Severability
   56.2.   Negotiation in good faith

57.   Governing law

58.   Counterparts


ORIGINAL

## 1. Definitions and Interpretation

### 1.1 Definitions

In these General Conditions and this Contract the following terms have the meanings set out below:

*Affiliate* means any entity, unincorporated joint venture or body corporate that is related to Oyu Tolgoi Companies by owning shares, by common ownership, or by other means of control.

*Alternative Services* is defined in Clause 17.1.

*Associated Goods* means the goods (if any) identified in Schedule B (Associated Goods) that are to be supplied by the Service Provider.

*Business Day* means a day on which banks are open for business in the place in respect of which an obligation is to be performed or, in respect of Clause 44, the place to which a Notice is sent.

*Cancellation Date* is defined in Clause 37.2(b)(iii).

*Claim* means any action, suit, proceeding or demand of any kind (including by, or against, any or all of the Company, an End User or their respective personnel by Personnel of the Service Provider or any third party).

*Commencement Date* means the date specified in the Key Terms of this Contract.

*Company* is defined in the Key Terms.

*Company Competencies* is defined in Clause 26.5(b).

*Company Default* is defined in Clause 38.1.

*Company Default Notice* is defined in Clause 38.2.

*Company Induction Courses* is defined in Clause 26.5(a).

*Company Representative* is, initially, as defined in the Key Terms, and includes:
a) such other person as the Company may, in writing, substitute for that representative; or
b) any person authorised by that representative to perform any of that representative's powers, duties, discretions or authorities.

*Company's Personal Information* means the Personal Information that the Company transfers to the Service Provider from time to time in connection with the Contract.

*Confidential Information* means the Contract and any information (in whatever form) or Documentation of a confidential nature (or which the Service Provider or its Personnel ought reasonably to know to be confidential) which relates to the business, affairs or activities of the Company, an End User or members of the Oyu Tolgoi Companies (including in relation to the Services) and which:
a) is disclosed to the Service Provider or its Personnel by, or on behalf of, the Company;
b) is generated by the Service Provider or its Personnel in performing the Services; or

c) otherwise comes to the knowledge of the Service Provider or its Personnel.

*Contract* is defined in Clause 2.1.

*Contract IP* means all Intellectual Property Rights (present or future) created, discovered or coming into existence as a result of, for the purpose of, or in connection with, the provision of the Services or the Contract (including all Intellectual Property Rights in anything developed by the Service Provider in providing the Services and any Intellectual Property Rights in the Documentation provided by the Company to the Service Provider).

*Contract Price* is defined in Clause 13.1.

*Customs Duties* means any tax or tariff imposed, claimed, levied, assessed by, or payable to any Government Agency in relation to the import or export of Associated Goods.

*Deducted Amount* is defined in Clause 16.2(a).

*Defects Liability Period* is defined in the Key Terms of this Contract.

*Delivery Point* is defined in Key Terms of this Contract.

*Dispute* is defined in Clause 39.1.

*Dispute Notice* is defined in Clause 39.1.

*Dispute Representative* is defined in Clause 39.2(a).

*Documentation* includes plans, designs, drawings, calculations, engineering information, data, specifications, sketches, notes, samples, reports, maps, accounts, operating manuals, training materials and any other material specified in this Contract (and whether embodied in tangible or electronic form).

*End User* means an entity identified in this Contract (or notified to the Service Provider by the Company) to whom the Company provides services comprising, or derived from, in whole or in part, the Services.

*Excise Duties* means any tax imposed, claimed, levied, assessed by, or payable to any Government Agency in relation to the production or manufacture of Associated Goods.

*Facilities* means any accommodation, sustenance, transportation, medical or toilet facilities.

*Force Majeure* means an event or cause which is beyond the control of the Party claiming Force Majeure, not able to be overcome by the exercise of reasonable care, proper precautions and the consideration of reasonable alternatives with the intention of avoiding the effects of the Force Majeure by that Party, and which could not have been reasonably foreseen, and includes (subject to satisfying the requirements of the foregoing):
a) an act of God (other than adverse weather);
b) cyclones, fire, flood; or
c) acts of war, acts of public enemies, terrorist acts, riots or civil commotions.

*Government Agency* means any government or governmental, semi-governmental,



administrative, municipal, fiscal or judicial body, department, commission, authority, tribunal, agency or entity.

*Health, Safety and Environment Management Plan(s)* is defined in Clause 26.4(a).
*Health, Safety and Environmental Policies and Standards* are defined in Clause 26.3(a).
*Illegal Information Brokering* means the practice by which certain parties approach contractors, sub-contractors, vendors and other suppliers, and offer confidential information or illicit influence in order to obtain business through corruption of competitive bidding processes.
*Indemnified Parties* is defined in Clause 35.2.
*Indirect Transaction Taxes* mean any relevant value added tax, goods and services tax, sales, use, consumption or similar tax or impost imposed, claimed, levied, assessed by, or payable to any Government Agency, but does not include any related penalty, fine or interest thereon.

*Input Tax Credit* means any entitlement to a credit for, offset against, reduction in or refund of Indirect Transaction Taxes, in relation to any acquisition or the receipt of any Supply.
*Intellectual Property Rights* means all industrial and intellectual property rights whether protectable by statute, at common law or in equity, including all copyright and similar rights which may subsist, or may hereafter subsist, in works or any subject matter, rights in relation to inventions (including all patents and patent applications), trade secrets and know-how, rights in relation to designs (whether or not registrable), rights in relation to registered or unregistered trademarks, circuit layout designs and rights in relation to circuit layouts, but excludes non-assignable moral rights and similar non-assignable personal rights of authors and producers.

*Invoice* means an invoice in an acceptable form acceptable under applicable laws and in a form acceptable to the Company and must contain the following information:
a) the number of the Purchase Order to which the Invoice relates;
b) a brief description of the Services provided in the period covered by the Invoice;
c) any further verification or documentation in relation to the invoice as is reasonably required by the Company; and
d) the amount of Indirect Transaction Taxes payable and any applicable registration numbers of the Service Provider for purposes of Indirect Transaction Taxes, and which would enable the Company to claim a credit or reimbursement for Indirect Transaction Taxes payable under the Invoice under applicable law.

*Joint Venture* means an unincorporated joint venture, if any, on behalf of which the Company is a party to the Contract as agent.
*Joint Venturers* means, in respect of a Joint Venture, the participants in that Joint Venture.
*Key Terms* means the document named "Key Terms" forming part of the Contract, but not including the Schedules to that document.
*Liabilities* means damages, Claims, losses, liabilities, costs and expenses of any kind.
*Materials* is defined in Clause 43.5(a)(i).
*Official* includes:
a) any officer or employee of any Government Agency, or any person acting in an official capacity on behalf of any such Government Agency;
b) any officer, employee or official of a political party;
c) any candidate for political office; or
d) any officer or employee of a public international organisation (for example, the United Nations, IMF or World Bank).

*Oyu Tolgoi Companies* means the Company, Ivanhoe Mines Inc. Ltd a corporation organised and existing pursuant to the laws of Canada, Oyu Tolgoi Netherlands B.V. (Registration No. 34357518) a company organised and existing pursuant to the laws of Netherland, and Ivanhoe Oyu Tolgoi (BVI) Ltd (Registration No. 389391) a corporation organised and existing under the laws of the British Virgin Islands and including:
a) any Affiliate of the Company, Ivanhoe Mines Inc. Ltd, Oyu Tolgoi Netherlands B.V. or Ivanhoe Oyu Tolgoi (BVI) Ltd;
b) any unincorporated Joint Venture in which the Company, Ivanhoe Mines Inc. Ltd, Oyu Tolgoi Netherlands B.V. or Ivanhoe Oyu Tolgoi (BVI) Ltd or any Affiliates which the Company, Ivanhoe Mines Inc. Ltd, Oyu Tolgoi Netherlands B.V. or Ivanhoe Oyu Tolgoi (BVI) Ltd has a participating interest of not less than 50%;
c) any body corporate or unincorporated Joint Venture managed by the Company, Ivanhoe Mines Inc. Ltd, Oyu Tolgoi Netherlands B.V., Ivanhoe Oyu Tolgoi (BVI) Ltd or any Affiliate of the Company, Ivanhoe Mines Inc. Ltd, Oyu Tolgoi Netherlands B.V. or Ivanhoe Oyu Tolgoi (BVI) Ltd; and
d) such other entities as the Parties agree in writing.

*Oyu Tolgoi IP* means the Intellectual Property Rights of the Company or any member of the Oyu Tolgoi Companies (as the case requires) which:
a) are in existence at the date of this Contract; or
b) come into existence after the date of the Contract other than in connection with the Contract.



*Party* means a party to the Contract.
*Personal Information* means tax identification numbers and filing information, bank information, credit history, medical records, health history and similar information of, or pertaining to, individual persons that is subject to protection or otherwise restricted as to use or disclosure under applicable Privacy Laws.

*Personnel* means:
a) in relation to the Service Provider, any of its employees, Sub-contractors (including Sub-contractor's Personnel), agents and representatives involved either directly or indirectly in the performance of the Services;
b) in relation to the Company, an End User or a member of the Oyu Tolgoi LLC, any of its past or present officers, employees, agents (including, for the purposes of Clause 35, the entity entering into this Contract for, and on behalf of, Joint Venturers (if applicable) and that entity's past or present officers, employees, agents or representatives) or representatives; and
c) in relation to a Sub-contractor, any of its employees, agents or representatives involved either directly or indirectly in the performance of the Services.

*Privacy Laws* means any statute, law, rule or regulation (existing or that may come into effect) of a central, national, state, provincial or local Government Agency that regulates the collection, storage, use and security of personal tax, financial, credit, medical or health information by private businesses. This includes, but is not limited to, Law on Individual Secrecy of Mongolia (1995).

*Processing* means collecting, holding, using, transferring, destroying and any other dealing.
*Purchase Order* means an individual purchase order as may be issued by the Company to the Service Provider in respect of the provision of Services or the supply of Associated Goods which shall be subject to the terms of this Contract.
*Release Date* is defined in Clause 20.5.
*Security* is defined in Clause 20.1 and includes any additional or replacement Security provided pursuant to Clause 20.2.
*Site* means the Company's premises identified in the Key Terms.
*Special Conditions* means the special conditions set out in Schedule F (Special Conditions).
*Specifications* mean the specifications for the Services and any modification of those specifications as directed by the Company Representative in accordance with this Contract.
*Service Provider* is defined in the Key Terms.
*Service Provider Default Notice* is defined in Clause 37.1.

*Service Provider Insurances* is defined in Clause 34.1.
*Service Provider IP* means the Service Provider's Intellectual Property Rights which:
a. are in existence at the date of the Contract; or
b. come into existence after the date of the Contract other than in connection with the Contract.

*Service Provider Representative* is defined in the Key Terms.
*Services* means the work identified in Schedule A (Services) to be performed by the Service Provider and includes the supply of any Associated Goods in accordance with the Contract.
*Services Timetable* means the schedule set out in Schedule D (Services Timetable) for the effective monitoring of the progress of the Services which:
a) (unless otherwise agreed between the Parties) is in a time-based format in which critical items and activities relating to the performance of the Services are clearly identified and detailed; and
b) indicates the dates or times for commencement and completion of the various stages or parts of the Services,

and includes any amendments to such Services Timetable in accordance with Clause 9.2.
*Sub-contractor* means any person engaged by the Service Provider in accordance with Clause 52 to perform all or any part of the Supplies on behalf of the Service Provider.
*Supply Chain* means all steps and processes involved in the provision of the Services to the Company, commencing with the sourcing of the Services and Associated Goods (if applicable) and finishing with the use of the Services and Associated Goods by the Company.
*Tax or Taxes* means, unless the contrary intention is expressed, any and all taxes, including, without limitation, Indirect Transaction Taxes, excise, stamp, documentary, customs, import/export, payroll, personal, property, real property, interest equalisation, business, occupation, turnover, income, corporation, capital, profits, gains, gross receipts, or other taxes, fees, withholdings, imposts, levies, duties or other charges of any nature whatsoever or whensoever, together with any penalties, fines or interest thereon, or similar additions thereto, imposed, levied or assessed by any Government Agency or otherwise payable.
*Tax Invoice* means an invoice or other document including, without limit, a credit note or debit note, in a form that is valid under the applicable law of the jurisdiction in which a liability to pay Indirect Transaction Taxes is imposed, claimed, levied or

ORIGINAL

assessed, which must be held by a person for that person to be able to claim Input Tax Credits.
*Tender* means the Service Provider's offer or counter-offer in writing to perform the Services whether described as a "tender" or "proposal" or otherwise.
*Term* is defined in the Key Terms.
*Termination Notice* is defined in Clause 36.1.
*Variation* is defined in Clause 6.1.
*Variation Date* is defined in Clause 6.1.

## 1.2 Interpretation

Headings are for convenience only and do not affect interpretation. The following rules apply unless the context requires otherwise.

a) The singular includes the plural and conversely.
b) Grammatical forms have a corresponding meaning.
c) The meaning of general words is not limited by specific examples introduced by **including** or **for example**.
d) A reference to a person, corporation, trust, partnership, unincorporated body or other entity includes any of them.
e) A reference to a person or a Party includes a reference to that person's or Party's executors, administrators, successors, substitutes (including persons taking by way of novation), assigns (in the case of a person) and permitted assigns (in the case of a Party).
f) A reference to a Clause or Schedule is a reference to a clause of, or schedule to, these General Conditions.
g) A reference to a Schedule is a reference to a schedule to this Contract.
h) A reference to an Act or legislation, or to a provision of an Act or legislation, includes a modification or re-enactment of it, a legislative provision substituted for it, and a regulation or statutory instrument issued under it.
i) A reference to *use* in the context of dealing with Intellectual Property Rights includes using, exploiting, copying, adapting, creating derivate works, developing, modifying, disclosing and communicating.
j) A reference to conduct includes, without limitation, an omission, statement or undertaking, whether or not in writing.
k) Where it is provided that the Service Provider will perform any act or provide any thing at its cost, this means the Service Provider will not be entitled to any additional compensation for such act or thing and the cost will be deemed to be included in the Contract Price.



ORIGINAL



ORIGINAL



ORIGINAL



10. Term

The Contract will commence on the
Commencement Date and will remain in force,
unless terminated earlier in accordance with the
Contract, for the Term.



ORIGINAL







ORIGINAL



ORIGINAL



ORIGINAL

ORIGINAL

ORIGINAL



ORIGINAL



ORIGINAL







## 35. Indemnities

### 35.1 Acknowledgement

The Service Provider acknowledges that if it enters on to the Site, it does so at the Service Provider's own risk. The Service Provider must ensure that its Personnel are also aware that they enter onto the Site at their own risk.

### 35.2 Indemnity

a) Subject to Clause 35.3, the Service Provider will indemnify (and will keep indemnified) the Company, each End User and their respective Personnel (**Indemnified Parties**) from and against all Liabilities that any Indemnified Party suffers, sustains or incurs, arising from any one or more of the following:

   i. the breach by the Service Provider or its Personnel of any of the Service Provider's obligations (including any warranty) under this Contract and/or any Purchase Order;

   ii. any negligent act, omission or wilful misconduct by the Service Provider or its Personnel arising out of the performance of the Contract and/or any Purchase Order; or

   iii. any claim made against the Company or any member of the Oyu Tolgoi Companies by any of the Service Provider's Personnel in respect of relevant legislation concerning income tax, Workers' Compensation, annual leave, long service leave, superannuation or any applicable award, determination or agreement of a competent industrial tribunal.

b) The Company is entitled to recover from the Service Provider an amount due to an End User and/or its Personnel under the indemnity in Clause 35.2(a) on behalf of that End User and/or its Personnel and will hold any amount recovered, and the benefit of the indemnity in Clause 35.2(a) to which an End User and/or its Personnel is entitled, as trustee for and on behalf of that End User and/or its Personnel.

### 35.3 Exclusions

The Service Provider will not be liable under Clause 35.2 to the extent that the liability was caused, or contributed to, by (as the case



requires) the Company's or an End User's negligent acts or omissions or wilful misconduct.

### 35.4 Indemnity held for benefit of Company, End User and Oyu Tolgoi Personnel

Every exemption, limitation, defence, immunity, indemnity or other benefit contained in the Contract or otherwise to which the Company, an End User or a member of the Oyu Tolgoi Companies is entitled will be held by the Company as trustee for the benefit of, and will extend to protect, each of the Company's, each End User's and each Oyu Tolgoi member's Personnel.

### 35.5 Indemnity continuing

Each indemnity in this Contract is a continuing obligation separate and independent from the Service Provider's other obligations and survives termination of the Contract.

### 35.6 No requirement for expense before enforcing indemnity right

It is not necessary for the Company, a member of the Oyu Tolgoi Companies or their respective Personnel to incur expense or make payment before enforcing a right of indemnity conferred by the Contract.









The Service Provider undertakes and agrees:

a) to hold in strict confidence all Confidential Information and not to disclose, permit or cause the Confidential Information to be disclosed to any person other than any of its Personnel who require the Confidential Information for the purposes of providing the Services; and

b) not to make use of the Confidential Information (including duplicating, reproducing, distributing, disseminating or directly or indirectly deriving information from the Confidential Information), except, and solely to the extent necessary, for the performance of the Services,

unless the Service Provider has obtained the prior written consent of the Company to do so (which consent may be withheld by the Company in its discretion, or given on such terms as it sees fit).

## 40.2 Exceptions

Clause 40.1 does not apply to:

a) information after it becomes generally available to the public other than as a result of the breach of this Clause 40 or any other obligations of confidence imposed on the Service Provider; or

b) the disclosure of information in order to comply with any applicable law or legally binding order of any court, Government Agency or recognised stock exchange, provided that prior to such disclosure the Service Provider gives notice to the Company with full particulars of the proposed disclosure.

## 40.3 Breach of consent

The breach of any of the conditions contained in a consent granted pursuant to Clause 40.1 will be deemed to be a breach of the Contract.

## 40.4 Service Provider acknowledgment

The Service Provider acknowledges that this Clause 40 is for the benefit of not only the Company, but also any End User and any member of the Oyu Tolgoi Companies that has any interest in any Confidential Information.

## 40.5 Indemnity

a) Without limiting Clause 35, the Service Provider indemnifies the Company, each End User and each member of the Oyu Tolgoi Companies, and must keep them indemnified, in respect of any Liabilities incurred or sustained by them resulting from a breach of this Clause 40 by the Service Provider or its Personnel.

b) The Company is entitled to recover from the Service Provider an amount due to an End User and/or Oyu Tolgoi Companies member under the indemnity in Clause 40.5(a) on behalf

## 40. Confidentiality

### 40.1 Obligation of confidentiality

of that entity, and will hold any amount recovered, and the benefit of the indemnity in Clause 40.5(a) to which that entity is entitled, as trustee for and on behalf of that entity.

### 40.6 Additional obligations

The obligations in this Clause 40 are in addition to, and do not diminish, the obligations of the Service Provider in respect of secret and confidential information at common law or under any statute or trade or professional custom or use.

### 40.7 Return of Confidential Information

If requested by the Company, whether prior to or after the expiry or earlier termination of the Contract, the Service Provider must promptly deliver to the Company all Confidential Information in the custody, possession or control of the Service Provider or any of its Personnel.

### 40.8 Survival of Clause

This Clause 40 will survive the termination of the Contract.



ORIGINAL



ORIGINAL

ORIGINAL

ORIGINAL



# EXHIBIT C
# FILED UNDER SEAL

# EXHIBIT D

# EXHIBIT 5

**ORIGINAL
DO NOT DESTROY**



Oyu
Tolgoi

Contract No. SL003129
Execution Version: 27 July 2012

**ONSHORE**

**Master Services Agreement**

**Technical Consulting, Procurement and**

**Construction Management Services**

**Contract No. SL003129**

**KEY TERMS**

| Company | OYU TOLGOI LLC | |
|---|---|---|
| | Registration No.: | 2657457 |
| | Address: | Level 12, Monnis Tower |
| | | Chinggis Avenue – 15, |
| | | 1st Khoroo, Sukhbaatar District |
| | | Ulaanbaatar, Mongolia, 14240 |
| | Phone: | +976 1133 1880 |
| | Fax: | +976 1133 1890 |
| **Service Provider** | **AMEC LLC** | |
| | Registration No.: | 5508673 |
| | Address: | Suite 701 |
| | | 7th Floor, Blue Sky Tower |
| | | Peace Avenue 17 |
| | | 1st Khoroo, Sukhbaatar District |
| | | Ulaanbaatar, Mongolia, 14240 |
| | Phone: | +976 7013 1969 / +976 7013 1978 |
| | Fax: | +976 7013 1972 |
| **Company Representative** | Name: | |
| | Position: | Senior Vice President |
| | Address: | Level 12, Monnis Tower |
| | | Chinggis Avenue – 15, |
| | | 1st Khoroo, Sukhbaatar District |
| | | Ulaanbaatar, Mongolia, 14240 |
| | Phone: | +976 1133 1880 |
| | Fax: | +976 1133 1890 |
| | E-mail: | ▮@ot.mn |
| **Service Provider Representative** | Name: | |
| | Position: | Project Director |
| | Address: | 111 Dunsmuir Street, Suite 400 |
| | | Vancouver, British Columbia |
| | | Canada, V6B 5W3 |
| | Phone: | +603 2168 1853 xtn 8538 |
| | Cell: | +6012 262 2284 |
| | E-mail: | ▮@amec.com |

ORIGINAL
DO NOT DESTRO'

Contract No. SL003129
Execution Version: 27 July 2012

| | |
|---|---|
| **Scope of Services** | As set out in Schedule A. |
| | Annexure 1 – Work Order Agreement |
| **Compensation and Invoicing** | As set out in Schedule B. |
| **Services Timetable** | As set out in Schedule C. |
| **Site Specific Terms** | As set out in Schedule D. |
| **General Conditions** | As set out in Schedule E. |
| **Special Conditions** | As set out in Schedule F (if applicable). |
| **Effective Date** | 1 May 2012 |
| **Term** | Sixty (60) months from the Commencement Date unless otherwise terminated or extended pursuant to the terms and provisions of this Contract. |
| **MSA coordination** | As the Service Provider will be providing Services to the Company for its operations in the South Gobi region of Mongolia both within Mongolia and outside of Mongolia, separate Master Service Agreements shall be used. For the provision of Services outside of Mongolia, an offshore contract (the **"Offshore Contract"**) shall be used, and for Services within Mongolia, an onshore contract (the **"Onshore Contract"**) shall be used. |
| | The Offshore Contract and the Onshore Contract, as well as all their respective schedules, attachments, and appendices are intended to be supplementary to each other and operate in a coordinated manner to govern all the Services described in each Work Order Agreement (**"WOA"**). |

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

**EXECUTION PAGE**



**ORIGINAL**
**DO NOT DESTROY**

Contract No. SL003129
Execution Version: 27 July 2012

Executed by the Parties as an agreement.



Page | 4

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

## SCHEDULE A

### SCOPE OF SERVICES

| 1. | RECITALS |
|---|---|

1.1 WHEREAS, the Service Provider agrees to perform certain onshore technical consulting and construction management Services within Mongolia as requested by the Company in connection with the Company's underground and open pit mining development in the South Gobi region of Mongolia, pursuant to a contract with the Government of Mongolia (the "**Mining Development**").

1.2 NOW THEREFORE, in consideration of their mutual premises, covenants, and conditions, the Parties hereby agree and enter into this master Services agreement (together with any and all schedules, annexures, and any other documents made part hereof or otherwise incorporated by reference, and any and all additions, supplements, replacements, or modifications hereto or thereto, hereinafter referred to as the "**Contract**").

| 2. | OVERVIEW |
|---|---|

2.1 All Services will be performed under a mutually agreed to and executed WOA as provided in Annexure 1 to this Schedule A.

2.2 The Service Provider shall not perform any Services under the Contract without a specific WOA covering the Services.

| 3. | CONTRACTING PROCEDURE |
|---|---|



Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012



## 4.    SCOPE OF SERVICES

4.1    The Services may include, but not be limited to, the following scopes of service:

(a)  Business consulting and administration services of the following nature:

(1)  Project management;

(2)  Construction management.

(b)  Secondment of Service Provider Personnel to Company

4.2    The Services shall be detailed and identified in each WOA as requested and approved by the Company.

4.3    Prior to the commencement of the Services, which include but are not limited to the following tasks:

(a)  Kick off/planning meeting following the issuance of the approved WOA;

(b)  Perform the Services in accordance with the agreed project plan;

(c)  Liaise with the Company  manager to arrange access to data, Site and staff;

(d)  Facilitate Project meetings;

(e)  Issue a monthly status report to Company, in accordance with the agreed WOA, which reports the progress to date against agreed tasks, issues experienced, risks identified, and upcoming tasks;

(f)  Develop a draft report and issue to Company for comment,

The Service Provider shall:

(g)  assign a project manager who will be responsible for managing and directing the Services on behalf of the Service Provider;

(h)  nominate a team, for approval by the Company, for the requested Services based on the required skill and experience.

## 5.    MEETINGS

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

## ANNEXURE 1 TO SCHEDULE A

### PRO FORMA WORK ORDER AGREEMENT

**Work Order Agreement (no. ●)**

**Effective Date:** _____

Onshore MSA Contract no. SL003129, dated 01May 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129

ORIGINAL
DO NOT DESTROY

Contract No. SL003129

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012



ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

**IN WITNESS WHEREOF,** the Parties hereto have executed this work order agreement as of the day and year first above written.

AMEC LLC

("Service Provider")

**Service Provider authorised signatory**

..................................................... (Signature)

..................................................... (Position)

..................................................... (Print name)

..................................................... (Date)

OYU TOLGOI LLC

("Company")

**Company authorised signatory**

..................................................... (Signature)

..................................................... (Position)

..................................................... (Print name)

..................................................... (Date)



Contract No. SL003129
Execution Version: 27 July 2012

## EXHIBIT A

### TO ANNEXURE 1 OF SCHEDULE A

#### Consent form for use of non-AMEC content
#### in the Company's Project report

As an Authorised Representative* of ████████████████ I consent to AMEC naming my company as a contributor to Oyu Tolgoi's ████████████ Project report ("**Study Report**") and using/including extracts or a summary of the information and conclusions contributed by my company (the "**Material**") in the Study Report. I confirm that this Material was prepared for use/inclusion in the Study Report. I have read the sections of the Study Report that contain the Material and agree that those sections fairly and accurately reflect the information and conclusions presented in the Material.

_____

Authorised Representative's name and professional designation

_____

Authorised Representative's title

_____

Company name

_____

Date

_____

\* *Authorised Representative refers to a person qualified by education, professional designation, and experience to provide the information and conclusions presented in the Material, or, who supervised the preparation of the Material by others who have such expertise.*

ORIGINAL
IO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

SCHEDULE B

COMPENSATION AND INVOICING



Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
O NOT DESTROY

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
NOT DESTROY

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

SCHEDULE B – ANNEXURE 3

RATE INCLUSIONS AND EXCLUSIONS

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

**EXHIBIT A**

**TO ANNEXURE 1 OF SCHEDULE B**

**Personnel Assignment Authorization Form (PAAF)**

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

SCHEDULE C

SERVICES TIMETABLE

AS DEFINED IN EACH WORK ORDER AGREEMENT


ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

# SCHEDULE D

## SITE SPECIFIC TERMS

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

## SCHEDULE D – ANNEXURE 1

## OYU TOLGOI LLC CONSOLIDATED CONSTRUCTION CAMP POLICY AND CODE OF BEHAVIOR REV.2

### [SUBJECT TO CHANGE BASED ON COMPANY POLICY]

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

## SCHEDULE E

## GENERAL CONDITIONS FOR SERVICES (AND ASSOCIATED GOODS)

## TABLE OF CONTENTS

1.      Definitions and Interpretation
1.1     Definitions
1.2     Interpretation
1.3     Joint Venture

2.      Evidence of Contract and precedence of documents
2.1     Contract
2.2     Precedence of Contract documents
2.3     Entire agreement
2.4     Amendment to be in writing

3.      Service Provider's representations

4.      Service Provider's investigations
4.1     Investigations regarding Contract
4.2     No representation by Company
4.3     Service Provider satisfied with accuracy
4.4     Service Provider's use of information

5.      Performance by Service Provider
5.1     Performance of Services
5.2     Ordering

6.      Variations
6.1     Variations
6.2     Cost of Variations
6.3     Variation procedure
6.4     Trending
6.5     Contract Amendments

7.      Service Provider's warranties
7.1     Service Provider's warranties
7.2     Warranty

8.      Defects liability and correction of deficient Services
8.1     Correction of deficient Services
8.2     Defects liability and correction of deficient Services

9.      Services Timetable
9.1     Adherence to Services Timetable
9.2     Amendments to Services Timetable

10.     Term

11.     Representatives
11.1    Performance

11.2    Company Representative
11.3    Service Provider Representative

12.     Contract Price
12.1    Contract Price
12.2    Taxes to be invoiced by the Service Provider

13.     Taxes
13.1    Taxes, Indirect Transaction Taxes, and Withholding Taxes
13.2    Survival of clause

14.     Payments to Service Provider
14.1    Method of payment
14.2    Invoices
14.3    Payment of Invoices
14.4    Disputed Invoices
14.5    Errors or exceptions in invoicing

15.     Deduction from payments
15.1    Deductions
15.2    Deductions and withholdings required by law
15.3    Notification of withholding or deductions
15.4    Survival of clause

16.     Alternative Services
16.1    Alternative Services

17.     Service Provider's information, accounts and records
17.1    Provision of information
17.2    Service Provider to maintain accounts and records
17.3    Service Provider to provide access

18.     Right to audit by Company
18.1    Right of audit of Service Provider performance
18.2    Action by Service Provider

19.     Preservation of existing third party services arrangements

20.     No minimum purchase or exclusivity
20.1    No minimum purchase
20.2    No exclusivity

21.     Service Provider Personnel, facilities, and Equipment
21.1    Service Provider Personnel

21.2   Engagement of Personnel

21.3   Service Provider Personnel information

21.4   Company may object to Personnel

21.5   Service Provider responsibilities

21.6   Company Facilities

21.7   Non-solicitation

22.    **General Requirements of Construction Management Services**

22.1   Works Contractors

23.    **Supply Chain services terms and conditions**

23.1   Procurement

23.2   Competitive bidding

23.3   Company's right to approve suppliers

23.4   Company's approval

23.5   Used materials

23.6   On-time arrivals

23.7   Administration of purchase orders furnished by Company

23.8   Payment of accounts

23.9   Company indemnity

23.10  No Warranty

24.    **Health, safety, and environment**

24.1   Application of Clause

24.2   Service Provider acknowledgement

24.3   Compliance with health, safety and environmental laws, policies, and standards

24.4   Health, Safety, and Environmental Management Plan

24.5   Induction Courses

24.6   Service Provider to remain liable

24.7   Removal from Site

25.    **Quality control**

25.1   Quality control systems and procedures

26.    **Access to Site**

26.1   Access

26.2   Service Provider obligations

26.3   Delayed or suspended access

26.4   Right to deny access

26.5   No exclusive possession

27.    **Compliance with Company policies**

28.    **Laws**

28.1   Compliance with laws

28.2   Consequences of breach

29.    **Co-operation with third parties**

29.1   No interference

29.2   No compensation

29.3   Amendment to Services Timetable

30.    **Force Majeure**

30.1   Notice of Force Majeure

30.2   Force Majeure notice

30.3   Obligation to remedy and mitigate

30.4   Compensation

31.    **Insurances**

31.1   Service Provider Insurances

31.2   General and product liability insurance

31.3   Workers' compensation, employer's liability, health and social insurance

31.4   Professional indemnity insurance

31.5   Automobile Liability insurance

31.6   Insurance terms

31.7   Notification under Service Provider's policy

31.8   Sub-contractors' insurance

31.9   Insurance claims and payment of insurance excess

31.10  Company's "Owner Controlled Insurance Program" (OCIP).

31.11  Insurance Coverage Provided by Client.

31.12  Premium Payments

31.13  Survival of clause

32.    **Indemnities**

32.1   Acknowledgement

32.2   Indemnity

32.3   Exclusions

32.4   Indemnity held for benefit of Company and Oyu Tolgoi Personnel

32.5   Indemnity continuing

32.6   No requirement for expense before enforcing indemnity right

32.7   Limitation

32.8   Consequential Loss waiver

32.9   Survival of clause

33.    **No fault termination**

33.1   Termination Notice

33.2   Obligations upon receipt of Termination Notice

33.3   Obligations upon termination

33.4   Service Provider compensation

34.    **Service Provider default and insolvency**

34.1   Service Provider Default Notice

34.2   Service Provider Default Notice requirements

34.3   Obligations upon termination

34.4   No prejudice

34.5   Service Provider insolvency or bankruptcy

35.    **Default by Company**

35.1   Company Default

35.2   Company Default Notice

35.3   Company Default Notice requirements

35.4   Costs recoverable by Service Provider

35.5   Company access to Service Provider records

35.6   Company insolvency

36.    **Dispute resolution**

ORIGINAL
DO NOT DESTROY

36.1    Dispute
36.2    Dispute Representatives to seek resolution
36.3    Performance of obligations during Dispute

37.     Confidentiality
37.1    Obligation of confidentiality
37.2    Exceptions
37.3    Breach of consent
37.4    Service Provider acknowledgment
37.5    Indemnity
37.6    Additional obligations
37.7    Return of Confidential Information
37.8    Survival of clause

38.     Public announcements

39.     Intellectual Property Rights in Services
39.1    Service Provider IP
39.2    Contract IP
39.3    Oyu Tolgoi IP
39.4    Service Provider warranty
39.5    General Service Provider obligations
39.6    Survival of clause

40.     Third party Intellectual Property Rights
40.1    Third party Intellectual Property Rights

41.     Notices
41.1    Form of Notices
41.2    Notices deemed given

42.     Conflict of interest
42.1    Warranty
42.2    Conflicts of interest
42.3    Indemnity

43.     Business Standards
43.1    Establishment of procedures
43.2    Improper advantage or benefit to Official
43.3    Notification regarding change of interests
43.4    Clause to apply to Sub-contractors
43.5    Notification of failure to comply with clause

44.     Illegal Information Brokering
44.1    Prohibition
44.2    Notification

45.     Oyu Tolgoi business practices and standards

46.     Costs
46.1    Each Party to bear its own costs
46.2    Stamp duty

47.     Status
47.1    Independent contractor
47.2    Partnership and joint venture suppliers

48.     Assignment and sub-contracting
48.1    Company consent required

48.2    Obligations survive assignment or sub-contract
48.3    Status of Sub-contractor
48.4    Dependence on Third Party contributors
48.5    Rights of Third Parties

49.     Privacy and data protection
49.1    Personal Information
49.2    Warranty
49.3    Data protection
49.4    Individual complaints
49.5    Service Provider indemnity
49.6    Survival of clause

50.     Waiver

51.     Further assurances

52.     Severability
52.1    Severability
52.2    Negotiation in good faith

53.     Governing law

54.     Counterparts

55.     Proceeding without authorisation

56.     EXIM bank certification coincident with
        Contract

# ORIGINAL
# DO NOT DESTROY

## 1.    Definitions and Interpretation

### 1.1    Definitions

In these General Conditions and this Contract, the following terms have the meanings set out below:

*Affiliate* means any entity, unincorporated joint venture, or body corporate that is related to Oyu Tolgoi Companies by owning shares, by common ownership, or by other means of control.

*Alternative Services* is defined in clause 16.1.

*Associated Goods* means the goods (if any) as identified in the Work Order Agreement that are to be provided by the Service Provider.

*Business Day* means a day on which banks are open for business in the place in respect of which an obligation is to be performed or, in respect of clause 41, the place to which a Notice is sent.

*Cancellation Date* is defined in clause 34.2 (b) ii.

*Claim* means any action, suit, proceeding, or demand of any kind (including by or against any or all of the Company, an End User, or their respective personnel by Personnel of the Service Provider or any third party).

*Commencement Date* means the date specified in the Key Terms of this Contract.

*Company* is defined in the Key Terms.

*Company Competencies* is defined in clause 24.5(b).

*Company Default* is defined in clause 35.1.

*Company Default Notice* is defined in clause 35.2.

*Company Induction Courses* is defined in clause 24.5 (a).

*Company Representative* is, initially, as defined in the Key Terms of the Contract, and includes:

a)    such other person as the Company may, in writing, substitute for that representative; or

b)    any person authorised by that representative to perform any of that representative's powers, duties, discretions, or authorities as identified in each Work Order Agreement.

*Company's Personal Information* means the Personal Information that the Company transfers to the Service Provider from time to time in connection with the Contract and any Work Order Agreement.

*Confidential Information* means the Contract, the Work Order Agreement and any information (in whatever form) or Documentation of a confidential nature (or which the Service Provider or its Personnel ought reasonably to know to be confidential) which relates to the business, affairs, or activities of the Company, an End User, or members of the Oyu Tolgoi Companies (including in relation to the Services) and which:

a)    is disclosed to the Service Provider or its Personnel by, or on behalf of, the Company;

b)    is generated by the Service Provider or its Personnel in performing the Services; or

c)    otherwise comes to the knowledge of the Service Provider or its Personnel.

*Contract* is defined in clause 2.1.

*Contract IP* means all Intellectual Property Rights (present or future) created, discovered, or coming into existence as a result of, for the purpose of, or in connection with, the provision of the Services or the Work Order Agreement under the Contract (including all Intellectual Property Rights in anything developed by the Service Provider in providing the Services and any Intellectual Property Rights in the

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

Documentation provided by the Company to the Service Provider). For further clarity, such Intellectual Property Rights shall not include existing Intellectual Property that has already been developed by the Service Provider prior to the commencement of Services, regardless of whether it will be used in the delivery of such Services.

**Contract Price** is defined in clause 12.1.

**Deducted Amount** is defined in clause 15.2 (a).

**Defects Liability Period** is defined clause 8.2 of this Contract.

**Dispute** is defined in clause 36.1.

**Dispute Notice** is defined in clause 36.1.

**Dispute Representative** is defined in clause 36.2 (a).

**Documentation** includes plans, designs, drawings, calculations, engineering information, data, specifications, sketches, notes, samples, reports, maps, accounts, operating manuals, training materials, and any other material specified in each Work Order Agreement under this Contract (and whether embodied in tangible or electronic form).

**End User** means an entity identified in this Contract (or notified to the Service Provider by the Company) to whom the Company provides services comprising, or derived from, in whole or in part, the Services.

**Facilities** means any accommodation, sustenance, transportation, medical, or toilet facilities.

**Force Majeure** means an event or cause which is beyond the control of the Party claiming Force Majeure, not able to be overcome by the exercise of reasonable care, proper precautions, and the consideration of reasonable alternatives with the intention of avoiding the effects of the Force Majeure by that Party, which could not have been reasonably foreseen and includes (subject to satisfying the requirements of the foregoing):

a)  an act of God (other than adverse weather);

b)  cyclones, fire, flood; or

c)  acts of war, acts of public enemies, terrorist acts, riots, or civil commotions.

**Government Agency** means any government or governmental, semi-governmental, administrative, municipal, fiscal or judicial body, department, commission, authority, tribunal, agency, or entity.

**Health, Safety and Environment Management Plan(s)** is defined in clause 24.4 (a).

**Health, Safety and Environmental Policies and Standards** are defined in clause 24.3 (a).

**Illegal Information Brokering** means the practice by which certain parties approach contractors, sub-contractors, vendors, and other suppliers and offer confidential information or illicit influence in order to obtain business through corruption of competitive bidding processes.

**Indirect Transaction Taxes** mean any relevant value added tax, goods and services tax, sales, use, consumption, or similar tax or impost imposed, claimed, levied, assessed by, or payable to the Mongolian tax authority, but does not include any related penalty, fine, or interest thereon.

**Input Tax Credit** means any entitlement to a credit for, offset against, reduction in, or refund of Indirect Transaction Taxes, in relation to any acquisition or the receipt of any Supply.

**Intellectual Property Rights** means all industrial and intellectual property rights whether protectable by statute, at common law, or in equity, including all copyright and similar rights which may subsist, or may hereafter subsist, in works or any subject matter; rights in relation to inventions (including all patents and patent applications); trade secrets and know-how; rights in relation to designs

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

(whether or not registrable); rights in relation to registered or unregistered trademarks; circuit layout designs and rights in relation to circuit layouts; but excludes non-assignable moral rights and similar non-assignable personal rights of authors and producers.

*Invoice* means an invoice in an acceptable form acceptable under applicable laws and in a form acceptable to the Company and must contain the following information:

a)  the number of the Work Order Agreement to which the Invoice relates;

b)  a brief description of the Services provided in the period covered by the Invoice;

c)  any further verification or documentation in relation to the invoice as is reasonably required by the Company; and

d)  the amount of Indirect Transaction Taxes payable and any applicable registration numbers of the Service Provider for purposes of Indirect Transaction Taxes, and which would enable the Company to claim a credit or reimbursement for Indirect Transaction Taxes payable under the Invoice under applicable law.

*Joint Venture* means an unincorporated joint venture, if any, on behalf of which the Company is a party to the Contract as agent.

*Joint Venturers* means, in respect of a Joint Venture, the participants in that Joint Venture.

*Key Personnel* means senior Personnel with the following job titles: project manager, manager of mining, or deputy study manager. The Key Personnel shall be identified in each Work Order Agreement.

*Key Terms* means the document named "Key Terms" forming part of the Contract, but not including the Schedules to that document.

*Liabilities* means damages, Claims, losses, liabilities, costs, and expenses of any kind.

*Official* includes:

a)  any officer or employee of any Government Agency, or any person acting in an official capacity on behalf of any such Government Agency;

b)  any officer, employee, or official of a political party;

c)  any candidate for political office; or

d)  any officer or employee of a public international organisation (for example, the United Nations, IMF, or World Bank).

*Oyu Tolgoi Companies* means the Company; Ivanhoe Mines Inc. Ltd, a corporation organised and existing pursuant to the laws of Canada; Oyu Tolgoi Netherlands B.V. (Registration No. 34357518), a company organised and existing pursuant to the laws of Netherland; and Ivanhoe Oyu Tolgoi (BVI) Ltd (Registration No. 389391), a corporation organised and existing under the laws of the British Virgin Islands and including:

a)  any Affiliate of the Company, Ivanhoe Mines Inc. Ltd, Oyu Tolgoi Netherlands B.V. or Ivanhoe Oyu Tolgoi (BVI) Ltd;

b)  any unincorporated Joint Venture in which the Company, Ivanhoe Mines Inc. Ltd, Oyu Tolgoi Netherlands B.V., Ivanhoe Oyu Tolgoi (BVI) Ltd, or any Affiliates which the Company, Ivanhoe Mines Inc. Ltd, Oyu Tolgoi Netherlands B.V., or Ivanhoe Oyu Tolgoi (BVI) Ltd has a participating interest of not less than 50%;

c)  any body corporate or unincorporated Joint Venture managed by the Company, Ivanhoe Mines Inc. Ltd, Oyu Tolgoi Netherlands B.V., Ivanhoe Oyu Tolgoi (BVI) Ltd, or any Affiliate of the Company, Ivanhoe Mines Inc. Ltd, Oyu Tolgoi Netherlands B.V., or Ivanhoe Oyu Tolgoi (BVI) Ltd; and

ORIGINAL
DO NOT DESTROY

d)   such other entities as the Parties agree in writing.

*Oyu Tolgoi IP* means the Intellectual Property Rights of the Company or any member of the Oyu Tolgoi Companies (as the case requires) which:

a)   are in existence at the date of this Contract; or

b)   come into existence after the date of the Contract other than in connection with the Contract.

*Party* means a party to the Work Order Agreement under this Contract.

*Personal Information* means tax identification numbers and filing information, bank information, credit history, medical records, health history, and similar information of, or pertaining to, individual persons that is subject to protection or otherwise restricted as to use or disclosure under applicable Privacy Laws.

*Personnel* means:

a)   in relation to the Service Provider, any of its employees, Sub-contractors (including Sub-contractor's Personnel), agents, and representatives involved either directly or indirectly in the performance of the Services;

b)   in relation to the Company, an End User, or a member of the Oyu Tolgoi LLC, any of its past or present officers, employees, agents (including, for the purposes of clause 32, the entity entering into this Contract for, and on behalf of, Joint Venturers (if applicable) and that entity's past or present officers, employees, agents, or representatives), or representatives; and

c)   in relation to a Sub-contractor, any of its employees, agents, or representatives involved either directly or indirectly in the performance of the Services.

*Privacy Laws* means any statute, law, rule, or regulation (existing or that may

come into effect) of a central, national, state, provincial, or local Government Agency that regulates the collection, storage, use, and security of personal tax, financial, credit, medical, or health information by private businesses.

*Processing* means collecting, holding, using, transferring, destroying, and any other dealing.

*Site* means the Company's premises identified in the Key Terms.

*Special Conditions* means the special conditions set out in each Work Order Agreement (Special Conditions).

*Specifications* mean the specifications for the Services of a Work Order Agreement and any modification of those specifications as directed by the Company Representative in accordance with this Contract.

*Service Provider* is defined in the Key Terms.

*Service Provider Default Notice* is defined in clause 34.1.

*Service Provider Insurances* is defined in clause 31.1.

*Service Provider IP* means the Service Provider's Intellectual Property Rights which:

a)   are in existence at the date of the Contract; or

b)   come into existence after the date of the Contract other than in connection with the Work Order Agreements under this Contract.

*Service Provider Representative* is defined in the Key Terms.

*Services* means the work generally identified in Schedule A (Services) and more specifically each Work Order Agreement to be performed by the Service Provider in accordance with the Contract.

*Services Timetable* means the schedule set out in the Work Order Agreement and Schedule C (Services Timetable) for the

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

effective monitoring of the progress of the Services which:

a)  (unless otherwise agreed between the Parties) is in a time-based format in which critical items and activities relating to the performance of the Services are clearly identified and detailed; and

b)  indicates the dates or times for commencement and completion of the various stages or parts of the Services,

and includes any amendments to such Services Timetable in accordance with clause 9.2.

***Sub-contractor*** means any person engaged by the Service Provider in accordance with clause 48 to perform all or any part of the Services on behalf of the Service Provider.

***Supply Chain*** means all steps and processes involved in the provision of the Services to the Company, commencing with the sourcing of the Services and Associated Goods (if applicable) and finishing with the use of the Services and Associated Goods by the Company.

***Tax or Taxes*** is defined in clause 13.

***Tax Invoice*** means an invoice or other document including, without limit, a credit note or debit note, in a form that is valid under the applicable law of the jurisdiction in which a liability to pay Indirect Transaction Taxes is imposed, claimed, levied, or assessed, which must be held by a person for that person to be able to claim Input Tax Credits.

***Tender*** means the Service Provider's offer or counter-offer in writing to perform the Services whether described as a "tender" or "proposal" or otherwise.

***Term*** is defined in the Key Terms.

***Termination Notice*** is defined in clause 33.1.

***Variation*** is defined in clause 6.1.

***Variation Date*** is defined in clause 6.1.

***Wilful Misconduct*** is an intentional breach of this Contract or other intentional act, either of which demonstrates reckless disregard for the personal safety or the property of third parties or of the other Party to this Contract.

***Work Facilities*** means the physical works engineered, procured, constructed and incorporated into the Project as a result of the Services, construction work performed and services performed by Works Contractors, but does not include temporary or existing facilities or Facilities or operations at Company's Site.

***Work Order Agreement*** means an individual authorisation agreement set out in Annexure 1 as may be issued by the Company under this Contract to the Service Provider in respect of the provision of Services which shall be subject to the terms of this Contract.

**1.2   Interpretation**

Headings are for convenience only and do not affect interpretation. The following rules apply unless the context requires otherwise:

a)  The singular includes the plural and conversely.

b)  Grammatical forms have a corresponding meaning.

c)  The meaning of general words is not limited by specific examples introduced by **including** or **for example**.

d)  A reference to a person, corporation, trust, partnership, unincorporated body, or other entity includes any of them.

e)  A reference to a person or a Party includes a reference to that person's or Party's executors, administrators, successors, substitutes (including persons taking by way of novation), assigns (in the case of a person), and permitted assigns (in the case of a Party).

f)  A reference to a clause or schedule a reference to a clause of, or schedule to, these General

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

Conditions.

g) A reference to a Schedule is a reference to a schedule to this Contract.

h) A reference to an Act or legislation, or to a provision of an Act or legislation, includes a modification or re-enactment of it, a legislative provision substituted for it, and a regulation or statutory instrument issued under it.

i) A reference to *use* in the context of dealing with Intellectual Property Rights includes using, exploiting, copying, adapting, creating derivate works, developing, modifying, disclosing, and communicating.

j) A reference to conduct includes, without limitation, an omission, statement, or undertaking, whether or not in writing.

k) Where it is provided that the Service Provider will perform any act or provide any thing at its cost, this means the Service Provider will not be entitled to any additional compensation for such act or thing and the cost will be deemed to be included in the Contract Price.

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTRO

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version; 27 July 2012

ORIGINAL
DO NOT DESTROY

ORIGINAL
DO NOT DESTROY

Contract No. SLD03129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
NOT DESTROY

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

Contract No. SL003129
Execution Version: 27 July 2012

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DESTROY

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

| 70

Contract No. SL003129
Execution Version: 27 July 2012



Contract No. SL003129
Execution Version: 27 July 2012

a competent industrial tribunal.

b) Subject to clause 32.3, the Company will indemnify (and will keep indemnified) the Service Provider, the Service Provider's Affiliates and the Service Provider's Personnel ("**Service Provider Indemnified Parties**") from and against all Liabilities that any Service Provider Indemnified Party suffers, sustains, or incurs, arising from any injury, illness or death or any property damage caused directly or indirectly by any Wilful Misconduct or negligent act or omission by the Company or its Personnel.

## 32. Indemnities

### 32.1 Acknowledgement

The Service Provider acknowledges that if it enters on to the Site, it does so at the Service Provider's own risk. The Service Provider must ensure that its Personnel are also aware that they enter onto the Site at their own risk.

### 32.2 Indemnity

a) Subject to clause 32.3, the Service Provider will indemnify (and will keep indemnified) the Company, the Company's Affiliates and the Company's Personnel ("**Indemnified Parties**") from and against all Liabilities that any Indemnified Party suffers, sustains, or incurs, arising from any one or more of the following:

   i. any injury, illness or death or any property damage caused directly or indirectly by any Wilful Misconduct or negligent act or omission by the Service Provider or its Personnel;

   ii. any claim made against the Company or any member of the Oyu Tolgoi Companies by any of the Service Provider's Personnel in respect of relevant legislation concerning income tax, workers' compensation, annual leave, long service leave, superannuation, or any applicable award, determination, or agreement of

### 32.3 Exclusions

Neither party will be liable under clause 32.2 to the extent that the Liability was caused, or contributed to, by (as the case requires) the other Party's (including the other Party's Personnel's) negligent acts or omissions or Wilful Misconduct.

### 32.4 Indemnity held for benefit of Company and Oyu Tolgoi Personnel

Every exemption, limitation, defence, immunity, indemnity, or other benefit contained in the Contract or otherwise to which the Company or a member of the Oyu Tolgoi Companies is entitled will be held by the Company as trustee for the benefit of, and will extend to protect, each of the Company's, and each Oyu Tolgoi member's, Personnel. Every exemption, limitation, defence, immunity, indemnity, or other benefit contained in the Contract or otherwise to which the Service Provider, its Affiliates or any of its Personnel is entitled, will be held by the Service Provider as trustee for the benefit of, and will extend to protect, each of the Service Provider, its Affiliates and each of its Personnel.

### 32.5 Indemnity continuing

Each indemnity in this Contract is a continuing obligation separate and



ORIGINAL
DO NOT DESTROY

independent from the Service Provider's other obligations and survives termination of the Contract.

**32.6   No requirement for expense before enforcing indemnity right**

It is not necessary for the Company, a member of the Oyu Tolgoi Companies, or their respective Personnel to incur expense or make payment before enforcing a right of indemnity conferred by the Contract.

**32.7   Limitation**

As part of the consideration the Service Provider requires for the provision of Services for each Work Order Agreement issued under this Contract, the Company and Service Provider agree, notwithstanding anything to the contrary contained in this Contract, in any event, the Service Provider's aggregate liability for any and all claims, damages, injuries, losses (including reasonable lawyer's fees and legal costs), and other liabilities of any kind in contract, tort (including negligence or breach of statutory duty), or otherwise arising by reason of, or in connection with, this Contract shall be limited to the total compensation received by the Service Provider under the relevant Work Order Agreement up to a maximum of USD $20,000,000 per occurrence and in the aggregate. The total aggregate liability of the Service Provider to Company under the Contract and all Work Order Agreements shall not exceed USD $20,000,000.

Notwithstanding the foregoing provisions of this clause 32.7, the above described limitation shall not act to limit the liability of the Service Provider pursuant to its express undertakings and indemnities set out in:

a)   fraud or fraudulent misrepresentation;
b)   a breach of applicable law;
c)   a breach of confidentiality provisions in this Contract;
d)   any Wilful Misconduct of Key Personnel;

e)   any infringement of Intellectual Property rights of any third party;
f)   Service Provider's liability to third parties.

**32.8   Consequential Loss waiver**

Neither Party shall be liable in contract, tort (including negligence or breach of statutory duty), or otherwise, whether foreseeable or not, and whatever the cause thereof:

a)   for any increased costs or expenses;
b)   for any loss of profit, business, contracts, revenue, anticipated savings, use, opportunity, goodwill, or capital, or
c)   for any special, indirect, consequential, incidental, exemplary, or punitive damage of any nature whatsoever (collectively, "**Consequential Loss**").

**32.9   Survival of clause**

The limitations and consequential loss waiver in this clause 32 will survive the expiry and termination of this Contract.

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

## 37. Confidentiality

### 37.1 Obligation of confidentiality
The Service Provider undertakes and agrees:
a) to hold in strict confidence all Confidential Information and not to disclose, permit, or cause the Confidential Information to be disclosed to any person other than any of its Personnel who require the Confidential Information for the purposes of providing the Services; and
b) not to make use of the Confidential Information (including duplicating, reproducing, distributing, disseminating, or directly or indirectly deriving information from the Confidential Information), except, and solely to the extent necessary, for the performance of the Services,

unless the Service Provider has obtained the prior written consent of the Company to do so (which consent may be withheld by the Company in its discretion, or given on such terms as it sees fit).

### 37.2 Exceptions
Clause 37.1 does not apply to:
a) information after it becomes generally available to the public other than as a result of the breach of this clause 37 or any other obligations of confidence imposed on the Service Provider; or
b) the disclosure of information in order to comply with any applicable law or legally binding order of any court, Government Agency, or recognised stock exchange, provided that prior to such disclosure the Service Provider gives notice to the Company with full particulars of the proposed disclosure.

### 37.3 Breach of consent

The breach of any of the conditions contained in a consent granted pursuant to clause 37.1 will be deemed to be a breach of the Contract.

### 37.4 Service Provider acknowledgment
The Service Provider acknowledges that this clause 37 is for the benefit of not only the Company, but also any member of the Oyu Tolgoi Companies that has any interest in any Confidential Information.

### 37.5 Indemnity
a) Without limiting clause 32, the Service Provider indemnifies the Company and each member of the Oyu Tolgoi Companies, and must keep them indemnified, in respect of any Liabilities incurred or sustained by them resulting from a breach of this clause 37 by the Service Provider or its Personnel.

### 37.6 Additional obligations
The obligations in this clause 37 are in addition to, and do not diminish, the obligations of the Service Provider in respect of secret and confidential information at common law or under any statute or trade or professional custom or use.

### 37.7 Return of Confidential Information
If requested in writing by the Company, whether prior to or after the expiry or earlier termination of the Work Order Agreement, the Service Provider must promptly deliver to the Company all Confidential Information in the custody, possession, or control of the Service Provider or any of its Personnel. The Service Provider may nonetheless retain its confidential files for legal and archival purposes:
a) copies of its analyses using the Confidential Information; and
b) Documentation establishing or relating to any Work Order Agreement entered into between the Parties with respect of the Services.



ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

Additionally, notwithstanding the
foregoing obligation to permanently
delete all data, the Service Provider will
not be obligated to delete any
Confidential Information that is in a
computer backup system in accordance
with its archival, security, and/or disaster
recovery procedures for the period that
such Confidential Information is normally
backed up pursuant to such procedures.
Any such backup electronic copies of the
Confidential Information shall continue to
be subject to the terms of this Contract
for the applicable period specified in
clause 37.8.

**37.8  Survival of clause**

This clause 37 will be effective during the
term of this Contract and for a period of
seven (7) years following the termination
of this Contract for whatever reason.

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

Contract No. SL003129
Execution Version: 27 July 2012

ORIGINAL
DO NOT DESTROY

SCHEDULE F – SPECIAL CONDITIONS

SECONDMENT TERMS



ORIGINAL
DO NOT DESTROY

ORIGINAL
DO NOT DESTROY

ORIGINAL
DO NOT DESTROY



ORIGINAL
DO NOT DESTROY



ORIGINAL
DO NOT DESTROY

ANNEXURE 1 TO SCHEDULE F

FORM OF CONFLICT OF INTEREST DISCLOSURE FORM:

ORIGINAL
DO NOT DESTROY

**ANNEXURE 2 TO SCHEDULE F**
**Oyu Tolgoi Business Integrity - Conflicts of Interest standard**

COI_Standard_Englis
h.pdf

# EXHIBIT E
# FILED UNDER SEAL

# EXHIBIT F

# EXHIBIT 25

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7000**

WRITER'S EMAIL ADDRESS
**leighaempson@quinnemanuel.com**

April 28, 2023

<u>VIA EMAIL</u>

Michael D. Blatchley
Bernstein Litowitz Berger & Grossman LLP
1251 Avenue of the Americas
New York, NY 10020
michaelb@blbglaw.com

Re:     *In re Turquoise Hill Resources Ltd. Sec. Litig.*, No. 1:20-cv-08585-LJL

Dear Michael:

I write on behalf of Defendants Rio Tinto plc, Rio Tinto Limited, Jean-Sébastien Jacques and Arnaud Soirat (collectively, "Defendants") to respond to Lead Plaintiff the Pentwater Funds' ("Plaintiffs'") April 24, 2023 letter (the "Letter").

## I.     SEARCH TERMS AND CUSTODIANS

*Custodians:*     Defendants disagree with Plaintiffs' position that 69 custodians is a reasonable or proportional number for this action.  As demonstrated by the April 10 hit counts provided by Defendants, even running Plaintiffs' proposed search terms (to which Defendants have not agreed) on less than half of those custodians results in more than 2 million hits, which is roughly two-thirds of the currently collected document universe.  In addition to the fact that 69 custodians is an unreasonable and excessive number, Plaintiffs' list includes custodians that are duplicative of those Defendants have agreed to add or who are otherwise not reasonable or proportionate.  Defendants' April 21, 2023 letter explains Defendants' position in this regard; we note that Plaintiffs have not responded in substance to that correspondence.

However, Defendants continue to be willing to seek a reasonable compromise.  We appreciate you pointing out the discrepancy in our April 21, 2023 correspondence and clarify now that Defendants also agree to add the following custodians, bringing Defendants' list to 44 custodians:

- 

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH



Defendants hope that this additional compromise can bring the parties to agreement on custodians. If Plaintiffs disagree with specific contentions in our April 21 correspondence regarding custodians, Defendants remain willing to discuss specific proposed custodians. However, if Plaintiffs are unwilling to agree to Defendants' proposal of 44 custodians and continue to demand production from all 69 custodians, the parties are at an impasse.

***Search Terms and Hit Counts:*** The hit counts provided on April 10 do not reflect the entirety of the ESI collection for the relevant custodians but rather are comprised of the custodians' email collections. Defendants are in the process of collecting other sources of ESI and any hard copy documents. As for text messages, Defendants will agree to review and produce any responsive and non-privileged text messages within the possession, custody, or control of Defendants for the following custodians: ███████████ This proposal to limit the review of potentially responsive mobile messages to a subset of the 44 agreed-upon custodians is reasonable and proportionate. *E.g.*, *United States v. Allergan*, 2021 WL 969215, at *2 (C.D. Cal. Mar. 1, 2021) (ordering production of text messages from only three custodians); *Arconic Inc. v. Novelis Inc.*, 2018 WL 5634008, at *2 (W.D. Pa. Aug. 3, 2018) (ordering text message production for only "top ten" custodians). To the extent Plaintiffs seek text messages from additional custodians, please let us know who those custodians are and we will take that request into consideration as we continue with our custodial interviews.

Regarding the format of the hit counts provided by Defendants, they are in substantially the same format as the example sent by Plaintiffs. For instance, in their April 24, 2023 cover email, Plaintiffs call out "the relevant illustrative data . . . on page 3" of the hit report. Page 3 contains a table titled "Terms Summary" that includes columns labeled "Documents with hits," "Documents with hits, including Family ID," and "Unique hits." The hit reports Defendants sent on April 10 contains all of this information. The only substantive difference is that Defendants are not providing the total universe of documents the search terms are being run over, as that number is entirely irrelevant to evaluating the hit counts and the burden they impose.[1] Plaintiffs' request to know "how many documents Defendants identified as responsive relative to the number of hits" is premature as Defendants have naturally not reviewed the more than 2 million documents that hit on Plaintiffs' overbroad proposed search terms.

---

[1] Nevertheless, Defendants will agree to provide this information going forward. However, Defendants stress that burden is properly assessed based on the total number of documents that would require review—not the percentage of overall documents to be reviewed or any other metric.

Your Letter states that Defendants agreed to "collect and produce relevant documents that are centrally located—e.g., the TEG and BED reports and minutes, Oyu Tolgoi LLC Board minutes and meeting materials, and organizational charts—without using search terms." First, Defendants make no representation as to whether all such documents in fact exist in centralized repositories, as our investigation and collection is ongoing. Second, while Defendants agree that certain documents (such as organizational charts) do not lend themselves to search terms, Defendants will not categorically agree to review every single document located in any central repository without the use of search terms. While application of the search strings the parties are currently negotiating may be unhelpful with respect to certain materials (*e.g.*, organizational charts), Defendants reserve the right to apply searches that will focus document sets (including TEG, BED, and Board materials) on the Oyu Tolgoi project.

## II.    RELEVANT TIME PERIOD

While Defendants have remained willing to negotiate a reasonable relevant time period and have already offered several compromises from their original position, Plaintiffs refuse to budge from their insistence that Defendants produce documents from a nearly five-year period of October 1, 2016 through July 31, 2021 as the baseline period for all requests, for an even broader time period (October 2016 through the present—nearly seven years) for others, and for documents dating back to 2011 for yet other Requests.

Defendants have agreed to produce documents from January 2018 through July 2019 in response to all of Plaintiffs' Requests and from November 30, 2020 to December 31, 2021 for Plaintiffs' Requests relating to the ICG and the OT Special Committee. This is a more than adequate relevant time period. However, in the interest of compromise, Defendants will agree to review and produce documents for the following time periods: January 1, 2018 through December 31, 2019 and November 30, 2020 through December 31, 2021 for Plaintiffs' Requests relating to the ICG and the OT Special Committee. Let us know if you agree to this proposal.

## III.    SPECIFIC REQUESTS

### *Request 34 – Documents Produced by Rio Tinto to Government Regulators*





*Requests 14, 38, and 48 – ICG Documents*

*First*, Plaintiffs are mistaken in their representation that Defendants have not agreed to produce "internal Rio communications concerning the ICG's investigation and report."  Letter at 3.  Defendants have repeatedly made clear that they will produce such documents.  *See* Defendants' Responses and Objections to Plaintiffs' Requests for Production, Request 14; Defendants' April 10 letter at 3.

*Second*, regarding the documents requested by, but not provided to, the ICG, Plaintiffs have not explained how such documents are relevant to this action.  Moreover, as Defendants explained several times, including on the parties' April 11, 2023 meet and confer, Plaintiffs' request is vague and ambiguous because Defendants may not have a record of all documents requested by the ICG.  As such, Defendants have interpreted this request as referring to those documents identified in the ICG Report as being requested but not provided.  In response, Defendants state the following:

- *ICG RFI 2(i), for copies of all EPCM monthly reports:*  To the extent EPCM monthly reports fall within the relevant time period for this action and relate to the budget or schedule for Oyu Tolgoi, Defendants have already agreed to produce them in response to Plaintiffs' Request Nos. 27, 30, 40 and 41.

- *ICG RFI 3(a), for reports by* ▮▮▮▮▮▮▮ *or Baker McKenzie:*  Defendants will not produce these documents, as they are privileged.

- *ICG RFI 9(b), for management overall weekly progress reports, and all other weekly progress reports from Owner Team in 2015, 2016, and 2017:*  To the extent such management overall weekly progress reports fall within the relevant time period for this action and relate to the budget or schedule for Oyu Tolgoi, Defendants have already agreed to produce them in response to Plaintiffs' Request Nos. 40 and 41.  Defendants will not

4

produce weekly progress reports from Owner Team in 2015, 2016, and 2017, as they are not relevant to this action.

- *ICG RFI 72, for a Project Wise export:* Project Wise is one of Rio Tinto's document and data management systems, and a request for an "export" of the entirety of the system is vague and ambiguous, seeks irrelevant documents, and would be disproportionate to the needs of this action.

- *ICG RFI 95, for the "Cost of UG Development meters OTFS16 vs. DE2020":* This request is vague and ambiguous, and Defendants cannot identify what documents it seeks. In any event, both OTFS16 and DE2020 are outside the Class Period. To the extent that the "cost of UG Development meters" was quantified during the relevant time period and compared to OTFS16, Defendants have already agreed to produce them in response to, *inter alia*, Plaintiffs' Request Nos. 40 and 41.

- *ICG RFI 134, for "detailed back-up to the 16 July 2019 cost and schedule overruns":* This request is vague and ambiguous. However, if there are documents regarding the July 16, 2019 cost and schedule overruns, Defendants have already agreed to produce them in response to, *inter alia*, Request Nos. 40 and 41.

*Third*, in the interest of compromise, Defendants will produce the July 16, 2021 memorandum requested by Plaintiffs in their April 24 Letter.

*Fourth*, as to Request 48, Plaintiffs already have access to the ICG members' CVs. It is unreasonable to request all documents regarding these individuals without limiting the request to documents relevant to the subject matter of this action. However, in the interest of reasonable compromise, Defendants will agree to search the ICG members' names in the format of "[first name] w/2 [last name]" from November 30, 2020 through December 31, 2021 and produce documents relating to the individuals' work related to the ICG.

### Requests 21 and 24 – Documents Concerning the 2012 and 2016 Feasibility Studies and Technical Reports and the May 2015 Audit

As previously explained, Defendants will not agree to produce documents without respect to time period for these Requests. Plaintiffs' new suggestion that Defendants produce documents dating from twelve months before the date of each of these studies and reports or audit to six months after that date is not reasonable or proportional, as it would require Defendants to produce documents dating back to 2011 (*7 years* before the Class Period in this action) and Plaintiffs have not explained how such legacy documents are relevant. To the extent Plaintiffs seek documents comparing Oyu Tolgoi's progress in comparison to any benchmarks noted in these studies or the audit, Defendants will produce such documents for the relevant time period for this action to the extent they are responsive to Plaintiffs' other Requests that Defendants have agreed to produce.

### Request 53 – Document Retention Policies

As set forth in our April 10 letter, Defendants have no reason to believe Defendants have not properly retained documents relevant to this action and Plaintiffs have never explained why

they might believe otherwise.  Accordingly, Plaintiffs have failed to explain why this request is relevant to this action.

Further, even if this request sought relevant information, the request for all document retention policies is unduly burdensome.  As an international company with numerous business units or divisions, Rio Tinto does not have a singular document retention policy that it could produce with limited burden.  Rather, numerous policies govern numerous groups within Rio Tinto, and these polices are not located in a single central repository.

In the interest of compromise, Defendants will agree to produce documents sufficient to show a selection of document retention policies that would have been in effect during the period from January 1, 2018 to July 31, 2019.  If, after review of Defendants' production, Plaintiffs believe that additional documents are relevant, Defendants will consider such requests.

## IV.   LETTERS OF REQUEST

Defendants confirm that they will provide Plaintiffs with copies of any filings made in foreign courts in connection with Letters of Request, on the understanding that Plaintiffs will do the same.  Please confirm as soon as possible whether Plaintiffs intend to submit Letters of Request for any of the Former Employees identified in the Complaint; otherwise, Defendants will proceed unilaterally.

* * *

As noted above, the burden of Defendants' review should be assessed based on the total number of documents Defendants will be required to review based on the parties' to-be-agreed search terms.  Defendants are revising their search proposal in light of the parties' meet and confers and correspondence, including this letter, and anticipate sending revised hit reports next week.

We are available to discuss further if helpful.  Defendants reserve all rights and waive none.

Regards,

*/s/ Leigha Empson*

Leigha Empson

6

# EXHIBIT G
# FILED UNDER SEAL

# EXHIBIT H

# EXHIBIT 23

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TURQUOISE HILL RESOURCES LTD. SECURITIES LITIGATION | Case No. 1:20-cv-08585-LJL |

## DEFENDANTS' CONFIDENTIAL RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Rio Tinto plc and Rio Tinto Limited (together, "Rio Tinto"), and Jean-Sébastien Jacques and Arnaud Soirat (collectively with Rio Tinto, "Defendants") hereby respond and object to Plaintiffs' First Set of Requests for the Production of Documents to Defendants (the "RFPs" or "Requests," or, individually, each an "RFP" or "Request") served in the above-captioned action ("Action"), without waiving any claims that Defendants have or hereafter may assert in the Action.

Defendants reserve all objections to the admissibility at trial of any document provided pursuant to the Requests, including, without limitation, all objections that such documents are not authentic or that the information contained therein is not relevant or material to this Action. All documents produced in response to the Requests are provided solely for the parties in this litigation and for no other purpose.

## GENERAL OBJECTIONS

Defendants make the following General Objections to each Request, whether or not separately set forth in response to each and every Request. Defendants incorporate by reference in each of their Specific Responses and Objections below, as if set forth fully therein, each and every one of their General Objections.

1.      Defendants object to the Requests to the extent they could be interpreted to call for the disclosure of protected information subject to the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, or any other applicable privilege or immunity.  In responding, Defendants will not interpret the Requests to call for the production of such privileged materials.  The inadvertent disclosure of any information or production of any document that is confidential and/or privileged, was prepared in anticipation of litigation or for trial, or is otherwise irrelevant or immune from discovery shall not constitute a waiver of any such privilege or of any ground for objection to discovery with respect to such information or document, the subject matter of the information or document, or Defendants' right to object to the use of any such information or document in this Action or elsewhere.

2.      Defendants object to the Requests on the ground and to the extent that they improperly attempt to expand, alter, or modify the scope of permissible discovery under the Federal Rules of Civil Procedure, the Southern District of New York Local Rules, any other applicable laws or rules, or any ruling or order issued in this Action.

3.      Defendants object to each and every Request on the ground and to the extent that it is compound, complex, or contains multiple subparts.

4.      Defendants object to each and every Request on the ground and to the extent it requires Defendants to provide documents beyond what can be obtained by a reasonably diligent search.

5.      Defendants object to each and every Request on the ground and to the extent that it seeks information outside of Defendants' possession, custody, or control.

6.      Defendants object to each and every Request on the ground and to the extent that it seeks information that is publicly available, is already in Plaintiffs' possession or has been provided to Plaintiffs, or to which Plaintiffs have equal or greater access.

7.      Defendants object to each and every Request on the ground and to the extent that it seeks information not relevant to the claims or defenses in this Action or is not proportional to the needs of this Action.

8.      Defendants object to each and every Request on the ground and to the extent that it calls for a legal conclusion and/or expert discovery.

9.      Defendants object to each and every Request on the ground and to the extent that it is duplicative or cumulative, or seeks information that may be obtained from other sources or through other means of discovery that are more convenient, more efficient, more practical, less burdensome, or less expensive.

10.     Defendants object to Plaintiffs' request that Defendants produce documents responsive to these Requests within thirty (30) days after service on the ground that the parties to the above-captioned action have agreed on a stipulated case schedule, which provides that document production need not be substantially complete until May 26, 2023.

11.     By responding to the Requests, Defendants do not admit to Plaintiffs' characterization of any documents, facts, theories, or conclusions, nor do Defendants admit that the information provided in response to these Requests reflects any fact, characterization, conclusion or concession.

12.     Defendants object to the Requests on the ground and to the extent that they seek confidential, commercial, business, financial, governmental, proprietary, or competitively sensitive information, or information that is subject to non-disclosure agreements or confidentiality undertakings.  Defendants' responses are made subject to the requirements of the forthcoming protective order in this Action.

13.     Defendants' decision to provide any documents requested, notwithstanding the objectionable nature of any of the Requests themselves, is not: (a) a concession that the material is relevant to this proceeding; (b) a waiver of the General Objections or the objections asserted in response to specific Requests; (c) an admission that any such document or information exists; or (d) an agreement that requests for similar information will be treated in a similar manner.

14.     Defendants reserve the right to assert additional objections to the production of information or documents as appropriate and to supplement or change these objections and responses, including upon the occurrence of any disputes between the parties regarding the proper

scope of discovery in this Action or upon clarification or revision by Defendants of any Request. Defendants specifically reserve all objections as to the authenticity, competency, materiality, and admissibility of documents produced or the subject matter thereof, all objections as to burden, vagueness, overbreadth, and ambiguity, and all rights to object on any ground to the use of any document, or the subject matter thereof, in any proceeding, including, without limitation, the trial of the above-captioned, or any other, action.

15.    Defendants may set forth one or more of these General Objections as Specific Objections to a Request for emphasis or some other reason; such a Specific Objection shall not limit the general applicability of these General Objections.

## OBJECTIONS TO DEFINITIONS

1.    Defendants object to the definition of "Baker McKenzie" to the extent it purports to incorporate its officers, directors, employees, partners, parents, subsidiaries, affiliates, divisions, predecessors, successors, representatives, agents, attorneys, accountants, advisors, assigns, and any other entities or individuals acting or purporting to act on their behalf or at their direction.

2.    Defendants object to the definition of "Black Swan" to the extent it purports to incorporate its officers, directors, employees, partners, parents, subsidiaries, affiliates, divisions, predecessors, successors, representatives, agents, attorneys, accountants, advisors, assigns, and any other entities or individuals acting or purporting to act on their behalf or at their direction.

3.    Defendants object to the definition of "Electronically-Stored Information" or "ESI" to the extent it is broader than the meaning of those terms in Rules 26 and 34 of the Federal Rules of Civil Procedure.

4.    Defendants object to the definition of "Electronic Media" on the ground that it is vague and ambiguous and on the ground and to the extent it imposes obligations beyond those required by the Federal Rules of Civil Procedure, the Southern District of New York Local Rules, or any other applicable laws or rules.

4

5.    Defendants object to the definition of "Erdenes" to the extent it purports to incorporate its officers, directors, employees, partners, parents, subsidiaries, affiliates, divisions, predecessors, successors, representatives, agents, attorneys, accountants, advisors, assigns, and any other entities or individuals acting or purporting to act on their behalf or at their direction.

6.    Defendants object to the definition of "Metadata" on the ground and to the extent it imposes obligations beyond those to be agreed upon by the parties in the forthcoming stipulated ESI Protocol.

7.    Defendants object to the definition of "Oyu Tolgoi LLC" to the extent it purports to incorporate its officers, directors, employees, partners, parents, subsidiaries, affiliates, divisions, predecessors, successors, representatives, agents, attorneys, accountants, advisors, assigns, and any other entities or individuals acting or purporting to act on their behalf or at their direction.

8.    Defendants object to the definition of "Pentwater" to the extent it purports to incorporate the relevant entities' officers, directors, employees, partners, parents, subsidiaries, affiliates, divisions, predecessors, successors, representatives, agents, attorneys, accountants, advisors, assigns, and any other entities or individuals acting or purporting to act on their behalf or at their direction, in their capacities as such.

9.    Defendants object to the definition of "Rio Tinto" to the extent it purports to incorporate any non-parties to this action, including Rio Tinto International Holdings Limited and any former or current officers, directors, employees, partners, parents, subsidiaries, affiliates, divisions, predecessors, successors, representatives, agents, attorneys, accountants, advisors, assigns, and any other entities or individuals acting or purporting to act on their behalf or at their direction.

10.    Defendants object to the definition of "Turquoise Hill" to the extent it purports to incorporate its officers, directors, employees, partners, parents, subsidiaries, affiliates, divisions, predecessors, successors, representatives, agents, attorneys, accountants, advisors, assigns, and any other entities or individuals acting or purporting to act on their behalf or at their direction.

11.     Defendants object to the definition of "You" to the extent it purports to incorporate any non-parties to this action, including any former or current officers, directors, employees, partners, parents, subsidiaries, affiliates, divisions, predecessors, successors, representatives, agents, attorneys, accountants, advisors, assigns, and any other entities or individuals acting or purporting to act on their behalf or at their direction.

## OBJECTIONS TO INSTRUCTIONS

1.     Defendants object to Instruction No. 1 to the extent that it requests that Defendants produce documents not within their own possession, custody, or control but within possession, custody, or control of Defendants' agents, attorneys, investigators, or other non-parties to this action.

2.     Defendants object to Instruction No. 2 to the extent that it imposes obligations beyond those required by the Federal Rules of Civil Procedure, the Southern District of New York Local Rules, or any other applicable laws or rules, by requesting that Defendants "organize and label the documents to correspond with the categories in these Requests."

3.     Defendants object to Instruction No. 5 to the extent that it imposes obligations beyond those required by the Federal Rules of Civil Procedure, the Southern District of New York Local Rules, or any other applicable laws or rules.

4.     Defendants object to Instruction Nos. 8-10 to the extent that they impose obligations beyond those required by the Federal Rules of Civil Procedure, the Southern District of New York Local Rules, or any other applicable laws or rules.

5.     Defendants object to Instruction No. 11 to the extent that it requests that Defendants continue supplementing their answers to each Request even after the close of the discovery period in the Action on the ground that it imposes an obligation beyond what is required under the Federal Rules of Civil Procedure.

## OBJECTIONS TO RELEVANT PERIOD

Defendants object to the definition of the "Relevant Period" for Defendants' responses on the ground that seeking discovery for such an expanded time period is overbroad and unduly burdensome, is not relevant to any claim or defense in this action, and is not reasonably calculated to lead to the discovery of admissible evidence. Where Defendants agree to provide responsive documents in response to the Requests below, Defendants will only provide documents from the time period from January 1, 2018 through and including July 31, 2019 unless otherwise indicated but are willing to meet and confer on the Relevant Period.

## SPECIFIC REQUESTS AND OBJECTIONS

**REQUEST NO. 1:**

All registers related to Oyu Tolgoi, including Documents concerning:

a) any project document register or project monthly report register;

b) any document control registers for engineering, procurement, and construction management;

c) any RSV drawing register for Shaft 2;

d) any mining design change register;

e) any feasibility study register;

f) any owners risk register;

g) any Rio Tinto owners team register;

h) any risk assessments; and

i) any collection of reports or Documents concerning the budget, finances, accounting, safety, schedule, and project risks related to Oyu Tolgoi.

**RESPONSE TO REQUEST NO. 1:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All registers related to Oyu Tolgoi." Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action .

In light of these objections, Defendants will not produce documents responsive to this Request as written; however, Defendants are willing to meet and confer regarding this Request.

**REQUEST NO. 2:**

All Documents concerning any project plans relating to Oyu Tolgoi that were filed every six months.

**RESPONSE TO REQUEST NO. 2:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning any project plans." Defendants further object to this Request as vague and ambiguous as to the phrase "filed every six months." Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.

In light of these objections, Defendants will not produce documents responsive to this Request as written; however, Defendants are willing to meet and confer regarding this Request.

8

**REQUEST NO. 3:**

All Documents concerning Richard Bowley, including his hiring by and separation from Rio Tinto, his Communications concerning Oyu Tolgoi and TRQ, and his action against Rio Tinto in the U.K. Employment Tribunals—London Central.  This Request is for the period from October 1, 2016 to the present.

**RESPONSE TO REQUEST NO. 3:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning Richard Bowley," regardless of their relevance to the claims or defenses in this Action.  Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action, including because it seeks documents relevant to an unrelated employment dispute.  Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

In light of these objections, Defendants will not produce documents responsive to this Request as written; however, Defendants are willing to meet and confer regarding this Request.

**REQUEST NO. 4:**

All Documents concerning (a) Blackswan and Oyu Tolgoi or TRQ, or (b) communications or reports exchanged between Blackswan and Rio Tinto, or (c) Blackswan's termination of its contract with Rio Tinto, or (d) disputes or resolution of disputes between Blackswan and Rio Tinto. This Request is for the period from January 1, 2016 to the present.

**RESPONSE TO REQUEST NO. 4**:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce, among other things, "All Documents concerning (a) Blackswan and Oyu Tolgoi or TRQ" and "All Documents concerning . . .communications or reports exchanged between Blackswan and Rio Tinto," over a nearly seven-year time period and regardless of their relevance to the claims or defenses in this Action. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action. Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

In light of these objections, Defendants will not produce documents responsive to this Request as written; however, Defendants are willing to meet and confer regarding this Request.

**REQUEST NO. 5:**

All Documents concerning the consulting firm Broadleaf's engagement, work, and Communications concerning Oyu Tolgoi. This Request is for the period from December 1, 2015 through the present.

**RESPONSE TO REQUEST NO. 5**:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce

"All Documents concerning" Broadleaf's engagement, work and Communications regarding Oyu Tolgoi over a seven-year period. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.

In light of these objections, Defendants will not produce documents responsive to this Request as written; however, Defendants are willing to meet and confer regarding this Request.

**REQUEST NO. 6:**

All Documents concerning Communications between Rio Tinto and TRQ relating to Oyu Tolgoi.

**RESPONSE TO REQUEST NO. 6:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning Communications" between Rio Tinto and TRQ. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged Documents during the Relevant Period responsive to this Request concerning the cost or schedule of Oyu Tolgoi that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

**REQUEST NO. 7:**

All Documents concerning Communications between Rio Tinto or TRQ and Erdenes relating to Oyu Tolgoi.

**RESPONSE TO REQUEST NO. 7**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning Communications" between the entities listed. Defendants further object to this Request on the ground that it seeks documents outside of Defendants' possession, custody, or control to the extent it seeks Communications between TRQ and Eredenes. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged Documents during the Relevant Period concerning Communications between Rio Tinto and Erdenes concerning the cost or schedule of Oyu Tolgoi that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

**REQUEST NO. 8:**

All Documents concerning Communications between Rio Tinto or TRQ and Red Path Mining, Dayan, and Hasu Megawatt relating to Oyu Tolgoi.

**RESPONSE TO REQUEST NO. 8**:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning Communications" between the entities listed.  Defendants further object to this Request on the ground that it seeks documents outside of Defendants' possession, custody, or control to the extent it seeks Communications between TRQ and Red Path Mining, Dayan, and Hasu Megawatt.  Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.

In light of these objections, Defendants will not produce documents responsive to this Request as written; however, Defendants are willing to meet and confer regarding this Request.

**REQUEST NO. 9:**

All Documents concerning Communications between Rio Tinto or TRQ and Oyu Tolgoi LLC concerning Oyu Tolgoi.

**RESPONSE TO REQUEST NO. 9:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning Communications . . . concerning Oyu Tolgoi" between the entities listed.  Defendants further object to this Request on the ground that it seeks documents outside of Defendants' possession, custody, or control to the extent it seeks Communications between TRQ and Oyu

Tolgoi LLC. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged Documents during the Relevant Period concerning Communications between Rio Tinto and Oyu Tolgoi LLC concerning the cost or schedule of Oyu Tolgoi that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

**REQUEST NO. 10:**

All Documents concerning the selection, hiring, appointment, election, retention, replacement, and dismissal of officers and directors of TRQ.

**RESPONSE TO REQUEST NO. 10:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning Communications" between the entities listed. Defendants further object to this Request on the ground and to the extent that it seeks documents outside of Defendants' possession, custody, or control. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action. Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

For these reasons, Defendants will not produce documents in response to this Request.

**REQUEST NO. 11:**

All minutes, presentations, notes, agendas, and schedules of the Board of Directors, any Board committee, the Project Executive Committee, the Project Steering Committee, or the Executive Committee of (a) Rio concerning Oyu Tolgoi, Oyu Tolgoi LLC, TRQ, or Erdenes, (b) TRQ, and (c) Oyu Tolgoi LLC.

**RESPONSE TO REQUEST NO. 11:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All minutes, presentations, notes, agenda, and schedules" of board materials for entities other than Rio Tinto.  Defendants further object to this Request because "Project Steering Committee" is vague and ambiguous and based upon reasonable investigation to date, Defendants have not identified such a committee.  Defendants further object to this Request on the ground and to the extent that it seeks documents outside of Defendants' possession, custody, or control.  Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.  Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged documents during the Relevant Period responsive to this Request concerning the cost or schedule of Oyu Tolgoi that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

**REQUEST NO. 12:**

All Documents and Communications concerning the OT Board Special Committee established on November 30, 2020.  The time period for this Request is from November 30, 2020 through the present.

**RESPONSE TO REQUEST NO. 12**:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents and Communications concerning the OT Board Special Committee."  Defendants further object to this Request on the ground and to the extent that it seeks documents outside of Defendants' possession, custody, or control.  Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action. Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

For these reasons, Defendants will not produce documents in response to this Request.

**REQUEST NO. 13:**

All Documents concerning contracts, agreements, and understanding between or among any of Rio Tinto, TRQ, Oyu Tolgoi LLC, Erdenes, and the Mongolian Government.

**RESPONSE TO REQUEST NO. 13**:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and

disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning contracts, agreements, and understanding." Defendants further object to this Request on the ground and to the extent that it seeks documents outside of Defendants' possession, custody, or control. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action. Defendants further object to this Request on the ground that "agreements" and "understanding" is vague and ambiguous. Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged contracts between or among any of Rio Tinto, TRQ, Oyu Tolgoi LLC, Erdenes, and the Mongolian Government during the Relevant Period regarding the cost or schedule of Oyu Tolgoi that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

**REQUEST NO. 14:**

All Documents concerning the ICG and the ICG Report, including:

a) all Documents referenced in Appendix B of the ICG Report;

b) all transcripts or notes of interviews conducted in connection with the ICG;

c) all Documents identified or collected in connection with the ICG, even if such Documents were not produced to the ICG; and

d) all Communications concerning the ICG.

This Request is for the period from October 1, 2016 to the present

**RESPONSE TO REQUEST NO. 14:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning the ICG and the ICG Report."  Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.  Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged Documents during the Relevant Period regarding the ICG Report that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

**REQUEST NO. 15:**

All Communications and Documents concerning Communications between Rio Tinto or Turquoise Hill and the Mongolian Government relating to Oyu Tolgoi.

**RESPONSE TO REQUEST NO. 15:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Communications and Documents concerning Communications" between the entities listed "relating to Oyu Tolgoi".  Defendants further object to this Request on the ground that it seeks

documents outside of Defendants' possession, custody, or control to the extent it seeks Communications between TRQ and the Mongolian Government. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action. Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged Communications between Rio Tinto and the Mongolian Government during the Relevant Period regarding the cost and schedule of Oyu Tolgoi that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

**REQUEST NO. 16:**

All Documents concerning Defendants' public statements concerning Oyu Tolgoi and Turquoise Hill.

**RESPONSE TO REQUEST NO. 16:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" Defendants' public statements without identifying any specific public statements. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action. Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected

19

from discovery. Defendants further object to this Request as seeking Documents equally available to Lead Plaintiffs from sources other than Defendants, including publicly available sources.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged Documents during the Relevant Period concerning Defendants' public statements about the schedule and cost of Oyu Tolgoi that remain at issue in this Action and that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

**REQUEST NO. 17**:

All Documents concerning public statements by Turquoise Hill, including Documents concerning provision of information by Rio Tinto to Turquoise Hill and drafting, review, and approval of Turquoise Hill's public statements by Rio Tinto and Turquoise Hill.

**RESPONSE TO REQUEST NO. 17**:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" public statements made by Turquoise Hill. Defendants further object to this request on the ground and to the extent that it seeks documents outside of Defendants' possession, custody, or control. Defendants further object to this Request because it seeks documents that are not relevant to any claim or defense asserted in this Action insofar as statements made by TRQ are no longer at issue in this Action. Defendants further object to this Request because "public statements" is undefined and vague and ambiguous. Defendants further object to this Request to the extent it implies any knowledge on the part of Defendants as to whether any

information provided by Rio Tinto to TRQ relates to any such "public statements." Defendants further object to this Request to the extent it implies that Defendants had any authority to "approv[e]" any statements made by TRQ. Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

For these reasons, Defendants will not produce documents in response to this Request.

**REQUEST NO. 18:**

All Documents concerning Defendants' and Turquoise Hill's Communications with analysts, reporters, and investors concerning Oyu Tolgoi and Turquoise Hill.

**RESPONSE TO REQUEST NO. 18:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" certain Communications. Defendants further object to this Request on the ground that it seeks documents outside of Defendants' possession, custody, or control to the extent it seeks Communications between Turquoise Hill and any other individuals or entities. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action. Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged Documents during the Relevant Period responsive to this Request concerning Defendants' communications with analysts, reporters, and investors relating to the cost and schedule of Oyu Tolgoi that remain at issue in this Action and that can be located following a

reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

**REQUEST NO. 19:**

All Documents concerning purported geotechnical issues at Oyu Tolgoi and concerning public statements concerning such issues by Defendants or Turquoise Hill.

**RESPONSE TO REQUEST NO. 19:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" certain geotechnical issues and statements. Defendants further object to this Request on the ground that it seeks documents outside of Defendants' possession, custody, or control to the extent it seeks Documents concerning TRQ's public statements. Defendants further object to this Request because "public statements" are undefined, vague, and ambiguous. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action, including to the extent it seeks documents concerning public statements made by TRQ which are no longer at issue in this Action. Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged Documents during the Relevant Period (i) concerning geotechnical issues at Oyu Tolgoi that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians; and

(ii) concerning Defendants' public statements about such geotechnical issues that remain at issue in this Action and that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

**REQUEST NO. 20:**

All Documents concerning the MPT, including all Documents and Communications concerning:

a) the MPT's need to redesign short-term plans due to the lack of reliable geotechnical data in the original feasibility studies, and

b) Rio Tinto's failure to update the feasibility studies with observations from the MPT's work in developing short-term mining plans. See Complaint ¶¶ 258-61.

**RESPONSE TO REQUEST NO. 20:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning the MPT." Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged Documents during the Relevant Period responsive to this Request concerning the cost and schedule of Oyu Tolgoi that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

**REQUEST NO. 21:**

All Documents concerning the 2012 Oyu Tolgoi Feasibility Study, the 2016 Oyu Tolgoi Technical Report, the 2016 Oyu Tolgoi Feasibility Study, also referred to as OTFS16, and the Underground Development Plan for Oyu Tolgoi. This Request is for Documents without date limitation.

**RESPONSE TO REQUEST NO. 21:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the studies and plan referenced and without any date limitation. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.

For these reasons, Defendants will not produce documents responsive to this Request.

**REQUEST NO. 22:**

All Documents concerning the design, engineering, procurement, construction, budget, schedule, work performed, and problems encountered concerning Shaft 1, Shaft 2, Shaft 5, the central heating plant, and primary crusher 1 (or "PC1") at Oyu Tolgoi, including problems with steel work for Shaft 2 and Shaft 5 and the Shaft 2 Headframe Construction Readiness Program ("CRP").

**RESPONSE TO REQUEST NO. 22:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein.

Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the matters referenced. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.

For these reasons, Defendants will not produce documents responsive to this Request.

## REQUEST NO. 23:

All Documents concerning reports prepared by Enthalpy concerning OT, including Documents and Communications sufficient to identify all recipients of such reports.

## RESPONSE TO REQUEST NO. 23:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the matters referenced. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object on the ground that "Enthalpy" is vague and ambiguous, and it is not a defined term.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged Documents during the Relevant Period responsive to this Request concerning the cost and schedule of Oyu Tolgoi that can be located following a reasonably diligent

search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

**REQUEST NO. 24:**

All Documents concerning the May 2015 audit related to Shaft 2 and communications with Red Path Mining related to the audit.

**RESPONSE TO REQUEST NO. 24:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the May 2015 audit. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action. Defendants further object on the ground that "the May 2015 audit" is vague and ambiguous.

For these reasons, Defendants will not produce documents in response to this Request.

**REQUEST NO. 25:**

All Documents concerning the Value Milestones referenced in the ICG Report.

**RESPONSE TO REQUEST NO. 25:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this

Action.  Defendants further object to this Request as duplicative of Request No. 14.  Defendants further object to this Request because "Value Milestones" is undefined.  Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

For these reasons, Defendants will not produce documents in response to this Request.

**REQUEST NO. 26**:

All Documents concerning the Owner monthly reports referenced in the ICG Report.

**RESPONSE TO REQUEST NO. 26**:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters.  Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.  Defendants further object to this Request as duplicative of Request No. 14.  Defendants further object to this Request as vague and ambiguous because "Owner monthly reports" is undefined in either the Requests or the referenced ICG Report.  Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

For these reasons, Defendants will not produce documents in response to this Request.

**REQUEST NO. 27:**

All Documents concerning Communications between Jacobs and Oyu Tolgoi LLC, Turquoise Hill, or Rio Tinto, including concerning Jacobs' contract, revisions to the contract, and Jacobs' performance under the contract.

**RESPONSE TO REQUEST NO. 27:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning Communications" between the entities listed. Defendants further object to this Request on the ground that it seeks documents outside of Defendants' possession, custody, or control to the extent it seeks Communications between third-party entities. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.

In light of these objections, Defendants will not produce documents responsive to this Request as written; however, Defendants are willing to meet and confer regarding this Request.

**REQUEST NO. 28:**

Documents sufficient to identify Jacques, Soirat, ███████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ and ██████████ ██████' positions at Rio, Turquoise Hill, and Oyu Tolgoi LLC, and all Documents concerning their work and Communications concerning Oyu Tolgoi's budget, schedule, or progress, including (i)

28

all Documents concerning the departure of ████████████████, and ████████ from Oyu Tolgoi, (ii) all Documents concerning the hiring of ██████████ and (iii) all Communications between any of these individuals and Richard Bowley.

**RESPONSE TO REQUEST NO. 28:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "all Documents concerning" the listed individuals' "work and Communications" and "all Communications" between the individuals and Bowley, regardless of the subject matter of the Communications. Defendants further object to this Request on the ground that it is compound, complex, and contains multiple subparts. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action. Defendants further object to this Request to the extent it seeks information relating to purported individuals having no affiliation with Defendants, including ████████████.

For these reasons, Defendants will not produce documents in response to this Request.

**REQUEST NO. 29:**

All Documents concerning the surface construction manager at Oyu Tolgoi, including reports by this manager and this manager's dismissal in May 2018.

**RESPONSE TO REQUEST NO. 29:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and

disproportional to the needs of this Action, including to the extent it asks Defendants to produce "all Documents concerning" the surface construction manager. Defendants further object to this Request as vague and ambiguous because "surface construction manager" is undefined. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action .

In light of these objections, Defendants will not produce documents responsive to this Request as written; however, Defendants are willing to meet and confer regarding this Request.

**REQUEST NO. 30:**

All Documents concerning meetings between Rio Tinto or Turquoise Hill and Jacobs or Red Path Mining.

**RESPONSE TO REQUEST NO. 30:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" meetings between the referenced entities. Defendants further object to this Request on the ground and to the extent that it seeks documents outside of Defendants' possession, custody, or control. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged Documents during the Relevant Period concerning meetings between Rio Tinto and Jacobs or Red Path Mining concerning the cost and schedule of Oyu Tolgoi

30

that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

**REQUEST NO. 31**:

All Documents concerning Forecast 1 and Forecast 2 for Oyu Tolgoi, including all Documents concerning de-scoping as described in the Complaint at ¶¶ 169, 171-73, 182. This Request is for Documents without date limitation.

**RESPONSE TO REQUEST NO. 31**:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters and without any date limitation. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action and seeks information not reasonably calculated to lead to the discovery of admissible evidence.

In light of these objections, Defendants will not produce documents responsive to this Request as written; however, Defendants are willing to meet and confer regarding this Request.

**REQUEST NO. 32**:

All Documents concerning visits to Mongolia by Defendants, other Rio Tinto officers or directors, and Turquoise Hill officers or directors.

**RESPONSE TO REQUEST NO. 32**:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein.

Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the any visits to Mongolia made by an officer or director of Rio Tinto or TRQ. Defendants further object to this Request on the ground and to the extent that it requests Documents outside Defendants' possession, custody, or control. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.

In light of these objections, Defendants will not produce documents responsive to this Request as written; however, Defendants are willing to meet and confer regarding this Request.

**REQUEST NO. 33:**

All Documents concerning the resignation of ▮▮▮▮▮▮ from TRQ's Board, the resignation of ▮▮▮ from TRQ, the departure of Quellmann from TRQ, and the departure of Jacques from Rio Tinto, including (i) Documents concerning all reasons for the resignations or departures, (ii) Documents concerning any terms of the resignations or departures, (iii) Documents concerning any compensation paid, to be paid, forgone or reduced in connection with the resignations or departures, and o(iv) Documents concerning whether such resignations or departures were voluntary.

**RESPONSE TO REQUEST NO. 33:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters. Defendants further object to this Request on the ground and

32

to the extent that it seeks documents outside of Defendants' possession, custody, or control. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.  Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

For these reasons, Defendants will not produce documents in response to this Request.

## REQUEST NO. 34:

All Documents concerning any inquiry, investigation, audit, or fact-finding by any Government relating to the subject matter of the Complaint. This Request includes:

a) All Documents, including privilege logs, You produced in connection with any such Government inquiry or investigation;

b) All records, transcripts or notes of testimony or interviews given by any Person in connection with any such Government inquiry or investigation;

c) All Communications with any Government entity concerning any such Government inquiry or investigation;

d) All requests by any Government for information, testimony, or Documents in connection with any such inquiry or investigation (including subpoenas, letters, Wells notices, and similar Documents), including any search terms and custodians proposed in connection with any requests for the production of Documents;

e) Documents sufficient to identify the custodians whose Documents You produced to any Government in connection with any such inquiry or investigation, and the date ranges covered by each such custodial production; and

f) The search terms used to collect any Documents produced to any Government, including Mongolia's Parliamentary Working Group, the SEC, the U.K. Serious Fraud Office and Financial

Conduct Authority, the Australian Securities and Investments Commission, the Swiss Office of the Attorney General, and the U.K. Employment Tribunal, in connection with any such inquiry or investigation.

**RESPONSE TO REQUEST NO. 34:**

      Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents" concerning the referenced matters.  Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.  Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

      For these reasons, Defendants will not produce documents in response to this Request.

**REQUEST NO. 35:**

      All Documents and Communications concerning the investigations by the Swiss Office of the Attorney General related to the Defendants as referenced in the Complaint.

**RESPONSE TO REQUEST NO. 35:**

      Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents" concerning the referenced matters.  Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this

Action.  Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

For these reasons, Defendants will not produce documents in response to this Request.

**REQUEST NO. 36:**

All Documents and Communications concerning the tax assessment Oyu Tolgoi received from the Mongolian Tax Authority, which TRQ announced on January 15, 2018, and the agreements reported by the Centre for Research on Multinational Corporations that enabled Rio and TRQ to lower the taxes paid to Mongolia by hundreds of millions of dollars.

**RESPONSE TO REQUEST NO. 36:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the tax assessment.  Defendants further object to this Request on the ground that it is compound, complex, and contains multiple subparts.  Defendants further object to this Request to because it seeks documents that are not relevant to any claim or defense asserted in this Action.  Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

For these reasons, Defendants will not produce documents in response to this Request.

**REQUEST NO. 37:**

All Documents and Communications concerning Jacques's visit to Mongolia to meet with the Mongolian prime minister on January 22, 2018 and Jacques's and Soirat's meeting with the Mongolian prime minister and other government representatives on January 23, 2018.

**RESPONSE TO REQUEST NO. 37**:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters. Defendants further object to this Request on the ground and to the extent that it requests Documents outside Defendants' possession, custody, or control. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action. Defendants further object to this Request as duplicative of Request No. 32.

In light of these objections, Defendants will not produce documents responsive to this Request as written; however, Defendants are willing to meet and confer regarding this Request.

**REQUEST NO. 38**:

All Documents concerning any internal investigation, including any investigations, reports, compliance reviews, or similar studies or assessments, including any investigation by ████ ████████████████ or Baker McKenzie, related to the subject matters of the Complaint, including:

a) All Documents collected or reviewed in connection with any such internal investigation;

b) All records, transcripts or notes of interviews given by any Person in connection with any such internal investigation;

c) All Communications concerning any such investigation with Rio Tinto management, Turquoise Hill management, Rio Tinto's Executive Committee, the Board of Directors of Rio

Tinto or TRQ or any committee of either Board, any Government, the ICG inquiry, securities analysts, or investors; and

d) All Communications concerning the ICG investigation.

## RESPONSE TO REQUEST NO. 38:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters. Defendants further object to this Request on the ground and to the extent that it requests Documents outside Defendants' possession, custody, or control. Defendants further object to this Request because it seeks information that is privileged or that is otherwise protected from discovery. Defendants further object to this Request on the ground that "related to the subject matters of the Complaint" is vague and ambiguous.

For these reasons, Defendants will not produce documents in response to this Request.

## REQUEST NO. 39:

All Documents concerning the Business Evaluation Department or the Technical Evaluation Group and Oyu Tolgoi, including all Documents concerning:

a) On-site reviews of the OT project;

b) All reports created by or received by TEG or BED related to the OT project;

c) All Communications concerning the OT project between TEG or BED and Rio Tinto management, Turquoise Hill management, Rio Tinto's Executive Committee, Rio Tinto's Investment Committee, Rio Tinto's Evaluation Committee, or the Rio Tinto or TRQ Board of Directors or any Board committee; and

d) Any presentations to Rio Tinto management, Turquoise Hill management, Rio Tinto's Executive Committee, or the Rio Tinto or TRQ Board of Directors or any Board committee.

**RESPONSE TO REQUEST NO. 39**:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters.  Defendants further object to this Request on the ground that "[o]n-site reviews" is vague and ambiguous.  Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged Documents during the Relevant Period responsive to this Request concerning the cost and schedule of Oyu Tolgoi that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

**REQUEST NO. 40**:

All Documents and Communications concerning the budget for the OT project.

**RESPONSE TO REQUEST NO. 40**:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce

"All Documents concerning" the referenced matter. Defendants further object to this Request because "budget" is undefined. Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged Documents during the Relevant Period responsive to this Request that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

## REQUEST NO. 41:

All Documents and Communications concerning the schedule for the OT project.

## RESPONSE TO REQUEST NO. 41:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters. Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged Documents during the Relevant Period responsive to this Request that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

**REQUEST NO. 42:**

All Documents concerning Jakob Stausholm's work and Communications concerning Oyu Tolgoi, Richard Bowley, or Turquoise Hill. This Request is for the time period from October 1, 2016 through the present.

**RESPONSE TO REQUEST NO. 42:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action. Defendants further object to this Request on the ground that "Jakob Stausholm's work" is vague and ambiguous. Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

In light of these objections, Defendants will not produce documents responsive to this Request as written; however, Defendants are willing to meet and confer regarding this Request.

**REQUEST NO. 43:**

All Documents concerning personnel files for Jacques and Soirat, including (i) performance reviews, (ii) Documents related to any promotions, and (iii) Documents related to any disciplinary action taken or contemplated against Jacques or Soirat.

**RESPONSE TO REQUEST NO. 43:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein.

Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action. Defendants further object to this Request on the ground that "concerning personnel files" is vague and ambiguous. Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

For these reasons, Defendants will not produce documents in response to this Request.

## REQUEST NO. 44:

All Documents concerning the Individual Defendants' compensation (including salary, incentive compensation, cash, equity, options, bonuses, or otherwise), including the relationship between such compensation and the progress of OT.

## RESPONSE TO REQUEST NO. 44:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters. Defendants further object to this Request to the extent that it seeks documents—namely, compensation information—that are not relevant to any claim or defense asserted in this Action. Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

For these reasons, Defendants will not produce documents in response to this Request.

**REQUEST NO. 45**:

All Documents concerning the Individual Defendants' trading in TRQ securities, including sales, purchases, or contemplated transactions in TRQ securities and reasons for performing the transactions.

**RESPONSE TO REQUEST NO. 45**:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters. Defendants further object to this Request to the extent it seeks documents that are not within their possession, custody, or control insofar as they relate to trading in TRQ securities. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-public, non-privileged documents during the Relevant Period responsive to this Request that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

**REQUEST NO. 46**:

All Documents and Communications concerning any complaints, reports, or allegations relating to Oyu Tolgoi reported to, brought to the attention of, or identified by Rio's Executive Committee, human resources department, in-house or outside counsel, compliance personnel, ethics hotlines, or any whistleblower or any similar complaint or compliance reporting channels,

including any disciplinary actions, terminations, separations or other similar actions undertaken in response.

## RESPONSE TO REQUEST NO. 46:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action. Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

In light of these objections, Defendants will not produce documents responsive to this Request as written; however, Defendants are willing to meet and confer regarding this Request.

## REQUEST NO. 47:

All Documents and Communications concerning Maurice Duffy's meeting with ███ ███ on September 6, 2017.

## RESPONSE TO REQUEST NO. 47:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this

Action.  Defendants further object to this Request to the extent that it seeks information that is privileged or that is otherwise protected from discovery.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged Documents during the Relevant Period responsive to this Request that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

## REQUEST NO. 48:

All Documents and Communications related to the members of the ICG, including all Documents and Communications related to each ICG member's (i) work performed outside of an ICG capacity, and (ii) Communications with Rio employees outside of an ICG context.

## RESPONSE TO REQUEST NO. 48:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters and to the extent it seeks documents relating to ICG members concerning work performed outside of that capacity. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.  Defendants further object to this Request on the ground that it seeks documents outside of Defendants' possession, custody, or control to the extent it seeks Documents and Communications concerning ICG Members' work performed outside of an ICG capacity.

For these reasons, Defendants will not produce documents in response to this Request.

**REQUEST NO. 49:**

All Documents and Communications concerning TEG and BED reports, analyses or reviews concerning Oyu Tolgoi, including Documents sufficient to identify all recipients of such reports, analyses or reviews.

**RESPONSE TO REQUEST NO. 49:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters. Defendants further object to this Request on the ground that "analyses or reviews concerning Oyu Tolgoi" is vague and ambiguous. Defendants further object to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged Documents during the Relevant Period responsive to this Request concerning the cost and schedule of Oyu Tolgoi that can be located following a reasonably diligent search, and subject to negotiations between the parties regarding appropriate search terms and custodians.

**REQUEST NO. 50:**

All Documents concerning the schedules or calendars of Jacques, Soirat, ███████ ███████ and ███████ including any logs, calendars, or schedules relating to any trips to Mongolia, meetings or Communications with TRQ, meetings or Communications with Bowley or Duffy, and any visits made by Rio or TRQ executives to Oyu Tolgoi.

**RESPONSE TO REQUEST NO. 50**:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters.

In light of these objections, Defendants will not produce documents responsive to this Request as written; however, Defendants are willing to meet and confer regarding this Request.

**REQUEST NO. 51**:

All insurance policies or agreements, including directors and officers liability insurance policies or agreements, which You may use to satisfy all or part of a possible judgment in this Action or to indemnify or reimburse for payments made to satisfy a possible judgment in this Action.

**RESPONSE TO REQUEST NO. 51**:

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters.  Defendants also object to this request to the extend it is duplicative of documents produced in connection with Defendants' initial disclosures.

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged documents sufficient to identify all insurance policies or agreements responsive to this Request that can be located following a reasonably diligent search.

**REQUEST NO. 52:**

Documents sufficient to show the organizational structures of Rio Tinto, Turquoise Hill, Rio's Growth and Innovation division, the Oyu Tolgoi Expansion Project, the Project Steering Committee, and the Project Executive Committee, including the names of the employees that filled each role designated on the organizational charts throughout the Relevant Time Period.

**RESPONSE TO REQUEST NO. 52:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action, including to the extent it asks Defendants to produce "All Documents concerning" the referenced matters.  Defendants object to this Request as vague and ambiguous as to the purported "Project Steering Committee."

Subject to and without waiving any of the foregoing objections, Defendants respond that they will produce non-privileged documents in response to this Request that can be located following a reasonably diligent search.

**REQUEST NO. 53:**

Your Document retention, preservation, or destruction policies.

**RESPONSE TO REQUEST NO. 53:**

Defendants incorporate by reference their General Objections, Objections to Instructions, Objections to Definitions, and Objections to Relevant Period as if fully set forth herein. Defendants object to this Request on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of this Action.

For these reasons, Defendants will not produce documents in response to this Request.


Dated:  January 13, 2022                    **QUINN EMANUEL URQUHART &**
                                            **SULLIVAN, LLP**

                                            */s/ Corey Worcester*
                                            Corey Worcester
                                            Renita Sharma
                                            Hope Skibitsky
                                            Leigha Empson
                                            Quinn Emanuel Urquhart & Sullivan, LLP
                                            51 Madison Avenue
                                            New York, NY 10010
                                            Tel:  212-849-7000
                                            Fax: 212-849-7100

                                            *Counsel for Defendants Rio Tinto plc, Rio*
                                            *Tinto Limited, Jean-Sébastien Jacques*
                                            *and Arnaud Soirat*

# PROOF OF SERVICE

**STATE OF NEW YORK, COUNTY OF NEW YORK**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in New York, New York.  My business address is 51 Madison Ave 22nd floor, New York, NY 10010.

On January 13, 2023, I served true copies of the following document(s) described as **DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION** and **DEFENDANTS' CONFIDENTIAL RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES** on the interested parties in this action as follows:

| Recipient: | Email Address: |
|---|---|
| Salvatore Graziano<br>Michael Blatchley<br>Jai Chandrasekhar<br>Nicole Santoro<br>1251 Avenue of the Americas<br>New York, NY 10020 | Salvatore@blbglaw.com<br>Michaelb@blbglaw.com<br>Jai@blbglaw.com<br>Nicole.Santoro@blbglaw.com |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I transmitted PDF format copies of the document(s) described above to the e-mail addresses on the attached Service List pursuant to the agreement between the parties to serve discovery, in lieu of other service methods, by email under Fed. R. Civ. P. 5(b)(2)(E).  The documents were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 13, 2023 at New York, New York.


/s/ *Sam Cleveland*
_____
Sam Cleveland