# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
### ATTORNEYS AT LAW
NEW YORK • CALIFORNIA • ILLINOIS • LOUISIANA • DELAWARE

SALVATORE J. GRAZIANO
(212) 554-1538
salvatore@blbglaw.com

April 23, 2025

**VIA ECF**

Hon. Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re:   *In re Turquoise Hill Resources Ltd. Sec. Litig.*, No. 1:20-cv-08585 (LJL) (S.D.N.Y.)

Dear Judge Liman:

Pursuant to Your Honor's Rule §4(C), we write on behalf of Lead Plaintiff Pentwater concerning Defendants' improper assertion of privilege over (i) communications withheld under a purported "common interest" privilege where (among other things) the participants were currently or potentially adverse; and (ii) communications concerning the OT cost overruns and delays that are predominantly or business (and not "legal") in nature involving the Technical Evaluation Group ("TEG") and other technical consultants that were prepared at the direction of non-lawyers. Plaintiff respectfully requests that Defendants submit the documents identified in Ex. A for *in camera* review and produce those determined not to be privileged, as well as any similar withheld documents in accordance with the Court's rulings.

**I.**    **Defendants' Delays and Production of a Defective Privilege Log**

Since discovery restarted in December 2024, Pentwater has been frustrated in its efforts to obtain relevant documents and resolve privilege disputes concerning documents relevant to upcoming depositions. Defendants serially delayed the production of any privilege log—producing their first such log on February 13, 2025, after repeatedly missing agreed-upon deadlines—and the log they did produce was facially defective and failed to comply with the parties' ESI protocol. Ex. B (Pl. 3/5/25 Ltr.) at 1-2 and Ex. C (Pl. 3/3/25 Email).

Plaintiff immediately identified numerous improper privilege assertions and, in response, on March 19, Defendants agreed to produce hundreds of improperly withheld communications—including those involving whistleblower Richard Bowley, whose deposition was then a week away—and a revised log a day later. Exs. D, S. Plaintiff made further challenges to that log (Ex. E, Pl. 3/26/25 Email) and Defendants again produced documents that had been improperly withheld. Ex. F (Def. 3/28/25 Email). Nevertheless, Defendants continue to press numerous improper privilege assertions—including by asserting "common interest" privilege over communications in which the parties are adverse and those that are primarily business (not "legal") in nature. *See* Ex. G (Pl. 4/11/25 Ltr.); Ex. H (Def. 4/18/25 Ltr.).

        **Adverse Party Communications.** TRQ and Rio have been adverse to each other concerning issues central to this litigation before and throughout the Class Period. For example, Rio and TRQ clearly viewed each other as potential adversaries ███████████

TRQ and Rio's contemporaneous communications confirm that, whatever overlapping *business* interests existed, TRQ and Rio were *legally* adverse on these topics—with ▮▮▮ (Ex. I) and ▮▮▮ Ex. J. That adversity crystallized ▮▮▮ (Ex. K at -9481), ▮▮▮ (Ex. L at -5582), and ▮▮▮ Ex. M (at -9059). And consistent with its previous adversity to TRQ, ▮▮▮ Ex. N.

Of course, after the Class Period, TRQ initiated an arbitration against Rio in connection with the financing of OT in light of the cost overruns and delays (¶490), and helped establish a special committee to investigate Rio's responsibility for the cost overruns and delays. ¶291. But notwithstanding the clearly adverse nature of their relationship, Defendants have withheld communications between TRQ and Rio as protected by the "common interest" privilege as set forth in Ex. A—including documents concerning ▮▮▮ (Entries 272, 1,231), ▮▮▮ (Entries 6,205, 6,310, 7,512), ▮▮▮ (Entries 16,339-40, 16,842-44, and 16,898), and ▮▮▮ (Entry 19,539).[1]

To assert privilege, "the party invoking it must demonstrate that the information at issue was a communication between client and counsel or his employee, that it was intended to be and was in fact kept confidential, and that it was made in order to assist in obtaining or providing legal advice." *SR Intern. Business Ins. Co. Ltd. v. World Trade Center Props. LLC*, 2022 WL 1334821, at * 1 (S.D.N.Y.). Under settled law, the common interest privilege "does not apply where the party that shares a common interest with the party asserting privilege is itself a potentially adverse party." *E.g.*, *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 341 F.R.D. 10, 16 (S.D.N.Y. 2022). Further, the nature of the "common interest" must "be identical, not similar, and be legal," not commercial, *SR Intern.*, 2022 WL 1334821, at * 3, and established through proof, such as by affidavits and testimony—not "unsworn motion papers authored by attorneys." *City of Almaty v. Ablyazov*, 2019 WL 2865102, at *8 (S.D.N.Y. July 3, 2019).

Apparently conceding the withheld communications do not meet this test, Defendants pivot to argue a broader privilege under Canadian law applies. Ex. H (Def. 4/18/25 Ltr.). Specifically, Defendants cite *Maximum Ventures Inc. v. de Graaf*, 2007 BCCA 510 and *Iggillis Holdings Inc. v. Canada (National Revenue)*, 2018 FCA 51 to argue that "common interest" in Canada protects communications between adverse parties and that a "common goal" or "ongoing economic relationship" like TRQ and Rio had in OT suffice. But neither case says anything of the sort.[2]

---

[1] The documents in Ex. A are also improperly claimed as privileged because they, among other things, concern predominantly business (not legal) matters or do not appear to involve any attorneys.

[2] Plaintiff's citations to Canadian case law are compiled in Ex. R. Plaintiff does not concede Canadian law applies and, indeed, Ex. A shows only one entry involving a Canadian licensed attorney based on Plaintiff's investigation. *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 76 (S.D.N.Y. 2006) (proponent's burden to establish foreign privilege). Plaintiff reserves its rights to respond if Defendants now argue different law applies.

In both *Maximum* and *Iggillis*, the courts made clear that, just like under U.S. law, the proponent must first establish the challenged communications are in fact privileged—i.e., protected under the solicitor-client privilege that protects communications between a lawyer and a client, made for the purpose of seeking or giving legal advice, that is intended to be confidential. Once that showing has been made, to invoke "common interest," the proponent must then prove a sufficiently "mutual interest" in accomplishing the "transaction which the disclosure was designed to facilitate" that would permit "the extension of the privilege." *Iggillis*, 2018 FCA 51 at 33. Canadian courts following *Maximum* and *Iggillis* have made clear that the "common interest" must relate specifically to the "subject matter of the legal advice" at issue—***not***, as Defendants suggest, a "general interest in the success" of a joint venture. *Ross v. Bragg*, 2020 BCSC 337, at 36.[3]

**Non-Legal Business and Technical Documents.** Defendants have also improperly asserted privilege over business (not legal) communications. For example, Defendants have claimed common interest, attorney-client, and work-product privilege over comments by the "independent" TEG—███████████████████████████ (Ex. O) (Entries 13,711-16; 12,097-12,099; 11,942-53, 5573, and 5,669)—and withheld hundreds of documents concerning ███████████████████████████ *See, e.g.*, Ex. P, RT001295011. While many of the challenged entries lack any attorney involvement, those that do appear to address non-legal issues—████████████████ ███████████████████████████ (Ex. Q at -9986)— appear to only include an attorney to "invoke" privilege, and withhold non-legal attachments in full. *See, e.g.*, Ex. A (Entries 4449-50, 6,756-58, 10,994, 12593-95); *In re Signet Jewelers Ltd. Sec. Litig.*, 332 F.R.D. 131, 136 (S.D.N.Y. 2019) (that counsel was copied "does not make them privileged"); *Ross*, 2020 BCSC 337, at 34 ("a lawyer is not a safe deposit box").[4]

## II.     Plaintiff's Requested Relief

For the foregoing reasons, Plaintiff respectfully requests that Defendants be required to produce the documents identified in Ex. A for *in camera* review and, following the Court's rulings, produce any non-privileged documents to Plaintiff, as well any similar documents that would be deemed non-privileged in accordance with the Court's rulings. *See Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 654 (S.D.N.Y. 2019) (following this process for *in camera* review).

---

[3] *See also id.* at 27-43 (rejecting common interest between joint project developers because there was no "common interest" in advice at issue); *Hui 789 Development Ltd. v. Fraserway RV Limited Partnership*, 2023 BCSC 2479, at 39-40 ("common interest" for "transaction to close" exists "in every commercial transaction" and is insufficient). While *Maximum Ventures* and *Iggillis* dealt with the solicitor-client privilege (and not Canada's litigation privilege) the latter does not provide protection either.  In Canada, that privilege only covers material made for the "dominant" purpose of the instant litigation (and ends when the litigation does) and is subject to the same "common interest" test described above.  *See Ross*, 2020 BCSC 337 at 44-45; *Blank v. Canada (Department of Justice)*, 2006 SCC 39 at 36.

[4] Defendants have also withheld in full and redacted numerous transcripts of adverse participants (e.g., Rio, TRQ and EOT representatives), discussing the cost overruns and delays, outside the presence of lawyers, or otherwise addressing non-legal matters. For example, Defendants withheld the transcript of an OT Board meeting from November 2018 (Entry 8,580) but, when prompted, immediately conceded it was not privileged. Ex. H (Def. 4/18/25 Ltr.). Defendants have also improperly withheld documents as containing "Proprietary Information" that Defendants claim is sensitive but non-responsive (Ex. H (Def. 4/18/25 Ltr.))—but there is no basis under the law or ESI Protocol (ECF 239) to withhold information when there is a protective order (ECF 218) and the information is years old anyway.  *See, e.g.*, *Durling v. Papa John's Int'l, Inc.*, 2018 WL 557915 (S.D.N.Y. Jan. 24, 2018); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 933 (N.D. Cal. 2023).

Hon. Lewis J. Liman                                                                                              Page -4-

                                          Respectfully submitted,
                                          */s/ Salvatore J. Graziano*
                                          Salvatore J. Graziano

cc: All counsel of record (via ECF)