**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| IN RE TURQUOISE HILL RESOURCES LTD. SECURITIES LITIGATION |

Case No. 1:20-cv-08585-LJL

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**
**AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ................................................................. 1

II.  BACKGROUND OF THE LITIGATION....................................................... 2

III.  ARGUMENT ....................................................................................... 7

    A.  The Court Should Grant Preliminary Approval of the Proposed Settlement.......... 8

        1.  The Settlement Is the Product of Good-Faith, Arm's-Length
Negotiations Among Experienced Counsel and a Mediator...................... 9

        2.  The Proposed Settlement Falls Well Within the Range of Approval ....... 10

        3.  The Settlement Treats All Settlement Class Members Fairly.................. 13

        4.  The Settlement Does Not Excessively Compensate Plaintiffs'
Counsel .............................................................................. 15

        5.  Lead Plaintiff Has Identified All Agreements Made in Connection
with the Settlement ................................................................ 16

    B.  The Proposed Settlement Class Satisfies Rule 23................................. 16

        1.  The Settlement Class Satisfies the Requirements of Rule 23(a)............. 17

            a)  The Settlement Class Is So Numerous That Joinder Is
Impracticable.............................................................. 18

            b)  There Are Common Questions of Law and Fact ......................... 18

            c)  Lead Plaintiff's Claims Are Typical of Those of the
Settlement Class........................................................... 19

            d)  Lead Plaintiff Will Fairly and Adequately Protect the
Interests of the Settlement Class ....................................... 20

        2.  The Settlement Class Satisfies the Requirements of Rule 23(b)(3).......... 21

            a)  Common Legal and Factual Questions Predominate.................. 21

            b)  A Class Action Is Superior to Other Methods of
Adjudication............................................................... 22

IV.  THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE
AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS............... 23

V.      PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................................ 24

VI.     CONCLUSION.................................................................................................................. 24

Appendix A ..................................................................................................................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................17

*In re Allergan PLC Sec. Litig.*,
    2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021) ..............................................18, 22, 23

*In re Alstom SA Sec. Litig.*,
    253 F.R.D. 266 (S.D.N.Y. 2008) ........................................................................18

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ....................................................................................22, 23

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013) ........................................................................................20

*In re Barrick Gold Sec. Litig.*,
    314 F.R.D. 91 (S.D.N.Y. 2016) .........................................................................19

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care,
L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)................................................................................19

*In re China Sunergy Sec. Litig.*,
    2011 WL 1899715 (S.D.N.Y. May 13, 2011) ......................................................13

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).................................................................................9

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F.
    App'x 40 (2d Cir. 2020).......................................................................................8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)..................................................................................20

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ...................................................................10, 17

*Guevoura Fund Ltd. v. Sillerman*,
    2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ......................................................10

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ......................................................16

*Lapin v. Goldman Sachs & Co.*,
    254 F.R.D. 168 (S.D.N.Y. 2008) ........................................................................19

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .......................................................22

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
    2021 WL 76328 (S.D.N.Y. Jan. 7, 2021) ..............................................................13

*Pearlstein v. BlackBerry Ltd.*,
    2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022).........................................13, 15, 24

*In re Pfizer Inc. Sec. Litig.*,
    2016 WL 11801285 (S.D.N.Y. Dec. 21, 2016) .....................................................15

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ...........................................................................20

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)..................................................................................21

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2019 WL 3001084 (S.D.N.Y. July 10, 2019) ..................................................18, 20

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................................10, 15, 16, 24

*In re Twinlab Corp. Sec. Litig.*,
    187 F. Supp. 2d 80 (E.D.N.Y. 2002) ....................................................................19

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ...............................................................19, 21, 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).................................................................................8, 24

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)....................................................................................17

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
    2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)......................................................24

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ..........................................................................20

**STATUTES & OTHER AUTHORITIES**

Securities Exchange Act of 1934:

§ 10(b), 15 U.S.C. §78j(b) ..................................................................................3

§ 20(a), 15 U.S.C. §78t(a)...................................................................................4

PSLRA, 15 U.S.C. § 78u-4(a)(7)..........................................................10, 15, 23

Securities and Exchange Commission Rule 10b-5,

17 C.F.R. § 240.14a-9(b) ....................................................................................3

Fed. R. Civ. P. 23 .......................................................................................... *passim*

## I.    PRELIMINARY STATEMENT

Lead Plaintiff Pentwater is pleased to report that the Parties in this securities class action (the "Action") have reached an agreement, subject to the Court's approval, to settle the Action in its entirety in exchange for a cash payment of $138,750,000 for the benefit of the Settlement Class (the "Settlement").  Lead Plaintiff now seeks preliminary approval of the Settlement pursuant to Rule 23(e)(1).[1]

The proposed $138,750,000 cash Settlement represents an excellent recovery for the Settlement Class. The Settlement represents a substantial percentage of the maximum damages that could be established at trial and eliminates the real risks that protracted litigation might lead to a lesser or no recovery—including significant risks relating to falsity, scienter, loss causation, and damages—and instead guarantees a substantial near-term recovery for the Settlement Class.

This case was hard-fought and the Settlement comes only after significant litigation. Specifically, the proposed Settlement was achieved after four and a half years of litigation, the filing of three amended complaints, and resolution of two motions to dismiss, both of which the Court partially granted.  Discovery disputes were hard-fought, with the Court granting in part and denying in part certain efforts by Lead Plaintiff to obtain additional discovery.  Lead Plaintiff's class certification motion was being briefed and extensive discovery, including substantial document productions, depositions of some of the witnesses identified in the Complaints, four depositions of Lead Plaintiff's representatives, depositions of both of Lead Plaintiff's experts, and

---

[1] Lead Plaintiff PWCM Master Fund Ltd., Pentwater Thanksgiving Fund LP, Pentwater Merger Arbitrage Master Fund Ltd., Oceana Master Fund Ltd., LMA SPC for and on behalf of the MAP 98 Segregated Portfolio, Pentwater Equity Opportunities Master Fund Ltd., and Crown Managed Accounts SPC acting for and on behalf of Crown/PW Segregated Portfolio is referred to herein collectively as "Pentwater" or "Lead Plaintiff."  All capitalized terms that are not otherwise defined in this memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated June 17, 2025 (the "Stipulation"), filed herewith.

one of Defendants' experts.  To reach the settlement, Pentwater and Defendants engaged in vigorous arm's-length negotiations before the Honorable Layn R. Phillips, a former federal judge and a premier mediator, including at in-person mediation sessions in February and April 2025.

The Parties were fully informed about the issues in the case and the attendant risks of further litigation.  Pentwater is a highly sophisticated institutional investor that directly oversaw this litigation, and participated directly in the litigation strategy and settlement negotiations. Pentwater fully endorses the Settlement.  The proposed Settlement readily satisfies each of the approval factors required by Federal Rule of Civil Procedure 23(e) and Second Circuit precedent.

For these reasons and those discussed further below, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order (Exhibit A to the Stipulation).  Entry of the proposed Preliminary Approval Order will authorize the dissemination of notice of the proposed Settlement to the Settlement Class.  The Preliminary Approval Order contemplates scheduling a final approval hearing (the "Settlement Hearing") for the Parties and Settlement Class Members to present arguments regarding the Settlement, and for the Court to make a final determination as to whether the Settlement is fair, reasonable, and adequate.  Pursuant to the terms of the Settlement, Defendants agree to entry of the proposed Preliminary Approval Order and, accordingly, Lead Plaintiff respectfully suggests that this motion may be decided without a hearing.

## II.    BACKGROUND OF THE LITIGATION

During the Class Period, Turquoise Hill was a mineral-exploration and development company headquartered in Canada.  Turquoise Hill's sole material business was the operation and development of the Oyu Tolgoi mine, a copper and gold mine in southern Mongolia, which is jointly owned with Erdenes Oyu Tolgoi LLC ("EOT"), a state-owned investor representing the Government of Mongolia.  Rio Tinto Limited is one of the world's largest metals and mining

companies. An affiliate of RTIH served as manager of the Oyu Tolgoi project and its board consisted of members nominated by Rio Tinto, Turquoise Hill, and EOT. During the Class Period, various subsidiaries of Rio Tinto plc owned a controlling share of Turquoise Hill's common stock.[2] This Action involves allegations that Rio Tinto and certain of its executives made material misrepresentations and omissions during the Class Period about delays and cost overruns associated with the development of the Oyu Tolgoi mine.

On October 14, 2020, this Action was filed in the United States District Court for the Southern District of New York (the "Court"), alleging violations of the federal securities laws. ECF No. 1. On December 14, 2020, Pentwater moved for appointment as Lead Plaintiff and approval of its selection of counsel (ECF Nos. 66-68), which motion was opposed by competing movants (ECF Nos. 46-62, 81-84). On January 15, 2021, following receipt of briefing and hearing oral argument, the Court appointed Pentwater as Lead Plaintiff and approved Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel. ECF No. 103.

On March 17, 2021, Lead Plaintiff filed and served the Amended Consolidated Complaint for Violations of the Federal Securities Laws asserting claims against defendants Jean-Sébastien Jacques, Arnaud Soirat, Rio Tinto Limited, Rio Tinto Plc, Rio Tinto International Holdings Limited, Turquoise Hill Resources Ltd., Ulf Quellmann, Luke Colton, and Brendan Lane under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against defendants Rio Tinto plc, Rio Tinto Limited, Rio Tinto

---

[2] Following the Class Period, in 2022, Rio Tinto acquired all of Turquoise Hill, which is now a subsidiary of Rio Tinto.

International Holdings Limited, Jacques, Soirat, Quellmann, Colton, and Lane under Section 20(a) of the Exchange Act (the "Initial Complaint").  ECF No. 110.[3]

On May 17, 2021, Defendants and the Former Defendants filed motions to dismiss the Initial Complaint.  ECF Nos. 111, 114.  On July 17, 2021, Lead Plaintiff filed its opposition to the motions to dismiss.  ECF No. 122.  On August 9, 2021, Lead Plaintiff sought permission to file a second amended complaint (ECF Nos. 124-25), which the Court granted on August 11, 2021 (ECF No. 126).  On September 16, 2021, Lead Plaintiff filed the Second Amended Consolidated Complaint for Violations of the Federal Securities Laws (the "SAC").  ECF No. 127.

On October 19, 2021, Defendants and the Former Defendants filed motions to dismiss the SAC.  ECF Nos. 129, 132.  On November 16, 2021, Lead Plaintiff filed its opposition to the motions to dismiss (ECF No. 135) and on December 17, 2021, Defendants and the Former Defendants filed their replies.  ECF No. 137-38.

On September 2, 2022, the Court entered its Order granting the motions to dismiss as to defendants Quellman, Colton, Lane, Turquoise Hill Resources Ltd. and Rio Tinto International Holdings Limited (the "Former Defendants"), and denied the motions to dismiss, in part, as to Defendants Rio Tinto plc and Rio Tinto Limited, Jacques, and Soirat ("Defendants").  ECF No. 149.

---

[3] Jean-Sébastien Jacques and Arnaud Soirat are referred to as the "Individual Defendants"; Rio Tinto Limited and Rio Tinto Plc are referred to as "Rio Tinto" and together, with the "Individual Defendants," are referred to as "Defendants."  Ulf Quellmann, Luke Colton, and Brendan Lane are referred to as the "Individual Former Defendants" and, together with Rio Tinto International Holdings, Ltd. ("RTIH") and Turquoise Hill Resources Ltd. ("Turquoise Hill"), are the "Former Defendants."

Discovery in the Action commenced following the Court's September 2022 Order and the Court issued discovery schedules on February 2, 2023 and May 12, 2023 (ECF Nos. 202-03, 248). The Parties conducted substantial document discovery.

On November 10, 2023, Lead Plaintiff notified the Court that it intended to move for leave to file a third amended complaint based on information and documents produced in discovery. ECF No. 299. On November 13, 2023, the Court granted Lead Plaintiff's request for a briefing schedule on the motion to file a third amended complaint. ECF No. 300. Thereafter, on December 15, 2023, Lead Plaintiff moved for leave to file a third amended complaint, and the Court granted that motion on January 8, 2024. ECF Nos. 305-06, 314. On January 22, 2024, Defendants moved the Court to reconsider that order (ECF Nos. 320-21) and, on February 21, 2024, the Court granted in part and denied in part Defendants' motion for reconsideration and directed Lead Plaintiff to re-file the third amended complaint in accordance with its rulings (ECF No. 325).

On February 28, 2024, Lead Plaintiff filed the operative Third Amended Complaint for Violations of the Federal Securities Laws ("TAC"). ECF No. 329. On March 22, 2024, Defendants filed their motion to dismiss the TAC. ECF Nos. 332-35. The motion was fully briefed on May 13, 2024. ECF Nos. 336, 341. On November 7, 2024, the Court entered an Order granting in part and denying in part Defendants' motion to dismiss the TAC. ECF No. 356.

Following the Court's order on the TAC, the Court entered an updated discovery schedule on November 26, 2024. ECF No. 374. Over the course of discovery, Defendants produced many documents to Lead Plaintiff. The Parties met and conferred and exchanged numerous letters and held telephonic meet and confers concerning disputed discovery issues over several years. Lead Plaintiff also pursued discovery from Defendants through motions to compel resulting in additional discovery. ECF Nos. 375, 378. The Parties also conducted significant discovery outside

the United States, including by seeking letters of request from the Court to obtain documents and deposition testimony from witnesses located outside the U.S. The Parties took four days of deposition testimony of non-party witnesses and obtained document productions from those witnesses.

On December 23, 2024, Lead Plaintiff filed a motion for class certification and appointment of class representative and class counsel, which was accompanied by reports from Lead Plaintiff's experts, Matthew Cain, on market efficiency and common damages methodologies, and Joshua Mitts on the domesticity of class members' trades. ECF Nos. 415-17. On April 3, 2025, Defendants filed their opposition to Lead Plaintiff's motion for class certification, including reports of Dr. Allen Ferrell on market efficiency and damages methodology, and Brandon Becker on domesticity issues. ECF No. 445-46.

On February 5, 2025, the Parties engaged in a private mediation session before Hon. Layn Phillips (the "Mediator"). In advance of that session, the Parties exchanged and submitted detailed mediation statements and supporting exhibits to the Mediator. The Parties did not reach a resolution at that time but agreed to continue settlement discussions.

Following the first mediation session, the Parties continued to engage in discovery, in which Lead Plaintiff vigorously pursued additional document productions from Defendants, including through motions to compel discovery. ECF Nos. 447, 451. The Parties also conducted eight depositions, including Defendants' depositions of Lead Plaintiff's two experts who submitted reports in support of Lead Plaintiff's class certification motion and four depositions of representatives of Lead Plaintiff in connection with the class certification motion. The Parties also conducted depositions of non-party fact witnesses.

On April 25, 2025, the Parties attended a second mediation session with Judge Phillips. The Parties did not reach a resolution at that time but continued to engage in settlement discussions, including both with the mediator and directly among the Parties and their counsel.

On April 29, 2025, Lead Plaintiff took the deposition of Defendants' expert Allen Ferrell in connection with Lead Plaintiff's reply in further support of class certification, bringing the total depositions taken in the Action to nine.

On May 1, 2025, the Parties reached an agreement on the financial terms to settle the Action, subject to formal documentation and Court approval. The agreement's terms were memorialized in a term sheet executed as of May 14, 2025 (the "Term Sheet"). The Term Sheet set forth the Parties' agreement for Pentwater to release all claims against Defendants in return for a cash payment of $138,750,000 for the benefit of the Settlement Class.

On June 17, 2025, the Parties entered into a Stipulation and Agreement of Settlement (the "Stipulation"), which sets forth the terms and conditions of the Settlement. That same day, Lead Plaintiff and Rio Tinto also entered into a confidential Supplemental Agreement that provides that Rio Tinto has the right to terminate the Settlement if the number of persons who request exclusion from the Settlement Class reaches a certain threshold. *See* Stipulation ¶ 36.

## III.    ARGUMENT

The Settlement readily meets the standards for preliminary approval. The Settlement provides a benefit to investors by obtaining a substantial percentage of the maximum potential damages that could be obtained at trial, while avoiding the meaningful risks and delays that would otherwise accompany continued litigation and trial. The Settlement is the product of years of extensive, hard-fought litigation and extended arm's-length settlement negotiations overseen by an experienced mediator.

A.    **The Court Should Grant Preliminary Approval of the Proposed Settlement**

Federal Rule of Civil Procedure 23(e)(2) provides that a class action settlement warrants court approval if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "Courts in this Circuit recognize a strong judicial policy in favor of settlements, particularly in the class action context." *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) (citations omitted), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (similar).

Judicial approval of a class action settlement is a two-step process—*first*, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class, *see* Fed. R. Civ. P. 23(e)(1), and, *second*, after notice has been provided and a hearing has been held, the court determines whether to grant final approval of the settlement, *see* Fed. R. Civ. P. 23(e)(2). Courts grant preliminary approval upon a finding that they "will likely be able" to (i) finally approve the settlement under Rule 23(e)(2), and (ii) certify the proposed class for purposes of the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B).

For *final* approval of the Settlement, the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[4] All of these factors are satisfied here, and preliminary approval is appropriate.

---

[4] In determining whether to grant final approval of the Settlement, the Court will also be asked to consider the Second Circuit's long-standing approval factors, many of which overlap with the Rule

### 1. The Settlement Is the Product of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel and a Mediator

The Settlement was achieved after extensive, vigorous negotiations between well-informed and experienced counsel, Pentwater and representatives of Rio Tinto, following four and a half years of hard-fought litigation and substantial discovery.  The Parties and their counsel were knowledgeable about the strengths and weaknesses of the case before entering into the Stipulation. Lead Plaintiff and Lead Counsel have conducted an extensive pre-suit investigation; briefed and defeated in substantial part two rounds of Defendants' motions to dismiss; obtained and conducted a review of the documents produced by Defendants and third parties; moved for class certification, which was supported by extensive expert analysis and reports; took or defended nine depositions; and consulted extensively with numerous experts, including geotechnical and mining experts, experts on Canadian law, and experts in establishing the domesticity of securities transactions, and experts in loss causation, market efficiency, and damages.  As a result, Lead Plaintiff and Lead Counsel had a well-informed basis to assess the Action's strengths and weaknesses and the reasonableness of the proposed Settlement.

Moreover, the Settlement was also reached only after lengthy arm's-length negotiations between experienced and well-informed counsel, which included two formal mediation sessions with Judge Phillips, a well-respected and experienced mediator.

---

23(e)(2) factors:  "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (noting that the Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by a Court of Appeals).

Pentwater fully endorses the Settlement.  Pentwater led the case throughout, and the skill and sophistication of its leadership were brought to bear in strategy and settlement negotiation. Pentwater is precisely the type of sophisticated institutional investor that was favored by Congress when it enacted the PSLRA.  Moreover, Pentwater was well informed of the strengths and weaknesses of the claims and consulted extensively with Lead Counsel throughout the litigation.

Each of these facts strongly supports preliminary approval of the Settlement in this case. *See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.,* 2020 WL 4196468, at *3 (S.D.N.Y. July 21, 2020) (granting final approval of a settlement following mediation before, and a mediator's proposal by, Judge Phillips); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *2 (S.D.N.Y. Dec. 18, 2019) (granting final approval of a settlement after an all-day mediation with Judge Phillips); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (approving settlement that "was the product of prolonged, arms-length negotiation . . . facilitated by a respected mediator," Judge Phillips).

### 2.    The Proposed Settlement Falls Well Within the Range of Approval

The Settlement amount is $138,750,000 in cash.  The Settlement accounts for the meaningful risks associated with the litigation—including at class certification, summary judgment, trial, and appeal.  This Action presented several substantial risks to establishing both liability and damages, which Lead Plaintiff and Lead Counsel fully recognize, while continuing to believe strongly in the merits of the claims.

The risks of continued litigation and trial concerned each main element of Lead Plaintiff's claims.  Lead Plaintiff would have been required to prove (i) that Defendants' alleged misstatements and omissions were materially false and misleading when made; (ii) that Defendants knew or recklessly disregarded that the statements and related alleged omissions were false when made (i.e., Defendants acted with "scienter"); (iii) that the revelation of Defendants' alleged fraud

caused the alleged loss suffered by Plaintiffs and the Settlement Class (i.e., loss causation); and (iv) the amount of class-wide damages.  Defendants would have had arguments in defense of each of these issues.

To start, Lead Plaintiff faced challenges in proving that Defendants made allegedly misleading statements or omissions concerning the development of the Oyu Tolgoi mine in Mongolia and related delays and cost overruns.  Lead Plaintiff expected that Defendants would argue that their disclosures were accurate because they were based on the best information available when made.  For example, Defendants would likely argue that none of their statements prior to October 2018 could have been false or misleading because the delays were not definitively established until they completed the reforecast project in October 2018.  Defendants would argue that after the October 2018 disclosures, investors had current, accurate information on the state of the Oyu Tolgoi development, and that they were acting in good faith to investigate and quantify any delays and cost impacts.  Defendants would further argue that the misstatements concerning delays—if any—were not material to investors.

Defendants would also have argued that their alleged misstatements were not made with "scienter" as required under the Exchange Act.  Defendants would have argued that they did not have any fraudulent intent to mislead investors because they disclosed the delays once they were known in October 2018, and they disclosed additional delays and the cost overruns as they received new information throughout the alleged Class Period.  In fact, the Court had already ruled twice at the motion to dismiss stage that Lead Plaintiff could not adequate allege scienter as to many of the statements it alleged were fraudulent.  *See* ECF No. 149 at 105; ECF No. 356 at 31-36.  There was a meaningful risk that the Court or jury could find against Lead Plaintiff on these issues on a complete record at summary judgment or trial.

11

In addition, Defendants would likely raise challenges to loss causation, arguing that certain of the price declines at issue were caused by the disclosure of information that was already known to the market.  For example, Defendants argued in opposition to Lead Plaintiff's class certification motion that the alleged disclosure on July 31, 2019 that the Oyu Tolgoi project needed additional financing to complete was already known to the market based on the Company's earlier disclosures.  If Defendants had succeeded on these arguments, the recoverable damages could have been substantially less than the amount provided in the Settlement.

Further, in order to obtain recovery for the Settlement Class, Lead Plaintiff would have to prevail at several stages—on the pending motion for class certification, at summary judgment, and at trial—and, even if it prevailed on those, on the appeals that were likely to follow.  Thus, there were significant risks attendant to the continued prosecution of the Action, and there was no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

Given these significant litigation risks, Lead Plaintiff and Lead Counsel believe that the proposed $138.75 million Settlement is an excellent result for the Settlement Class.  The Settlement provides a substantial, near-term benefit to the Settlement Class as compared to the risk that the claims in the Action would produce a smaller recovery, or no recovery at all, after further proceedings on Lead Plaintiff's motion for class certification and likely summary judgment motions, trial, and appeals, possibly years in the future.

In addition, the Settlement is particularly favorable when compared to the maximum realistic damages that could be recovered for the Settlement Class.  Lead Plaintiff's damages expert has estimated that the maximum realistically recoverable damages in this case—assuming complete success in establishing liability—would range from approximately $322 million to $407 million (depending on the use of FIFO or LIFO matching of shares).  Thus, the recovery of $138.75

million represents a recovery of **34% to 43%** of investors' maximum damages. This percentage-of-recovery is significantly above the typical level of recovery in securities class actions. *See, e.g.*, *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *6 (S.D.N.Y. Sept. 29, 2022) (approving recovery of 13.75% of the estimated maximum damages as "well within the range of reasonableness and, in fact, considerably above the high end of historical averages" and noting that it "substantially exceed[ed]. . . median recovery of 4.2% of damages in 2021"); *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 2021 WL 76328, at *3 (S.D.N.Y. Jan. 7, 2021) (approving settlement that was 10% of the estimated damages, noting that the settlement was "within the range previously approved by judges in this District," referencing recoveries ranging from 3% to 11% of estimated damages); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("average settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses").

### 3.    The Settlement Treats All Settlement Class Members Fairly

The Settlement treats all Settlement Class Members fairly and does not improperly grant preferential treatment to Lead Plaintiff or any segment of the Settlement Class. All Settlement Class Members will be eligible to receive a distribution from the Net Settlement Fund pursuant to a plan of allocation approved by the Court.

At the final Settlement Hearing, Lead Plaintiff will ask the Court to approve the proposed Plan of Allocation for the Net Settlement Fund (the "Plan"), which is set forth in the Notice and was developed by Lead Plaintiff's damages expert, in consultation with Lead Counsel. The Plan is based on Lead Plaintiff's allegations that Defendants' materially false and misleading statements and omissions caused artificial inflation in the price of Turquoise Hill Securities during the Class

Period, and that a series of public disclosures that each partially corrected the alleged misrepresentations and omissions removed that inflation.

The Plan then calculates a "Recognized Loss Amount" for each purchase or acquisition of Turquoise Hill Securities during the Class Period in a domestic transaction or on a U.S. exchange, that is listed in the Claim Form and for which adequate documentation is provided by the Claimant. The calculation of Recognized Loss Amounts under the Plan will depend on when the Claimant purchased and/or sold their shares, and the value of their shares when the Claimant purchased, sold, or held them. In general, Recognized Loss Amounts are based on the difference in the amount of alleged artificial inflation in the respective prices of the Turquoise Hill Securities at the time of purchase or acquisition and at the time of sale, or the difference between the actual purchase price and sale price. Under the Plan, the sum of a Claimant's Recognized Loss Amounts is the Claimant's "Recognized Claim"; the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.

The Claims Administrator will calculate Claimants' Recognized Loss Amounts using the transaction information that Claimants provide to the Claims Administrator in their Claim Forms.[5] Once the Claims Administrator has processed all submitted claims, notified Claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will make distributions to eligible Authorized Claimants in the form of checks and wire transfers. If any monies remain in the Net Settlement Fund, the Claims Administrator will

---

[5] Lead Plaintiff requests that the Court approve retention of JND Legal Administration ("JND"), as the claims administrator for this case. JND has successfully administered numerous complex securities class action settlements in this District and elsewhere. *See, e.g.*, *Pearlstein v. BlackBerry Ltd.*, No. 1:13-cv-7060 (S.D.N.Y. 2023) (JND administered $165 million securities class action settlement); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728 (S.D.N.Y. 2021) (JND administered $240 million securities class action settlement); *In re Kraft Heinz Sec. Litig.*, No. 1:19-cv-01339 (N.D. Ill. 2025) (JND administered $450 million securities class action settlement).

conduct additional re-distributions until it is no longer cost-effective to do so.    At such time, any remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court.

### 4.    The Settlement Does Not Excessively Compensate Plaintiffs' Counsel

The proposed Settlement does not grant excessive compensation to Plaintiffs' Counsel. The Settlement does not contemplate any specific award to Plaintiffs' Counsel and Plaintiffs' Counsel will be compensated solely out of the Settlement Fund after approval by the Court.

In connection with Lead Counsel's fee and expense application, Lead Counsel will seek a fee of 13% of the Settlement Fund for all Plaintiffs' Counsel to be paid upon approval of the Settlement and the fee application.  Lead Counsel's 13% fee request, which is based on vigorous negotiations with a Lead Plaintiff with a substantial financial interest in the case, is well within (indeed, on the very low end) of the range of percentage fees that courts approve in comparable securities class actions.  *See, e.g.*, *Pearlstein,* 2022 WL 4554858, at *10-11 (awarding 33.3% of $165 million settlement); *Signet,* 2020 WL 4196468, at *16-17 (awarding 25% of $240 million settlement); *In re Pfizer Inc. Sec. Litig.*, 2016 WL 11801285, at *1 (S.D.N.Y. Dec. 21, 2016) (awarding 28% of $486 million settlement).    Lead Counsel will also seek payment of litigation expenses incurred in connection with the institution, prosecution, and resolution of the Action, in an amount not to exceed $2,600,000, which may include a request for reimbursement of the costs and expenses of Lead Plaintiff under the PSLRA.

Lead Counsel's fee and expense application will be fully briefed in a motion filed in accordance with the Preliminary Approval Order.  By granting preliminary approval of the proposed Settlement, the Court does not in any way pass upon the reasonableness of the fee or expense application, which will be decided *de novo* at the Settlement Hearing.

5. **Lead Plaintiff Has Identified All Agreements Made in Connection with the Settlement**

In addition to the Stipulation, Lead Plaintiff and Rio Tinto have entered into a confidential agreement (the "Supplemental Agreement") regarding requests for exclusion ("opt-outs") from the Settlement Class. *See* Stipulation ¶ 36. The Supplemental Agreement sets forth the conditions under which Rio Tinto may terminate the Settlement if the opt-outs from the Settlement Class exceed an agreed-upon threshold. This agreement, often referred to as a "blow provision," is a standard feature of securities class action settlements and is generally maintained as confidential in order to prevent potential opt-outs from threatening to trigger the blow provision and leveraging that threat to obtain additional payment from the settling parties. *See Signet*, 2020 WL 4196468, at *13 ("This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement."); *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep [the opt-out threshold] confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts."). The agreement is available for review *in camera,* if the Court so requests.

B. **The Proposed Settlement Class Satisfies Rule 23**

In determining whether to grant preliminary approval, the Court also determines whether it "will likely be able to" grant certification to the proposed Settlement Class for purposes of the Settlement at final approval. Fed. R. Civ. P. 23(e)(1)(B). The proposed Settlement Class, which has been stipulated to by the Parties, consists of:

> all persons and entities who purchased or otherwise acquired the common stock of Turquoise Hill, call options on Turquoise Hill common stock (or sold put options on Turquoise Hill common stock), or swaps replicating a purchase of Turquoise Hill common stock, in domestic transactions or on U.S. exchanges, during the Class Period, and were damaged thereby.

16

Stipulation ¶ 1(tt).[6]

The Second Circuit has long acknowledged the propriety of certifying a class for purposes of a class action settlement.    *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014).    Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."    *Giant Interactive*, 279 F.R.D. at 158.

As demonstrated below, the proposed Settlement Class satisfies all the applicable requirements of Rules 23(a) and 23(b)(3).

### 1.    The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."    Fed. R. Civ. P. 23(a).

---

[6] Excluded from the Settlement Class are: (i) Defendants and Former Defendants; (ii) Immediate Family Members of any Individual Defendant or Individual Former Defendant; (iii) any person who is, or was during the Class Period, an officer or director of Rio Tinto, RTIH, or Turquoise Hill; (iv) any affiliates or subsidiaries of Rio Tinto, RTIH, or Turquoise Hill; (v) any entity in which any Defendant, Former Defendant, or any member of their Immediate Families has or had a controlling interest; (vi) the legal representatives, heirs, agents, affiliates, successors, or assigns of any such excluded persons and entities; and (vii) any prohibited person or organization who or which is a sanctions target, the subject of any applicable trade sanction or embargo or appears on a list of prohibited persons or organizations. Also excluded from the Settlement Class are any persons or entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.  Stipulation ¶ 1(tt).

### a)    The Settlement Class Is So Numerous That Joinder Is Impracticable

In the Second Circuit, Rule 23(a)(1)'s numerosity requirement is presumed for classes larger than 40 members and, in securities fraud class actions, can be shown where there are a large number of shares outstanding and traded during the relevant period. *See In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at *6 (S.D.N.Y. Sept. 8, 2021); *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *8 (S.D.N.Y. July 10, 2019).

Turquoise Hill common stock traded on the New York Stock Exchange and Nasdaq (as well as in Canada on the Toronto Stock Exchange), with more than 200 million shares of common stock issued and outstanding during the Class Period, and an average of 2.78 million shares traded weekly on U.S. exchanges. *See* Expert Report of Matthew D. Cain, PHD ("Cain Report") at ¶¶ 29, 62, ECF No. 417-1. These metrics easily demonstrate numerosity. Indeed, Lead Plaintiff's expert found that 333 separate institutional investors owned Turquoise Hill common stock during the Class Period, *see id.* ¶ 38 n.47, and thus the class would satisfy numerosity on that basis alone, even before considering the thousands of additional retail investors.

### b)    There Are Common Questions of Law and Fact

Commonality exists when "common issues of law or fact affect all class members." *Signet*, 2019 WL 3001084, at *8. Courts in this District hold that, in securities cases, commonality is satisfied where "plaintiffs allege that class members have been injured by similar material misrepresentations and omissions." *Allergan*, 2021 WL 4077942, at *6; *see also In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 276 (S.D.N.Y. 2008) (same).

The common questions of law and fact in this case are numerous and include: (i) whether Defendants' statements were materially false and misleading when made; (ii) whether Defendants acted with scienter; (iii) whether the price of Turquoise Hill Securities was artificially inflated

during the Class Period due to these alleged misstatements; (iv) whether Defendants' alleged misrepresentations caused Settlement Class Members to suffer economic losses when the truth was revealed; and (v) whether Defendants Jacques and Soirat controlled Rio Tinto during the Class Period.  Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met.

    **c)**    **Lead Plaintiff's Claims Are Typical of Those of the Settlement Class**

Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007); *accord In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 98 (S.D.N.Y. 2016).  The typicality requirement does not require the plaintiff's claims to be identical; rather, the plaintiff must show the claims are "'so interrelated that the interests of the class members will be fairly and adequately protected in their absence,' and that the claims of the potential class members 'share a common question of law or of fact.'"  *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 176 (S.D.N.Y. 2008) (citation omitted).

Here, Pentwater's claims arise from the same alleged course of conduct that gives rise to claims of other Settlement Class Members, are based on the same legal theory, and will be proven by the same set of operative facts.  As such, Lead Plaintiff "ha[s] the incentive to prove all elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions."  *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (citation omitted).  The typicality requirement is therefore satisfied.  *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality is met where all

class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

**d)**    **Lead Plaintiff Will Fairly and Adequately Protect the Interests of the Settlement Class**

To satisfy the adequacy requirement, the proposed class representative must "fairly and adequately protect the interests of the class." *Signet*, 2019 WL 3001084, at *9. The adequacy requirement "seeks to ensure that Plaintiff's interests are not antagonistic to those of the Class and that Plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Id.* "The focus is on uncovering 'conflicts of interest between named parties and the class they seek to represent.' In order to defeat a motion for certification, however, the conflict 'must be fundamental.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (citation omitted). Lead Plaintiff satisfies each factor of the adequacy inquiry.

<u>First</u>, Lead Plaintiff "suffer[ed] the same injury as the class members" as a result of Defendants' material misrepresentations and omissions and thus "possess the same interest" in obtaining the best possible recovery. *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003). Like all Settlement Class Members, Lead Plaintiff purchased Turquoise Hill Securities during the Class Period and were subjected to the same alleged fraudulent conduct. No conflicts exist between Lead Plaintiff and the Settlement Class. If Lead Plaintiff were to prove its claims at trial, it would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (the investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions). Thus, the interests of Lead Plaintiff and the other Settlement Class members are aligned, and they share the common objective of maximizing their recovery. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing

20

recovery, there is no conflict of interest between the class representatives and other class members.").

Second, Lead Plaintiff vigorously led and prosecuted this Action on behalf of the Settlement Class. Pentwater fully understands its duties and responsibilities as a class representative, has demonstrated its commitment to lead this Action for the Settlement Class, and will continue to actively participate in and supervise the litigation through its conclusion. *See* Declaration of Matthew Halbower in Support of Lead Plaintiff's Motion for Class Certification, ECF No. 417-3. Lead Plaintiff has also retained qualified counsel who have extensive experience and success in prosecuting securities litigation. *See* BLB&G Firm Resume, ECF No. 417-6.

### 2.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies these requirements.

### a)    Common Legal and Factual Questions Predominate

Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). In making this determination, "a court's inquiry is directed toward whether the issue of liability is common to the members of the class." *Veeco*, 235 F.R.D. at 240. "While Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of

individual issues." *Id.* This "test [is] readily met in certain cases alleging . . . securities fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Here, "the critical issues for establishing Defendants' liability include whether the Defendants (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury. Each of these issues is susceptible of generalized proof and, accordingly, the predominance requirement of Rule 23(b)(3) is satisfied." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *11 (S.D.N.Y. Dec. 23, 2009); *see also Veeco*, 235 F.R.D. at 240 ("[Q]uestions of fact regarding the content and implications of defendants' statements and defendants' intent in making these statements are central to the claims of each member of the putative class. Any individual issues will necessarily be secondary.").

          **b)**       **A Class Action Is Superior to Other Methods of Adjudication**

Rule 23(b)(3) also asks whether class resolution will be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Courts have long recognized that class actions are a desirable means for resolving claims based on securities laws," and find superiority is easily established. *Allergan*, 2021 WL 4077942, at *17.

Each of the factors courts consider in assessing superiority is satisfied here. First, the number of Settlement Class members is too numerous, and the typical claim is too small, for each individual Settlement Class Member to have an interest in maintaining a separate action. Second, Lead Plaintiff is aware of no other action that seeks recovery under the federal securities laws for damages caused by Defendants' alleged fraud. Third, the geographical dispersion of the Settlement Class Members makes it desirable to litigate Lead Plaintiff's claims in this forum.

Finally, there are no management difficulties that would preclude this Action from being maintained as a class action.  *See Amchem*, 521 U.S. at 620; *Allergan*, 2021 WL 4077942, at \*16.

In sum, the proposed Settlement Class meets all of the requirements of Rules 23(a) and (b)(3) and is appropriate for certification for purposes of the Settlement.

## IV.    THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Notice and Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with reasonable effort, as well as post the Notice and the Claim Form on a website to be developed for the Settlement.  The Claims Administrator will utilize a list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice.   The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses.  The Notice will also provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class.  In addition to the mailing of the Notice and Claim Form, the Summary Notice will be published in *The Wall Street Journal* and transmitted over the *PR Newswire*.

The form and manner of providing notice to the Settlement Class satisfies the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7).  The Notice contains all of the information required by Rule 23(c)(2)(B), Local Rule 23.1, and the PSLRA, and will "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options

that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (citation omitted). The manner of providing notice, which includes individual notice by first-class mail to all class members who can be reasonably identified, supplemented by additional publication and internet notice, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See, e.g.*, *Pearlstein*, 2022 WL 4554858, at *8-9; *Signet*, 2020 WL 4196468, at *14; *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *2 (S.D.N.Y. Aug. 18, 2017).

Accordingly, Lead Plaintiff respectfully submits that the proposed notice procedures are appropriate and should be approved.

## V.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiff respectfully proposes the schedule for Settlement-related events as set forth in Appendix A. If the Court agrees with the proposed schedule, Lead Plaintiff requests that the Court schedule the Settlement Hearing for a date 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. If the Court grants preliminary approval as requested, the only date that the Court need schedule is the date for the final Settlement Hearing. The remaining dates will be determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled.

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court (i) preliminarily approve the proposed Settlement; (ii) approve the proposed form and manner of notice to putative Settlement Class Members; and (iii) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

Dated: June 18, 2025                          Respectfully submitted,

                                              */s/ Salvatore J. Graziano*
                                              Salvatore J. Graziano
                                              James A. Harrod
                                              Michael D. Blatchley
                                              Alexander M. Noble
                                              **BERNSTEIN LITOWITZ BERGER**
                                              **  & GROSSMANN LLP**
                                              1251 Avenue of the Americas
                                              New York, New York 10020
                                              Telephone: (212) 554-1400
                                              Facsimile: (212) 554-1444
                                              salvatore@blbglaw.com
                                              jim.harrod@blbglaw.com
                                              michaelb@blbglaw.com
                                              alexander.noble@blbglaw.com

                                              *Counsel for Lead Plaintiff the Pentwater*
                                              *Funds and Lead Counsel for the Settlement*
                                              *Class*

**Appendix A**

**Proposed Schedule of Settlement Events**

| Event | Proposed Timing | Example Date[7] |
|---|---|---|
| Deadline for commence mailing the Notice and Claim Form to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶ 7(b)) | No later than 10 business days after entry of Preliminary Approval Order | July 7, 2025 |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 7(d)) | No later than 10 business days after the Notice Date | July 21, 2025 |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses (Preliminary Approval Order ¶ 28) | 35 calendar days before the date set for the Settlement Hearing | August 25, 2025 |
| Postmark deadline for submitting Claim Forms and receipt deadline for requests for exclusion or objections (Preliminary Approval Order ¶¶ 11, 14, 17,18) | 21 calendar days before the date set for the Settlement Hearing | September 8, 2025 |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 28) | 7 calendar days before the Settlement Hearing | September 22, 2025 |
| Settlement Hearing (Preliminary Approval Order ¶ 5) | 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter | September 29, 2025 |

---

[7] The example dates provided are based on the assumptions that the Court enters the Preliminary Approval Order on June 20, 2025, and schedules the Settlement Hearing for September 29, 2025.