**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| IN RE TURQUOISE HILL RESOURCES LTD. SECURITIES LITIGATION | Case No. 1:20-cv-08585-LJL |
|---|---|

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION**
**<u>FOR ATTORNEYS' FEES AND LITIGATION EXPENSES</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 3

I.      LEAD COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES
        FROM THE COMMON FUND ............................................................................... 3

II.     THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE
        COMMON FUND ...................................................................................................... 4

III.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE .............................. 5

        A.      The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-
                the-Fund Method ........................................................................................... 5

        B.      The Requested Attorneys' Fees Are Reasonable Under the Lodestar
                Method ........................................................................................................... 6

IV.     OTHER FACTORS CONSIDERED BY COURTS IN THE SECOND CIRCUIT
        CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE ............... 8

        A.      The Time and Labor Expended Support the Requested Fee ........................... 9

        B.      The Risks of the Litigation Support the Requested Fee ............................... 10

        C.      The Magnitude and Complexity of the Action Support the Requested Fee ......... 13

        D.      The Quality of Lead Counsel's Representation Supports the Requested
                Fee ............................................................................................................... 13

        E.      The Requested Fee in Relation to the Settlement ....................................... 14

        F.      Public Policy Considerations Support the Requested Fee ........................... 14

        G.      The Reaction of the Settlement Class to Date Supports the Requested Fee ......... 15

V.      LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
        NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ............... 15

VI.     THE ATTORNEYS' FEES AND COSTS AWARDED TO LEAD COUNSEL
        SHOULD BE PAYABLE UPON AWARD .............................................................. 16

CONCLUSION ...................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

C<small>ASES</small>                                                                                                                                                 **Page(s)**

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
    2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ........................................................................13

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
    272 F. App'x 9 (2d Cir. 2008) ...............................................................................................13

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................................................................................10

*In re AppHarvest Sec. Litig.*,
    Case No. 1:21-cv-07985-LJL, slip op. (S.D.N.Y. July 11, 2024), ECF No. 138 ...................17

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006)...................................................................................................18

*In re Bank of New York Mellon Corp. Forex Transactions Litig.*,
    148 F. Supp. 3d 303 (S.D.N.Y. 2015).......................................................................................5

*Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
    2012 WL 2064907 (S.D.N.Y. June 7, 2012) ...........................................................................6

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012).......................................................................................7

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)..................................................................................................................3

*Boston Ret. Sys. v. Alexion Pharms., Inc.*,
    Civ. No. 3:16-cv-02127 (AWT), slip op. (D. Conn. Dec. 21, 2023), ECF No. 329.................5

*Brown v. Hain Celestial Grp., Inc.*,
    2016 WL 631880 (N.D. Cal. Feb. 17, 2016) .........................................................................18

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..........................................................................4

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...................................................................................................10

*In re Comverse Tech., Inc. Sec. Litig.*,
    2010 WL 2653354 (E.D.N.Y. June 24, 2010) ........................................................6, 7, 10, 14

*Cymablista v. JPMorgan Chase Bank, N.A.*,
    2021 WL 7906584 (E.D.N.Y. May 25, 2021) .......................................................................19

*In re Deutsche Telekom AG Sec. Litig.*,
    2005 WL 7984326 (S.D.N.Y. June 9, 2005) .............................................................6

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. Nov. 26, 2018)..................................................4, 15

*In re Fannie Mae 2008 Sec. Litig.*,
    No. 1:08-cv-07831, slip op. (S.D.N.Y. Mar. 3, 2015), ECF No. 552 .......................5

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................................................. *passim*

*Freeman v. Weatherford Int'l Ltd.*,
    No. 12-cv-2121 (LAK), slip op. (S.D.N.Y. Nov. 23, 2015), ECF No. 218 ..............5

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)............................................................................ *passim*

*Hernandez v. Between the Bread 55th Inc.*,
    496 F. Supp. 3d 791 (S.D.N.Y. 2020).....................................................................19

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...........................................................6

*Hicks v. Morgan Stanley*,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...........................................................4

*In re Initial Pub. Offering*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009)........................................................................7

*In re Luckin Coffee Sec. Litig.*,
    Case No. 20 Civ. 1293 (JPC), slip op. (S.D.N.Y. July 22, 2022), ECF No. 338......................5

*In re Lumber Liquidators Chinese-Manufactured Flooring Products, Marketing,
    & Sales Pracs. Litig.*,
    952 F.3d 471 (4th Cir. 2020) ..................................................................................19

*Maley v. Del Glob. Tech. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)......................................................................14

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) .............................................................................12

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)...................................................................................................6

*In re N. Dynasty Mins. Ltd. Sec. Litig.*,
    2024 WL 308242 (E.D.N.Y. Jan. 26, 2024) ............................................................17

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................................17

*Pearlstein v. Blackberry Ltd.*,
  2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)........................................5

*Pelzer v. Vassalle*,
  2016 WL 3626825 (6th Cir. July 7, 2016).............................................17

*In re Petrobras Sec. Litig.*,
  317 F. Supp. 3d 858 (S.D.N.Y. 2018)....................................................19

*Savoie v. Merchs. Bank*,
  166 F.3d 456 (2d Cir. 1999)......................................................................4

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ...........................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..................................................................................4

*In re Turquoise Hill Res. Ltd.*,
  2024 WL 4711185 (S.D.N.Y. Nov. 7, 2024).....................................11, 12

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  625 F. Supp. 3d 164 (S.D.N.Y. 2022)....................................................11

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)...........................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)........................................................................4

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  2016 WL 5338012 (N.D. Ohio Sept. 23, 2016).......................................18

*Woburn Ret. Sys. v. Salix Pharmaceuticals, Ltd.*,
  2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ...........................................5

**OTHER AUTHORITIES**

Brian T. Fitzpatrick, *The End of Objector Blackmail?*,
  62 VAND. L. REV. 1623 (2009) ...............................................................18

NERA ECONOMIC CONSULTING, RECENT TRENDS IN SECURITIES CLASS ACTION
  LITIGATION: 2024 FULL-YEAR REVIEW (2025) .........................................6

Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("Lead Counsel" or "BLB&G"), respectfully submits this memorandum of law in support of its motion for an award of attorneys' fees in the amount of 13% of the Settlement Fund, net of Litigation Expenses.[1]  Lead Counsel also respectfully seeks $2,217,327.97 for Litigation Expenses that it reasonably and necessarily incurred in prosecuting and resolving the Action.

## PRELIMINARY STATEMENT

The proposed Settlement, which provides for a cash payment of $138,750,000 to resolve the Action, is an outstanding result for the Class.  The significant monetary recovery was achieved through the tenacity and effective advocacy of Lead Counsel, which litigated this Action on a fully contingent fee basis against highly skilled defense counsel for more four and a half years.

As detailed in the accompanying Graziano Declaration,[2] Lead Counsel had vigorously litigated this securities class action since before its inception in 2020.  The litigation was hard fought, and Lead Counsel faced substantial risks from the outset that it would be unable to obtain a meaningful recovery for Lead Plaintiff and the class.  As such, Lead Counsel had to—and did—dedicate very substantial efforts to the Action from its outset.  Lead Counsel conducted an extensive investigation; prepared three detailed amended complaints; opposed two rounds of

---

[1]  Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated June 17, 2025 (ECF No. 469-1) (the "Stipulation"), or in the Declaration of Salvatore J. Graziano in Support of (I) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (the "Graziano Declaration" or "Graziano Decl."), filed herewith.  In this memorandum, citations to "¶ __" refer to paragraphs in the Joint Declaration and citations to "Ex. __" refer to exhibits to the Joint Declaration.

[2]  The Graziano Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the nature of the claims asserted in the Action (¶¶ 13-14, 24); the history of the Action (¶¶ 15-90); the risks and uncertainties of continued litigation of the Action (¶¶ 91-120); and the services Lead Counsel provided for the benefit of the Settlement Class (¶¶ 3, 15-90, 142-43).

motions to dismiss though extensive briefing; prepared and filed Lead Plaintiff's motion for class certification and engaged in related discovery; conducted substantial fact discovery, including obtaining and reviewing more than 1.7 million pages of documents and taking the depositions of several witnesses named in the Complaint overseas; and worked extensively with experts in financial economics, the mining industry, and securities trading.   In total, Lead Counsel collectively invested over 47,000 hours and incurred over $2,000,000 in Litigation Expenses, all on a contingent-fee basis with no assurance of ever being paid.

Through Lead Counsel's sustained efforts, Lead Plaintiff was able to achieve the proposed $138.75 million Settlement for the benefit of the Settlement Class.   The Settlement represents a very substantial 34% to 43% of the maximum damages that could be established at trial, and is a particularly favorable result in light of the risks of the continued litigation.   Those risks are set forth in detail in the Graziano Declaration at paragraphs 91 to 120 and are summarized in the Settlement Memorandum and below.

As compensation for their efforts on behalf of the Settlement Class, Lead Counsel seeks attorneys' fee in the amount of 13% of the Settlement Fund, net of Litigation Expenses awarded. The requested fee is below the range of percentage fees that courts in this Circuit have typically awarded in securities class actions with comparable recoveries and is strongly supported by all factors considered by courts in determining the reasonableness of the fee, including the significant risks presented by this contingent fee litigation, the quality of the result achieved, the extent and quality of Lead Counsel's efforts, and the lodestar cross-check.   Indeed, the fee request will result in a "negative" lodestar multiplier of 0.6, which further supports the request

The application for fees and expenses has the full support of Lead Plaintiff.   *See* Declaration of Matthew Halbower (Ex. 2) ("Halbower Decl."), at ¶¶ 8-9.   Lead Plaintiff is a sophisticated

institutional investor that took an extremely active leadership role throughout the Action and had a very substantial monetary stake in the Action.  *Id*. ¶¶ 2-6.   Lead Plaintiff has endorsed the requested fee as fair and reasonable in light of the result achieved in the Action, the quality of the work counsel performed, and the risks of the litigation.  *Id*. ¶ 8.

In addition, while the September 24, 2025 deadline set by the Court for Settlement Class Members to object has not yet passed, to date, no objections to the request for fees and expenses have been received.  ¶¶ 126, 154, 165.

In light of the excellent recovery obtained for the Settlement, the complexity of the Action, the skill and expertise required to prosecute and resolve the Action, and the risks that counsel undertook, Lead Counsel submits that the requested 13% fee award is very reasonable.  In addition, the Litigation Expenses for which Lead Counsel seeks payment were reasonable and necessary for the successful prosecution of the Action.

## <u>ARGUMENT</u>

## I.    LEAD COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).  Courts recognize that awards of fair attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and therefore "discourage future misconduct of a similar nature."  *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010)

The Supreme Court has emphasized that private securities actions such as this one are "an essential supplement to criminal prosecutions and civil enforcement actions" by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Moreover, compensating plaintiffs' counsel for their risks is crucial, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

## II.    THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE COMMON FUND

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund. The Second Circuit has approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49 (holding that either the percentage-of-fund or lodestar method may be used to determine appropriate attorneys' fees); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"). The Second Circuit has reiterated its approval of the percentage method, stating that it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation," and has noted that the "trend in this Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (citations omitted); *see also Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *17 (S.D.N.Y. Oct. 16, 2019); *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 416 (S.D.N.Y. Nov. 26, 2018).

## III.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

While the Second Circuit has expressed a preference for the percentage method in common fund cases as noted above, the Court may calculate reasonable attorneys' fees either on a percentage of the recovery basis or using the lodestar method (multiplying the hours reasonably billed by a reasonable hourly rate, then applying a multiplier).  *See Goldberger*, 209 F.3d at 48-49.  To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, district courts may cross-check the proposed award against counsel's lodestar.  *See Goldberger*, 209 F.3d at 50.  The 13% fee requested here is eminently reasonable under both the percentage method or lodestar method.

### A.     The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

The 13% attorney fee requested by Lead Counsel is well within the range of percentage fees that have been awarded in the Second Circuit in securities class actions and other similar litigation with comparable recoveries.  *See, e.g.*, *Boston Ret. Sys. v. Alexion Pharms., Inc*., Civ. No. 3:16-cv-02127 (AWT), slip op. at 3 (D. Conn. Dec. 21, 2023), ECF No. 329 (Ex. 9A) (awarding 25% of $125 million settlement); *Pearlstein v. Blackberry Ltd*., 2022 WL 4554858, at *10-11 (S.D.N.Y. Sept. 29, 2022) (awarding 33.3% of $165 million settlement); *In re Luckin Coffee Sec. Litig*., Case No. 20 Civ. 1293 (JPC), slip op.at 2 (S.D.N.Y. July 22, 2022), ECF No. 338 (Ex. 9B) (awarding 17.5% of $175 million settlement); *Woburn Ret. Sys. v. Salix Pharmaceuticals, Ltd.*, 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (awarding 21.24% of $210 million settlement); *Freeman v. Weatherford Int'l Ltd.*, No. 12-cv-2121 (LAK), slip op. at 5 (S.D.N.Y. Nov. 23, 2015), ECF No. 218 (Ex. 9C) (awarding 20.9% of $120 million settlement); *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 148 F. Supp. 3d 303, 305 (S.D.N.Y. 2015) (awarding 25% of $180 million settlement); *In re Fannie Mae 2008 Sec. Litig.*,

No. 1:08-cv-07831, slip op. at 2 (S.D.N.Y. Mar. 3, 2015), ECF No. 552 (Ex. 9D) (awarding 17.65% of $170 million settlement); *Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 2012 WL 2064907, at *3 (S.D.N.Y. June 7, 2012) (awarding 25% of $150 million settlement); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *6 (E.D.N.Y. June 24, 2010) (awarding 25% of $225 million settlement); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326, at *4 (S.D.N.Y. June 9, 2005) (awarding 28% of $120 million settlement).

Similarly, a statistical review of all PSLRA settlements from 2015 to 2024 reveals that the median fee award in securities class action settlements ranging from $100 million to $500 million (in all Circuits) is 25%.  *See* NERA ECONOMIC CONSULTING, RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2024 FULL-YEAR REVIEW, at 30 (2025) (Ex. 9E).  Accordingly, the 13% fee request here is substantially below the norm for percentage fee awards (and a tribute to Pentwater's aggressive fee negotiations with Lead Counsel on behalf of the Settlement Class).

### B.    The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method

Lead Counsel's extensive efforts and its resulting lodestar also strongly support the reasonableness of the requested fee.  Lead Counsel spent over 47,000 hours of attorney and other professional support time prosecuting the Action for the benefit of the Class for more than four and a half years.  ¶ 143.  Lead Counsel's total lodestar, derived by multiplying the hours spent by each attorney and paraprofessional by their current hourly rates, is $28,616,822.50.[3]  *See id.*  The requested fee of 13% of the Settlement Fund net of Litigation Expenses would be approximately

---

[3] The Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest.  *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) ("the use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation").

$17,749,247 (if the Litigation Expenses are awarded as requested), plus interest earned on that amount.[4]  Thus, the lodestar multiplier will be a "negative" or fractional multiplier of 0.6.  In other words, despite the significant litigation risks that counsel undertook in this litigation, their requested fee award represents approximately 60% of the value of the time Lead Counsel devoted at its standard hourly rates—a discount of roughly 40%.

In complex contingent litigation such as this Action, "fees representing multiples above the lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors."  *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *16 (S.D.N.Y. July 21, 2020); *see also FLAG Telecom*, 2010 WL 4537550, at *26 ("a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors"); *Comverse*, 2010 WL 2653354, at *5 ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar").

Here, the requested 0.6 multiplier is substantially lower than the multipliers typically awarded in securities and other complex class litigation in this District.  Numerous courts have found that where the requested fee is below counsel's lodestar this provides strong support for the reasonableness of the fee request.  *See, e.g.*, *In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (a negative multiplier was a "strong indication of the reasonableness of the [requested] fee"); *FLAG Telecom*, 2010 WL 4537550, at *26 ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request."); *In re Initial Pub. Offering*,

---

[4] This is calculated by subtracting the $2,217,327.97 in Litigation Expenses requested from the $138,750,000 Settlement Amount.  The remainder ($136,532,672.03) is then multiplied by 13% to obtain the requested fee amount.

671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009) (finding that, where requested fee represented a negative lodestar to the multiplier, there was "no real danger of overcompensation").

Further, it bears noting that Lead Counsel has carefully reviewed its time entries and removed several categories of work from the work included in its lodestar. First, Lead Counsel has removed all of time that Lead Counsel spent (1) moving for appointment of Pentwater as Lead Plaintiff and contesting competing motions of lead plaintiff appointment and (2) working on "typicality" or "adequacy" issues arising from Pentwater's purchase of certain Turquoise Hills shares through block trades or outside normal market purchases and related *Morrison* issues. ¶ 144; *cf.* Opinion and Order on Lead Plaintiff Motion (ECF No. 103), at 19 n.6. Lead Counsel has also removed (3) all time incurred after the execution of the Stipulation on June 17, 2025 (although Lead Counsel has spent substantial time preparing for final approval of the Settlement since then and will continue to expend time overseeing JND's processing of claims and distribution of the Settlement Funds after final approval); and (4) all time spent in preparing the motion for attorneys fees and expenses. ¶¶ 143-44.

*        *        *

In sum, the fee requested here is well within the range of fees awarded in comparable actions on either a percentage or lodestar basis. Moreover, as discussed below, each of the factors established for the review of attorneys' fee awards by the Second Circuit in *Goldberger* strongly supports a finding that the requested fee is reasonable.

## IV.    OTHER FACTORS CONSIDERED BY COURTS IN THE SECOND CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (internal quotes and citation omitted).  Consideration of these factors further demonstrates that the fee requested by Lead Counsel is reasonable.

### A.    The Time and Labor Expended Support the Requested Fee

The substantial time and effort expended by Lead Counsel in prosecuting the Action and achieving the Settlement support the requested fee.  The Graziano Declaration details the significant efforts that Lead Counsel dedicated to prosecuting and resolving the claims on behalf of Lead Plaintiff and the Settlement Class.  As set forth in greater detail in the Graziano Declaration, Lead Counsel, among other things:

- conducted an extensive investigation into the claims asserted in the Action, which included dozens of interviews with former employees and whistleblowers and an exhaustive review of public sources—such as SEC filings, press releases, news articles, analyst reports, conference call transcripts (¶¶ 19-23);

- researched and drafted three detailed amended complaints (¶¶ 24-26, 43-44);

- researched and briefed Lead Plaintiff's oppositions to Defendants' two sets of motions to dismiss (¶¶ 27-30, 45-47);

- consulted extensively with experts concerning the mining industry, loss causation, damages, and the domesticity of securities trading (¶¶ 21-23, 76-78);

- filed Lead Plaintiff's motion for class certification and conducted related discovery, including defending four depositions of Lead Plaintiff's representatives and two depositions of Lead Plaintiff's experts on market efficiency, damages, and securities trading, and taking the deposition of Defendants' expert (¶¶ 79-82);

- conducted substantial fact discovery including serving and responding to requests for production of documents, and interrogatories, including international discovery through letters rogatory (¶¶ 33-42, 50-56, 64-69);

- obtained and reviewed over 1.7 million pages of documents (¶¶ 56-63);

- litigated several discovery disputes including regarding Defendants' refusal to search and produce certain custodians' text and similar messages; the scope of Defendants' document productions, including the identity and number of document custodians and the relevant time period; Defendants' refusal to run Lead Plaintiff's requested search terms; and Defendants' assertion of privilege (¶¶ 40-41, 51-55);

- took the depositions of two non-party fact witnesses—whistleblowers Richard Bowley and Maurice Duffy—over the course of four days in the U.K., and prepared extensively for additional depositions that were scheduled when the Settlement was reached (¶¶ 70-75);

- engaged in extensive settlement negotiations to obtain the Settlement, which included two mediation sessions and preparing mediation briefing in advance of those sessions (¶¶ 84-88); and

- negotiated the final terms of the Settlement with Defendants and drafted, finalized, and filed the Stipulation and related documents, and prepared Lead Plaintiff's motions for preliminary and final approval of the Settlement (¶¶ 89-90).

In total, Lead Counsel expended over 47,000 hours prosecuting this Action with a lodestar value of approximately $28.6 million through June 17, 2025.  ¶ 143.  The substantial time and effort devoted to this case by Lead Counsel was critical in obtaining the outstanding result achieved by the Settlement, and strongly supports the reasonableness of the fee request.

### B.    The Risks of the Litigation Support the Requested Fee

The risk of the litigation is one of the most important *Goldberger* factors.  *See Goldberger*, 209 F.3d at 54; *Comverse*, 2010 WL 2653354, at *5.  The Second Circuit has recognized that the risks associated with a case undertaken on a contingent-fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted).  "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."  *Comverse*, 2010 WL 2653354, at *5 (citation omitted); *see also In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take this [contingent-fee] risk into account in determining the appropriate fee to award").

10

Lead Counsel recognized that there were many substantial risks in the litigation from the outset and that Lead Plaintiff's ability to succeed at trial was far from certain.

Lead Plaintiff faced challenges in proving that Defendants made allegedly misleading statements or omissions concerning the development of the Oyu Tolgoi mine in Mongolia and related delays and cost overruns.  ¶¶ 102-05.  Throughout the litigation, Defendants had argued and would continue to argue that their disclosures about the Oyu Tolgoi mine were accurate because they were based on the best information available when made.  Specifically, Defendants had arguments that their statements made prior to October 2018 were not false or misleading because Rio Tinto had not yet completed the reforecast project that formally revised the schedule.  Similarly, Defendants would argue that after the October 2018 disclosures, investors had current, accurate information on the state of the Oyu Tolgoi development, and that they acted in good faith to investigate and disclose any delays and cost impacts.  ¶¶ 103, 107.  In addition, Defendants had argument that their misstatements concerning delays—if there were any—were not material to investors.  ¶ 104.

Proving scienter as required under the Exchange Act was another major hurdle from the outset in this Action.  Throughout the litigation, Defendants strenuously argued that they did not have any fraudulent intent to mislead investors.  Specially, they argued that the fact they disclosed the delays once they were known in October 2018, and they disclosed additional delays and the cost overruns as they received new information throughout the alleged Class Period, shows their intent to keep investors informed.  ¶ 107.  In fact, the Court had already ruled twice at the motion to dismiss stage that Lead Plaintiff could not adequately allege scienter as to many of the statements it alleged were fraudulent.  *See In re Turquoise Hill Res. Ltd. Sec. Litig.,* 625 F. Supp. 3d 164, 234-241 (S.D.N.Y. 2022); *In re Turquoise Hill Res. Ltd.*, 2024 WL 4711185, at *15-17

(S.D.N.Y. Nov. 7, 2024).  Further, Lead Plaintiff did not have any clear evidence of motive in this case, such as unusual sales of Turquoise Hill stock by the Individual Defendants, that they could point to bolster its allegations of scienter in this case.  ¶ 108.  Thus, there was a meaningful risk that the Court or jury could find against Lead Plaintiff on these issues on a complete record at summary judgment or trial.

Finally, there were also significant risks related to loss causation and damages in this Action.  ¶¶ 110-12.  Defendants had substantial argument that at least certain of the price declines at issue were caused by the disclosure of information that was already known to the market or did not "correct" any of Defendants' alleged misstatements.  For example, Defendants have argued that because the disclosure in October 2018 revealed that the project was behind schedule, the alleged corrective disclosures in February 2019 and July 2019 revealing additional delays was not sufficiently "corrective" under the securities laws, and could not have caused investors damages.  ¶ 112.  Along similar lines, Defendants argued that the alleged corrective disclosure on July 31, 2019 that the Oyu Tolgoi project needed additional financing to complete was already known to the market based on the Company's earlier disclosures, and therefore the price decline following that disclosure could not be included in damages for the class.  *Id*.  If Defendants had succeeded on these arguments, the recoverable damages could have been less than the amount provided in the Settlement or nothing at all.  *Id*.

Lead Counsel's assumption of these risks strongly supports the reasonableness of the requested fee.  *See FLAG Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148

(S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### C.    The Magnitude and Complexity of the Action Support the Requested Fee

The magnitude and complexity of the Action also support the requested fee.  Courts have recognized that securities class action litigation is "notably difficult and notoriously uncertain." *FLAG Telecom*, 2010 WL 4537550, at *27.  This case was no exception.  As noted above and in the Graziano Declaration, the litigation raised a number of novel and complex issues.  Accordingly, the magnitude and complexity of the Action support the conclusion that the requested fee is fair and reasonable.

### D.    The Quality of Lead Counsel's Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee.  Lead Counsel submits that the quality of its representation is best evidenced by the quality of the result achieved.  *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007).  Here, as discussed above and in the Graziano Declaration, the Settlement provides an outstanding result for the Settlement Class considering the serious risks of continued litigation and the range of possible recoveries at trial. *See* ¶¶ 4, 118-20.

Further, Lead Counsel faced talented and zealous adversaries in this Action.  Courts have recognized that the quality of the opposition should also be taken into consideration in assessing the quality of counsel's performance.  *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7 (among factors supporting 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in

13

the country' also evidences the high quality of lead counsels' work") (citation omitted), *aff'd*, 272 F. App'x 9 (2d Cir. 2008).  Defendants were represented by able counsel from Quinn Emanuel who vigorously represented its clients throughout this Action.  ¶ 149.  Notwithstanding this capable opposition, Lead Counsel's efforts and ability to present a strong case enabled them to achieve the Settlement for the benefit of the Settlement Class.

### E.    The Requested Fee in Relation to the Settlement

Courts have interpreted this factor as requiring the review of the fee request in terms of the percentage it represents of the total recovery.  "When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3 (citation omitted).  As discussed in detail in Part III above, the requested fee is well within—if not below—the range of percentage fees that courts in the Second Circuit have awarded in comparable cases.

### F.    Public Policy Considerations Support the Requested Fee

A strong public policy concern exists for rewarding firms for bringing successful securities litigation.  *See FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley v. Del Glob. Tech. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered.").  Accordingly, public policy favors granting Lead Counsel's fee and expense application here.

### G.    The Reaction of the Settlement Class to Date Supports the Requested Fee

The reaction of the Settlement Class to date also supports the requested fee.  Through September 9, 2025, the Claims Administrator, JND, has mailed over 30,000 copies of the Notice and Claim Form (collectively, the "Notice Packet") to potential Settlement Class Members and their nominees, and the Summary Notice was published in *The Wall Street Journal* and over *PR Newswire*.  *See* Declaration of Luiggy Secura (Ex. 5), at ¶¶ 3-11.  The Notice advised Settlement Class Members that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 13% of the Settlement Fund, and up to $2,600,000 in Litigation Expenses.  While the deadline for filing objections to the fee application is not until September 24, 2025, to date, no objections to the motion for fees and expenses have been received.  ¶¶ 154, 165. Should any objections be received, Lead Counsel will address them in their reply papers to be filed on October 8, 2025.

## V.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel's fee application includes a request for payment of the litigation expenses it incurred, which were reasonable in amount and necessary to the prosecution of the Action. ¶¶ 155-65.  These expenses are properly recovered by counsel.  *See Facebook IPO*, 343 F. Supp. 3d at 418 (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation") (citation omitted); *FLAG Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class").

As set forth in detail in the Joint Declaration, Lead Counsel incurred $2,217,327.97 in expenses in connection with the prosecution and settlement of the Action.  ¶ 155.  These expenses

were incurred as a result of Lead Counsel's vigorous pursuit of claims for Lead Plaintiff and the Settlement Class for more than four and a half years. The expenses for which payment is sought are the types of expenses that are necessarily incurred in litigation and routinely charged to clients. These expenses include, among others, expert fees, mediation fees, on-line legal and factual research, travel, and copying expenses.

The largest expense incurred is for retention of Lead Plaintiff's experts, in the amount of $951,725.15, or approximately 43% of Lead Counsel total expenses. ¶ 159. As discussed in the Graziano Declaration, Lead Counsel consulted extensively with experts in the fields of mining, financial economics (including loss causation and damages); and the domesticity of shareholder transactions. The experts retained were instrumental in Lead Counsel's prosecution of the Action and in bringing about the favorable result achieved. Another significant component of Lead Counsel's expenses was charges for online legal and factual research, which amounted to $139,092.51, or approximately 6% of the total expenses. ¶ 160.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for payment of Litigation Expenses in an amount not to exceed $2,600,000, which may include the reasonable costs and expenses of Lead Plaintiff directly related to their representation of the Class. The total amount of Litigation Expenses requested is $2,217,327.97, an amount well below the amount listed in the Notice. To date, there has been no objection to the request for expenses. ¶ 165.

## VI.    THE ATTORNEYS' FEES AND COSTS AWARDED TO LEAD COUNSEL SHOULD BE PAYABLE UPON AWARD

Lead Counsel respectfully submits that the Court's award of attorneys' fees and Litigation Expenses should be payable upon the Court approval of the Settlement and fees, notwithstanding the potential for any appeal therefrom or pending the claims approval process. The Parties'

Stipulation specifically contemplates that Lead Counsel may be paid the attorneys' fees and expenses immediately upon approval of the Settlement and the award of fees, subject to its obligation to refund those monies (plus accrued interest) if the Settlement is subsequently terminated or if the award of attorneys' fees and/or Litigation Expenses is subsequently reduced or reversed.  Stipulation ¶ 16.

Payment of attorneys' fees immediately upon approval of the settlement is the typical practice in class actions in this Circuit and is appropriate particularly where, as here, the amount of the settlement is fixed and is not dependent on calculation of claims or later developments.  For example, last year in the *AppHarvest* securities settlement, this Court approved payment of the fees and expenses "immediately upon entry of this Order, subject to the terms, conditions, and obligations of the Stipulation, which terms, conditions, and obligations are incorporated herein." *In re AppHarvest Sec. Litig.*, Case No. 1:21-cv-07985-LJL, slip op. at 2 (S.D.N.Y. July 11, 2024), ECF No. 138 (Ex. 9F).  The Stipulation in this case contains very similar terms and conditions that were found in *AppHarvest*, which provide for class counsel to refund the fee if approval of the settlement or the fee award is subsequently reversed or the fee is reduced on appeal.  *See* Stipulation ¶ 16.

Indeed, attorneys' fees in securities class actions and other common fund cases are routinely disbursed to class counsel at the time of settlement approval.  *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 479-80 (S.D.N.Y. 1998) ("Numerous courts have directed that the entire fee award be disbursed immediately upon entry of the award, or within a few days thereafter."); *In re N. Dynasty Mins. Ltd. Sec. Litig.*, 2024 WL 308242, at *14 (E.D.N.Y. Jan. 26, 2024) (finding that a comparable quick-pay provision was not "problematic" in a securities class action settlement); *Pelzer v. Vassalle*, 2016 WL 3626825, at *31 (6th Cir. July 7, 2016) ("Quick-

pay provisions are common."); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 174 (3d Cir. 2006) (rejecting objectors' argument that a portion of attorneys' fees should be withheld pending payment of claims to class members); *Brown v. Hain Celestial Grp., Inc.*, 2016 WL 631880 at *10 (N.D. Cal. Feb. 17, 2016) ("Courts . . . approve these 'quick pay' provisions routinely.").

Moreover, as the Court discussed at the preliminary approval hearing, a quick-pay provisions has the beneficial effect of disincentivizing meritless objections.  *See* June 25, 2025 Transcript (ECF No. 475) at 25:17-21; *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2016 WL 5338012, at *21 (N.D. Ohio Sept. 23, 2016) ("the quick-pay clause serves the socially-useful purpose of deterring serial objectors"); Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 V AND. L. R EV. 1623, 1625-26 (2009) ("The virtue of the quick-pay provision is that objectors who bring meritless appeals can no longer delay the point at which class counsel receive their fees.  . . . As such, quick-pay provisions can reduce the 'holdout tax' that blackmail[ing] objectors can extract in class action litigation.").  While Lead Counsel believe that the merits of the Settlement explain why there is no objection to date, that benefit of the quick-pay structure still applies here.

Further, both Pentwater and Lead Counsel are highly incentivized to ensure prompt and appropriate distribution of the settlement proceeds in this Action, and have committed to ensuring that such a prompt, fair and appropriate distribution occurs here.  Halbower Decl. ¶ 7; Graziano Decl. ¶ 137.  Pentwater has a very significant financial interest in this case and has instructed Lead Counsel to ensure that JND processes all claims promptly and accurately.  Lead Counsel respectfully submits that its team of attorneys who are specifically dedicated to overseeing the distribution of settlement funds in cases like this are eminently qualified to perform that task, and Lead Plaintiff and Lead Counsel have affirmed their commitment to ensure the settlement proceeds

are processed and distributed promptly, efficiently and in the best interests of the class.  Halbower Decl. ¶ 7; Graziano Decl. ¶ 137; *see also In re Lumber Liquidators Chinese-Manufactured Flooring Products, Marketing, & Sales Pracs. Litig*., 952 F.3d 471, 487 (4th Cir. 2020) (rejecting objection to quick-pay provision and citing class counsel's representations that it would oversee settlement and refund any amounts if fee award was vacated on appeal).[5]

Finally, to date, there have been no objections to the Settlement or to Lead Counsel's request for attorneys' fees and Litigation Expenses.  If no objections are received by the time of the final Settlement Hearing, there will be no possibility of an appeal from the approval of the Settlement or the fee award, which further supports permitting the immediate payment of the fees.

## CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of 13% of the Settlement Fund net of Litigation Expenses awarded; and $2,217,327.97 for the reasonable expenses incurred by Lead Counsel in connection with the prosecution and settlement of the Action.

---

[5] Lead Plaintiff's and Lead Counsel's commitment to rigorously oversee the claims process obviates the need for any additional incentive, and the Settlement's strong merits, the reasonableness of the requested fee (resulting in a negative lodestar multiplier after years of litigation), the obligation to repay, the lack of any objections, and this Court's oversight ensure that the interests of the class are more than "sufficiently protected."  *Cymablista v. JPMorgan Chase Bank, N.A.*, 2021 WL 7906584, at *8 (E.D.N.Y. May 25, 2021); *In re Lumber Liquidators*, 952 F.3d at 487 (reducing fee on appeal but rejecting objection to quick-pay provision based on protections provided to class); *cf. In re Petrobras Sec. Litig.,* 317 F. Supp. 3d 858, 877 (S.D.N.Y. 2018) (deferring partial payment to incentivize "counsel to monitor the distribution agent and ensure that the settlement funds are distributed expeditiously"); *Hernandez v. Between the Bread 55th Inc*., 496 F. Supp. 3d 791, 804 (S.D.N.Y. 2020) (similar).

Dated: September 10, 2025

Respectfully submitted,

*/s/ Salvatore J. Graziano*
Salvatore J. Graziano
James A. Harrod
Michael D. Blatchley
Alexander M. Noble
**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
jim.harrod@blbglaw.com
michaelb@blbglaw.com
alexander.noble@blbglaw.com

*Counsel for Lead Plaintiff the Pentwater*
*Funds and Lead Counsel for the Settlement*
*Class*